UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------x

SECURITY INSURANCE COMPANY OF
HARTFORD,

    Plaintiff,

    v.

TRUSTMARK INSURANCE COMPANY,

    Defendant,

    v.

TIG INSURANCE COMPANY,

    Third Party Defendant.

---------------------------------------x

CIVIL NO. 301CV2198(PCD)

MAY 25, 2004

**PLAINTIFF'S SURREPLY MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
PLAINTIFF'S THIRD CLAIM FOR RELIEF**

In its Reply Memorandum, Trustmark argues for the first time that (1) collateral estoppel bars Security's CUTPA/CUIPA claims and (2) Security cannot rely on Trustmark's conduct towards CNA Re, the Lloyd's Consortium, or John Hancock to establish Trustmark's violations of CUTPA/CUIPA because those victims of its misconduct are outside Connecticut. Both arguments are erroneous.

**I.    Collateral Estoppel Does Not Bar Security's CUTPA/CUIPA Claims.**

    **A.    CUTPA/CUIPA Issues Were Not Actually Litigated and Decided in the Arbitration.**

As the party invoking collateral estoppel, Trustmark bears the burden of establishing that each element of that doctrine is satisfied. *Yale-New Haven Hospital, Inc. v. Thompson*, 162 F. Supp. 2d 54, 64 (D. Conn. 2001). Among these elements is that the issue on which collateral estoppel is invoked was actually litigated and decided in an earlier proceeding. *Id.* This burden is especially heavy when collateral estoppel is invoked

to support a motion for summary judgment and the earlier proceeding was an arbitration. In such circumstances, the proponent of collateral estoppel must show clearly and certainly that the issue was determined in the arbitration, and collateral estoppel will apply only if it is quite clear that this burden is met. *See Postlewaite v. McGraw-Hill, Inc.*, 333 F.3d 42, 49 (2d Cir. 2003). Indeed, to win summary judgment based on collateral estoppel, Trustmark must submit in support of its motion the entire record of the arbitration and establish that the only conclusion a fair-minded jury could reach in reviewing the record is that the arbitrators denied the CUTPA/CUIPA claims on the merits. *See BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677-78 (2d Cir. 1997).

Trustmark has not submitted the record of the arbitration. For that reason alone, it fails to meet its burden, and the Court should deny its motion.

In arguing that CUTPA/CUIPA issues were actually litigated and decided in the arbitration, Trustmark relies only on the description of Trustmark's conduct in FCIC's withdrawn civil complaint in this Court and FCIC's subsequent demand for arbitration. Reply Br. at 3. Neither supports Trustmark's argument that collateral estoppel applies. A civil complaint withdrawn before there is any activity in a case does not constitute actual litigation, because there never was a determination of the issue mentioned in the complaint. *See R and R Pool and Patio, Inc. v. Zoning Bd. of Appeals*, 257 Conn. 456, 466, 778 A.2d 61, 69 (2001) ("An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.")

It is true that FCIC's demand for arbitration referred to Trustmark's "general business pattern and practice." But the issue soon dropped out of the arbitration, and FCIC's case-in-chief was a straightforward claim for breach of a single contract.

Declaration of David J. Grais dated May 24, 2004, ¶ 3. The only other issues actually litigated were the varied rescission defenses Trustmark raised in its attempt to avoid payment. The Panel awarded FCIC reimbursement from Trustmark under their retrocessional agreement for claims payable by FCIC under its reinsurance agreement with UniCare. Trustmark has offered this Court no basis for how the award in FCIC's favor was in any way dependent on consideration of Trustmark's general business patterns and practices. *See Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co.*, 933 F. Supp. 1170, 1178 (S.D.N.Y. 1996) (ruling that fraud claim was not estopped because facts and evidence essential to showing fraud were not required to support contract claims presented in an earlier arbitration and, in fact, were not part of the presentation of such contract claims). Indeed, the record of the arbitration would demonstrate that the testimony and exhibits presented in the arbitration pertained only to the UniCare transaction. Grais Declaration ¶ 4.

In lieu of providing the record of the arbitration to support its argument, Trustmark asks the Court to infer that the Panel actually decided CUTPA/CUIPA issues based on the statement in the award that "all other claims for relief are DENIED." Reply Br. at 4. This award made no reference to CUTPA/CUIPA or any other issue relating to Trustmark's business practices and patterns. By referring only to this general denial of unspecified claims for relief, Trustmark cannot meet its burden of establishing that there is no genuine issue of material fact about whether the arbitrators actually determined the CUTPA/CUIPA issues present in this case.

