UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>Plaintiff,<br><br>-against-<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Defendant.<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Third Party Plaintiff,<br><br>-against-<br><br>TIG INSURANCE COMPANY,<br><br>Third Party Defendant. | CIVIL NO. 3:01-CV-02198 (PCD)<br><br>United States District Court<br>District of Connecticut<br>FILED AT   NEW HAVEN<br><br>June 24, 2004 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY
DEFENDANT TIG INSURANCE COMPANY'S MOTION TO STAY
THIS ACTION PENDING THE DECISION OF THE SUPREME
COURT ON TIG'S PETITION FOR A WRIT OF *CERTIORARI***

Third Party Defendant, TIG Insurance Company ("TIG"), through its counsel, respectfully submits this memorandum of law in further support of its motion for an order staying this action pending the Supreme Court's decision on TIG's petition for a writ of *certiorari* seeking review of the Second Circuit's March 2, 2004 decision affirming the District Court's August 5, 2003 decision staying the arbitration between TIG and Security Insurance Company of Hartford ("Security").

NYLIB2 232467.2

## ARGUMENT

A.   <u>The Standard the Court Should Apply In Deciding TIG's Motion</u>

Security asserts that TIG is not entitled to a stay of this proceeding unless it can demonstrate "not only a reasonable probability that the Supreme Court will grant *certiorari*, but also a significant possibility that a majority of the Court will then reverse the decision of the court of appeals." Security Mem. at 3. This, however, is not the standard that governs a motion to stay based upon a court's inherent power to control its own docket. *See, e.g., Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997). "'A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.'" *Goldstein v. Time Warner N.Y. City Cable Grp.*, 3 F. Supp. 2d 423, 437-38 (S.D.N.Y. 1998) (*quoting Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir.), *cert. denied*, 444 U.S. 827 (1979)).

In this respect, TIG's motion to stay is similar to the stay that Security asked for, and the Court granted, in *Security Insurance Co. of Hartford v. Trustmark Insurance Co.*, 3:00-CV-1247 (PCD) ("*Trustmark I*"). As the Court may recall, after the Court issued its Trial Preparation Order in *Trustmark I*, Security asked the Court to vacate the order and to stay the action pending the conclusion of *Trustmark II*. In connection with its application, Security made no attempt to demonstrate likelihood of success on the merits. Instead, Security simply relied on considerations of judicial economy by arguing, for various reasons, that "it would waste the time of the Court and the time and money of the parties to try *Trustmark I* before *Trustmark II*." See O'Sullivan Reply Aff., Ex. M at 2. The Court vacated the Trial Preparation Order and stayed

*Trustmark I* pending the conclusion of this action. *Id.*, Ex. N. The Court should apply the same considerations of judicial economy in deciding the instant motion.

In any event, there is, at a minimum, a "significant possibility" that the Supreme Court will reverse the Second Circuit's decision. TIG is aware that this Court believes that its analysis of the choice-of-law issue was the correct one. But, as this Court has explained, the "import of the *Mastrobuono* and *Volt* decisions is a fertile source of debate, with federal and state courts arriving at conclusions far too varied to mention here." *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 283 F. Supp. 2d 602, 606 (D. Conn. 2003) (citation omitted), *aff'd sub nom. Security Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322 (2d Cir. 2004). Specifically, the Third Circuit in *Roadway Package* highlighted that six courts of appeals "have unanimously concluded that *Volt* is inapposite when a federal court is unconstrained by the need to defer to state court constructions." *Roadway Pkg. Sys., Inc. v. Kayser*, 257 F.3d 287, 295 (3d Cir. 2001) (citing cases). In doing so, the *Roadway* court explained, in a thoughtful opinion, its view that *Mastrobuono* compelled the conclusion that, as a matter of federal law, a general choice of law clause would not be read to adopt state arbitration rules, *id.* at 296, and why a standard that distinguished between "substantive" and "procedural" arbitration rules was inconsistent with the Federal Arbitration Act (the "FAA") and unworkable, *id.* at 298-99. Indeed, the Fifth Circuit recently adopted the standards reflected in *Roadway* because it concluded that its prior precedent failed to "distinguish *Mastrobuono*" and "instead relied solely on . . . *Volt*." *Action Indus., Inc. v. United States Fidelity & Guar. Co.*, 358 F.3d 337, 342 n.16 (5th Cir. 2004). Given this continuing conflict, there is, at a minimum, a "significant possibility" that, if the Supreme Court grants review, the Second Circuit's decision will be reversed.

