UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITY INSURANCE COMPANY OF
HARTFORD,                                    :
                                             :
                    Plaintiff,               :        **CIVIL NO. 301CV2198(PCD)**
                                             :
        v.                                   :
                                             :
TRUSTMARK INSURANCE COMPANY,                 :
                                             :
                    Defendant.               :
                                             :        **JUNE 22 2004**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
TRUSTMARK INSURANCE COMPANY,                 :
                                             :
                    Third Party Plaintiff,   :
                                             :
        v.                                   :
                                             :
TIG INSURANCE COMPANY,                       :
                                             :
                    Third Party Defendant.   :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF SECURITY INSURANCE COMPANY
OF HARTFORD'S MOTION TO COMPEL TRUSTMARK INSURANCE
COMPANY TO PRODUCE DOCUMENTS AND TO MAKE OTHER DISCOVERY**

Plaintiff Security Insurance Company of Hartford ("Security") submits this memorandum

of law in support of its motion, pursuant to Fed. R. Civ. P. 37(a), to compel the production of

documents and other discovery from defendant Trustmark Insurance Company ("Trustmark").

### Preliminary Statement

By this motion, Security seeks an order authorizing it to conduct discovery into the

negotiations surrounding settlement agreements that Trustmark entered into with two of its

ceding companies, CNA Reinsurance Company Limited ("CNA") and Lloyd's Syndicate 9027

("Syndicate 9027"). Such discovery is relevant to the issue of Trustmark's good faith in connection with Security's claims against Trustmark under the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA").

The agreements were produced to Security on July 15, 2003. In a naked attempt to undermine Security's claims under CUTPA and CUIPA, both agreements contain similar unusual language that they were entered into in "good faith" by the settling parties.

On August 1, 2003, Security served a notice of deposition and request for the production of documents on Trustmark regarding the circumstances of the negotiation and execution of the agreements. Trustmark has refused to comply with Security's discovery requests. Security respectfully submits that it is entitled to discovery concerning these matters, in view of Trustmark's evident intention to use the agreements at trial to rebut Security's claims under CUTPA and CUIPA.

Security also seeks an order compelling Trustmark to produce certain documents that Trustmark has withheld under a claim of privilege. Trustmark has the burden of proving that these documents are protected by privilege but has failed to satisfy that burden.

## BACKGROUND

### I.    Settlement agreements with CNA and Lloyd's Consortium No. 9027

On February 5, 2003, this Court granted Security's motion to compel the production of documents related to, *inter alia*, the following:

> [Defendant's] failure to pay claims that it owes, may owe, or is claimed to owe to, or has been billed or invoiced by, CNA Reinsurance Company, Ltd. Requ. 1F.

> [Defendant's] failure to pay claims that it owes, may owe, is claimed to owe to, or has been billed or invoiced by, any other entity for which [defendant] has, may have, or previously provided reinsurance or retrocessional coverage at any time since January 1, 1997. Requ. 1G.

[Defendant's] commutation, attempted commutation, modification, attempted modification, rescission, or attempted rescission, since January 1, 1997 (or any such actions taken on its behalf) of any reinsurance or retrocession agreement with which [defendant] is, was, may be, or may have been a reinsurer or retrocessionaire. Requ. 1H.

All litigation or arbitrations relating to any of the matters described in items F, G, or H. Requ. I.[1]

*See* Order at 3, attached as Ex. 1 to the Declaration of Mark B. Holton. The Court rejected

Trustmark's objection that the information sought was not relevant, holding that "[a]lthough the

presence of general disputes may not substantiate a pattern or practice under CUTPA, details of

those disputes restricted in time to a period relatively contemporaneous with the allegations in

the present case might substantiate such a pattern or practice and would thus be relevant and

discoverable." *See id.* Two such disputes were Trustmark's then-pending arbitration with CNA

and then-pending arbitration with Syndicate 9027.

On July 15, 2003, Trustmark produced to Security the Settlement and Commutation

Agreement dated July 14, 2003 between Peter Colin Matson, on his own behalf and on behalf of

all members of Syndicate 9027, and Trustmark. *See* Syndicate 9027 settlement agreement,

attached as Ex. 2 to Holton Decl. Also on July 15, 2003, Trustmark produced to Security the

Settlement and Release Agreement dated May 30, 2003, between CNA and Trustmark. *See*

CNA settlement agreement, attached as Ex. 3 to Holton Decl. The Syndicate 9027 settlement

agreement contains the following language: "In consideration of the parties agreeing to

compromise in *good faith* their respective claims in the arbitration proceedings . . . ." *See* Holton

---

[1] Although the Court in describing Security's Request I referred only to litigation, the underlying request included both litigation and arbitrations. Given the contents of the remainder of the Order, Security understands the Court to be referring to both litigation and arbitrations.

