## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>         Plaintiff,<br><br>v.<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>         Defendant.<br>_____<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>         Third Party Plaintiff,<br><br>v.<br><br>TIG INSURANCE COMPANY,<br><br>         Third Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. 301CV2198(PCD)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## TRUSTMARK'S MEMORANDUM OF LAW IN OPPOSITION TO SECURITY'S MOTION TO COMPEL TRUSTMARK TO PRODUCE DOCUMENTS AND TO MAKE OTHER DISCOVERY

Counsel for
Trustmark Insurance Company

David M. Spector CT 21679
Paula J. Morency CT 24740
Everett J. Cygal CT 22765
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473

David R. Schaefer CT 04334
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, Connecticut 06511

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................... 1

ARGUMENT ......................................................................................... 1

I.    TRUSTMARK PROPERTY ASSERTS PRIVILEGES OVER .................. 1
      DOCUMENTS IDENTIFIED IN IS SECOND SUPPLEMENTAL
      PRIVILEDGE LOG

      A.    Communications Between Trustmark and Its ........................ 2
            Agents or Consultants are Protected Under the
            Common Interest Rule and As Work Product

            1.    Communications Between Trustmark ................... 2
                  and WEB

            2.    Communications Between Trustmark and ............ 4
                  Transamerica

      B.    Communications Between Trustmark and AAL .................... 5
            Are Protected by the Common Interest Rule, as
            Work Produce, and Under the Attorney-Client Privilege

            1.    Each Document is Independently Protected .......... 6
                  as Work Product and by the Attorney-Client
                  Privilege

            2.    Each Document is Protected Under the ................. 8
                  Common Interest Rule

      C.    Communications Among Management and ......................... 10
            Counsel are Protected Under the Attorney-
            Client Privilege and Work Product Protections

            1.    Documents Protected by the Attorney- ............... 10
                  Client Privilege

            2.    Documents Protected as Work Product ............... 11

II.   SECURITY IS NOT ENTITLED TO DISCOVERY INTO ..................... 12
      TRUSTMARK'S SETTLEMENT NEGOTIATONS WITH
      NON-PARTIES WHICH HAVE NO RELEVANCE TO THIS
      ACTION

CONCLUSION ...................................................................................... 17

i

## TABLE OF AUTHORITIES

### Cases

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, Nos. 93 Civ. 5298, 93
  Civ. 8270, 1996 WL 71507, *4 (S.D.N.Y. Feb. 20, 1996) ................................... 6, 10

*Bank Brussels Lambert v. Credit Lyonnais, S.A.*, 160 F.R.D. 437, 447
  (S.D.N.Y. 1995) ..................................................................................................... 10

*Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 221
  (N.D. Ill. 2001) ...................................................................................................... 10

*Burda Media, Inc. v. Blumenberg*, No. 97 Civ. 7167, 1999 WL 413469, *3
  (S.D.N.Y. June 21, 1999) ...................................................................................... 14

*Cadlerock Properties v. Commissioner*, 757 A.2d 1 (Conn. 2000), *cert. denied*,
  531 U.S. 1148 (2001) ............................................................................................ 12

*Gargano v. Metro-North*, No. 3:00CV1477, 2004 WL 1393530, *1
  (D. Conn. Mar. 31, 2004) ....................................................................................... 8

*Griffin v. Mashariki*, No. 96 Civ. 6400, 1997 WL 756914, *2 (S.D.N.Y.
  Dec. 8, 1997) .......................................................................................................... 14

*IBJ Whitehall Bank & Trust Co. v. Cory & Assoc., Inc.*, No. CIV. A. 97 C 5827,
  1999 WL 617842, *5-7 (N.D. Ill. Aug. 12, 1999) ................................................. 10

*In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219-220
  (S.D.N.Y. 2001) ................................................................................................. 5, 6, 9

*Matsushita Elecs. Corp. v. Loral Corp.*, 1995 U.S. Dist. LEXIS 12880, *11-12
  (S.D.N.Y. Sept. 6, 1995) ................................................................................. 14, 15

*Olson v. Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156-7, 727
  A.2d 14 (2000) ....................................................................................................... 12

*Peralta v. Cendant Corp.*, 190 F.R.D. 38, 39-40 (D. Conn. 1999) ............................. 12

*SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976),
  *appeal dismissed*, 534 F.2d 1031, 1032 (2d Cir. 1976) ......................................... 12

*Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) .......... 6

*Shirvani v. Capital Investing Corp., Inc.*,  112 F.R.D. 389, 392 (D. Conn. 1986).......... 14

*Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862
  (1st Cir. 1982) .................................................................................................... 9, 13

*SR Int'l Business Ins. Co. Ltd. v. World Trade Center Properties LLC*, No. 01
   Civ. 9291 (JSM), 2002 WL 1334821, *2 (S.D.N.Y. June 19, 2002) .......................... 5

*United States v. Adlman*, 134 F.3d 1194, 1197-99, 1202 (2d Cir. 1998) .............5, 8, 13

*United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) .........................4, 7, 10

*United States v. United Technologies Corp.*, 979 F. Supp. 108, 112
   (D. Conn. 1997) ...................................................................................................11

*Upjohn Co. v. United States*, 449 U.S. 383, 391-92 (1981) ......................................... 12

*Waller v. Financial Corp. of Am.*, 828 F.2d 579, 583 n. 7 (9th Cir. 1987)..................... 4

*Weinhold v. Witte Heavy Lift, Inc.*, No. 90 Civ. 2096, 1994 WL 132392, *2-3
   (S.D.N.Y. April 11, 1994) ................................................................................. 9, 13

## Other Authorities

Fed. R. Civ. P. 26(b)(1) .............................................................................................. 14

Fed. R. Civ. P. 26(b)(3) ................................................................................................ 8

Defendant Trustmark Insurance Company ("Trustmark"), by its attorneys, submits the following Memorandum of Law in Opposition to Security Insurance Company of Hartford's ("Security's") Motion to Compel Trustmark to Produce Documents and to Make Other Discovery.

## INTRODUCTION

Security seeks this Court to compel Trustmark to produce documents that are protected by the attorney-client privilege, the work product doctrine, and the common interest rule. In addition, Security moves this Court to enter an order permitting discovery into the negotiations and circumstances of two settlements that Trustmark has entered into with two non-parties, despite the fact that those negotiations are not relevant to any of the claims advanced by Security in this litigation nor to Trustmark's defenses. Security has presented no valid arguments in support of its Motion. Rather, Security ignores both relevant facts and case law, and even its own claims, in an effort to have the parties engage in discovery which will yield no relevant or admissible evidence and to have the Court order the wholesale production of privileged documents.

## ARGUMENT

## I.    TRUSTMARK PROPERLY ASSERTS PRIVILEGES OVER DOCUMENTS IDENTIFIED IN ITS SECOND SUPPLEMENTAL PRIVILEGE LOG

Security contends that three categories of documents which Trustmark has identified on its Privilege Log and withheld from production are not privileged:

A.    communications between Trustmark and WEB, its agent and subsequent litigation consultant (**Document 318**), and communications between Trustmark and Transamerica, its agent (**Document 282**);

B.     communications between Trustmark and U.S. Life, its partner in the WEB Facility (**Documents 263, 264, 266, 267, 289, 311, 314, 366, and 367**[1]); and

C.     communications among Trustmark's management and Associate General Counsel (**Documents 298, 299, 300, 301, 307, 308, 309, and 316**).

In its Motion, Security fails to discuss applicable case law (such as the work product doctrine) and omits certain critical facts (such as the WEB/Trustmark and All American/U.S. Life/Trustmark[2] relationships). Trustmark will address each of these documents in turn.

### A.    Communications Between Trustmark and Its Agents or Consultants Are Protected Under the Common Interest Rule and As Work Product

#### 1.    *Communications Between Trustmark and WEB*

Security challenges Trustmark's assertion of privilege **Document 318**, which is a communication between Trustmark and WEB, with respect to actual and potential claims involving Trustmark.[3] This document is protected by the "common interest"

---

[1] Security's Motion also lists Documents 265 and 353 from Trustmark's Second Supplemental Privilege Log. However, subsequent to filing this motion, the parties conferred further, and Security no longer seeks the production of either document. Attached as **Exhibit A** is a letter from Security's counsel to Trustmark's counsel reflecting that Security no longer seeks the production of Documents 265 and 353.

