# Exhibit 1

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SECURITY INSURANCE COMPANY OF :
HARTFORD, :
      Plaintiff, :

-vs- : Civ. No. 3:01cv2198 (PCD)
:
TRUSTMARK INSURANCE COMPANY, :
      Defendant. :

### RULINGS ON PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY DEFENDANT AND THIRD-PARTY DEFENDANT'S MOTIONS TO COMPEL THE PRODUCTION OF DOCUMENTS BY PLAINTIFF, DEFENDANT AND WEB MANAGEMENT LLC

Plaintiff moves to compel the production of documents by defendant. Third-Party Defendant TIG Insurance Company ("TIG") separately moves to compel the production of documents by plaintiff, defendant and Web Management LLC's ("Web"). For the reasons set forth herein, plaintiff's motion is **granted** and TIG's motions are **granted in part**.

I. BACKGROUND

In the present action, plaintiff seeks a declaration that defendant's cancellation of the Retrocession Agreement was impermissible ("Count 1"). Plaintiff further alleges breach of the Retrocession Agreement ("Count 2"), violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. §§ 42-110a *et seq.* predicated on a violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"), CONN. GEN. STAT. §§ 38a-815 *et seq.* ("Count 3"), and an alternative claim of unjust enrichment if defendant is found to have properly canceled the Retrocession Agreement ("Count 5").

In its third-party complaint, defendant alleges fraud and negligent misrepresentation by TIG "based upon the material misrepresentations and omissions made by [TIG] in its attempt to

transfer to its unsuspecting reinsurers tens of millions of dollars in losses stemming from its under-performing workers' compensation business." Defendant seeks damages equal to "all net losses [defendant] has paid or is required to pay to [plaintiff] on the TIG business retroceded to [defendant] by [plaintiff]."

II. STANDARD

"[T]he scope of discovery under FED. R. CIV. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome . . . [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2). An order compelling discovery is rendered after consideration of the arguments of the parties, and such order may be tailored to the circumstances of the case. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

III. PLAINTIFF'S MOTION TO COMPEL

Plaintiff moves to compel defendant's response to certain requests for production. Plaintiff summarizes the material sought as follows:

2

[Defendant's] failure to pay claims that it owes, may owe, is claimed to owe to, or has been billed or invoiced by, CNA Reinsurance Company, Ltd. Requ. 1F.

[Defendant's] failure to pay claims that it owes, may owe, is claimed to owe to, or has been billed or invoiced by, any other entity for which [defendant] has, may have, or previously provided reinsurance or retrocessional coverage at any time since January 1, 1997. Requ. 1G.

[Defendant's] commutation, attempted commutation, modification, attempted modification, recission, or attempted recission, since January 1, 1997 (or any such actions taken on its behalf) of any reinsurance or retrocession agreement with which [defendant] is, was, may be, or may have been a reinsurer or retrocessionaire. Requ. 1H.

All litigation relating to any of the matters described in items F, G, or H. Requ. I.

Plaintiff argues that it is entitled to discovery as documents produced would be relevant to determinations of bad faith and a pattern or practice under CUTPA. Defendant responds that the material sought is not relevant and further, that the arbitration of certain disputes in the United Kingdom precludes production due to confidentiality concerns applicable to the proceedings.

Defendant's objections on grounds of relevancy of the information sought are without merit. Although the presence of general disputes may not substantiate a pattern or practice under CUTPA, details of those disputes resticted in time to a period relatively contemporaneous with the allegations in the present case might substantiate such a pattern or practice and would thus be relevant and discoverable.[1] Whether such inquiry may ultimately require resolution of "collateral contract disputes" has no bearing on whether the documents sought are relevant.

---

[1] The scope of discovery under CUIPA/CUTPA is not, contrary to defendant's assertion, analogous to a claimed breach of an implied covenant of good faith and fair dealing in which discovery is sought as to prior cases involving bad faith on the part of the defendant, *see N. River Ins. v. Greater N.Y. Mut. Ins.*, 872 F. Supp. 1411, 1411-12 (E.D. Pa.1995). The former requires proof of a general business pattern whereas proof of prior violations would not in any way establish bad faith in the performance of a specific contract.

3

Nor will concerns as to the confidentiality of arbitration proceedings in the United Kingdom preclude production.

> [T]he requirement of privacy must in principle extend to documents which are created for the purpose of [arbitration] . . . [for example] a note or transcript of the evidence . . . witness statements . . . outline submissions . . . pleadings . . . documents which are disclosed as produced by one party to another by reason of the application to the arbitrator of the English rules of discovery of documents . . . [and] the award itself . . . .

*Hassneh Ins. v. Steuart J. Mew*, 2 Lloyd's Rep. 243, 247 (Q.B. 1992. Such confidentiality may be waived "with the consent of the other party, or pursuant to an order or leave of the Court." *Ali Shipping Corp. v. Shipyard Trogir*, 1 Lloyd's Rep. 643, 647 (Eng. C.A. 1998).

