# Exhibit 2

14-JUL-2003  15:14    FROM  REYNOLDSPORTERCHAMBERLAIN    TO  97320659B

# SETTLEMENT AND COMMUTATION AGREEMENT

THIS AGREEMENT is made the 14th day of July 2003 between (1) Peter Colin Matson on his own behalf and on behalf of all members of the Syndicates comprising Consortium No. 9027 at Lloyd's of London ("the Claimants"); and (2) Trustmark Insurance Company, an Illinois Corporation, ("the Respondent"), collectively 'the Parties'.

In consideration of the Parties agreeing to compromise in good faith their respective claims in the arbitration proceedings commenced by arbitration notice dated 26th March 2001 (the "Arbitration") and in consideration of the terms set out herein and the payments to be made hereunder, it is hereby agreed by the Claimants and the Respondent as follows:

1.   The following words and expressions used in this agreement shall have the following meanings:

'The 1998 Reinsurance' – The contract of Reinsurance between the Claimants and the Respondent bound on 29 December 1997 and evidenced by slip NA20294/98 and endorsements thereto.

'The 1999 Reinsurance' – The contract of Reinsurance between the Claimants and the Respondent bound on 29 December 1998 and evidenced by slip 997474 and endorsements thereto.

'The Reinsurances' – Together the 1998 Reinsurance and the 1999 Reinsurance.

'The Payment Date' – The 16th day of July 2003.

2.   This Agreement shall bind and shall inure to the benefit of the Parties to the Agreement, as well as their agents, successors, assigns, affiliates, subsidiaries, parents, holding companies, insurers, reinsurers, and retrocessionaires, and any

TM/R065523
Highly Confidential

6324910.02

1327344.01

1

14-JUL-2003  15:15  FROM  REYNOLDSPORTERCHAMBERLAIN  TO  97320659E  P.23/08

other party who takes, or claims to take, any interest (derived to any degree) from the Reinsurances.

3.    The 1998 Reinsurance is void ab initio.  On or before the Payment date:

    (a)    The Claimants will repay to the Respondent the sum of US$2,677,257.64 and the sum of GBP£94,802.42, being the sums paid to the Claimants by the Respondent in respect of claims pursuant to the 1998 Reinsurance.

    (b)    The Respondent will repay to the Claimants the sum of US$1,119,394.67 and the sum of GBP£120,067.76, being the sums paid to the Respondent by the Claimants in respect of premium pursuant to the 1998 Reinsurance net of brokerage.

4.    On or before the Payment Date, the Respondent will pay the sum of US$7,522,563.21 ("the Commutation Sum") to the Claimants in respect of their liabilities pursuant to the 1999 Reinsurance, against which the Claimants will give credit for the sum of GBP£13,178.40.

5.    The payments and credit referred to in clauses 3(a), 3(b) and 4 above shall be satisfied by the payment by the Respondent to the Claimants on or before the Payment Date of the net sums due of US$5,964,700.24 and GBP£12,086.94. Payment to be made by the Respondent by electronic transfer to the following account(s) of the Claimants:

US Dollar account:

| | |
|---|---|
| Account Name: | Blunt Bloodstock Livestock and Personal Accident Underwriting Services |
| Account No: | 39093485 |
| Sort Code: | 40 04 12 |
| Swift No: | MIDBGL22 |

6324910.02

3327344.01

TM/R065524
Highly Confidential

14-JUL-2003 15:15    FROM  REYNOLDSPORTERCHAMBERLAIN    TO  97320659E                P.04/08

Bank:               HSBC
Branch Address:   Leadenhall Street Branch
                  95 Gracechurch Street
                  London
                  EC3V 0DQ


Sterling account:

Account Name:    Blunt Underwriting Services Ltd
Account No:      1051180
Sort Code:       30 94 92
Swift Code:      LOYDGB2L


Bank:            Lloyds TSB Bank PLC
Branch Address:  113-116 Leadenhall Street
                 London
                 EC3A 4AX


6.   (a)   The Parties agree that the 1999 Reinsurance shall be terminated and irrevocably cancelled for any and all purposes as of the date of payment in full of the Commutation Sum specified in clause 4 above.

     (b)   The Respondent undertakes that pending the termination of the 1999 reinsurance it will not seek to avoid, rescind or otherwise challenge the validity of the 1999 Reinsurance upon any grounds whatsoever.

7.   Upon payment in full of the Commutation Sum specified in clause 4 above and in consideration thereof, the Claimants release and discharge the Respondent from any and all past, present and future obligations, claims, demands, liabilities and/or losses whatsoever, whether known or unknown, which the Claimants had, have, or hereinafter may have against the Respondent by reason of any matter whatsoever arising out of or related to the 1999 Reinsurance, it being the intention of the Parties that this Agreement will operate as a full and final settlement of the Respondent's past, current and/or

6324910.02                          3

3327344.01

TM/R065525
Highly Confidential

future liabilities to the Claimants arising out of or related to the 1999 Reinsurance.

