# Exhibit 3

06/03/03  TUE 15:42 FAX 847 615 3872        TRUSTMARK LAW                                  ☒ 0.

# Settlement and Release Agreement

THIS AGREEMENT, made by and between CNA Reinsurance Company Limited (now known as CX Reinsurance Company Limited), acting by its duly authorised agent, Continental Casualty Company ("CCC"), (hereinafter "CNA") and Trustmark Insurance Company (hereinafter "Trustmark") (together "the Parties"), is dated as of May 30, 2003, and is intended to bind and benefit all parent, subsidiary, and affiliate companies of the two parties as if each were a party to this document.

WHEREAS:

A.    CNA (initially acting by its agent, IGI Underwriting Agencies Limited ("IGI"), under a Management and Administration Agreement between CNA, IOA Global Limited ("IOA") and IGI) and Trustmark (initially acting by its agent, WEB Management LLC ("WEB")) are parties to a contract of reinsurance contained in and evidenced by a Slip SCB reference TNC 0932/98 dated January 25, 1999, (hereinafter the "Reinsurance Agreement") whereby Trustmark reinsured CNA.

B.    Disputes have arisen between the parties as to whether the Reinsurance Agreement has been validly avoided by Trustmark or enforced by CNA, and as to what amounts would be recoverable if the Reinsurance Agreement could be enforced.  While neither Party admits any allegations of the other, each stipulates that the claims and allegations of the other are reasonable and advanced in good faith and each recognizes that this agreement is in settlement of the reasonable claims and allegations made herein.

C.    CNA and Trustmark desire for good and valuable consideration to settle and to commute fully and finally:-

(a)    all past, present and future liabilities and obligations of both Parties arising under the Reinsurance Agreement; and

(b)    disputes under or relating to the Reinsurance Agreement and all causes of action that could have been brought on any oral or written agreement between CNA and Trustmark with respect to the Reinsurance Agreement or anything reinsured thereunder,

TM/R065517
Highly Confidential

as well as any matter that was or could have been included in the Parties' pending arbitration proceedings (Arbitration between Trustmark Insurance Company and CNA Reinsurance Company Limited) or in previous proceedings between these Parties in the English and U.S. courts (more specifically in the High Court Of Justice, Queen's Bench Division, Commercial Court, under reference 2001 Folio no. 313; CNA Re, U.K. v. Trustmark Insurance Company, No. 01 C 1652 in the District Court for the Northern District of Illinois, and Nos. 01 - 2423 and 01 –2053 in the United States Court of Appeals for the Seventh Circuit) ("collectively the "Litigation and Arbitration Proceedings between the Parties"), all without recovery of costs, attorneys fees, or any amounts whatsoever other than the single settlement payment described herein.

D.    Trustmark commenced arbitration proceedings by Notice dated March 13, 2001 ("the Arbitration Proceedings").

E.    The Parties desire that their settlement and release shall be enforceable upon the execution by each Party of a copy of this Agreement, even if only separate copies are executed, and that this Agreement shall be a full and final repose to all matters that were or could have been at issue.

IT IS AGREED AS FOLLOWS:

1.    This Agreement shall bind and benefit the Parties to the Agreement. as well as their agents, successors, assigns, affiliates, subsidiaries. parents, holding companies, insurers, reinsurers, and retrocessionaires and any other party who takes, or claims to take, any interest (derived to any degree) from the existence of the Slip and the reinsurance it represents (such parties to include but not to be limited to CNA Financial, CNA Re, CNA Re U.K., CCC, Continental Assurance Company, IGI, IOA, Trustmark Insurance Company, Trustmark Life Insurance Company, WEB, and all the agents, employees, and attorneys of any of the foregoing).

2.    The Parties agree that the Reinsurance Agreement is hereinafter to be treated as irrevocably cancelled by and as between the Parties.

TM/R065518
Highly Confidential

06/03/03   TUE 15:43 FAX 547 615 3672      TRUSTMARK LAW

3.    When both Parties have signed a copy (but not necessarily the same copy) of this Agreement, each Party shall be deemed to have irrevocably released and discharged the other Party of any and past present and future obligations arising under the Reinsurance Agreement, including, but not limited to, any liability for all of the Released Claims (as defined in Clause 4 below), in consideration of the execution of this Agreement, the exchange of the mutual release it provides, and the dismissal, abandonment, and forbearance of all pending and threatened proceedings.

4.    The "Released Claims" shall not include CNA's right to payment under this Agreement set out at Clause 5 below, but shall be all those claims that:

  (a)    arise in any way from the Reinsurance Agreement or the losses referred to in the Reinsurance Agreement, including any express or implied terms represented by the Reinsurance Agreement and any written or oral agreements allegedly related in any way to the same reinsurance; and/or

  (b)    were made in the Litigation and Arbitration Proceedings between the Parties; and/or

  (c)    arise in any way from the conduct of the Litigation and Arbitration Proceedings between the Parties; and/or

  (d)    refer in any way to premiums owed because of, or losses covered by, the Reinsurance Agreement; and/or

  (e)    attempt in any way to undermine, avoid, or reform this Agreement in any way, whether based on mistake, nondisclosure, or any other reason, whether unilateral or mutual.

