# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

SECURITY INSURANCE COMPANY OF :
      HARTFORD,             :
          Plaintiff,       :     Civ. No. 3:01cv2198 (PCD)
                       :
      -vs-               :
                       :
TRUSTMARK INSURANCE COMPANY, :
      Defendant.       :

## RULINGS ON PRIOR PENDING DISCOVERY MOTIONS

Prior to the Second Circuit's stay of this case, there were several pending discovery motions. This ruling resolves those motions, namely, the disposition of documents forwarded by Defendant for *in camera* review pursuant to this Court's June 10, 2003 order, Defendant's motion for *in camera* review of the memorandum summarizing Kevin Ryan's investigative findings, TIG's motion to compel Defendant's production of documents in accordance with this Court's February 5, 2003 and March 14, 2003 orders, TIG's motion to compel Defendant's production of the WEB hard drive, and TIG's motion for a protective order.

I. *IN CAMERA* REVIEW OF DOCUMENTS PURSUANT TO JUNE 10, 2003 ORDER

Document numbers 1 and 78 on Defendant's privilege index and three documents identified as potentially responsive to Request Number 2 of Plaintiff's Fifth Request for the Production of Documents were submitted in unredacted form for *in camera* review. Having reviewed the substance of the documents, the information redacted from the documents is not found to be relevant to the claims or defenses involved herein, and as such Defendant's redactions are appropriate. No further production is required as to the documents submitted for review.

II. DEFENDANT'S MOTION FOR *IN CAMERA* REVIEW OF THE MEMORANDUM
SUMMARIZING KEVIN RYAN'S INVESTIGATIVE FINDINGS

This Court's June 10, 2003 ruling also addressed the investigative report of Mr. Kevin

Ryan, who was hired by Plaintiff to provide expert services but who was not then characterized

as an expert witness.  Plaintiff was ordered to produce a copy of the report "redacted to the extent

it addressed matters outside the findings and opinions of Ryan addressed in the deposition."  The

document was produced with approximately nine of its fourteen pages redacted.

Although Plaintiff argues that the redactions are consistent with the order, it shall submit

the report for *in camera* review not later than August 20, 2004.

III. TIG'S MOTION TO COMPEL DEFENDANT'S PRODUCTION OF DOCUMENTS IN
ACCORDANCE WITH THIS COURT'S FEBRUARY 5, 2003 AND MARCH 14, 2003
ORDERS

TIG argues that Defendant has failed to comply adequately with this Court's February 5,

2003 and March 14, 2003 rulings on its motions to compel production.  Defendant responds that

it has fully complied with the production requirements set forth in the orders.

"[T]he scope of discovery under FED. R. CIV. P. 26(b) is very broad, 'encompass[ing] any

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue

that is or may be in the case.'"  Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964

F.2d 106, 114 (2d Cir. 1992) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98

S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)).  "Parties may obtain discovery regarding any matter,

not privileged, that is relevant to the claim or defense of any party . . . .  Relevant information

need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence."  FED. R. CIV. P. 26(b)(1).  The scope of discovery, however, is

not without bounds, and limitations are imposed where the discovery is "unreasonably

2

cumulative or duplicative," overly "burdensome . . . [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2).   An order compelling discovery is rendered after consideration of the arguments of the parties, and such order may be tailored to the circumstances of the case.  Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir. 1996).

TIG first argues that Defendant has not produced WEB underwriting memoranda with respect to various risks it proposed writing.  Its basis for concluding that Defendant and WEB "have produced only a relatively small number of WEB underwriting memoranda (a half dozen or so) . . . [that such] cannot be the complete universe WEB underwriting memoranda," is Defendant's office memorandum of September 8, 1997, which indicates that "WEB has proposed . . . approximately twenty reinsurance opportunities in the past 8 months" and "WEB would have submitted additional underwriting memoranda to [Defendant] thereafter."  Defendant responds that it has produced all such documents.  As Defendant is presently under an order to produce these documents, and there is no indication that it is withholding documents in violation of the orders, it would serve little purpose to repeat the prior order based on speculation that there should be a more substantial response than that received.

