UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>Plaintiff,<br><br>v.<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Defendant.<br>_____<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Third Party Plaintiff,<br><br>v.<br><br>TIG INSURANCE COMPANY,<br><br>Third Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil No. 3:01CV2198(PCD)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   AUGUST 20, 2004 |

**MOTION FOR CLARIFICATION
OF ORDER GRANTING IN PART
TIG'S MOTION FOR PROTECTIVE ORDER**

Defendant Trustmark Insurance Company ("Trustmark") respectfully submits this motion for clarification of this Court's August 4, 2004 Order (doc. #347) granting in part TIG Insurance Company's ("TIG") Motion for Protective Order.[1] Trustmark requests the Court clarify certain statements in its order, so that pending Canadian proceedings to compel deposition responses and documents can move forward with a full understanding of the Court's ruling. In particular, Trustmark asks that the Court clarify that its order does not alter the obligation of TIG's parent company, Fairfax Financial Holdings, Ltd. ("Fairfax"), to produce, among the documents

---

[1] While the Court's order is dated August 4, it was not docketed (and Trustmark did not receive notice of it) until August 12, 2004.

881054.DOC

regarding its due diligence and resulting purchase of TIG, not only the documents related to TIG's workers' compensation business, but also (i) all documents that reflect the bearing of that business on the overall value of TIG, with and without the workers' compensation business; and (ii) all documents regarding TIG's inability or ability to report losses in a timely manner.  In support of its motion, Trustmark states as follows:

1. Early in 2003, Trustmark sought to have this Court issue letters rogatory to Fairfax in order to obtain discovery of the due diligence performed by Fairfax when it acquired TIG.  Trustmark requested this discovery in order to ascertain whether TIG had disclosed or made available to Fairfax certain facts that TIG misrepresented or failed to disclose to Trustmark.  (The events giving rise to Trustmark's claims occurred during the same period as Fairfax's due diligence and purchase of TIG.)  Trustmark, therefore, sought information regarding TIG's workers' compensation business, the importance of that business to TIG's overall value, as well as the limitations on TIG's reporting capabilities.

2. TIG opposed Trustmark's discovery of Fairfax and moved for a protective order.

3. On April 17, 2003, the Court denied TIG's motion for protective order, noting in part that "[t]he due diligence performed by Fairfax when it acquired TIG would uncover deficiencies in TIG's business practices and bear relevance to defendant's claims."  Order of April 17, 2003, at 3.

4. On May 30, 2003, Fairfax produced a handful of documents that related only "to its due diligence for the purchase of TIG that also related to TIG's workers compensation business.  Fairfax did not produce documents relating to TIG's non-workers compensation business (e.g. auto liability [insurance business]).  Fairfax also redacted from the documents it produced information that was unrelated to TIG's workers compensation business." (TIG's June 16, 2003 Mem. In Supp. at 3.).  The failures in that production are currently the subject of

depositions and other proceedings in the Ontario courts, including a motion against Fairfax for contempt of the Ontario Court's order requiring Fairfax to comply with the letters rogatory.[2]

5. On June 16, 2003, TIG again moved for a protective order asking this Court to limit Trustmark's discovery of Fairfax to information related to the claims presented and/or defenses to Trustmark's Third Party complaint. TIG sought to limit Trustmark's discovery of Fairfax to all documents regarding its due diligence for the purchase of TIG that also related to TIG's workers' compensation business.

6. On August 4, 2004, the Court denied TIG's motion in part, stating:

> The relevance claim is no less true today than it was in April and TIG's motion for a protective order, reflecting only that its automobile insurance business would be irrelevant to a claim involving its workers' compensation business is without merit.

(Order of August 4, 2004, at 7-8.) The Court, however, went on to limit discovery of TIG's non-workers' compensation business:

> However, as a review of the third-party complaint reveals that timely and accurate reporting is the only apparently relevant basis for discovery, Defendant shall limit its requests to due diligence material that reflects TIG's ability to report losses in a timely manner or in the alternative any failures to provide loss reporting in a timely manner.

(Id.)

