UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>                        Plaintiff,<br><br>-against-<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>                        Defendant. | CIVIL NO. 3:01-CV-02198 (PCD) |
| TRUSTMARK INSURANCE COMPANY,<br><br>                        Third-Party Plaintiff,<br><br>-against-<br><br>TIG INSURANCE COMPANY,<br><br>                        Third-Party Defendant. | August 26, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY
DEFENDANT TIG INSURANCE COMPANY'S MOTION
FOR PARTIAL RECONSIDERATION OF THE COURT'S
AUGUST 4, 2004 RULINGS ON PRIOR PENDING DISCOVERY MOTIONS**

Third Party Defendant TIG Insurance Company ("TIG"), through its counsel, submits this memorandum of law in support of its motion for partial reconsideration of the Court's August 4, 2004 Rulings on Prior Pending Discovery Motions.

NYLIB2 236915.1

## STATEMENT OF FACTS

On June 18, 2003, TIG moved to compel Trustmark Insurance Company ("Trustmark") to produce various categories of documents in response to the Court's February 5 and March 14, 2003 discovery orders (the "June 18th Motion"). The two categories of documents subject to the June 18th Motion that are relevant to the instant motion are (i) the WEB underwriting memoranda; and (ii) documents requested during Robin Ekwall's February 6, 2004 deposition that are in the possession of WEB Management LLC or its former principals ("WEB").

On August 4, 2004, the Court issued its Rulings on Prior Pending Discovery Motions (the "Order") which granted in part the June 18th Motion. (The Order was not filed until August 12, 2004.) As respects TIG's motion to compel the production of the WEB underwriting memoranda, the Court accepted Trustmark's representation that "it has produced all such documents," stating that "[a]s [Trustmark] is presently under an order to produce these documents, and there is no indication that it is withholding documents in violation of those orders, it would serve little purpose to repeat the prior order based on speculation that there should be a more substantial response than it received." Order at 3. As respects documents requested during Ekwall's February 6th deposition that are in WEB's possession, the Court stated that it would "not order [Trustmark] to produce documents over which it claims no custody or control or require it to obtain the production from WEB, a former agent." Order at 5.

## ARGUMENT

The Court should reconsider the Order with respect to the WEB underwriting memoranda and documents requested during Ekwall's February 6th deposition that are in WEB's possession because, as discussed below: (a) Trustmark has conceded that it has not produced all WEB underwriting memoranda, but has instead withheld documents from production based upon an interpretation of the Court's February 5, 2003 order which the Court has already rejected, and (b) pursuant to an agreement between Trustmark and WEB, Trustmark does, in fact, have custody and control over WEB's documents.

### A.  The WEB Underwriting Memoranda

There were three categories of documents subject to TIG's initial motion to compel and the Court's February 5, 2003 order: (i) documents relating to WEB's underwriting practices, including its underwriting of other reinsurance contracts (the "Underwriting Documents"), (ii) documents relating to the retrocessional protections WEB had in place on business it entered into (the "Retrocessional Documents"), and (iii) documents relating to the agency relationship between Trustmark and WEB, including efforts by Trustmark to monitor or supervise WEB's activities (the "Agency Documents").

In the February 5, 2003 order, the Court granted TIG's motion in full as respects the Agency Documents, directing Trustmark to produce, among other things, "[a]ll documents relating to [Trustmark's] review, monitoring, auditing and/or supervision of WEB and/or its principals" and "documents relating to [Trustmark's] knowledge and/or oversight of how Trustmark transacted business." O'Sullivan Decl., Ex. A at 7. There was no limitation

whatsoever on Trustmark's obligation to produce Agency Documents. In contrast, the Court granted TIG's motion to compel the production of Underwriting and Retrocessional Documents "in part," holding that WEB was required to produce those documents only to the extent that they relate to three criteria, namely: "(1) reporting deficiencies of the nature but not necessarily the magnitude alleged in the third party complaint, (2) overall profitability less than or equal to the TIG insurance at issue in this action, and (3) pricing or reserving problems in blocks of insurance reinsured." *Id.* at 8.

