# In The Matter Of:

## *SECURITY INSURANCE COMPANY OF HARTSFORD v. TRUSTMARK INSURANCE COMPANY*

### ROBIN B. EKWALL
*February 6, 2003*

### MANHATTAN REPORTING CORP.
420 Lexington Avenue - Suite 2108
New York, NY 10170
PH: 212-557-7400 / FAX: 212-692-9171

EKWALL, ROBIN B. (2/6/2003)

**Word Index included with this condensed transcript**

Page 165

ROBIN B. EKWALL

1
2  reduced to writing, ultimately it was in
3  writing, you're talking about the actual
4  contract?
5      A.   No. I'm talking about a written
6  communication between us and Trustmark.
7      Q.   You're talking about your
8  underwriting memo in July of 1998?
9      A.   Yes.
10     Q.   But before you issued a quote that
11 was accepted by Aon, you had already received
12 the approval of Trustmark to enter into a
13 three-year contract?
14     A.   I believe so, yes.
15     Q.   Did you receive approval from
16 anybody from U.S. Life?
17     A.   No. I don't think so. Trustmark
18 took the lead on all the underwriting decisions
19 on the WEB business.
20     Q.   You say Trustmark took the lead,
21 did U.S. Life have any role in reviewing and
22 approving underwriting decisions on the WEB
23 business?
24     A.   For the most part, no. They would
25 audit, do an underwriting audit from time to

Page 166

ROBIN B. EKWALL

1
2  time and visit with us. But Trustmark and U.S.
3  Life worked out an arrangement where Trustmark
4  took the lead on underwriting and U.S. Life took
5  the lead on approving retrocession security.
6      Q.   When you say U.S. Life took the
7  lead on approving retrocession security, are you
8  referring only to a credit review, a review of
9  the creditworthiness of retrocessionaires or did
10 they also analyze and approve the structure of
11 the retro programs you put in place?
12     A.   No. It was more of a credit
13 review. Really the retrocession structure was
14 more of a collective review and agreement
15 process between the entire facility between both
16 companies and ourselves and Collins Associates
17 was also involved in that.
18     Q.   Did you obtain approval from
19 Trustmark and U.S. Life prior to entering into
20 retrocession agreements on their behalf?
21     A.   On the individual -- on that
22 particular retrocession agreement?
23     Q.   Actually maybe I asked an awkward
24 question. You said the retrocession structure
25 was more of a collective review and agreement

Page 167

ROBIN B. EKWALL

1
2  process between the entire facility, between
3  both companies and ourselves and Collins
4  Associates. Maybe if you can elaborate on what
5  you meant by collective review and agreement
6  process?
7      A.   Basically the purpose of the
8  retrocession structure was that both Trustmark
9  and U.S. Life wanted to have a maximum exposure
10 on any particular individual or any per
11 occurrence type of catastrophic event. They
12 wanted to have a net, and I don't recall off the
13 top of my head what those net lines were, but
14 they wanted to stay within that.
15          So then part of the purpose of
16 buying retrocession was to spread risk among
17 other reinsurers so that they were within their
18 normal retention or their normal net line
19 guidelines.
20          In addition to that we also would
21 want retrocession to spread risk on accounts
22 where they had greater exposure in terms of
23 premium that we didn't want to have, you know,
24 one particular account overwhelming the entire
25 book of business in terms of premium.

Page 168

ROBIN B. EKWALL

1
2          So, that was the other point of
3  having retrocession was to provide some spread
4  of risk among other reinsurers from a premium
5  standpoint.
6      Q.   Was that one of the arguments
7  advanced by U.S. Life against WEB in the dispute
8  over the Superior National book of business?
9          MR. MEYER: Objection. Again, we
10 are going far afield. Instruct not to answer.
11     A.   For now.
12     Q.   Just one clarification, then we
13 will get back to what we were talking about
14 because we are going to spend more time on
15 retrocession later. You said that part of the
16 purpose of buying retrocession was to spread
17 risk -- sorry?
18          Part of the purpose of buying
19 retrocession was to spread risk among other
20 reinsurers so that they were within their normal
21 retention or their normal net line guidelines.
22          The "They" you are referring to
23 there was Trustmark and U.S. Life; correct?
24     A.   That's correct.
25     Q.   So they had a particular -- they