# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, <br><br> Plaintiff, <br><br> v. <br><br> TRUSTMARK INSURANCE COMPANY <br><br> Defendant. <br><br> TRUSTMARK INSURANCE COMPANY, <br><br> Third Party Plaintiff, <br><br> v. <br><br> TIG INSURANCE COMPANY, <br><br> Third Party Defendant. | Civil No. 301CV2198(PCD) |

**THIRD PARTY PLAINTIFF'S FIRST REQUEST
FOR THE PRODUCTION OF DOCUMENTS TO THIRD PARTY DEFENDANT**

Pursuant to Fed. R. Civ. P. 26 and 34, Third Party Plaintiff Trustmark Insurance Company ("Trustmark") hereby requests that Third Party Defendant TIG Insurance Company produce the following documents at the office of Schiff Hardin & Waite, 6600 Sears Tower, Chicago, Illinois, within 30 days.

**DEFINITIONS AND INSTRUCTIONS**

1.  As used herein, the term "document" shall mean all things produceable under Fed. R. Civ. P. 34, and all tangible things including, without limitation, examination reports, correspondence, memoranda, notes, diaries, desk calendars, appointment books, statistical records, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, brochures, books, publications, inter-office

1

communications, papers, notations or tape recordings of any sort of conversations, telephone calls, meetings, interviews, conferences or other communications, bulletins, computer printouts, teletypes, telefax, telex messages, lists, tabulations, invoices, worksheets, analyses, evaluations, data processing input and output, announcements, advertisements, manuals, graphics or oral records or representations of any kind, (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, motion pictures), and any electronic, mechanical, or electric records or representations or any kind (including, without limitation, tapes, cassettes, discs, recordings, and computer memories). Any copy contained therein, or attached thereto, all drafts, alterations, modifications, changes, amendments, non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), or other materials not included in the documents referred to in the preceding sentence, shall be deemed a separate document within the foregoing definition.

2. "Communication" is used in the broadest sense and means any verbal, written, electronic, or other transmission, disclosure, or exchange of words, thoughts, ideas, or images between or among persons or groups of persons, whether in person, by letter, by telephone, or by any other means.

3. "Relating to" means constituting, concerning, consisting of, embodying, mentioning, describing, memorializing, stating, setting forth, discussing, analyzing, used in considering or evaluating, having any logical or factual connection with, or regarding.

4. The word "and" and the word "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of any

request herein any document or tangible thing that might otherwise be construed to be outside its scope.

5. "Trustmark" means Trustmark Insurance Company, its employees, attorneys, and agents, including without limitation WEB Management, LLC.

6. "Security" means Security Insurance Company of Hartford, its employees, attorneys, agents, and affiliates, including without limitation Alternative Risk Transfer Strategies, Inc.

7. "TIG" means TIG Insurance Company, its employees, attorneys, agents, and affiliates.

8. "Resolution Group" means the Resolution Group or any other group or consultant retained by Fairfax Financial to analyze the block of business at issue in this litigation.

9. "TIG Business" means the business ceded by TIG to the United States Life Insurance Company of New York for the 1998 underwriting year and to Security for the 1999 underwriting year.

10. "*Security I*" means the litigation styled *Security Insurance Company of Hartford v. Trustmark Insurance Company*, 00CV1247 (PCD) pending in the United States District Court for the District of Connecticut.

11. "The Arbitration" means the arbitration between TIG and Security regarding the TIG Business.

12. Wherever appropriate, the singular form of a word should be interpreted in the plural, and the plural form of a word should be interpreted in the singular.

13. The documents requested herein should be produced in a manner consistent with Fed. R. Civ. P. 34 or in a manner that indicates to which request or requests each document being produced is responsive.

14. If any document requested herein is withheld on the ground that it is privileged or upon any other ground that it is not subject to discovery, indicate in writing, with respect to each such document: (a) the factual and legal bases for claiming the privilege or other ground relied upon; (b) the name, address, and position of each person who prepared the document and each person (if any) who signed it; (c) the name, address, and position of each to whom the document was directed, circulated, or distributed; (d) the date of the document; (e) the subject matter of the document; and (f) the name, address, and position of each person now in possession of the document.

15. If any document requested herein has been destroyed or discarded, state as to each such document: (a) the nature of the document; (b) the identity of the person or persons who destroyed or discarded it; (c) the full circumstances of its destruction or discarding; and (d) the reason or reasons why the document was destroyed or discarded. Produce all documents that concern the destruction of each such document.

16. In responding to these requests, furnish such documents as are available to you, not merely such documents as you have in your personal possession. This means for you to furnish documents in the possession of any person you control.

## DOCUMENT REQUESTS

### *SECURITY INSURANCE COMPANY OF HARTFORD*

1. All correspondence between TIG or its representatives or attorneys and Security or its representatives or attorneys for the period of May, 1999 to the present.

2. All correspondence between Security and TIG relating to the Arbitration, including pleadings or filings with the panel.

3. All documents produced in the Arbitration.

4. All bordereaux, loss reports, claims notices or demands for payment prepared or produced by TIG with respect to the TIG Business.

