# EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SECURITY INSURANCE COMPANY OF NEW HAVEN,  )
HARTFORD,                                 )
                                          )
             Plaintiff,                   )
                                          )
v.                                        )
                                          )
TRUSTMARK INSURANCE COMPANY,              )
                                          )
             Defendant.                   )   Civil No. 301CV2198(PCD)
_____)
                                          )
TRUSTMARK INSURANCE COMPANY,              )
                                          )
             Third Party Plaintiff,       )   JUNE 30, 2003
                                          )
v.                                        )
                                          )
TIG INSURANCE COMPANY,                    )
                                          )
             Third Party Defendant.       )

**TRUSTMARK INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION
TO TIG INSURANCE COMPANY'S MOTION FOR A PROTECTIVE ORDER**

TIG Insurance Company ("TIG"), through its Motion For Protective Order, seeks to re-litigate an issue already decided by this Court – whether the Letters Rogatory directed at TIG's parent company, Fairfax Financial Holdings Limited ("Fairfax"), are enforceable. This Court denied TIG's previous request for a protective order and did not narrow the scope of the Letters Rogatory (District Court Docket # **207**). Trustmark respectfully urges this Court to again deny TIG's attempt to limit discovery.

The Letters Rogatory sought discovery from Fairfax of all documents and correspondence relating to its due diligence for the purchase of TIG. This Court signed the Letters Rogatory on March 4, 2003 (which are attached as **Exhibit A**).

Then, on March 11, 2003, TIG served a Motion for Expedited Protective Order regarding the Letters Rogatory. In the spirit of cooperation, counsel for Trustmark offered to narrow the scope of the Letters Rogatory to all documents or correspondence related to the claims presented and/or defenses to Trustmark's Third Party Complaint if the documents would be produced without further delay (**Exhibit B**, March 14, 2003 letter from Trustmark's counsel to TIG's counsel memorializing the March 13, 2003 proposal).

After more than two weeks with no response from TIG, counsel for Trustmark contacted TIG's counsel via e-mail and voice mail inquiring as to TIG's position on Trustmark's proposal to narrow the scope (**Exhibit C**, e-mail memorandum dated March 28, 2003 from Trustmark's counsel to TIG's counsel). Trustmark still received no response from TIG and followed up with further inquiries on April 1 and April 2, 2003 (**Exhibit D**, e-mail memorandum dated April 1, 2003 from Trustmark's counsel to TIG's counsel; **Exhibit E**, e-mail memorandum dated April 2, 2003 from Trustmark's counsel to TIG's counsel).

Finally, on April 2, 2003, nearly three weeks after Trustmark made the offer to narrow the scope of the Letters Rogatory, TIG's counsel responded to Trustmark with a counter-proposal: TIG would accept the narrowed scope if Trustmark agreed not to seek any further depositions of any persons revealed by the documents produced (**Exhibit F**, Affidavit of William E. Meyer, Jr.). Trustmark could not agree to such an unfair proposal. Accordingly, Trustmark declined TIG's counter-proposal and thus there was no agreement between TIG and Trustmark to narrow the scope of the Letters Rogatory (*Id.*). On April 17, 2003, this Court denied TIG's Motion for Expedited

2

Protective Order, and did not limit the scope of the Letters Rogatory in any way (District Court Docket # **207**).

Even faced with these facts, TIG nevertheless seeks to re-litigate this issue, claiming that it relied on Trustmark's proposal to narrow the scope of the Letters Rogatory (Memorandum of Law in Support of TIG's Motion for a Protective Order, p. 3). Such an attempt is improper for at least three reasons: (1) this Court has already ruled on the validity of the Letters Rogatory; (2) an Order has been entered in the Ontario Court enforcing the Letters Rogatory; and (3) there is no agreement between TIG and Trustmark to narrow the scope of the Letters Rogatory.

**I.    THIS COURT HAS PREVIOUSLY DENIED TIG'S MOTION FOR A PROTECTIVE ORDER REAGRDING THE LETTERS ROGATORY DIRECTED AT FAIRFAX**

On April 17, 2003, this Court denied TIG's Motion for Expedited Protective Order in its entirety and did not limit the scope of the Letters Rogatory in any way (District Court Docket # **207**). TIG is now making another attempt to block Trustmark's discovery from Fairfax, and there is still "no basis on which to deny [Trustmark] the discovery sought" (*Id.* at p.3). The issue has already been resolved by this Court and TIG cannot re-litigate it because it was not pleased with the result.