The Second Circuit requires clear findings from the record of the arbitration to discern what issues were actually decided in an earlier arbitration before permitting a

3

general denial of claims in an arbitration award to support a grant of summary judgment based on collateral estoppel. *See BBS Norwalk One*, 117 F.3d at 677-78 (holding that despite statement in arbitration award that "all claims and counterclaims submitted to arbitration ...are herby denied in their entirety," proponent of collateral estoppel was required to submit the entire arbitration record to the district court, and would satisfy its burden on summary judgment only if the record demonstrated that the sole conclusion a fair-mined jury could reach is that the arbitrator denied the claim on the merits). Without clear findings from the record of the arbitration, there is necessarily a genuine issue of material fact as to whether the arbitrators actually determined a certain issue on the merits. *Id.*; *see also Hartford Accident & Indem. Co. v. Columbia Cas. Co.*, 98 F. Supp. 2d 251, 258 (D. Conn. 2000) (deciding that a "pithy arbitration award makes it virtually impossible [to] ascertain that all identical issues were addressed and ruled on by the arbitration panel.") Trustmark fails to meet the burden it bears in moving for summary judgment by not providing clear findings from the record of the arbitration. Had it done so, the record would clearly establish that CUTPA/CUIPA issues were not actually litigated in the arbitration. Grais Declaration ¶ 5.

**B.    Security Is Not In Privity With FCIC.**

Even if the CUTPA/CUIPA issues were actually litigated and determined in the arbitration, Security was not party to the arbitration; its corporate affiliate FCIC was. Collateral estoppel is applicable only against one who was a party to the prior proceeding or was in privity with such a party. *N.L.R.B. v. Thalbo Corp.*, 171 F.3d 102, 109-10 (2d Cir. 1999). As with each other element of collateral estoppel, Trustmark bears the burden of establishing privity between the parties. *Hartford Accident*, 98 F. Supp. 2d at 257.

4

In arguing that there is privity between Security and FCIC, Trustmark relies principally on the corporate relationship between the two companies. This Court soundly rejected the same argument in *Hartford Accident*. In that case, Hartford argued in its motion for summary judgment that its reinsurer Columbia was precluded from arguing that Hartford's settlement of a claim was not in good faith because a panel in a prior arbitration between Hartford and Continental, Columbia's parent company and another of Hartford's reinsurers on the same business, already had decided the issue in Hartford's favor. *Id.* at 253. Although acknowledging that some issues in the Hartford-Columbia dispute may already have been resolved by the Hartford-Continental arbitration, *id.* at 255, the court held that the corporate relationship between Columbia and Continental did not create privity between the two. *Id.* at 257. Thus, *Hartford Accident* establishes that a parent-subsidiary relationship is insufficient to establish privity.[1] It follows that privity is not established by the less direct relationship between affiliated subsidiaries, such as Security and FCIC. *See Usina Costa*, 933 F. Supp. at 1176 (holding that there was no privity between subsidiaries of same parent corporation so as to preclude one subsidiary from litigating claims decided in affiliated subsidiary's arbitration).

---

[1]  Trustmark's attempt to distinguish *Hartford Accident* fails to address the issue of privity. Trustmark Reply Br. at 5 n. 3. The three facts pertinent in *Hartford Accident* are all present here: (1) the party to the litigation was not a party to the arbitration between its corporate affiliate and the party asserting collateral estoppel; (2) the contracts signed by the corporate affiliates were separate and distinct from each other; and (3) the party to the litigation could not be compelled to arbitrate. Trustmark's only response is to highlight Security's statement that Trustmark's conduct toward FCIC is of a piece with its improper dealings with Security and to argue that the issues presented in the separate proceedings are identical. As explained above, the issues in this case and the arbitration are not identical. But even if they were, that is beside the point, because the privity issue decided by *Hartford Accident* and presented here is distinct from the question of whether the issues actually litigated were identical.

Apparently recognizing that corporate affiliation alone does not establish privity, Trustmark argues that privity exists because the counsel who represented FCIC in the arbitration also represents Security in this dispute and because Security "stands in the shoes" of those it claims were wronged by Trustmark's general business practices and patterns. Neither point supports Trustmark's argument that collateral estoppel should apply.