**B.    There Are Compelling Reasons For Concluding That The Supreme Court Likely Will Grant TIG's Petition an Important Issue**

Security asserts that TIG's petition for a writ of *certiorari* is "very unlikely" to be granted because, *inter alia*, there is no conflict among the circuit court of appeals for the Supreme Court to resolve.[1] This assertion is completely without merit. Indeed, as this Court has recognized, several circuit courts of appeal have held that "a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default standards." *See, e.g., Roadway Pkg.*, 257 F.3d at 296; *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-70 (9th Cir.), *cert. denied*, 537 U.S. 825 (2002). In contrast, the Second Circuit reached the exact opposite result, holding that a generic California choice of law provision was sufficient to support a finding that the parties intended to opt out of the FAA in favor of California state arbitration rules. *See Security Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322, 328 (2d Cir. 2004). Similarly, in *Roadway Package*, the Third Circuit held that the threshold issue of whether parties elected to opt out of the Federal Arbitration Act in favor of state arbitration rules is governed by federal law, 257 F.3d at 294, while the Second Circuit held that the issue is governed solely by state law. *Security Ins.*, 360 F.3d at 327. Likewise, whereas the Second Circuit found that the distinction between state "procedural" and "substantive" arbitration rules was a material consideration in determining whether the parties intended to opt out of the FAA in favor of state arbitration rules, *id.*, the Third Circuit rejected this distinction as inconsistent with the FAA and unworkable. *See Roadway Pkg.*, 257 F.3d at 298-99.

---

[1] Security's argument that the Supreme Court grants only one of every 30 petitions for *certiorari* is misleading and irrelevant. The likelihood of *certiorari* being granted must be decided by evaluating the issues presented by each case against the criteria set forth by the Supreme Court. Indeed, if a court relied upon a statistical analysis alone, it would never stay a litigation pending consideration of a petition for *certiorari*. Here, there are compelling reasons for concluding that the Supreme Court likely will grant TIG's *certiorari* petition since there is a split of authority among the circuit courts of appeal on an important issue, which is one of the enumerated bases of which the Supreme Court will grant *certiorari*. *See* Sup. Ct. R. 10(a).

NYLIB2 232467.2                    -4-

Security's fallback argument – that "at most [there is] a conflict solely on matters of state law, which the Supreme Court does not sit to resolve" (Security Mem. at 4) – is based upon a false premise. Indeed, as discussed above, the conflict among the federal courts of appeals extends even to the issue of whether state or federal law governs the issue of whether the parties intended to opt out of the FAA in favor of state arbitration rules. Under the Third Circuit's analysis, it is irrelevant whether the choice-of-law provision at issue refers to New York, California or Pennsylvania law since the threshold determination of whether the parties intended to opt out of the FAA is governed by *federal* law. *See Roadway Pkg.*, 257 F.3d at 294 ("this case is *not* governed by state law – it is governed by federal law") (emphasis in original).[2] For this reason, Security's attempt to distinguish *Roadway Package* on the ground that the contract at issue in that case had a Pennsylvania choice-of-law provision should be rejected. Similarly, Security's attempt to distinguish *Roadway Package* on the ground that this case includes "parol evidence" that allegedly "illuminate[s] the intent of the parties on the application of state arbitration law" (Security Mem. at 4), is baseless because the Second Circuit relied on no such evidence in support of its decision, but instead relied upon California law concerning "generic choice-of-law clauses." *See Security Ins.*, 360 F.3d at 328.

Security also argues that there is no conflict on this issue between the Second and Ninth Circuits because "the court in *Wolsey* was construing the first clause of Section 1281.2(c), which reads that 'the court . . . may refuse to enforce the arbitration agreement'" while this case involved "the fourth clause of Section 1281.2(c), which permits the court to 'stay arbitration

---

[2] The majority of the other circuit courts of appeals that have decided that a generic choice of law clause is insufficient to demonstrate the parties' intent to opt out of the FAA did so based upon *Mastrobuono*, rather than an analysis of state law principles. *See, e.g., Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 383 (4th Cir. 1998); *Action Indus.*, 358 F.3d at 341-43; *see also Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 933 (6th Cir. 1998).

pending the outcome of the court action.'" Security Mem. at 5 (citations omitted).[3] According to Security, "*Wolsey* therefore involved a complete denial of a party's right to arbitrate, whereas this case involves only the timing of the arbitration between TIG and Security." *Id.* Security's position fails for two reasons. First, the Second Circuit saw no such distinction and declined to follow *Wolsey* on the ground that it was decided based upon *Mastrobuono*, not based on the subsection of Section 1281.2(c) at issue. Indeed, the Second Circuit interpreted *Wosley* as applying Section 1281.2(c)(4). 360 F.3d at 328 n.4. Second, there is no practical difference between Section 1281.2(c)(1) and (c)(4); they differ only in the procedural status of arbitration subject to be stayed. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1212 (9th Cir. 1998). Section 1281.2(c)(1) applies in response to a demand for arbitration or on a motion to compel arbitration, while 1281.2(c)(4) applies to arbitrations that have already been commenced. In either case, the arbitration will not go forward.