Decl., Ex. 2 at 1 (emphasis added). The CNA settlement agreement contains even more unusual language: "While neither Party admits any allegations of the other, each stipulates that the claims and allegations of the other are reasonable and advanced in *good faith* and each recognizes that this agreement is in settlement of the reasonable claims and allegations made herein." *See id.*, Ex. 3 at 2 (emphasis added).

On August 1, 2003, Security served a notice of deposition and request for production of documents on Trustmark. Holton Decl., Ex. 4. Through this discovery, Security seeks deposition testimony and documents from Trustmark regarding the facts and circumstances of the settlements with CNA and Syndicate 9027 and the negotiations leading to the settlements. *See id.*

In the parties' August 1, 2003 joint report to the Court concerning the status of discovery and the filing of dispositive motions, Trustmark stated that there was no basis for discovery related to the settlement agreements. Trustmark argued that such discovery would not provide admissible evidence because the settlement negotiations would be inadmissible under Federal Rule of Evidence 408. *See* Joint Report at 8, attached as Ex. 5 to Holton Decl. In the same joint report, Security responded that it "certainly is entitled to discovery concerning the circumstances surrounding the agreements, particularly in view of the extremely unusual provisions contained in the agreements." *See id.* at 6.

4

## II.    Documents listed on Trustmark's Second Supplemental Privilege Log

Previously, Trustmark produced to Security its Second Supplemental Privilege Log. *See* Ex. 6 to Holton Decl. The log lists documents 259 through 367 as being withheld on the basis of either the attorney-client or work product privilege or the common interest or joint defense exception to waiver of the attorney-client privilege.

By letter dated August 7, 2003, Security requested that Trustmark produce certain documents listed on the log on the ground that no privilege properly applied. Holton Decl., Ex. 7. In particular, with respect to documents withheld under the common interest/joint defense privilege, Security explained that the "common interest and joint defense doctrines do not create independent privileges but merely provide exceptions to the waiver of privilege that otherwise would occur as a result of disclosure to third parties." *See id.*

The August 7 letter also informed Trustmark that it could not "shelter" otherwise non-privileged communications by employing the oft-used device of including an attorney as a recipient of a copy and that, therefore, documents 298, 299, 300, 301, 307, 308, 309, and 316, should be turned over. *See id.*[2]

On or about August 8, 2003, the Second Circuit Court of Appeals stayed this litigation pending determination of the appeal of third-party defendant TIG Insurance Company of this Court's order staying the arbitration between TIG and Security. Ultimately, the Second Circuit affirmed this Court's order staying the arbitration, and on May 20, 2004, the Second Circuit vacated its stay of the litigation. *See* Holton Decl., Ex. 8.

---

[2] The letter also mentioned document 322. Upon further consideration, Security withdraws its request for that document.

5

By email dated May 25, 2004 (Holton Decl., Ex. 9), counsel for Security invited Trustmark to participate in one final attempt to resolve these discovery disputes. Trustmark agreed to do so and transmitted correspondence to counsel for Security dated June 2, 2004 setting forth Trustmark's position on the privilege issues. Holton Decl., Ex. 10.

In the course of researching Trustmark's contentions as expressed in the June 2 letter, counsel for Security determined that the common interest doctrine did not apply to any of the documents Trustmark was withholding on that basis, because the requisite common legal interest does not exist between Trustmark and the third-parties that Trustmark claims share an interest with it.[3] By email dated June 8, 2004 (Holton Decl., Ex. 11), counsel for Security confirmed this position to Trustmark.

Thereafter, counsel for Security and Trustmark had additional communications to address the privilege disputes, and although agreement was reached with respect to the disclosure of certain documents on the log, not all disputes were resolved. The documents still under dispute are found at entries 263, 264, 265, 266, 267, 282, 289, 298, 299, 300, 301, 307, 308, 309, 311, 314, 316, 318, 353, 366, and 367. In addition, counsel for the parties acknowledged that they were at an impasse with respect to discovery of the CNA and Syndicate 9027 settlements. Holton Decl. ¶ 13.