[2] Trustmark and American General Life Insurance Company f/k/a All American Life Insurance Company and its affiliated company United States Life Insurance Company in the City of New York (collectively "AAL") were partners in the WEB Facility.

[3] WEB was Trustmark's managing general agent for the placement of the reinsurance agreement at issue here. *See* **Exhibit B** (Underwriting/Administrative Management Agreement between Trustmark and WEB). When WEB's role as Trustmark's agent ceased, Trustmark retained each of the former WEB principals, including Mr. Robin Ekwall, as consultants for litigation purposes. *See* **Exhibit C** (personal service agreements between Trustmark and Mr. Ekwall).

2

privilege, as well as the work product doctrine, due to WEB's role as agent and consultant for Trustmark.[4]

**Document 318** is a communication from Michael Hawksworth, Trustmark's Vice President and Corporate Actuary, to Robin Ekwall. Although the date stamped on this facsimile is September 6, 2001, it actually dates back to December 2, 1999[5]. (Affidavit of Michael Hawksworth, attached as **Exhibit D**, at ¶ 7.) In this correspondence, Mr. Hawksworth communicates issues he discussed with Trustmark's Associate General Counsel, Mr. Ray Lester, in order for Mr. Ekwall to assist in the formation of Trustmark's legal strategy. (*Id.*) Trustmark previously produced this document in this litigation (Bates range TM/S 100527-29), with the privileged and irrelevant/non-responsive portions redacted.

The redacted portion of this communication is privileged by virtue of the attorney-client privilege and the common interest rule. The common interest rule is well-established within this Circuit. While the "attorney-client privilege generally forbids an attorney from disclosing confidential communications," *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (citation omitted), "the joint defense privilege, more properly identified as the 'common interest rule'" extends the attorney-client privilege. *Id.* (quoting *Waller v. Financial Corp. of Am.,* 828 F.2d 579, 583 n. 7 (9th Cir. 1987)). This privilege encompasses "communications between the corporation's attorney and outside agents or consultants to the corporation." *SR Int'l Business Ins. Co. Ltd. v. World Trade Center Properties LLC*, No. 01 Civ. 9291 (JSM), 2002 WL 1334821, *2

---

[4] Upon further review of this document and Trustmark's Second Supplemental Privilege Log, it is clear that Document 318 would also be protected by the work product doctrine, although work product doctrine was not initially identified on Trustmark's Privilege Log.

[5] The computer program used to create this facsimile automatically date stamps it the day it is printed. (**Exhibit D**, Hawksworth Aff. at ¶ 7.) Records, including the transmittal report, show that this facsimile was sent by Mr. Hawksworth on December 2, 1999. (*Id.*)

(S.D.N.Y. June 19, 2002). As such, it is clear that communications between a client (Trustmark) and its agent or consultant (Mr. Ekwall) are privileged where made for the purpose of obtaining legal advice. *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219-220 (S.D.N.Y. 2001).

The work product doctrine applies equally to the redacted portion of this communication. Work product protects a document where "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original). "Documents prepared in anticipation of litigation need not be created at the request of an attorney." *Copper Market Antitrust*, 200 F.R.D. at 221. The redacted content of this document reflects that it was prepared in anticipation of litigation. Indeed, Mr. Hawksworth worked with Mr. Lester, and created an inventory of issues potentially resulting in litigation. These issues were relayed to Mr. Ekwall, as Trustmark's consultant and agent. (**Exhibit D**, Hawksworth Aff. at ¶ 7.)

### 2. *Communications Between Trustmark and Transamerica*

Security also seeks the production of **Document 282**, which is a communication from Gene Wilkinson of Transamerica to Mr. Hawksworth and Phillip Chapman of U.S. Life, dated July 3, 2000. This communication is similarly protected by the common interest rule and the work product doctrine.

At this time, Transamerica had replaced WEB as Trustmark's agent for the purposes of monitoring and administering the business previously managed by WEB. (**Exhibit D**, Hawksworth Aff. at ¶ 5.) This communication discusses the legal position Trustmark and AAL (as partners in the WEB Facility) will take relative to certain business administered by Transamerica.