The above demonstrates that confidentiality concerns do not apply to the actual business transaction that serves as the substance of the arbitrable dispute. Although *Hassneh Insurance Co.* indicates the scope of confidence varies according to the terms of the arbitration agreement, defendant has not provided evidence that its arbitration agreement requires more expansive confidentiality than the documents generated for purposes of the arbitration proceedings. Therefore, correspondence generated prior to a demand for arbitration would not be characterized as confidential. In any event, confidentiality is not at issue when there is mutual consent to disclosure by the parties to arbitration.

Plaintiff indicates that it has received the consent of the opposing parties in two of the three English arbitration proceedings, specifically CNA and Lloyd's Consortium. If defendant's argument as to plaintiff's failure to get consent of both parties in fact implies that plaintiff's refusal is the only obstacle to production, such is not sufficient grounds for refusal to produce the documents requested. If the other party in the three arbitration proceedings consents, defendant is hereby ordered to give its consent to disclosure. Production is thus ordered as consistent with the scope of consent given by CNA and Lloyd's Consortium. As plaintiff has represented that

4

Syndicate 959, the party to the third arbitration at issue, has not yet been contacted, defendant shall produce documents at such time and in the manner prescribed by the scope of consent given by Syndicate 959.

Plaintiff additionally requires an order compelling production as to the following request for production:

> Any Evaluation that Trustmark, WEB, or any other person or entity performed concerning whether to bind Trustmark to provide reinsurance or retrocessional protection for any risks described in the Reinsurance Slip, the Reinsurance Agreement, the Retrocession Agreement, or the 1998 Slip, including but not limited to (I) any communication between any persons or entitities about information requested, provided, or obtained in connection with any such evaluation and (ii) any such information. 2d requ., Requ. A.

Defendant represents that it has produced all "non-privileged, responsive documents to this request." In light of plaintiff's reply brief, there appears to be no dispute as to defendant's compliance with this request thus the issue is moot.

Plaintiff further requested

> [a]ny and all communications between [defendant], or any person or entity acting on its behalf or for its benefit (including but not limited to WEB or Transamerica), on the one hand, and any past or present reinsurer or retrocessionaire of [defendant] (or any person or entity acting on behalf of or for the benefit of such reinsurer or retrocessionaire), or the United States Life Insurance Company (or any of its past or present parents, subsidiaries, or affiliates, or any person or entity acting on behalf of or for the benefit of any of them or on behalf of or for the benefit of United States Life), on the other hand concerning the business described in the Reinsurance Slip, the Reinsuarance Agreement, the Retrocession Agreement, or the 1998 Slip.

Plaintiff argues that defendant improperly limited its response to its communications with United States Life, indicated that it had produced documents "subject to . . . certain objections" and did not represent that it had produced documents pertaining to communications with "other reinsurers or retrocessionaires." In the absence of an identifiable objection to the request, defendant shall comply with the request in full to the extent it has not done so already.

5

Finally, plaintiff requests

[a]ny and all analyses or communications concerning the loss development or other status or feature of the business described in the Reinsurance Slip, the Reinsurance Agreement, the Retrocession Agreement, or the 1998 Slip or concerning the actions that [defendant] or any of its past or present reinsureds, retrocedents, reinsurers, or retrocessionaires, or that United States Life Insurance Company (or any of its past or present parents, subsidiaries, or affiliates) might take (including but not limited to recission) to limit their liability with respect to that business.

Plaintiff alleges that defendant has not represented that all relevant documents responsive to this request have been produced. It further indicates that the two reports of November 8, 1999 and February 4, 2002 analyzing the business to which WEB bound Trustmark were inappropriately redacted. Defendant argues that the redacted information pertains to business involving other reinsurance contracts and is therefore irrelevant. In light of the foregoing discussion rejecting this proposition, the redactions are inappropriate thus the documents will be provided in full. Defendant will further provide, to the extent it has not done so already, all documents responsive to the request.

## IV. THIRD PARTY DEFENDANT TIG'S MOTIONS TO COMPEL PRODUCTION BY PLAINTIFF, DEFENDANT AND WEB

The following requests for production were the subject of objections on the grounds of relevance or undue burden by plaintiff, defendant and WEB. The rulings on the motions to compel are indicated below the request and explained in detail below.

> All documents relating to WEB's underwriting and/or business practices or operations, including, but not limited to, underwriting or business guidelines, plans, policies, directives, methodologies, systems, projections, estimates or goals.
>
> RULING: Motion granted in part.
>
> All documents relating to any business offered, solicited, placed, underwritten, bound or administered by WEB on behalf of Trustmark [or Security] or any of WEB's other principals, including, but not limited to, treaty, contract, underwriting, correspondence, placement, accounting and other files.