8.  Subject to the release by the Claimants of the Respondent as provided for in clause 7 above, upon payment in full of the Commutation Sum specified in clause 4 above, the Respondent releases and discharges the Claimants from any and all past, present and future obligations, claims, demands, liabilities and/or losses whatsoever which the Respondent had, has, or hereinafter may have against the Claimants by reason of any matter whatsoever arising out of or related to the 1999 Reinsurance, it being the intention of the Parties that this Agreement will operate as a full and final settlement of the Claimants' past, current and/or future liabilities to the Respondent arising out of or related to the 1999 Reinsurance.

9.  If the Respondent fails to pay the net sum due from it (as set out at clause 5 above) by the Payment Date, the Respondent agrees to pay interest on any part of the net sum outstanding at the rate of 3% above the base rate for the time being of the Bank of England calculated on a day to day basis for the period beginning on the Payment Date and ending on the day upon which the Respondent's obligation to pay the net sum due under this Agreement is fully discharged.

10.  The Arbitration is permanently and irrevocably terminated and the Parties' respective claims in the Arbitration are forever hereby released and abandoned. Each Party will bear its own costs (superseding any costs order) of the Arbitration. All other costs of the Arbitration will be shared equally (50-50) by the Parties.

11.  Each Party hereby expressly warrants and represents to the other Party that:

(a)  They are in good standing in their respective places of domicile.

(b)  The execution of this Agreement is fully authorised by each of them.

TM/R065526
Highly Confidential

4

(c)    The person or persons executing this Agreement have the necessary and appropriate authority to do so on behalf of themselves and their respective successors and assigns.

(d)    There are no pending agreements, transactions, or negotiations to which any of them are a party that would render this Agreement or any part thereof void, voidable, or unenforceable.

(e)    No authorisation, consent or approval of any government entity is required to make this Agreement valid and binding upon them and their respective successors and assigns.

12.    Each party has had counsel of its choosing regarding the Arbitration and the matters in dispute concerning the Reinsurances and has done such investigation or exercised such diligence as it deemed necessary in its unilateral discretion, and each party hereby voluntarily, knowingly, and assuming entirely any risk associated with the adequacy of the information it has considered or the knowledge it has related to these matters enters this Agreement on this basis.

13.    This Agreement contains the entire agreement between the Parties as respects its subject matter, and neither Party is entering the Agreement on the basis of any oral promise, representation, information, or understanding that is not expressly stated herein.

14.    This Agreement shall be governed by and construed in accordance with the law of England and Wales.

15.    The Parties agree to submit to the exclusive jurisdiction of the High Court of England and Wales in respect of any dispute, controversy or claim arising out of or in connection with this Agreement or its breach, termination, formation or validity.

TM/R065527
Highly Confidential

6324910.02

3527344.01

14-JUL-2003  15:15  FROM  REYNOLDSPORTERCHAMBERLAIN  TO  97320659E   P.27/85

16.    This Agreement may be executed and delivered in counterparts, each of which, when so executed and delivered shall constitute an original and all such counterparts shall together constitute one and the same instrument.

17.    The Parties acknowledge that the provisions in this Agreement are confidential and each Party (for itself and for its agents) undertakes not to disclose without prior consent of the other, any of these provisions or any information disclosed in the course of this dispute to any person not a party save:

(a)    Insofar as the Claimants' legal representatives deem reasonably necessary to enable the Claimants to prove any claim the Claimants may have against Bradstocks Blunt & Crawley in respect of the 1998 Reinsurance and in respect of any claim the Claimants may have against Rattner MacKenzie in respect of the 1999 Reinsurance.

(b)    Insofar as the Respondent's legal representatives deem reasonably necessary to enable the Respondent to prove its defence to the action brought against it by Security Insurance Company of Hartford.

(c)    Insofar as may be necessary for the purposes of implementation of this agreement.

(d)    Insofar as they may be bound to do so under compulsion of law.

(e)    Where the Parties are required to do so by regulatory or government agencies.

(f)    Where reasonably necessary for the performance of their professional services, to the Parties' professional advisers including but not limited to their lawyers, accountants, auditors and actuaries.

(g)    To their parent and/or holding companies and/or associated companies.

(h)    To their reinsurers.

TM/R065528
Highly Confidential

14-JUL-2003  15:15    FROM  REYNOLDSPORTERCHAMBERLAIN    TO  973206598                P.06/06

18.  Subject to clause 2 above, this Agreement does not create any right enforceable by any person who is not a party to it under the Contracts (Rights of Third Parties) Act 1999 which Act shall not apply to this Agreement.

19.  In the event of any conflict between the provisions of this Agreement and the provisions of the Reinsurances the provisions of this Agreement shall prevail.

Dated this  14th  day of July 2003

SIGNED on behalf of           )   Reynolds Porter Chamberlain
the Claimants                 )
                              )

SIGNED on behalf of           )
the Respondent                )
                              )

TM/R065529
Highly Confidential

6324910.02                        7

3327344.01

TOTAL P.06