5.    Within ten days of the execution of this Agreement, Trustmark shall pay to CNA by wire transfer (transfer instructions to be provided by CNA), $6,000,000, in US dollars.

6.    The Parties will within 10 days of execution of this Agreement have the Arbitration Proceedings discontinued and each Party will pay its

TM/R065519
Highly Confidential

06/03/03   TUE 15:43 FAX 847 615 3872    TRUSTMARK LAW    @02

own costs thereof. Each Party will pay the costs of its appointed arbitrator and the costs of the Chairman, Kenneth Rokison QC, will be borne equally by the Parties.

7.   Each Party has had counsel of its choosing regarding the Litigation and Arbitration Proceedings between the Parties and the Released Claims and has done such investigation or exercised such diligence as it deems necessary in its unilateral discretion, hereby voluntarily, knowingly, and assuming entirely any risk associated with the adequacy of the information it has considered or the knowledge it has related to the Released Claims, to this Agreement, and to the Litigation and Arbitration Proceedings between the Parties. Each Party agrees to waive, release, not sue upon, and otherwise entirely forego any present or future rights it may have regarding nondisclosure, mistake, damages, fees (including attorneys fees of any kind related to any of the Litigation and Arbitration Proceedings between the Parties) costs, and unknown claims or causes that fall in any way or to any degree within the description of the Released Claims (except that no rights or duties governed by any other slip or treaty between any of the bound Parties are intended to be compromised or released by this agreement). This is the entire agreement between the parties, and neither is entering the Agreement on the basis of any oral promise, representation, information, or understanding that is not stated expressly herein.

8.   Subject to the same confidentiality provisions governing this Agreement, and upon reasonable requests at reasonable times, CNA shall make available to Trustmark data related to those losses that would have required future payments under the commuted Reinsurance Agreement, in the absence of the commutation.

9.   This Agreement shall be confidential to the Parties, save for:

   (i)    disclosure as the result of any court order, legal obligation, regulation or accounting procedure or lawful discovery procedure; and/or

   (ii)   disclosure to legal representatives, auditors, shareholders, governmental authorities, regulators and retrocessionaires; and/or

TM/R065520
Highly Confidential

PCL2/1102207/1

08/03/03  TUE 15:44 FAX 647 615 3872          TRUSTMARK LAW                                    ☎01

(iii)  disclosure to any other person pursuant to an express written consent of the other Party that refers specifically to this Agreement by name, CNA consenting only to the disclosure of this Agreement in Trustmark's pending Connecticut proceedings with Security Insurance Company of Connecticut, et. al, and only subject to the confidentiality order that is now in place for those proceedings (under which the Parties hereby agree that this Agreement and any details related to it shall be designated and treated as "Highly Confidential" within the meaning of that order) and which limits use of this Agreement to that proceeding and preserves its confidentiality against any other use or disclosure, all according to the terms set forth in that order.

10.  This Agreement is not intended to nor shall it create any rights, entitlements, claims or benefits enforceable by any person that is not a party to it. Accordingly, no person shall derive any benefit or have any right, entitlement of claim in relation to this Agreement by virtue of the Contracts (Rights of Third Parties) Act 1999.

11.  The Parties warrant that they have full authority to enter into this Agreement.

12.  This Agreement constitutes the entire Agreement between the Parties and supersedes all and any previous such Agreements.

13.  This Agreement shall be governed by English law. The Parties submit to the exclusive jurisdiction of the English High Court to enforce this agreement.

For CNA_____

For Trustmark_____

TM/R065521
Highly Confidential

(iii)   disclosure to any other person pursuant to an express written consent of the other Party that refers specifically to this Agreement by name, CNA consenting only to the disclosure of this Agreement in Trustmark's pending Connecticut proceedings with Security Insurance Company of Connecticut, et. al, and only subject to the confidentiality order that is now in place for those proceedings (under which the Parties hereby agree that this Agreement and any details related to it shall be designated and treated as "Highly Confidential" within the meaning of that order) and which limits use of this Agreement to that proceeding and preserves its confidentiality against any other use or disclosure, all according to the terms set forth in that order.

10.   This Agreement is not intended to nor shall it create any rights, entitlements, claims or benefits enforceable by any person that is not a party to it. Accordingly, no person shall derive any benefit or have any right, entitlement of claim in relation to this Agreement by virtue of the Contracts (Rights of Third Parties) Act 1999.

11.   The Parties warrant that they have full authority to enter into this Agreement.

12.   This Agreement constitutes the entire Agreement between the Parties and supersedes all and any previous such Agreements.

13.   This Agreement shall be governed by English law. The Parties submit to the exclusive jurisdiction of the English High Court to enforce this agreement.

For CNA _____

For Trustmark _____

TM/R065522
Highly Confidential