TIG also argues that Defendant should be ordered to produce documents relating to meetings between WEB, Defendant and U.S. Life Insurance Company ("U.S. Life") in which WEB allegedly provided status reports as to its activities.  Defendant produced two redacted documents pertaining to such meetings and "believes that has produced all of WEB's reports to [Defendant] relating to its 'periodic updates' or facilities meetings,' and any redactions made were consistent with the scope of" the earlier orders to produce such documents.

As Defendant does not object to the production sought, it shall verify that all such documents have been produced.  To the extent the parties dispute the sufficiency of redactions, the documents shall be submitted for *in camera* review.

TIG further argues that Defendant has failed to provide it with documents pertaining to the arbitration between U.S. Life and WEB, arguing that such falls within the order that "TIG is . . . entitled to documents pertaining to [Defendant's] relationship with WEB including [d]ocuments . . . relating to [Defendant's] limitation and/or termination of WEB's authority to act on [its] behalf."  TIG concedes that Defendant was not a participant in the arbitration but did unsuccessfully petition for leave to participate and settled half of the claims resulting from the arbitration award.[1]  Defendant responds that it has never formally been asked to produce the documents sought, and TIG is improperly bootstrapping the production request with earlier, unrelated discovery orders.

The arbitration allegedly involved claims by U.S. Life that WEB exceeded its underwriting authority and failed to secure proper retrocessional protection, and WEB's counterclaim that it was due for fees and commissions.  It is not apparent how this request bears relevancy to Defendant's relationship with WEB as Defendant was not ultimately permitted to participate in the proceedings and was involved only to the extent that it was obligated to cover claims by virtue of the award.  The fact that U.S. Life and Defendant have "virtually identical" agreements with WEB bear relevancy to Defendant's relationship with WEB as relevant to conduct in a separate agreement.  Furthermore, as Defendant is not a party to the arbitration, it is not clear why Defendant would have details of the arbitration nor why Defendant is the

---

[1] It is presumed that this percentage is a consequence of a sharing arrangement Defendant had with U.S. Life for coverage of claims, not as an agreement specific to the arbitration award.

appropriate party to whom such a request should be addressed. The request thus does not fall within the scope of prior discovery rulings.

TIG also seeks an order compelling production of a number of items requested during the February 6, 2003 deposition of Robin Ekwall of the hard drive for computers used by Robin Ekwall,[2] the development factors database WEB created, all documents regarding Wakely's and/or Mark Cranshaw's work on behalf of WEB, documents relating to Defendant's and/or U.S. Life's review and/or approval of WEB's retrocessional structure, WEB's original underwriting files for the 1998 and/or 1999 treaties and the profitability analysis Mr. Wright performed on the TIG business. Defendant responded that Mr. Ekwall did not know what happened to the specific items requested and that another representative questioned, Chuck Bastan, did not know of or possess the requested material.

TIG argues the responses are inadequate because, pursuant to its requests, Defendant was obligated to provide "author date and subject matter, content of document, date of disposal, manner of disposal, reason for disposal, person authorizing disposal, and person disposing of document." Defendant responds that the items requested are not in its custody or control and, to the extent they are in its custody and control, they have been produced. This Court will not order Defendant to produce documents over which it claims no custody or control or require it to obtain the production from WEB, a former agent. Defendant shall, consistent with the production requests, provide the required information to the extent consistent with its claimed lack of custody or control over the material sought.

---

[2]    The dispute as to the hard drive is addressed in Part IV.

The only production requests arising in the deposition that would not be addressed by the foregoing involves documents relating to the Republic Western-Bridgefield agreement. Defendant's response is that it inadvertently failed to produce all documents pertaining to the agreement. As there is no dispute as to Defendant's obligation to produce the documents, it shall, within ten (10) days, produce the same to the extent it has not done so already.