7. Trustmark's Third Party Complaint complied with notice pleading requirements, but was not referenced by either party in briefing TIG's motion. The facts in issue are broader than simply the loss reporting aspects referenced in the Court's opinion. The Third Party Complaint, the expert reports exchanged to date, the deposition questions asked and answered

---

[2] As Trustmark has advised the Canadian court, TIG's counsel in New York took custody of the Fairfax documents, redacted dozens of pages of text, withheld other materials, and failed to secure documents maintained on computers and in the office of Mr. Sam Chan, causing what appears to be a widespread spoliation of proof. Those activities are the subject of Trustmark's pending motion for contempt in Canada.

and the documents sought in discovery, all deal with TIG's misrepresentations and failure to disclose key information regarding TIG's workers' compensation portfolio (including Virginia Surety and other workers' compensation blocks), and the effect those misrepresentations and nondisclosures had on TIG's overall value, as well as the reporting issues.  Discovery of those issues is essential to put in context TIG's nondisclosures and misrepresentations, and to illustrate what TIG as a company stood to gain by dressing up this book of business for reinsurance.  Such discovery is clearly within the scope of Rule 26 and TIG has asserted no grounds to limit it.

8. As this Court has noted, "[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, encompassing any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (Order of August 4, 2004 at 2, (quoting Maresco v. Evans Chemetics Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992) (internal quotations omitted)).)  Limitations are imposed where the discovery is cumulative or duplicative, overly burdensome or expensive, or the burden or expense of the proposed discovery outweighs its likely benefit.  (Id.)  In its motion, TIG asserted none of these grounds for limiting Trustmark's discovery.

9. Trustmark understands from review of this Court's order that it does not excuse TIG's parent from production of all due diligence documents relating to TIG's workers' compensation business.  With respect to documents that do not expressly involve TIG's workers' compensation business, however, the Court's order may inadvertently be read to excuse Fairfax from production of the documents that reveal overall values of the business and its divisions, which would need to be assessed both with and without the workers' compensation business.

10. Discovery of Fairfax pursuant to the letters rogatory is ongoing in the Ontario court and is subject to a number of pending disputes and proceedings, which may be affected by the Court's August 4, 2004 order.

**WHEREFORE**, in order to avoid any confusion in the Canadian proceedings, Trustmark respectfully requests the Court clarify that TIG's parent company Fairfax must produce, among the documents regarding the Fairfax due diligence and eventual purchase of TIG:

(i) all documents related to TIG's workers' compensation business;

(ii) all documents that bear upon the overall value of TIG with and without the workers' compensation business, and

(iii) all documents regarding TIG's ability or inability to report losses in a timely manner.

<div style="margin-left:40%">

DEFENDANT
TRUSTMARK INSURANCE COMPANY


    /s/ Rowena A. Moffett
David R. Schaefer (ct 04334)
Rowena A. Moffett (ct 19811)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, Connecticut 06511
Telephone: (203)772-2600
Facsimile: (203)562-2098
E-Mail: dschaefer@bswlaw.com
E-Mail: rmoffett@bswlaw.com

David M. Spector (ct21679)
Paula J. Morency (ct24740)
Everett J. Cygal (ct22765)
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473
Telephone: (312) 258-5500
Facsimile: (312) 258-5600

Attorneys for Trustmark Insurance Company

</div>

## CERTIFICATE OF SERVICE

      I, Rowena A. Moffett, certify that on August 20, 2004, I caused a true and correct copy of Motion for Clarification of Order Granting in Part TIG's Motion for Protective Order to be served by facsimile and overnight courier on:

David J. Grais, Esq.  
Kathryn C. Ellsworth, Esq.  
Dewey Ballantine LLP  
1301 Avenue of the Americas  
New York, New York  10019-6092  

Mark B. Holton, Esq.  
Kathryn Nealon, Esq.  
Gibson Dunn & Crutcher  
200 Park Avenue, Floor 48  
New York, New York 10166  

Frank F. Coulom Jr., Esq.  
Robinson & Cole LLP  
280 Trumbull Street  
Hartford, CT, 06103-3597  

Harry P. Cohen, Esq.  
Brian O'Sullivan  
Cadwalader, Wickersham & Taft LLP  
100 Maiden Lane  
New York, NY  10038  

J. Daniel Sagarin, Esq.  
Hurwitz, Sagarin & Slossberg, LLC  
147 North Broad Street  
Milford, CT 06460  

      /s/ Rowena A. Moffett  
      Rowena A. Moffett