In its memorandum of law in opposition to the June 18th motion, Trustmark conceded that it has not produced all Agency Documents, but has instead withheld from production WEB underwriting memoranda that did <u>not</u> meet any of the three criteria set forth in the Court's February 5th order concerning the production of Underwriting and Retrocessional Documents. *See* O'Sullivan Decl., Ex. B at 3. Trustmark's refusal to produce all WEB underwriting memoranda is in flagrant disregard of the Court's February 5th order since these documents clearly relate to both Trustmark's "review, monitoring, auditing and/or supervision of WEB and/or its principals" and its "knowledge and/or oversight of how WEB transacted business." Indeed, significantly, Trustmark has never disputed that WEB was required to submit underwriting memoranda to Trustmark to obtain its approval with respect to various risks it proposed writing and, thus, the WEB underwriting memoranda relate to both Trustmark's "review, monitoring, auditing and/or supervision of WEB," as well as its "knowledge and/or oversight of how WEB transacted business."

Trustmark's failure to produce all WEB underwriting memoranda is particularly inappropriate since the Court previously rejected Trustmark's argument that it was not required under the Court's February 5, 2003 order to produce Agency Documents to the extent that they did not meet any of the criteria set forth in that order concerning the production of Underwriting and Retrocessional Documents. As TIG explained in its February 20, 2003 Motion to Clarify:

> Trustmark is now taking the position that the [February 5] ruling does not apply to documents relating to WEB's underwriting that are responsive to TIG's request for production of Agency Documents, which the Court granted in full, where such documents are also responsive to TIG's request for the production of Underwriting Documents, which the Court granted only "in part." This argument obviously ignores the clear and unambiguous language the Court used in directing Trustmark to produce "*all*" Agency Documents. . . .
>
> For example, WEB was required to obtain approval from Trustmark before writing accounts that were viewed as particularly large in terms of expected premium volume, and to prepare a written memorandum explaining why it believed the account was proper [and] how it would meet WEB's profit target. These underwriting memoranda clearly constitute "review, monitoring, auditing and/or supervision" of WEB by Trustmark, and thus must be produced, along with any documents relied upon in preparing the memoranda and any documents reflecting further discussions between Trustmark and WEB. . . .

O'Sullivan Decl., Ex. C at 4-5 (italicized emphasis in original). By order dated March 14, 2003, the Court granted TIG's motion to clarify *in its entirety*, thus making clear that Trustmark was required to produce all Agency Documents without exception, including WEB underwriting memoranda. *Id.*, Ex. D.

Accordingly, the June 18th Motion was not based upon "speculation that there should be a more substantial response that that received" (Order at 3), but rather the undisputed fact that Trustmark has withheld documents from production based upon an improper interpretation of the Court's February 5th and March 14th discovery rulings, which has already been rejected by the Court.

Moreover, just yesterday (August 25, 2004), Trustmark advised us **for the first time** that it had not produced documents regarding WEB business written on the paper of United States Life Insurance Company and/or its sister company All American Life Insurance Company (collectively, "US Life") because "[i]t was and is our interpretation that [the Court's prior discovery orders] called for production of materials on risks that WEB wrote as a representative of Trustmark or Security." O'Sullivan Decl, Ex. F. Trustmark's position here is inconsistent with the Court's prior discovery rulings and the realities of the relationship that existed among Trustmark, US Life and WEB. Pursuant to an unwritten "partnership" agreement, US Life and Trustmark shared on a 50/50 basis the net results, after retrocession protections, of all business underwritten by WEB, irrespective of whether the risk was written on US Life or Trustmark paper. *See* O'Sullivan Decl., Ex. G at 29:5-14. Accordingly, WEB was acting as much as Trustmark's "representative" when it was writing "partnership" business on US Life paper as it was US Life's representative. Indeed, the undisputed evidence in this case is that Trustmark was responsible for reviewing and approving WEB's underwriting of all risks (or, after a certain point in time, all risks that exceeded a specified premium amount), including those written on US Life paper. O'Sullivan Decl., Ex. G at 32:8-33:6, *id.*, Ex. H at 165:15-166:17. To be sure,