### *AON RE AND THE PLACEMENT OF REINSURANCE FOR THE TIG BUSINESS*

5. All documents provided to AON Re in connection with the placement of the reinsurance in respect to the TIG Business.

6. All correspondence between AON and TIG relating to the TIG Business or the placement of reinsurance for the TIG Business.

7. The internal TIG actuarial analysis referenced by representatives of AON Re during the depositions taken in *Security I*.

8. All analyses of the TIG Business in the possession of TIG or its agents, including reports prepared by outside actuaries or consultants.

9. All documents relating to TIG's decision to lower its reinsurance retention from $1,000,000 to $100,000 (or lower) in respect to the TIG Business.

10. All documents relating to Mr. Chase's conclusion that the "loss experience [for the TIG Business was] going up" as referenced in Mr. Paul Churchill's e-mail of July 7, 1999.

5

11. All documents relating to Mr. Steven McElhiney's statement that "[t]he $50 x $50 buy-down was added during the 1999 year due to a deterioration in the underwriting results of the VSC book" as referenced in Mr. McElhiney's e-mail of May 25, 1999.

### *VIRGINIA SURETY COMPANY/MUIRFIELD UNDERWRITERS*

12. All correspondence between TIG, Virginia Surety Company and Muirfield Underwriters relating to the TIG Business, including without limitation, all contracts, audits, studies and analyses of the business written on Virginia Surety Company paper.

13. All documents, including without limitation, notes, draft reports, final reports and summaries, relating to the audit of Muirfield Underwriters conducted by TIG in 1998.

14. All documents, including without limitation, notes, draft reports, final reports and summaries, relating to any audit or examination of Muirfield Underwriters or Virginia Surety Company conducted by TIG other than the audit referenced in request number 14.

15. All documents relating to the negotiations between TIG and Virginia Surety Company relating to the potential renewal/extension of the business relationship between TIG and Virginia Surety Company in 1998.

16. All documents relating to the termination of the business relationship between TIG and Virginia Surety Company.

### *SEGMENTS OTHER THAN VIRGINIA SURETY COMPANY*

17. All documents relating to the termination of the business relationship between TIG and any other insurance company, fronting company,

managing general agent, underwriter or producer in connection with the TIG Business.

18. All contracts or reinsurance agreements, including all documents relating to negotiations, between TIG and any other insurance company, fronting company, managing general agent, underwriter or producer relating to the TIG Business.

19. All audits, including without limitation, notes, draft reports, final reports and summaries, relating to any audit or examination of any other insurance company, fronting company, managing general agent, underwriter, third party administrator or producer in connection with the TIG Business.

### *PRICEWATERHOUSE COOPERS*

20. All documents, contracts and correspondence between TIG and PriceWaterhouseCoopers or relating to PriceWaterhouseCoopers' performance of back office functions for TIG.

21. All documents relating to the termination of the business relationship between TIG and PriceWaterhouseCoopers.

### *UNDERWRITING DECISIONS*

22. All documents relating to any decision by TIG or its agents or underwriters to reduce rates by 30% in 1996 and 1997 to compete with the then current pricing conditions.

23. All documents relating to any decision by TIG or its agents or underwriters to reduce rates in 1998 and 1999 to compete with the then current pricing conditions.

24. All documents relating to TIG's direction to Muirfield Underwriters (as well as associated incentive plan) for growth and geographic expansion.

25. All documents relating to TIG's decision to sell both loss sensitive products and to underwrite unproven risks as a means to compete with guaranteed cost products being sold by other workers compensation writers.

26. All documents relating to TIG's decision to price products by targeting higher loss ratios (*i.e.* from 55-60% to 65-75%) as respects the TIG Business.

### PERFORMANCE OF THE TIG BLOCK

27. All documents relating to TIG's reserve strengthening for the TIG Business.

28. All documents relating to the TIG combined loss ratio of 109% for the 1997 underwriting year as referenced by Muirfield Underwriters in their memorandum of February 6, 1998.

29. All analyses, studies or documents relating to the profitability or financial impact of securing reinsurance for the TIG Business.

### THE RESOLUTION GROUP AND ODYSSEY RE

30. All files and documents reviewed, prepared or analyzed by the Resolution Group in respect to the TIG Business.

31.     All documents referring or relating to Odyssey Re's desire not to provide retrocessional protection for the TIG Business.

DATED: November 18, 2002          TRUSTMARK INSURANCE COMPANY

_____
One of Its Attorneys

Jeffrey Hellman CT 04102          David M. Spector CT 21679
Zeisler & Zeisler                 Ronald S. Safer CT 22766
558 Clinton Avenue                Everett J. Cygal CT 22765
P.O. Box 3186                     Schiff Hardin & Waite
Bridgeport, CT 06605              6600 Sears Tower
                                  Chicago, Illinois 60606-6473

## CERTIFICATE OF SERVICE

I, Everett J. Cygal, an attorney, certify that on November 18, 2002, I caused a true and correct copy of Third Party Plaintiff's First Request for the Production of Documents to Third Party Defendant to be served by facsimile and Federal Express on:

Mark B. Holton, Esq.
Gibson Dunn & Crutcher
200 Park Avenue, Floor 48
New York, New York 10166

Frank F. Coulom, Jr., Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

_____
Everett J. Cygal

CHI_DOCS2\ 654866.3

10