**II.   THE ONTARIO COURT HAS ISSUED AN ORDER ENFORCING THE LETTERS ROGATORY AS DRAFTED**

After TIG's previous Motion for Expedited Protective Order was denied by this Court, Trustmark sought to enforce its Letters Rogatory in Toronto, Ontario. An Order, which was agreed to by Fairfax and Trustmark, was entered in the Ontario Court, with the consent of Fairfax, enforcing the Letters Rogatory as drafted (**Exhibit**

3

**G**, May 27, 2003 Order from the Ontario Court). As such, the enforcement of the Letters Rogatory is no longer within the jurisdiction of this Court. If TIG seeks to alter the Order entered by the Ontario Court, it will need to do so in Ontario.

### III. THERE IS NO AGREEMENT BETWEEN TRUSTMARK AND TIG TO LIMIT THE SCOPE OF PRODUCTION FROM FAIRFAX

Even though the Ontario Court has ordered enforcement of the Letters Rogatory as drafted, TIG argues that Trustmark "agreed to narrow the scope of the Letters Rogatory" (Memorandum of Law in Support of TIG's Motion for a Protective Order, p. 3). Trustmark never made any agreement with TIG regarding the scope of the Letters Rogatory (**Exhibit F**, ¶ 11). As demonstrated in Trustmark's response to TIG's previous Motion for Expedited Protective Order, Trustmark offered to narrow the scope of the Letters Rogatory (District Court Docket # **194**) but the parties never agreed to do so. Any reliance by TIG on this proposal is misplaced. TIG knew there was no agreement based on its failure to respond to the proposal for nearly three weeks (despite Trustmark's repeated efforts to get a response) and Trustmark's refusal to agree to TIG's counter-proposal.

### IV. TIG SHOULD NOT PREVENT FAIRFAX FROM PRODUCING DOCUMENTS IN UNREDACTED FORM

Fairfax represents that it made redactions "based on the advice of TIG Insurance Company's lawyers in the U.S. proceeding as to the appropriate scope of the production in that proceeding" (**Exhibit H**, letter from counsel for Fairfax dated June 5, 2003). TIG attempts to support Fairfax's redactions by pointing to the fact that "Fairfax produced all documents relating to its due diligence for the purchase of TIG that also related to TIG's workers compensation business" (Memorandum of Law in

4

Support of TIG's Motion for a Protective Order, p. 3). This statement is misleading in two important respects: First, Fairfax produced a mere 527 pages of documents, containing 61 fully redacted pages and 31 pages containing partial redactions. The remainder of the documents from the due diligence for Fairfax's $847 million acquisition of TIG were destroyed sometime after February 10, 2003 (**Exhibit I**, transcript from the deposition of Sammy Chan, pp. 24-25, 36-38, 58-59, 187-190). Thus, Fairfax produced all documents relating to the due diligence *that were not destroyed* (**Exhibit H**, letter from counsel for Fairfax dated June 11, 2003, indicating it has "produced all of the documents it has been able to locate").

Second, the redacted portions of the documents are directly relevant[1]. In several instances, documents discussing TIG's worker's compensation business are redacted (**Exhibit J**, FX 000524, 000046, 000051). TIG itself stated that due diligence documents related to TIG's workers' compensation business are within the scope of the Letters Rogatory (Memorandum of Law in Support of TIG's Motion for a Protective Order, pp. 3-4), yet claims that Fairfax only redacted irrelevant materials. Such a claim is patently false. Accordingly, Trustmark requests that TIG's Motion for a Protective Order be denied so that Fairfax will produce in unredacted form the only documents that remain from the due diligence.

---

[1] There is no dispute over the relevancy of the documents themselves, as the documents were already produced based on this Court's ruling that, "TIG has not ... established that the discovery sought is irrelevant to the present claims and defenses. The due diligence performed by Fairfax when it acquired TIG potentially would uncover deficiencies in TIG's business practice and bear relevance to defendant's claims" (District Court Docket # **207**, p. 3).

5

## CONCLUSION

For all the reasons stated herein, the Court should deny TIG's Motion for Protective Order in its entirety.

Respectfully submitted,

One of the attorneys for Trustmark Insurance Company

David M. Spector CT 21679
William E. Meyer, Jr. CT 24362
Everett J. Cygal CT 22765
Amy M. Rubenstein CT 24387
Schiff Hardin & Waite
6600 Sears Tower
Chicago, Illinois 60606-6473

Jeffrey Hellman CT 04102
Zeisler & Zeisler
558 Clinton Avenue
Bridgeport, CT 06605

6

## CERTIFICATE OF SERVICE

I, Jeffrey Hellman, do certify that a true and correct copy of the foregoing document has been sent by facsimile and United States mail June 30, 2003 addressed to:

Frank F. Coulom, Jr., Esq.
Marion Manzo
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103

Mark B. Holton, Esq.
David J. Grais, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Brian J. O'Sullivan, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

_____
Jeffrey Hellman