Trustmark relies on *Ruiz v. Commissioner of Transportation of the City of New York*, 858 F.2d 898 (2d Cir. 1988), to argue that privity exists based on identity of counsel. The *Ruiz* court, however, made clear that representation by the same attorney is not conclusive to establish privity. *Ruiz*, 858 F.2d at 903. Further, this Court previously considered the implications of *Ruiz* in *Hartford Accident*, where the same counsel represented the parent company and the subsidiary in their separate proceedings. The court in *Hartford Accident* easily distinguished the idiosyncrasies present in *Ruiz* and ruled that representation by the same counsel, even when coupled with corporate affiliation, does not establish privity between parties. *Hartford Accident*, 98 F. Supp. 2d at 257. *Ruiz* did not control the privity analysis in *Hartford Accident* and likewise does not support Trustmark's argument that there is privity between Security and FCIC.[2]

---

[2] As recognized in *Hartford Accident*, the unique facts that supported *Ruiz's* privity ruling limits the ruling's application to other cases. In *Ruiz*, truck drivers challenged New York City traffic regulations in state and federal courts under state and federal law. *Ruiz*, 858 F.2d at 899-91. After the state court ruled against the truck drivers on the merits of their federal claims, the truck drivers in the federal court action were precluded from litigating the same exact federal claims in federal court. The facts that the truck drivers had agreed to an overarching strategy to litigate their federal claims in state court first and that their attorney executed a stipulation to that effect in federal court on behalf of both groups of plaintiffs -- not the single fact that the same counsel represented the truck drivers -- supported the decision that the truck drivers could not then pursue in federal court the same claims that were undoubtedly decided in the state court action. *Id.* at 903-4.

6

Its arguments based on corporate affiliation and identity of counsel being squarely rejected by *Hartford Accident*, Trustmark makes the novel contention that all victims of unfair business practices "stand in the shoes" or are in privity with each other. Trustmark Reply Br. at 4. This would mean that Security is in privity not only with FCIC, but with CNA Re, the Lloyd's Consortium and John Hancock. Trustmark makes this argument without reference to any judicial or statutory authority to support its proposed application of collateral estoppel in CUTPA/CUIPA cases. This Court should reject Trustmark's invitation to make new law in the fields of unfair trade practices and collateral estoppel based on an unsupported argument raised for the first time in a reply brief. With nothing more to offer, Trustmark has failed to meet its burden of establishing privity between Security and FCIC.

## II. Security May Support Its CUIPA/CUTPA Claims With Evidence Of Trustmark's Conduct Towards CNA Re, Lloyd's Consortium and John Hancock

### A. Security Can Demonstrate That Trustmark Has Committed A CUIPA/CUTPA Violation In This State Because The Evidence Shows An "Intimate Association" With Connecticut.

"CUTPA is 'remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit.'" *Titan Sports, Inc. v. Turner Broad. Sys., Inc.*, 981 F. Supp. 65, 71 (D. Conn. 1997) (internal citation omitted). "CUTPA seeks to protect competitors and 'other businessmen,' as well as consumers." *Id.* (internal citation omitted). *Titan Sports* makes clear that "[a] CUTPA violation . . . need not necessarily occur in Connecticut, but instead, the violation must 'be tied to a form of trade or commerce *intimately associated* with Connecticut.'" *Id.* (internal citation omitted) (emphasis in original). Therefore, as this Court has held, it is not necessary that Security

7

prove that Trustmark's violation of CUIPA/CUTPA occurred in Connecticut (although to a large extent it did). Rather, Security must show only an intimate association between Connecticut and the commerce involved. *See Pro-Fitness, Inc. v. Plankenhorn*, No. 950144106, 1995 WL 774494, at *3 (Conn. Super. Ct. Dec. 6, 1995) (finding that plaintiff had sufficiently alleged a CUTPA violation within the state where the agreements at issue were signed and negotiated in Connecticut).

Here, two of Trustmark's victims are Connecticut entities, Security and FCIC. Moreover, WEB, a Connecticut corporation, acting as Trustmark's agent, negotiated and executed the agreements between Trustmark and Security and FCIC. *See* [A5][3] and [A17]. Further, WEB negotiated the retrocession contracts between Trustmark and CNA Re, the Lloyd's Consortium, and John Hancock. *See* [A73], [A76], [A77], [A88], and [A101]. WEB also executed the agreements on Trustmark's behalf in Connecticut. *See* [A73], [A79], and [A91]. Therefore, because the retrocession agreements were negotiated by a Connecticut corporation and executed by a Connecticut corporation in Connecticut, and two of the victims are Connecticut companies, the disputes involving Security, FCIC, CNA Re, the Lloyd's Consortium, and John Hancock are intimately associated with Connecticut and may serve as the basis for a CUIPA/CUTPA violation within the state. At the very least, Trustmark certainly has not demonstrated that it is entitled to summary judgment on this issue.

---

[3] The bracketed letter "A" followed by a number (*e.g.,* [A20]) denotes the number under which the cited exhibit or document was submitted to the Court as an attachment to the declaration of Kathryn E. Nealon dated July 22, 2003.