Significantly, Security does not dispute that the issue of how courts should determine whether parties intended to incorporate state arbitration rules is an issue of substantial importance that has generated significant amounts of arbitration-related litigation. The distinction that the Second Circuit drew between "procedural" and "substantive" state arbitration rules will likely add to the uncertainty in this area, *see Roadway Pkg.*, 257 F.3d at 299, resulting in more arbitration-related litigation in federal courts as parties race to the courthouse that they view as more favorable since the venue in which the issue is heard may be outcome determinative. *Compare Security Ins.*, 360 F.3d at 328-29 *with Wolsey*, 144 F.3d at 1212-13. By

---

[3] Security's argument that the California Court of Appeal's decision in *Mount Diablo Medical Center v. Health Net of California, Inc.*, 124 Cal. Rptr. 2d 607 (Ct. App. 2002), somehow "resolved" the conflict between the Second and Ninth Circuit's on this issue (Security Mem. 5-6) is false. Once again, Security simply assumes that this is an issue solely of state law; but that issue is disputed among the federal courts of appeal. In any event, *Wolsey* remains good law in the Ninth Circuit and continues to be binding on federal courts within that circuit.

resolving the conflict among the circuit courts of appeal, the Supreme Court would bring clarity and uniformity to this important question, thereby potentially reducing the number of wasteful arbitration-related litigations brought in the federal courts.

Security once again misses the point when it argues that "there is no reason for the Supreme Court to review the Second Circuit's ruling" since "the Supreme Court in *Volt* decided the precise issue in this case, which is the interplay between the FAA and Section 1281.2(c)." Security Mem. at 7. TIG is challenging the conclusion of the Second Circuit that, by including a general choice-of-law provision in the Reinsurance Agreement, the parties elected to opt out of the FAA in favor of state arbitration rules. As it explained in *Mastrobuono*, the Supreme Court in *Volt* never addressed that issue. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 n.4 (1995) (noting that, in *Volt*, the Court "did not interpret the contract *de novo*" but instead "deferred to the California court's construction of its State's law").

Finally, Security's discussion of *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002), *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407-08 (2003), *Green Tree Fin. Corp. v. Bazzle*, 123 S. Ct. 2402, 2408 (2003) (Breyer, J., plurality op.) and *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 541 (1995), is a red herring. TIG does not dispute that it is appropriate for courts to apply Section 1281.2(c) "[w]hen the parties incorporated Section 1281.2(c) in their agreement." Security Mem. at 7. That, of course, begs the threshold question of whether the parties in fact agreed to incorporate Section 1281.2(c) in their contract. Under *Howsam, PacificCare,* and *Bazzle*, that threshold question should have been decided by the arbitrators, not the Second Circuit. Indeed, in this regard, it is undisputed that: (i) whether the parties agreed to incorporate California state arbitration rules was (and is) a hotly disputed issue between TIG and Security; and (ii) pursuant to the Arbitration Clause, "[a]s a condition precedent to any right of action hereunder, any irreconcilable dispute between the

NYLIB2 232467.2                         -7-

parties to this Agreement shall be submitted for decision to a board of arbitration." *See* O'Sullivan Decl., Ex. A, Art. XVII at 20. The Second Circuit's failure to permit the arbitrators to decide the issue provides another reason why the Supreme Court likely will grant TIG's petition for *certiorari*. *See* Sup. Ct. R. 10(c).[4]

In sum, there are compelling reasons why the Supreme Court likely will grant TIG's petition of a writ of *certiorari* and hear the issues arising out of this Court's decision to stay the Arbitration pending the completion of the litigation.