---

[3] Those third parties are the former principals of WEB Management LLC, which once served as Trustmark's agent in connection with the business at issue in this litigation, and United States Life Insurance Company of New York, which had been Trustmark's retrocedent on the business in 1998, before being replaced by Security in 1999 (albeit on somewhat different terms).

## ARGUMENT

**I.    Security is entitled to further discovery regarding settlement agreements that will be used by Trustmark in its defense against Security's CUTPA and CUIPA claims.**

The gravamen of Security's claims under CUTPA and CUIPA is that Trustmark has engaged in a general business practice of refusing in bad faith to pay claims on which liability is reasonably clear by rescinding or terminating reinsurance contracts without a *bona fide* reason to do so. Specifically, the record reflects that on numerous occasions, Trustmark, when asked to make substantial payments under a reinsurance contract, or after concluding that a contract will generate large losses for it, has sought to avoid those obligations, rather than live up to them, by rescinding or terminating its agreements for fabricated and frequently-changing reasons.

Trustmark will attempt to refute Security's claims by pointing to the settlement agreements with CNA and Syndicate 9027, and the "good faith" provisions they contain, as evidence that it did not act in bad faith with respect to these reinsureds.[4] By opposing Security's discovery efforts, Trustmark now attempts to deprive Security of the opportunity to explore the circumstances of the negotiation and execution of the agreements so as to develop evidence that Trustmark's "good faith" is not so clear as the contrived, self-serving appearance Trustmark seeks to convey. Having put the agreements at issue, Trustmark is in no position to thwart Security's legitimate effort to obtain a full understanding of precisely how the agreements came to be.

---

[4]  Of course, the "good faith" provisions of the settlement agreements would be inadmissible as hearsay. By making this motion, Security does not waive its right to interpose that, or any other appropriate objection, to the admission of the settlement agreements, or any portion thereof, at trial.

F.R.E. 408, upon which Trustmark purports to rely, in no way supports Trustmark's prejudicial enterprise. Rule 408 provides:

> Evidence of (1) furnishing or promising to furnish, or (2) accepting or promising
> to accept, a valuable consideration in compromising or attempting to compromise
> a claim which was disputed as to either validity or amount, is not admissible to
> prove liability for or invalidity of the claim or its amount. Evidence of conduct or
> statements made in compromise negotiations is likewise not admissible. This rule
> does not require the exclusion of any evidence otherwise discoverable merely
> because it is presented in the context of compromise negotiations. This rule also
> does not require exclusion when the evidence is offered for another purpose . . . .

By its terms, Rule 408 does not apply here. Security does not seek to introduce evidence relating to Trustmark's settlements with CNA and Syndicate 9027 for the purpose of proving Trustmark liable to those entities in connection with the claims that were settled through those agreements. Rather, Security seeks to introduce such evidence to demonstrate that Trustmark is liable to Security in this case under CUTPA and CUIPA. Because Security's evidence would not be introduced for the purpose prohibited by Rule 408, the rule is not pertinent here.[5]

But even if some of the information Security would elicit in discovery ultimately might be subject to the evidentiary prohibition of Rule 408, Rule 408 is not a bar to discovery of settlement negotiations. *See, e.g., Shirvani v. Capital Investing Corp., Inc.*, 112 F.R.D. 389, 392 (D. Conn. 1986). Rule 408 pertains to the admissibility of evidence, not the discovery of relevant information prior to trial. 2 Jack Weinstein and Margaret Berger, Evidence para. 408 at

---

[5] It should be noted that if Trustmark's position were correct with regard to the evidence of
which Security seeks discovery, that position also would preclude admission of the
settlement agreements themselves. Rule 408 applies to evidence tending to disprove liability
as well as evidence tending to prove it.

408-15-16 (1986) ("a party is not allowed to use Rule 408 as a screen for curtailing his adversary's right of discovery"); *Burda Media, Inc. v. Blumenberg*, 1999 WL 413469, at *3 (S.D.N.Y. June 21, 1999) ("While Rule 408 of the Federal Rules of Evidence limits the introduction at trial of evidence regarding settlement negotiations, this rule does not itself govern discovery.") (citation omitted); *Griffin v. Mashariki*, 1997 WL 756914, at *2 (S.D.N.Y. Dec. 8, 1997) ("Notably, Rule 408 does not limit disclosure of settlement materials during discovery.").