4

The common interest rule "recognizes that when multiple parties share a legal interest, there is a need to protect the flow of information among the parties and their counsel engaged in the common enterprise." *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, Nos. 93 Civ. 5298, 93 Civ. 8270, 1996 WL 71507, *4 (S.D.N.Y. Feb. 20, 1996). "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) (quotation and citation omitted). As the agent of Trustmark and its partner AAL, Transamerica was assisting Trustmark and AAL with respect to actual and potential claims involving the WEB Facility. Transamerica has a common legal interest with its principals, Trustmark and AAL, and communications made between them for the purpose of obtaining legal advice are privileged. *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219-220 (S.D.N.Y. 2001).

Similarly, **Document 282** is protected by the work product doctrine. As discussed previously, communications made in anticipation of litigation are generally immune from discovery. Transamerica's communication regarding legal strategy is therefore protected.

**B.    Communications Between Trustmark and AAL Are Protected By the Common Interest Rule, as Work Product, and under the Attorney-Client Privilege**

In the second category, Security challenges several communications between Trustmark and its partner in the WEB facility, AAL (**Exhibit D**, Hawksworth Aff. at ¶ 3). Security erroneously argues that these communications fail to meet the requirements for application of the common interest rule. These nine documents include **Documents 263, 264, 266, 267, 289, 311, 314, 366, and 367**. As noted on Trustmark's Privilege Log, each of these documents are protected by the attorney-

client privilege, the work product doctrine, and the common interest rule, due to the privileged nature of the communications and the relationship between AAL and Trustmark.

The weight of Security's argument rests on the fact that AAL is not a named party to this litigation. (Sec. Mem. at 10-11) [6]. Whether or not AAL is a party to this litigation, however, is not dispositive in determining whether the common interest rule applies. *See U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (common interest rule applies where there is a common interest regarding a legal matter). These communications relate to partnership discussions and fact gathering for pending and potential litigation or arbitration regarding the Trustmark/AAL partnership business. (**Exhibit D**, Hawksworth Aff. at ¶ 3.)    Security's invitation to unveil these privileged documents should be denied.

### 1.    *Each Document Is Independently Protected as Work Product and by the Attorney-Client Privilege*

As an initial matter, and as set forth in Trustmark's privilege log, each of these documents is independently protected as work product and by the attorney-client privilege, in addition to being protected by the common interest rule. (*See* Privilege Log.) Security has chosen not to challenge Trustmark's assertion of work product protection or attorney-client privilege, and has therefore waived any objection to the withholding of these documents on those bases. The documents at issue here (**Documents 263, 264, 266, 267, 289, 311, 314, 366, and 367**) remain protected under the work product doctrine and attorney-client privilege.

---

[6] All references to Security's Memorandum of Law filed in support of its Motion to Compel Trustmark To Produce Documents And To Make Other Discovery are cited herein as "Sec. Mem. at __."

Federal Rule of Civil Procedure 26(b)(3) "protects from discovery documents . . . which are prepared in anticipation of litigation by another party's representative." Fed. R. Civ. P. 26(b)(3); *Gargano v. Metro-North*, No. 3:00CV1477, 2004 WL 1393530, *1 (D. Conn. Mar. 31, 2004). Although the motivation for preparing a document could be dual (*e.g.* business and litigation), a document remains protected as long as a credible prospect of litigation existed. *United States v. Adlman*, 134 F.3d 1194, 1197-99, and 1202 (2d Cir. 1998).

Here, **Documents 266, 289, 314, 366 and 367** were authored by counsel[7] and specifically discuss potential and pending litigation risks related to the VQS and Lloyd's Syndicate, which would affect both Trustmark and AAL as partners. **Document 266** includes correspondence from the English law firm to counsel for AAL and Trustmark, discussing the representation of the Trustmark/AAL partnership in an English dispute. **Document 289** contains correspondence from the English law firm discussing arbitration strategy for a matter involving the Trustmark/AAL partnership. **Document 314** reports on three matters involved in litigation. **Documents 366 and 367** are correspondence from Trustmark's counsel to AAL's counsel regarding an agreement involving potential litigation. All of these documents fall squarely within the protections afforded by Rule 26(b)(3).