RULING: Motion granted in part.

All documents relating to [plaintiff's] review, monitoring, auditing and/or supervision of WEB and/or its principals.

RULING: Motion granted.

All documents relating to reinsurance or retrocession protections requested, offered, placed, sought to be placed, considered or contemplated with respect to business which included business written by WEB, including, but not limited to any dispute, discussion or communication relating to the existence, validity, enforceability, scope or application of such reinsurance or retrocession protections.

RULING: Motion granted in part.

[D]ocuments relating to: (1) [plaintiff and defendant's] appointment of WEB as [their] agent; (2) documents relating to [plaintiff and defendant's] knowledge and/or oversight of how WEB transacted business on their behalf, including any attempts by them to monitor and/or control WEB's activities; and (3) documents relating to [defendant's] decision(s) to limit and/or terminate WEB's authority to act on its behalf.

RULING: Motion granted.

In response to the above requests, plaintiff, defendant and WEB produced documents limited to the agreement with TIG. There appears no dispute that WEB represented in more transactions than the agreements involved herein. TIG argues that information from these other agreements is relevant to the present case as such information tends to show whether TIG's alleged misrepresentations were material or nondisclosures were material to and relied on by WEB in binding plaintiff to the Reinsurance Agreement and defendant to the Retrocession Agreement.

There can be no dispute that evidence of a practice or custom can be used to prove conduct on a particular occasion. *See* FED. R. EVID. 406; 1 MCCORMICK ON EVIDENCE, § 198 (5th ed. 1999). Evidence of WEB's conduct as agent in other transactions in which it represented plaintiff and defendant may be relevant to define its object in entering into the specific

7

transaction. As the relevant claims involve fraud and negligent misrepresentation, such practice or custom evidence may be relevant to a determination of whether a misrepresentation was material in the particular instance. *See* RESTATEMENT (SECOND) OF TORTS § 525 (1977)[2] (discussing legal standard for fraudulent misrepresentation); *id.* § 538 (discussing materiality of misrepresentation); *id.* § 545 (discussing justifiable reliance of representation); *id.* § 549 (discussing order of damages). As such, some discovery into these other transactions is appropriate.

However, such does not justify *carte blanche* production of materials pertaining to separate agreements managed by WEB. The relevant allegation in the complaint pertaining to materiality provides:

> These misrepresentations and omissions were material to WEB as it decided first, whether to bid on this business on behalf of [defendant], and second, on what terms. For example, had WEB been informed that TIG would not be able to timely and accurately report losses, WEB ... would not have bound [defendant] to reinsure [plaintiff] for these risks. Moreover, had TIG not deliberately misled WEB about the pricing, underwriting and performance of the VSC Block, WEB would have either declined to bind [defendant] or would have done so on materially different terms.

In light of this allegation, production consistent with the requests is ordered limited to those agreements involving (1) reporting deficiencies of the nature but not necessarily the magnitude alleged in the third-party complaint, (2) overall profitability less than or equal to the TIG insurance at issue in this action, and (3) pricing or reserving problems in blocks of insurance reinsured. In lieu of production, the parties may provide TIG access to the agreements in which WEB served as agent for plaintiff or defendant.

---

2   The parties do not argue the relevant choice of law for resolution of the third-party complaint and such will not be addressed absent substantive argument as to relevant choice. However, the applicable law of fraud and misrepresentation will likely not differ significantly from the black letter concepts applied herein and thus does not preclude resolution of the issue presented on the third-party complaint.

TIG is further entitled to documents pertaining to plaintiff and defendant's relationship with WEB. The nature of the relationship, including that which existed prior to a final agreement, is relevant to the claims involved herein. Such discovery may also explain WEB's motivation, which need not be limited by the scope of its authority as defendant's agent as defined by the agreement appointing WEB agent.

In light of TIG's representation that defendant has not produced documents "relating to [defendant's] review, monitoring, auditing and/or supervision of WEB and/or its principals," notwithstanding defendant's promise to do so, defendant is hereby ordered to produce the same. Furthermore, notwithstanding defendant's representation that it produced documents pertaining to limitations placed on or termination of its relationship with WEB, defendant and WEB are hereby ordered to produce, if such have not yet been produced already, all documents, including internal, office correspondence, relating to defendant's limitation and/or termination of WEB's authority to act on defendant's behalf.

III. CONCLUSION

Plaintiff's motion to compel (Doc. No. 123) is **granted**. Third-Party Defendant TIG's motions to compel (Doc. Nos. 126, 131 and 132) are **granted in part** as consistent with the foregoing opinion.

SO ORDERED.

Dated at New Haven, Connecticut, February 5, 2003.

_____
Peter C. Dorsey
United States District Judge