IV. TIG'S MOTION TO COMPEL DEFENDANT'S PRODUCTION OF WEB HARD DRIVE

TIG moves to compel production of the hard drive to WEB's computer used by Robin Ekwall. Defendant responds that it has been producing documents from the 66,000 printed pages from the hard drive.

TIG will not be given unfettered access to the hard drive. If such were possible, it would obviate the need to impose any discovery limitations as a hard drive may very well contain documents well outside even the most generous relevancy standards. To the extent the hard drive contains relevant documents, they will be provided in printed form. This Court is not unsympathetic to the TIG's argument that the file properties of files contained on the hard drive may contain useful information. As such, all relevant files, whether deleted files still stored on the hard drive or active files, shall be placed in a single directory. The properties of the files in this directory shall be displayed in detail, and the printed form of such display shall be produced.

V. TIG'S MOTION FOR A PROTECTIVE ORDER

TIG argues that it is entitled to a protective order precluding Defendant's discovery of information pertaining to categories of insurance other than the workers' compensation specifically involved herein to the extent such is included within the Fairfax Holdings, Ltd. ("Fairfax") due diligence conducted prior to its acquisition of TIG. Defendant responds that the

issue was addressed in this Court's April 17, 2003 ruling on TIG's motion for a protective order, and as such TIG may not simply revisit the issue.

"Where . . . the [discovery is] relevant, the burden is upon the party seeking . . . a protective order to show good cause." <u>Penthouse Int'l, Ltd. v. Playboy Enters.</u>, 663 F.2d 371, 391 (2d Cir. 1981) (citation omitted); <u>see also</u> Fed. R. Civ. P. 26(c); <u>Dove v. Atl. Capital Corp.</u>, 963 F.2d 15, 19 (2d Cir. 1992) (burden is on moving party to show good cause). Fed. R. Civ. P. 26(c), however, "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." <u>Bridge C.A.T. Scan Assocs. v. Technicare Corp.</u>, 710 F.2d 940, 944-45 (2d Cir. 1983).

In the prior ruling, this Court concluded that "[a]n overly broad request may justify issuance of a protective order precluding irrelevant discovery. TIG has not, however, established that the discovery sought is irrelevant to the present claims and defenses. The due diligence performed by Fairfax when it acquired TIG potentially would uncover deficiencies in TIG's business practices and bear relevance to Defendant's claims." The discovery is relevant because Defendant alleged that "TIG represented . . . that it could timely and accurately report losses monthly by way of bordereau. This representation was false . . . because TIG's upper management was advised prior to entering into the Security/TIG Agreement that it did not have the capability to perform these obligations."

The relevance claim is no less true today than it was in April, and TIG's motion for a protective order, reflecting only that its automobile insurance business would be irrelevant to a claim involving its workers' compensation business, is without merit. However, as a review of the third-party complaint reveals that timely and accurate reporting is the only apparently relevant

basis for the discovery, Defendant shall limit its requests to due diligence material that reflects TIG's ability to report losses in a timely manner or in the alternative any failures to provide loss reporting in a timely manner.

VI. CONCLUSION

Defendant's motion for *in camera* review of the memorandum summarizing Kevin Ryan's investigative findings [Doc. No. 272] is **granted**.  TIG's motion to compel Defendant's production of documents in accordance with this Court's February 5, 2003 and March 14, 2003 orders [Doc. No. 256] is **granted in part**.  TIG's motion to compel Defendant's production of WEB hard drive [Doc. No. 243] is **granted in part**.  TIG's motion for a protective order [Doc. No. 253] is **granted in part**.

SO ORDERED.

Dated at New Haven, Connecticut, August  4 , 2004.

_____
/s/

Peter C. Dorsey, U.S. District Judge
United States District Court