Trustmark, not US Life, reviewed and approved WEB's underwriting of the 1998 Treaty (the predecessor contract to the one involved in this litigation), as well as all other risks written on US Life paper. *See id.* Under these circumstances, Trustmark's attempt to distinguish between WEB business written on US Life paper from WEB business written on Trustmark or Security paper is completely unjustified.[1]

TIG therefore asks the Court to reconsider its ruling concerning the WEB underwriting memoranda and to direct Trustmark to produce <u>all</u> WEB underwriting memoranda, including those relating to business written on US Life paper, as well as any other documents relating to Trustmark's "review, monitoring, auditing and/or supervision of WEB and/or its principals" and/or its "knowledge and/or oversight of how Trustmark transacted business" that have not yet been produced.

**B.    Documents Requested During Robin Ekwall's February 6 Deposition**

In the Order, the Court held that it would "not order [Trustmark] to produce documents over which it claims no custody or control or require it to obtain the production from WEB, a former agent." Order at 5. However, notwithstanding that WEB is no longer Trustmark's agent, Trustmark continues to have custody and control over WEB's documents. Pursuant to the April 28, 2000 settlement agreement between Trustmark and United States Life Insurance Company, on the one hand, and WEB, on the other hand, "ownership of [WEB's] original files, records, documents, software, and data belongs to United States Life Group and

---

[1]  Finally, Trustmark's assertion to the contrary notwithstanding (O'Sullivan Decl., Ex. F), in response to TIG's document request, Trustmark did not object to the production of documents relating to WEB business written on US Life paper. *See* O'Sullivan Decl., Ex. I.

Trustmark." O'Sullivan Decl., Ex. E at 2 ¶ 2(b)(i). Since Trustmark is the "owner" of WEB's documents, it unquestionably has custody and control over the documents at issue. Accordingly, TIG asks the Court to reconsider its ruling regarding the documents requested during Ekwall's February 6th deposition and to order Trustmark to produce all such documents in the possession of WEB.

## CONCLUSION

For the reasons set forth above, TIG respectfully requests that the Court grant its motion for partial reconsideration of the Order and direct Trustmark to produce immediately: (i) all WEB underwriting memoranda, as well as any other documents relating to Trustmark's "review, monitoring, auditing and/or supervision of WEB and/or its principals" and/or its "knowledge and/or oversight of how Trustmark transacted business" that have not yet been produced; and (ii) all documents requested during Ekwall's February 6th deposition that are in the possession of WEB.

THIRD PARTY DEFENDANT,

By: _____
J. Daniel Sagarin, CT 04289
David A. Slossberg, CT 13116
Hurwitz, Sagarin & Slossberg, LLC
147 N. Broad Street
Milford, CT 06560
Telephone: 203-877-8000
Facsimile: 203-878-9800
-and-

Lawrence I. Brandes, CT 23789
Harry P. Cohen, CT 20446
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038
Telephone: 212-504-6000
Facsimile: 212-504-6666

## CERTIFICATE OF SERVICE

This is to certify that on August 27, 2004, a true and correct copy of the foregoing was sent via facsimile and mailed, postage prepaid, first class mail, to:

Frank F. Coulom, Jr., Esq.
Marion B. Manzo, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103-3597

Attorneys for Plaintiff

Mark B. Holton, Esq.
James L. Hallowell, Esq.
Kathryn E. Nealon, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY  10166-0193

Attorneys for Plaintiff

David J. Grais, Esq.
Erick M. Sandler, Esq.
Robert J. Morrow, Esq.
Kathryn C. Ellsworth, Esq.
Dewey Ballantine LLP
1301 Ave of the Americas
New York, NY  10019-6092

Attorneys for Plaintiff

Jeffrey Hellman, Esq.
Zeisler & Zeisler, PC
558 Clinton Avenue
PO Box 386
Bridgeport, CT  06605

Attorneys for Defendant,
Third Party Plaintiff

David M. Spector, Esq.
Everett J. Cygal, Esq.
Ronald S. Safer, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, IL  60606-6473

Attorneys for Defendant,
Third Party Plaintiff

_____
Scott T. Penner