B.  **Security's CUIPA/CUTPA Claim Does Not Violate Principles Of Federalism And Due Process And A Fair Reading Of *State Farm* Does Not Support Such A Contention.**

Trustmark cites *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), factually a very different case applying a different body of law, to support its argument that Security's CUIPA/CUTPA claim violates principles of federalism and due process. In *State Farm*, the Supreme Court evaluated a punitive damage award of $145 million based on three guideposts laid out in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). The award resulted from a trial on claims for fraud and intentional infliction of emotional distress brought by an insured against State Farm based on State Farm's failure to settle a lawsuit. *State Farm*, 538 U.S. at 414-15. The insured introduced evidence concerning "State Farm's business practices for over 20 years in numerous States. Most of these practices bore no relation to third-party automobile insurance claims, the type of claim underlying the [insured's] complaint against the company." *Id.* at 415. The Court held that "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Id.* at 422. "A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 423. The Court recognized that recidivist behavior may be punished more severely than a first-time offense but noted that "in the context of civil actions courts must ensure the conduct in question replicates the prior transgressions." *Id.*

Nothing in *State Farm* supports Trustmark's position here. Security has demonstrated that Trustmark engaged in a pattern of similar behavior in rescinding retrocession agreements without a valid basis. Indeed, Security has further demonstrated the specific ways in which Trustmark has behaved in like fashion toward Security, FCIC,

9

CNA Re, the Lloyd's Consortium, and John Hancock. Therefore, unlike *State Farm*, there is at least a genuine issue of material fact about whether "the conduct in question replicates the prior transgressions."

Trustmark also argues that *State Farm* prohibits *any* extra-territorial application of *any* state statute. The Court should not, however, be lured into extrapolating from *State Farm*'s holding (on a distinct set of facts) to create an extraordinarily broad rule that would exempt a party such as Trustmark in this case from the reach of CUTPA and CUIPA. This is particularly true here, as Security has shown that Trustmark's conduct is "intimately associated" with Connecticut. Summary judgment should be denied.

## CONCLUSION

For all of the foregoing reasons, and those expressed in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on Plaintiff's Third Claim for Relief, the Court should deny Trustmark's motion for summary judgment on Security's third claim for relief.

Dated: Hartford, Connecticut
May 25, 2004

                                          ROBINSON & COLE LLP

                                          By: _____

                                          Frank F. Coulom, Jr. (ct 05230)
                                          Marion B. Manzo (ct 22068)
                                          280 Trumbull Street
                                          Hartford, Connecticut 06103
                                          Tel. (860) 275-8200
                                          Fax (860) 275-8299
                                          fcoulom@rc.com
                                          mmanzo@rc.com

                                          Co-counsel to Plaintiff Security Insurance
                                          Company of Hartford

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------x
SECURITY INSURANCE COMPANY OF        :
HARTFORD,                            :
                                     :
           Plaintiff,                :
                                     :     CIVIL NO. 301CV2198(PCD)
      v.                             :
                                     :
TRUSTMARK INSURANCE COMPANY,         :     MAY 24, 2004
                                     :
           Defendant.                :
                                     :
------------------------------------x
TRUSTMARK INSURANCE COMPANY,         :
                                     :
           Third Party Plaintiff,    :
                                     :
      v.                             :
                                     :
TIG INSURANCE COMPANY,               :
                                     :
           Third Party Defendant.    :
                                     :
------------------------------------x

### DECLARATION OF DAVID J. GRAIS

DAVID J. GRAIS, pursuant to 28 U.S.C. § 1746, declares:

1. I am a member of Dewey Ballantine LLP, co-counsel to plaintiff Security Insurance Company of Hartford. I submit this declaration in support of Plaintiff's Surreply Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment on Plaintiff's Third Claim for Relief.

2. I was lead counsel to FCIC in its arbitration with Trustmark over the UniCare transaction.

3. The case-in-chief FCIC presented in the arbitration was limited to its claim that Trustmark was in breach of its contract to provide FCIC with retrocessional coverage for the reinsurance it provided to UniCare.

4. To the best of my knowledge, the testimony and exhibits presented in the arbitration only pertained to the UniCare transaction.

5. To the best of my knowledge, the arbitration did not involve litigation of CUTPA/CUIPA or Trustmark's general business patterns and practices.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 24, 2004.

*David J. Grais* (signature)

David J. Grais

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via fax and first-class mail, postage prepaid, to the following on this 25th day of May, 2004:

| Everett J. Cygal, Esq.<br>Schiff Hardin & Waite<br>6600 Sears Tower<br>Chicago, IL 60606 | Jeffrey Hellman, Esq.<br>Zeisler & Zeisler, P.C.<br>558 Clinton Avenue<br>P.O. Box 3186<br>Bridgeport CT 06605 |
|---|---|
| David A. Slossberg, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT 06560 | Harry P. Cohen, Esq.<br>Cadwalader, Wickersham & Taft<br>100 Maiden Lane<br>New York, New York 10038 |

_____
Marion B. Manzo