C.  **TIG Will Suffer Irreparable Harm Without A Stay**

Contrary to Security's assertion, TIG's claim that it would suffer irreparable harm absent a stay is not based upon the assumption that TIG is "somehow entitled to have the hearing of the arbitration occur before the trial of this action, just because the arbitrat[ors] set a date for the hearing before this Court set a date for trial." Security Mem. at 9. Rather, it is based on the indisputable fact that, but for the Court's ruling staying the Arbitration, the Arbitration would have been completed (and an arbitral award issued) prior to the trial in this action. Under these circumstances, TIG would suffer irreparable injury if the Court does not maintain the status quo pending the Supreme Court's consideration of TIG's petition for a writ of *certiorari*.

Security also argues that TIG's irreparable injury claim "rests on speculation about the preclusive effects of the litigation and arbitration on each other." Security Mem. at 9-10. This argument, however, ignores *WorldCrisa*, in which the Second Circuit explicitly held that the fact that a litigation "*might* adversely affect the outcome of [an] arbitration" is precisely the type of harm that would justify a stay. 129 F.3d at 76 (emphasis added).

---

[4] Security's assertion that this argument is untimely is baseless. First, the argument is based upon the distinction that the Second Circuit drew between "procedural" and "substantive" state arbitration rules. In any event, in *Bazzle*, the Supreme Court addressed and decided this same type of issue *sua sponte*, even though neither party had first sought an arbitrator's ruling on the issue. *See* 123 S. Ct. at 2407-08.

### D. A Balancing of the Equities and Judicial Economy Weighs Heavily In Favor Of A Stay

Significantly, Security does not contend that either it or Trustmark will suffer any harm if this litigation is stayed until October 2004 to permit the Supreme Court an opportunity to consider and decide TIG's petition for *certiorari*. For this reason alone, the Court should grant TIG's motion.

Security instead argues that "the equities are not in [TIG's] favor" because of TIG's alleged inaction and delay. Security Mem. at 10-11.[5] That is not so. The Second Circuit issued its decision denying rehearing and rehearing *en banc* on May 20, 2004 and, on June 7, 2004, TIG filed the instant motion, advising the Court that it would file its petition shortly. TIG will, in fact, file its petition with the United States Supreme Court in the next two weeks. The Supreme Court's rules allow 90 days from the denial of a petition for panel rehearing within which to file a petition for *certiorari*. Sup. Ct. R. 13(1). TIG respectfully submits that six weeks (less than half the time allotted) is not an unreasonable amount of time to prepare and file a petition for *certiorari* on an important legal issue. Under these circumstances, there is simply no legitimate basis for Security's suggestion that TIG has acted in a dilatory manner.

---

[5] Similarly, Security's assertion that TIG could have sought a stay from either the Second Circuit or the Supreme Court is self-evidently irrelevant to a balancing of the equities analysis, particularly since Security does not dispute that the Court is an appropriate forum to decide the issue.

## **CONCLUSION**

For the reasons set forth above as well as in TIG's initial memoranda of law, TIG respectfully requests that this Court issue an order staying this action pending the Supreme Court's decision on TIG's petition for a writ of *certiorari*.

Dated:    June 24, 2004

THIRD PARTY DEFENDANT

By: _____
J. Daniel Sagarin CT 04289
David Slossberg CT 113116
Hurwitz, Sagarin & Slossberg, LLC
147 North Broad Street
Milford, Connecticut 06460-0112
Tel.: (203) 877-8000
Fax: (203) 878-9800

-and-

Lawrence I. Brandes, CT 23789
Harry P. Cohen, CT 20446
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038
Telephone: 212-504-6000
Facsimile: 212-504-6666


Attorneys for Third-Party Defendant
TIG Insurance Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent by facsimile and federal express, this 24th day of June, 2004, to counsel of record for plaintiff Security Insurance Company of Hartford and defendant/third-party plaintiff Trustmark Insurance Company, addressed to:

Frank F. Coulom, Jr. CT 05230
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Attorneys for Plaintiff
Security Insurance Co. of Hartford

David J. Grais CT 23352
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY 10019

Attorneys for Plaintiff
Security Insurance Co. of Hartford

Jeffrey Hellman CT 04102
Zeisler & Zeisler, P.C.
558 Clinton Avenue
P.O. Box 3186
Bridgeport, CT 06605

Attorneys for Defendant and
Third Party Plaintiff
Trustmark Insurance Co.

Mark B. Holton CT 21727
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

Attorneys for Plaintiff
Security Insurance Co. of Hartford

Everett J. Cygal CT 22765
Schiff Hardin & Waite
6600 Sears Tower
Chicago, IL 60606-6473

Attorneys for Defendant and
Third Party Plaintiff
Trustmark Insurance Co.

_____
David A. Slossberg

NYLIB2 232467.2