Federal Rule of Civil Procedure 26, not Rule 408, governs discovery and permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). As one court recently noted:

> First, Rule 26 requires only a showing of relevance in order to obtain discovery. Second, the Rule specifically permits discovery of inadmissible information, so long as that information may lead to the discovery of admissible evidence. Thus, admissibility is not a prerequisite to discoverability, and the scope of relevance under Rule 26 is broader than under the Rules of Evidence.

*In re Initial Pub. Offering Secs. Litig.*, 2004 WL 60290, at *4 (S.D.N.Y. Jan. 12, 2004). The discovery Security seeks easily meets this standard.

Thus, Security is entitled to discovery regarding the facts and circumstances of these settlements. *See United States v. Barrier Indus., Inc.*, 1997 WL 97842, at *2 (S.D.N.Y. March 5, 1997) (Government was entitled to discovery regarding defendant's divorce settlement agreement because Government claimed that defendant, as part of the divorce settlement, fraudulently transferred valuable farm property in order to frustrate the Government's ability to enforce a judgment).

9

**II.     Security is entitled to the production of certain documents identified in Trustmark's Second Supplemental Privilege Log.**

Trustmark's privilege log is insufficient to establish that a privilege applies to certain listed documents. First, with respect to document 318 (a communication between Trustmark and a former principal of WEB) and documents 263-267, 282, 289, 311, 314, 353, 366, and 367 (all communications between Trustmark and U.S. Life), Trustmark asserts that the common interest/joint defense doctrine applies. This doctrine is not, however, an independent privilege. Rather, it is a narrow exception to the general rule that the disclosure of privileged information to third parties waives the privilege. As such, the doctrine merely "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Sony Elec., Inc. v. Soundview Tech., Inc.*, 217 F.R.D. 104, 108 (D. Conn. 2002) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)).

More specifically, "[t]here are two elements of the common interest rule: (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought were designed to further that interest." *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003) (citations omitted). Moreover, "[t]he key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *Id.* (citations omitted). *See also Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003) (only those communications made in the course of an ongoing common litigation enterprise with the intent to further the enterprise are protected by the common interest privilege); *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 21920244, at *3 (N.D. Ill. Aug. 11, 2003) (for common interest doctrine to apply, the parties must demonstrate actual cooperation toward a common legal goal

and not merely common representation or common interests); *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Prop. LLC*, 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002) (sharing a desire to succeed in an action does not create a common interest).

Trustmark has made no showing that it shares an identical legal interest with any of the former WEB principals or United States Life. None of WEB's principals or United States Life is a party to this action, none has a stake in this litigation, and the legal interests of none will be affected by the outcome of the litigation. *See SR Int'l*, 2002 WL 1334821, at *4 (no common interest between leaseholder of World Trade Center complex and its insurance broker in insurance coverage litigation because broker was "not a party to th[e] litigation, and its legal position [would] be unaffected by the outcome of th[e] case"); *Cigna Ins. Co. v. Cooper Tires & Rubber, Inc.*, 2001 WL 640703, at *3 (N.D. Ohio May 24, 2001) (in insurance coverage litigation, insured and its insurance broker had no common interest because broker "was not a party to the suit, and stood neither to gain nor lose anything by its outcome"); *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) (no common interest between plaintiff and third party even though both would "benefit from a judgment in favor of the plaintiff" because third party was not a party to the litigation and there was no evidence of coordinated legal strategy between the two). Therefore, Trustmark cannot assert a common interest privilege over communications between Trustmark and WEB's principals or United States Life, and all documents shared between Trustmark and those persons or that entity must be produced.[6]

---

[6] Moreover, because the common interest privilege is merely an extension of the attorney-client privilege, even if the required interest exists, for the doctrine to apply, the communications at issue must be "made to facilitate rendition of legal advice or services to a

[Footnote continued on next page]

In addition, Trustmark appears to be "sheltering" certain non-privileged documents by including an in-house attorney as a recipient. For instance, document 298 is a memorandum from Michael Hawksworth, a non-lawyer, to Brinke Marcucilli, a non-lawyer, on which three individuals, including one in-house attorney, Ray Lester, are copied. The description of this document states that it is a "[m]emo forwarding information to counsel about certain business for the purpose of securing legal advice, and prepared at counsel's request in anticipation of litigation." Holton Decl., Ex. 6. But given the number of non-lawyers who received the document, and the fact that the single attorney recipient received only a courtesy copy, it is highly unlikely that every word in the memorandum constitutes a communication by client to lawyer for the purpose of securing legal advice or that every word is work product prepared at the behest of counsel in anticipation of litigation. The same holds true for documents 299, 300, 301, 307, 308, 309, and 316, all of which have the same non-attorney author, the same four non-attorney recipients and the same in-house attorney receiving a courtesy copy. These documents should be produced.[7]