In addition, **Documents 263, 264, 267 and 311** discuss various Trustmark/AAL partnership issues involving pending or potential litigation, including the representation of AAL and Trustmark in future litigation relating to these issues. In fact, **Document 267** contains correspondence and a lengthy legal analysis under English law of various issues related to the Trustmark/AAL partnership. **Document**

---

[7] Jeanne Kohler, Tom Zurek, and David McDowell are all attorneys who represent AAL. Ray Lester is Trustmark's Associate General Counsel.

**311** outlines the position AAL should take in a dispute regarding certain WEB Facility business. **Documents 263 and 264** are status reports of various pending and potential litigation.

Finally, even though these four documents (**Documents 263, 264, 267 and 311**) were not authored by an attorney, that does not affect work product protection. *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) (citations omitted) (documents need not even be created at the request of an attorney). The motivation behind a document's preparation governs work product protection, rather than the person who prepared it. *Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862 (1st Cir. 1982); *Weinhold v. Witte Heavy Lift, Inc.*, No. 90 Civ. 2096, 1994 WL 132392, *2-3 (S.D.N.Y. April 11, 1994). Accordingly, these documents, which discuss pending and potential litigation, are entitled to protection as work product.

### 2. *Each Document is Protected Under the Common Interest Rule*

Although the documents remain protected as work product and by the attorney-client privilege, Trustmark will address Security's challenges to their additional protection under the common interest rule. The documents at issue involve: (1) exchanges between Trustmark's counsel and AAL's counsel (**Documents 289, 314, 366 and 367**); (2) communications among counsel and business people[8] (**Documents 263, 264, 266 and 311**); and (3) a communication between members of Trustmark's management (**Document 267**) relaying information provided by counsel and management of Trustmark's partner, for the purpose of facilitating their common

---

[8] Vince Vitkwosky is an attorney who also represents AAL, and Phillip Chapman is part of U.S. Life's senior management. Trustmark's senior management includes Michael Hawksworth and Leonard Koloms. David Spector is an attorney representing Trustmark.

8

interest. All of these communications fit squarely within the common interest rule and work product doctrine.

Because they are partners and have joint liability on various reinsurance treaties, Trustmark and AAL undeniably share a common legal interest in the outcome of litigation relating to those treaties. As noted above, the common interest rule "recognizes that when multiple parties share a legal interest, there is a need to protect the flow of information among the parties and their counsel engaged in the common enterprise." *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507 at *4. The doctrine applies even "where parties are represented by separate counsel but engage in a common legal enterprise." *Bank Brussels Lambert v. Credit Lyonnais, S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (citing *U.S. v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989). Moreover, the doctrine applies whether the communications are between attorneys for different parties, between one party and the other party's attorney, and between the parties. *IBJ Whitehall Bank & Trust Co. v. Cory & Assoc., Inc.*, No. CIV. A. 97 C 5827, 1999 WL 617842, *5-7 (N.D. Ill. Aug. 12, 1999).

Here, while AAL and Trustmark have retained separate counsel, the documents reflect communications among the parties and their counsel, aimed at coordinating the Trustmark/AAL litigation strategy related to the retrocessional coverage for this partnership business.[9] "In formulating this strategy, the members acted not as adversaries negotiating at arms length but as collaborators, legally committed to a cooperative venture and seeking to make that venture maximally profitable." *United*

---

[9] Exchanging information regarding settlement positions versus litigation interests falls within the scope of the common interest because settlement positions are "often part and parcel of evaluating and assessing litigation interests." *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 221 (N.D. Ill. 2001).

*States v. United Technologies Corp.*, 979 F. Supp. 108, 112 (D. Conn. 1997). Trustmark and AAL are doing exactly that.

### C. Communications Among Management and Counsel Are Protected Under the Attorney-Client Privilege and Work Product Protections

Finally, Security seeks the production of privileged communications among Trustmark's management and general counsel, which include **Documents 298, 299, 300, 301, 307, 308, 309, and 316**. These documents are protected by both the attorney-client privilege and work product rule.