---

[Footnote continued from previous page]

client." *Gulf Islands Leasing*, 215 F.R.D. at 470-71. Here, there is no evidence that the communications of non-attorney employees of Trustmark with WEB's former principals (*see* document 318) or with non-attorney employees of U.S. Life (*see* documents 267 and 282) were made so as to impart or receive legal advice. Because "[n]o legal advice [was] sought or given," these communications are not privileged. *Bank Brussels Lambert v. Chase Manhattan Bank*, 1996 WL 71507, at *5 (S.D.N.Y. Feb. 20, 1996). At the very least, Security respectfully requests that the Court conduct an *in camera* review of the documents to determine whether the communications were made to give or receive legal advice. *Gulf Islands*, 215 F.R.D. at 472 (*in camera* inspection revealed that the communications did not involve discussion of legal strategies and were not privileged).

[7] Although Security believes that no privilege applies to documents 298, 299, 300, 301, 307, 308, 309, and 316, Security respectfully requests that the Court, at the very least, conduct an *in camera* inspection of these documents should the Court be inclined to credit Trustmark's assertions of privilege. An *in camera* inspection, which is within the Court's discretion,

[Footnote continued on next page]

12

## CONCLUSION

For the foregoing reasons, the Court should (1) authorize Security to conduct discovery regarding Trustmark's settlement agreements with CNA and Syndicate 9027; and (2) order Trustmark to produce documents 263-267, 282, 289, 298, 299, 300, 301, 307, 308, 309, 311,

---

[Footnote continued from previous page]
could demonstrate that all or some of these documents are not privileged, in whole or in part. *See, e.g., Softview Computer Prod. Corp. v. Haworth, Inc.*, 2000 WL 351411, at *9 (S.D.N.Y. March 31, 2000) (*in camera* inspection revealed that certain documents were not protected by attorney-client privilege).

314, 316, 318, 353, 366 and 367 identified on its Second Supplemental Privilege Log.

Dated: New York, New York
       June 22, 2004

                                   GIBSON, DUNN & CRUTCHER LLP

                                   By: _____

                                   Mark B. Holton (ct 21727)
                                   Kathryn E. Nealon (ct 22754)
                                   200 Park Avenue
                                   New York, New York 10166
                                   Tel. (212) 351-4000
                                   Fax (212) 351-4035

                                   DEWEY BALLANTINE LLP
                                   David J. Grais (ct 23352)
                                   Kathryn C. Ellsworth (ct 24988)
                                   1301 Avenue of the Americas
                                   New York, New York 10019
                                   Tel: (212)259-8000

                                   ROBINSON & COLE LLP
                                   Frank F. Coulom, Jr. (ct 05230)
                                   Marion B. Manzo (ct 22068)
                                   280 Trumbull Street
                                   Hartford, Connecticut 06103
                                   Tel. (860) 275-8200
                                   Fax (860) 275-8299
                                   fcoulom@rc.com

                                   Attorneys for Plaintiff Security Insurance Company
                                   of Hartford

## CERTIFICATE OF CONFERENCE

Pursuant to Fed. R. Civ. P. 37(a)(2)(A) and D. Conn. L. Civ. R. 9(D)(2), I, Mark B.

Holton, counsel for Security Insurance Company of Hartford, conferred with counsel for

Trustmark Insurance Company regarding the discovery issues detailed in Security's motion. The

parties were unable to resolve those issues.  Accordingly, this matter is presented to the Court for

determination.


Dated: New York, New York
       June 22, 2004

                                            _____
                                                  Mark B. Holton

15

## **CERTIFICATION**

This is to certify that a true and correct copy of the foregoing memorandum of law was

served this 22nd day of June, 2004, by facsimile and express mail, postage prepaid, upon counsel

of record for Trustmark Insurance Company and TIG Insurance Company at the following

addresses:

Everett J. Cygal, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, Illinois 60606

Jeffrey Hellman, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Ave.
P.O. Box 3186
Bridgeport, CT 06605

David A. Slossberg, Esq.
Hurwitz & Sagarin, LLC
147 N. Broad Street
Milford, CT 06560

Harry P. Cohen, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, New York 10038

_____
Mark B. Holton