#### 1.    *Documents Protected By The Attorney-Client Privilege*

**Documents 298, 299, 300 and 301** are copies of a single memorandum prepared in November 2000 by Michael Hawksworth, a Vice President and Corporate Actuary for Trustmark, and addressed to several other members of Trustmark's senior management, including Mr. Brinke Marcucilli (Senior Vice President at Trustmark) and Mr. Mark Schmidt (Vice President for Trustmark), as well Trustmark's Associate General Counsel, Mr. Ray Lester. **Documents 307, 308 and 309** are copies of a similar memorandum prepared in February 2001 by Mr. Hawksworth, directed again to the same members of Trustmark's senior management and Trustmark's Associate General Counsel. Likewise, **Document 316** was prepared by Mr. Hawksworth to the same members of Trustmark's senior management and Trustmark's Associate General Counsel. Each of these documents was prepared by Mr. Hawksworth at the request of counsel, and was prepared in order to asses the strengths and weaknesses of pending and threatened litigation. (**Exhibit D**, Hawksworth Aff. at ¶ 8.)

In its Motion, Security claims, without any basis, that Trustmark "appears to be 'sheltering'" certain documents by including an in-house attorney as a recipient, and asserts that this must be true because only "a single attorney" received the document. (Sec. Mem. at 12.) However, simply because the information may have been provided

from one employee to another employee (notably, both members of upper management) – and simultaneously relayed to counsel, as was the case here – does not vitiate the fact that the information was being provided *at the request of* counsel, *to* counsel, and for the express purpose of *securing legal advice*. A privileged communication does not lose its protection merely because a non-lawyer's name may be first listed in the "To:" line.

"[T]he attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act upon it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." *Olson v. Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156-7, 727 A.2d 14 (2000). Moreover, the privilege applies equally to communications between employees of a corporate entity and the attorney for that entity, *Cadlerock Properties v. Commissioner*, 757 A.2d 1 (Conn. 2000), *cert. denied,* 531 U.S. 1148 (2001), as well as the distribution within a corporation of legal advice received from its counsel. *Upjohn Co. v. United States,* 449 U.S. 383, 391-92 (1981); *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 39-40 (D. Conn. 1999). Management level employees must be permitted to relay or to discuss legal advice without losing the privileges afforded that advice. *See SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976), *appeal dismissed,* 534 F.2d 1031, 1032 (2d Cir. 1976) ("It would be an unnecessary restriction of the privilege to consider it lost when top management personnel discuss legal advice.")

## 2. *Documents Protected As Work Product*

Even if these documents were not otherwise protected by the attorney-client privilege, they are all equally entitled to protection as work product. The work product doctrine protects a document that was prepared or obtained for anticipated or

pending litigation. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). Indeed, documents prepared in anticipation of litigation are not required to have been prepared at the request of an attorney, nor must an attorney even have been included as a recipient. *See Copper Market Antitrust*, 200 F.R.D. at 221 (citation omitted). The purpose for which a document was prepared governs work product protection, not the persons who prepared or received it.[10]  *See Sprague v. Director*, 688 F.2d at 869-70; *Weinhold*, 1994 WL 132392 at *2-3.  Here, as noted on the Privilege Log, these documents were prepared in anticipation of litigation, and thus are clearly protected as work product.

## II.     SECURITY IS NOT ENTITLED TO DISCOVERY INTO TRUSTMARK'S SETTLEMENT NEGOTIATIONS WITH NON-PARTIES WHICH HAVE NO RELEVANCE TO THIS ACTION.

Trustmark produced to Security on July 15, 2003 the written settlement agreements that Trustmark had entered into with two non-parties, CNA Reinsurance Company Limited ("CNA") and Lloyd's Syndicate 9027 ("Syndicate 9027").  Contrary to Security's suggestion, Trustmark has not voluntarily "put these [settlement] agreements at issue" (*see* Sec. Mem. at 7) by producing them.  Trustmark was required by this Court's prior Order, entered at *Security's* request, to produce documents related to litigation or arbitration between Security and certain of its cedents.[11]

---

[10] Security speculates that it is "highly unlikely" that "every word" in these documents is work product, because of the "number of non-lawyers" (three members of management) and one attorney received the document. (Sec. Mem. at 12.)  Under Security's theory, a corporation would need to include one attorney for every member of management receiving a document to keep it protected even as work product.

[11] As this Court stated at the time, the details of certain limited disputes, arising from Trustmark's rescission of a reinsurance contract, "restricted in time to a period relatively contemporaneous with the allegations of the present case" may be relevant and discoverable. (Order of February 5, 2003, at 3.)

12

Security now seeks this Court to authorize discovery into the "negotiations surrounding [the] settlement agreements" that Trustmark entered into with CNA and Syndicate 9027. (Sec. Mem. at 1-2.)    Such discovery – into the negotiations leading to and reasons for Trustmark's settlements with two non-parties – is not relevant to the claims and defenses of this action, nor is it even reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

Moreover, the cases cited by Security do not advance its position that such discovery is routinely allowed. (Sec. Mem. at 8-9.) Security has culled from these cases the general proposition that Rule 408 is not a bar to discovery of settlements, but each of the cases relied upon by Security is inapposite for one crucial reason: the party seeking discovery in those cases established the relevance of the discovery sought, particularly because the discovery sought bore directly on the parties involved and the claims at issue.[12] On the other hand, courts have *denied* a party's request for discovery into the substance of settlement negotiations where the party has failed to establish the relevance of the requested discovery and has failed to establish any compelling need for the information.

In *Matsushita Elecs. Corp. v. Loral Corp.*, 1995 U.S. Dist. LEXIS 12880, *11-12 (S.D.N.Y. Sept. 6, 1995), the court denied the plaintiff's request for discovery into the substance of settlement discussions that the defendant Loral had with the plaintiff's customers in a prior lawsuit, finding that the plaintiff had failed to establish any

---

[12]    *See Shirvani v. Capital Investing Corp., Inc.*,    112 F.R.D. 389, 392 (D. Conn. 1986) (documents requested were directly related to shareholders and corporation involved in litigation, and "linked" to settlement negotiation of claims at issue); *Burda Media, Inc. v. Blumenberg*, No. 97 Civ. 7167, 1999 WL 413469, *3 (S.D.N.Y. June 21, 1999) (document requested was settlement agreement between plaintiff and defendants in the present action), *superceded on other grounds by* 2002 WL 31235717 (S.D.N.Y. 2002)[12]; *Griffin v. Mashariki*, No. 96 Civ. 6400, 1997 WL 756914, *2 (S.D.N.Y. Dec. 8, 1997) (document requested was a written statement executed by co-defendant in same action as part of her settlement with same plaintiff).

compelling interest in such discovery. There, the plaintiff had asserted a claim for tortious interference with business relations against defendant Loral, and sought the discovery for that issue. *Id.* at *2, 9. Just as Security does here, the plaintiff in *Matsushita* sought disclosure with the "fairly general assertion that those settlement talks may reflect that Loral has been acting in bad faith." *Id.* at *9. However, the Court recognized that settlement discussions are typically undertaken with the understanding that they will remain confidential, and that the disclosure of the substance of those talks would be likely to put a "serious crimp in future discussions of this sort, since candor would likely give way to extreme caution in making disclosures that are often vital to the success of such negotiations." *Id.* at *10-11. In light of those factors, the Court concluded that the plaintiff failed to articulate any compelling basis, and that "its conclusory assertion that such discovery might reveal bad-faith motivation on the part of [defendant]" was insufficient. *Id.* at *12.

The same holds true here. Security has offered this Court nothing more than conclusory assertions that it "needs" the discovery into the substance of the settlement discussions. Notwithstanding Security's suspicions, however, nothing relating to the substance of the negotiations of those settlement discussions is now relevant.

Indeed, Security's assertion that this discovery "is relevant to the issue of Trustmark's good faith in connection with Security's claims against Trustmark" under CUTPA/CUIPA, (Sec. Mem. at 2.), fails for at least four reasons.

First, under Federal Rule of Evidence 408, the discovery sought by Security will not yield any admissible evidence. Security does not dispute that evidence of settlement negotiations is inadmissible at trial under Federal Rule 408. Security's argument that Rule 408 does not apply because it "does not seek to introduce

14

evidence relating to Trustmark's settlements with CNA and Syndicate 9027 for the purpose of proving Trustmark liable to those entities in connection with the claims that were settled," but rather to show liability to Security for its CUTPA/CUIPA claims, is misleading and false. (Sec. Mem. at 8.)  In order to establish that Trustmark is liable to Security under CUTPA/CUIPA, *Security must first prove that Trustmark is liable to CNA and Syndicate 9027* for the claims presented in those disputes – that is, that Trustmark wrongfully refused to pay or wrongfully rescinded its contracts with CNA and Syndicate 9027 in the first instance.   Rule 408 prohibits this use.  Instances of Trustmark having rescinded a contract is not enough; Security must establish that the rescission was made in bad faith without a bona fide reason for doing so, and Trustmark's confidential settlement negotiations simply are not admissible for that purpose.[13]

Second, as Security readily admits, the "gravamen" of its CUTPA/CUIPA claims against Trustmark is that "Trustmark engaged in a general business practice of refusing in bad faith to pay claims . . . by rescinding or terminating reinsurance contracts without a bona fide reason to do so." (Sec. Mem. at 7.)    Thus, Security's CUTPA/CUIPA claims hinge on whether Trustmark acted in good faith by refusing to pay certain policy claims or in deciding to rescind certain reinsurance treaties.  What is not at issue is whether Trustmark acted in good faith in why or how it *settled* its *subsequent litigation* with its cedents.  Yet this is precisely the discovery that Security seeks.

Third, Security's claim that these settlements are somehow suspect and a "naked attempt" to undermine Security's CUTPA/CUIPA claims does not withstand

---

[13]    Security's argument is simply "while it may not be admissible, it is discoverable" does not relieve it of its burden to show that the discovery is relevant or will lead to the discovery of admissible evidence.  None of this evidence is admissible.

scrutiny. (Sec. Mem. at 2.) Security takes exception to certain provisions in the settlement agreements reciting the parties' good faith. (See Sec. Mem. at 3 & 4) Security's claim that the inclusion of such "good faith" language in these agreements is "unusual" and serves as evidence of Trustmark's collusion with CNA and Syndicate 9027 must be rejected. In the first place, the settlements themselves undermine Security's CUTPA/CUIPA claims because they clearly demonstrate that Trustmark's actions had merit and were not in bad faith. Security offers no explanation why the inclusion of the good faith provisions make the settlement any worse for it. Similarly, following Security's logic, a settlement agreement that expressly states that it was reached in good faith is, by default, negotiated in bad faith. Such is clearly not the case, and the "good faith" provisions cited by Security do not lend any support to Security's speculation that these settlements were improper.

Lastly, given the pendency of Security's CUTPA/CUIPA claims, who could really blame Trustmark for including language that highlighted the parties' good faith? Far from "unusual," in the face of its good faith being challenged, Trustmark would have been prudent in including such language in any settlement it reached. Indeed, Security can point to nothing illegal, unethical, or even suspect about the settlement agreements and the conduct of the settlement itself. Security's suggestion that two large and sophisticated entities – CNA and Lloyd's Syndicate — would conspire with Trustmark to frustrate Security's claims when settling claims of their own defies logic and is nothing more than rank speculation.

In sum, Security has failed to show why any discovery beyond the settlement agreements themselves is relevant, likely to lead to admissible evidence, or is otherwise warranted in any way.

16

## CONCLUSION

For all the foregoing reasons, Trustmark respectfully requests that Security's Motion be denied.

Date:  July 14, 2004

TRUSTMARK INSURANCE COMPANY

Counsel for
Trustmark Insurance Company

David M. Spector CT 21679
Paula J. Morency CT 24740
Everett J. Cygal CT 22765
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473

David R. Schaefer CT 04334
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, Connecticut 06511

17

## CERTIFICATE OF SERVICE

I, Amy Rubenstein, an attorney, certify that on July 14, 2004, I caused a true and correct copy of Trustmark's Memorandum of Law in Opposition to Security's Motion to Compel Trustmark to Produce Documents and to Make Other Discovery to be sent via facsimile and deposited in the Federal Express at the Sears Tower, 233 South Wacker Drive, Chicago, Illinois, on:

Mark B. Holton, Esq.
Kate Nealon, Esq.
Gibson Dunn & Crutcher
200 Park Avenue, Floor 48
New York, New York 10166

David Grais, Esq.
Kay Ellsworth, Esq.
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY 10019-6092

Frank F. Coulom, Jr., Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

Amy Rubenstein