```
                                             1
 1                              Court File No. 04-CL-5470

 2                       ONTARIO

 3      SUPERIOR COURT OF JUSTICE -- COMMERCIAL LIST

 4              IN THE MATTER OF THE EVIDENCE

 5  B E T W E E N :

 6  TRUSTMARK INSURANCE COMPANY,   )

 7              Applicant,         )

 8            - and -              )

 9  FAIRFAX FINANCIAL HOLDINGS     )

10  LIMITED,                       )

11              Respondent.        )

12

13              This is the Examination for Discovery of

14  BRIAN O'SULLIVAN, representing the Respondent named

15  herein, taken before GREG S. WEILAND, CSR, RMR, CRR,

16  Notary Public, at the 28th Floor, 623 Fifth Avenue,

17  in the City of New York, New York, commencing at

18  1:03 o'clock p.m., on the 28th day of July, 2004.

19

20

21

22

23

24

25
```

**Page 2**

```
 1   APPEARANCES:
 2
 3   ON BEHALF OF THE APPLICANT:
 4
 5   CASSELS, BROCK & BLACKWELL, LLP, by
 6   MR. JOHN N. BIRCH
 7   2100 Scotia Plaza
 8   40 King Street West
 9   Toronto, Canada M5H 3C2
10   (416) 860-5225
11   E-mail: jbirch@casselsbrock.com
12       -and-
13   SCHIFF HARDIN, LLP, by
14   MR. JOHN A. BANNON and
15   MS. AMY M. RUBENSTEIN
16   6600 Sears Tower
17   Chicago, Illinois 60606
18   (312) 258-5597 (Mr. John A. Bannon)
19   (312) 258-5625 (Ms. Amy M. Rubenstein)
20   E-mail: jbannon@schiffhardin.com
21       arubenstein@schiffhardin.com
```

**Page 3**

```
 1   ON BEHALF OF THE RESPONDENT:
 2
 3   TORYS LLP, by
 4   MR. JOHN B. LASKIN
 5   Suite 3000
 6   79 Wellington Street West
 7   Box 270, TD Centre
 8   Toronto, Ontario
 9   M5K 1N2 Canada
10   (416) 865-7317
11   E-mail: jlaskin@torys.com
12
13   CADWALADER, WICKERSHAM & TAFT LLP, by
14   MR. MICHAEL K. ROBLES
15   100 Maiden Lane
16   New York, New York 10038
17   (212) 504-6582
18   E-mail: michael.robles@cwt.com
```

**Page 4**

 1       (Witness sworn.)
 2           BRIAN O'SULLIVAN
 3   after being first duly sworn, testified as follows:
 4           CROSS-EXAMINATION
 5   BY MR. BIRCH:
 6   1  Q.  Mr. O'Sullivan, do you agree with me that
 7   you're here today to be cross-examined on your
 8   affidavit sworn June 24, 2004?
 9       A.  Yes.
10   2  Q.  And as I understand it, you are a partner
11   at Cadwalader, Wickersham & Taft?
12       A.  That is correct.
13   3  Q.  And I'll just refer to the law firm as
14   Cadwalader for short if that's all right.
15       A.  That's fine.
16   4  Q.  Now, Cadwalader is counsel for the
17   Third-Party Defendant TIG Insurance Company, is it
18   not?
19       A.  In the Trustmark litigation, that is
20   correct.
21   5  Q.  In the context of the Trustmark litigation
22   in the United States District Court or in the
23   context of the Ontario proceeding, has Cadwalader
24   been retained by Fairfax or has it given any advice
25   to Fairfax?

**Page 5**

 1       A.  We have not been retained by Fairfax. I'm
 2   struggling with your use of the word advice. We
 3   have advised Fairfax of certain things relating to
 4   the U.S. litigation.
 5   6  Q.  From your perspective, is there an
 6   attorney/client relationship between your firm and
 7   Fairfax with respect to either the U.S. action or
 8   the Ontario proceeding?
 9       A.  My client is TIG, TIG Insurance Company.
10   7  Q.  From your own perspective, is there an
11   attorney/client relationship?
12       MR. LASKIN:  Well, that's in part a
13   question of law, Mr. Birch, so I'm not sure where
14   that goes.
15   BY MR. BIRCH:
16   8  Q.  Well, do you consider that there's an
17   attorney/client relationship, Mr. O'Sullivan?
18       A.  I do not consider Fairfax to be my client.
19   9  Q.  Okay. But apart from that, do you
20   consider there to be any kind of attorney/client
21   relationship between your firm and Fairfax?
22       MR. LASKIN:  I think he has answered the
23   question.
24       THE WITNESS:  Yeah.
25       It's actually a little warm in here. Can

Page 6

1  we lower the temperature?
2      MR. BANNON: You mean cool it off? No,
3  not until 5:00 o'clock.
4      MS. RUBENSTEIN: There's a thermostat.
5      MR. BANNON: The thermostat only kicks in
6  after hours.
7          (Whereupon, an off-the-record
8           discussion was held.)
9  BY MR. BIRCH:
10  10 Q. Mr. O'Sullivan, are you one of the lawyers
11  at Cadwalader who has been working on this matter
12  regularly in the U.S. proceeding on behalf of TIG?
13      A. Certainly regularly up until August 5,
14  2003. That's when the -- actually sorry, August 8,
15  when the Second Circuit stayed the litigation.
16  11 Q. Right. But in terms of the
17  responsibilities for the third-party litigation, as
18  among the various people at Cadwalader, would it be
19  fair to say you have a large role in working on this
20  file?
21      A. I am one -- yeah, I am one of two
22  attorneys with principal responsibility for the
23  case.
24  12 Q. And as such, I gather you're familiar with
25  the various steps that have been taken in the U.S.

Page 7

1  proceeding?
2      A. I'm not sure I understand your question.
3  13 Q. Well, you're familiar with the documentary
4  productions, you're familiar with the interlocutory
5  motions that have been brought, you're familiar with
6  the depositions that have occurred?
7      A. I certainly was a lot more familiar back
8  in August of last year when the action was stayed.
9  Since that time there hasn't been much going on and
10  my memory has faded, but yes, I am generally
11  familiar with what has transpired in the U.S.
12  litigation.
13  14 Q. To the best of your knowledge, when was
14  Fairfax notified about the U.S. action?
15      MR. LASKIN: How is that relevant to the
16  motion?
17      MR. BIRCH: Well, it's a contempt motion,
18  so we want to know whether there's any issue
19  concerning the destruction or discarding of
20  documents, as to whether that could have been
21  prevented. So I'm trying to establish when Fairfax
22  was aware of the litigation.
23      MR. LASKIN: Just a minute here.
24      Are you seeking an order of contempt,
25  Mr. Birch, in relation to alleged destruction of

Page 8

1  records, because we haven't received particulars
2  that would tell me that.
3      MR. BIRCH: Well, the motion is for
4  contempt.
5      MR. LASKIN: But I want to know what the
6  particulars are, as I'm entitled to when you seek
7  that kind of relief. So give me the particulars,
8  and I'll assess your question.
9      MR. BIRCH: Well, I think what --
10      MR. LASKIN: And you're not entitled to
11  poke around to get particulars, so I want to know
12  what the particulars are of the contempt motion so I
13  can understand to the extent that this is relevant
14  to the motion.
15      MR. BIRCH: I am certainly entitled to ask
16  questions that relate to the contempt motion in
17  respect to things I may not know already. That's
18  the whole purpose of a cross-examination.
19      What I want to know essentially is what
20  was Fairfax's knowledge about the Trustmark-TIG
21  litigation at various points in time.
22      MR. LASKIN: I object to the question
23  then. It's not relevant to the motion as it's
24  framed.
25      MR. BIRCH: Just so we're clear, we want

Page 9

1  on this motion to ascertain whether the discarding
2  or destruction of documents could have been
3  prevented.
4      MR. LASKIN: I'm entitled to full
5  particulars of any allegation of contempt, and
6  unless and until you give me those, I'm not going to
7  permit that question to be asked.
8      MR. BIRCH: I've just told you the
9  evidence that I'm trying to elicit. And obviously
10  these are things that are within your client's own
11  knowledge, and I'm entitled to ask about them.
12      MR. LASKIN: And I point out that the
13  grounds for your motion do not include anything
14  relating to alleged destruction of documents. I'm
15  not going to allow the question.
16      MR. BIRCH: The motion is for contempt.
17      MR. LASKIN: The grounds -- you know the
18  frame of relevance is set by the grounds that you
19  cite in part. That's nowhere in the grounds for the
20  motion. If you want to serve me with an amended
21  notice of motion, we will deal with it, but as of
22  right now, that's not -- the question that you asked
23  is not relevant to the motion.
24      MR. BIRCH: Well, I'm going to ask my
25  questions, and you'll have to take your position.

10

1  BY MR. BIRCH:
2  15  Q.  When to your knowledge did Fairfax become
3  aware of the existence of the U.S. action?
4       MR. LASKIN: Object to the question, not
5  relevant.
6  BY MR. BIRCH:
7  16  Q.  Is Fairfax provided ongoing updates about
8  the status of the U.S. action between TIG and
9  Trustmark?
10      MR. LASKIN: Object to the question, not
11 relevant.
12 BY MR. BIRCH:
13 17  Q.  Mr. O'Sullivan, has Cadwalader prepared
14 audit letters or similar responses to Fairfax or its
15 auditors for the purposes of preparing financial
16 statements?
17      MR. LASKIN: Objection, same basis.
18      MR. BIRCH: Counsel, do you take the
19 position that communications between Cadwalader and
20 Fairfax are privileged for the purpose of this
21 examination, for the purposes of me asking
22 questions?
23      MR. LASKIN: That depends on the nature
24 and purpose of the communications.
25      MR. BIRCH: Well, what communications are

11

1  you claiming privilege over?
2       MR. LASKIN: Well, ask a question, and
3  I'll tell you whether I think it's privileged or
4  not. I mean, there's a whole class of
5  communications or may be theoretically
6  communications for the specific purpose of dealing
7  with this litigation.
8       Anyway, ask a question, and I'll let you
9  know whether I think it's privileged.
10      MR. BIRCH: Well, the problem I've got is
11 you've already objected to a number of questions
12 dealing with communications to Fairfax.
13      MR. LASKIN: My threshold objection is one
14 of relevance.
15      MR. BIRCH: And I don't know whether
16 privilege is also a ground of your objection.
17      MR. LASKIN: I'd have to consider that.
18 As a precautionary matter -- well, I guess it
19 depends on which question you're raising that issue.
20 I'd have to know more about the circumstances of any
21 communication in order to assess that.
22      MR. BIRCH: Well, let's just put it this
23 way. Would you undertake to advise me if any of the
24 questions I've already asked that you've objected to
25 on the grounds of relevance are also objecting on

12

1  the grounds of privilege once you read the
2  transcript?
3       MR. LASKIN: I will take that under
4  advisement.
5       MR. BIRCH: And what I've asked you to do
6  going forward is if you're objecting on multiple
7  grounds, such as relevance and privilege, I'd ask
8  you to advise me about all the grounds you're
9  relying on for the purposes of objecting.
10      MR. LASKIN: I'll do so to the extent that
11 I can. There may be circumstances on which I will
12 have to make further inquiry to ascertain whether
13 the matter is privileged or not.
14 BY MR. BIRCH:
15 18  Q.  Mr. O'Sullivan, to the best of your
16 knowledge, was Fairfax aware of the existence of the
17 U.S. action as of February 14, 2003?
18      MR. LASKIN: Objection, relevance.
19 BY MR. BIRCH:
20 19  Q.  I'm just going to show you a document that
21 I'm sure you've seen before. This is the
22 third-party plaintiff's first request for the
23 production of documents to the third-party
24 defendant.
25      Have you seen this, Mr. O'Sullivan?

13

1   A.  Yes.
2  20  Q.  Okay. Can we mark this as Exhibit 1.
3       (Exhibit 1 marked as requested.)
4  BY MR. BIRCH:
5  21  Q.  Do you agree with me that this document is
6  Trustmark's request to TIG for TIG to produce
7  documents in the third-party proceeding?
8   A.  That's what it appears to be.
9  22  Q.  And I gather this document was served on
10 your firm by Schiff Hardin?
11  A.  I don't recall that. That's what the
12 certificate of service on the last page indicates.
13 23  Q.  You don't have any reason to disagree with
14 that statement?
15  A.  No, I just don't recall. It was November
16 of 2002, a year and a half ago.
17 24  Q.  And when Cadwalader received this
18 third-party request, was this forwarded to TIG?
19      MR. LASKIN: Objection, relevance.
20 BY MR. BIRCH:
21 25  Q.  Was this forwarded to Fairfax?
22      MR. LASKIN: Relevance and privilege on
23 the first one, and relevance on the second one.
24      MR. BIRCH: Counsel, as you well know,
25 privilege does not include facts. I'm merely asking

Page 14

1  Mr. O'Sullivan for the facts.
2  BY MR. BIRCH:
3  26  Q.  Was this provided to TIG?
4      MR. ROBLES:  And I also on behalf of TIG
5  object on grounds of privilege.
6      MR. LASKIN:  I've made it clear that this
7  is an Ontario proceeding, and you're not entitled to
8  have audience, so you can tell me and I can deal
9  with it.
10     MR. BIRCH:  So your position, Mr. Laskin,
11 is that facts are privileged?  I'm not asking for
12 advice.  I'm asking for facts.
13     MR. LASKIN:  I'm not going to answer the
14 question.  I'm not the witness here.  I mean,
15 communications are privileged, Mr. Birch, as you
16 know.
17     And in any event, the question whether
18 this was communicated to TIG is not relevant to the
19 motion, so I'll rest on a relevance objection at
20 this point.
21 BY MR. BIRCH:
22 27  Q.  To your knowledge, was Fairfax made aware
23 of the scope of documentary requests being made by
24 Trustmark?
25     MR. LASKIN:  You mean documentary

Page 15

1  requests -- being made aware of this?
2      MR. BIRCH:  More or less the contents of,
3  yes, of the third-party request.
4      MR. LASKIN:  Objection, relevance.
5  BY MR. BIRCH:
6  28  Q.  Prior to February 14 --
7      MR. LASKIN:  And I should say litigation
8  privilege.  Assuming there was some communication
9  about this, that would be subject to litigation
10 privilege.  The dominant purpose of any
11 communication would have been obviously in
12 connection with the litigation.
13 BY MR. BIRCH:
14 29  Q.  Well, I'm just asking for the facts.  I'm
15 not asking for the work product or the advice.
16     Do you still refuse to answer that?
17     MR. LASKIN:  You have my position.
18 BY MR. BIRCH:
19 30  Q.  Prior to February 14, 2003, did Cadwalader
20 or to your knowledge did TIG take any steps to
21 obtain documents from Fairfax respecting the U.S.
22 action?
23     MR. LASKIN:  Objection, not relevant.
24     MR. BIRCH:  Is there privilege?  Are you
25 alleging privilege on that refusal as well?

Page 16

1      MR. LASKIN:  The details of any steps that
2  may or may not have been taken would likely also be
3  privileged.
4      MR. BIRCH:  So that's solicitor and client
5  privilege.
6      MR. LASKIN:  Litigation privilege at a
7  minimum.
8      MR. BIRCH:  What about solicitor and
9  client privilege?
10     THE WITNESS:  I'm going to reserve my
11 position on that.  There may be common interest that
12 applies here as well.
13     MR. BIRCH:  I'd like to know today what
14 privileges are being claimed so I can deal with
15 them.  So any time that I hear an objection, I'd
16 like to know the specific grounds for the objection,
17 and if you're claiming a privilege, I'd like to know
18 the specific grounds for the privilege, be it common
19 interest privilege, litigation privilege,
20 solicitor/client privilege, or any other privilege
21 you might consider applies because I want to be able
22 to deal with this.
23     MR. LASKIN:  Well, you'll be able to deal
24 with it, Mr. Birch.
25     MR. BIRCH:  Well, I won't be able to deal

Page 17

1  with it unless you tell me.
2      MR. LASKIN:  I'm saying that in some of
3  these situations, this is so far afield from being
4  relevant that I haven't explored the circumstances,
5  so I reserve my right to claim privilege on other
6  grounds once I'm aware of any circumstances,
7  assuming that it's relevant.
8      But at the moment, I'll make -- if you
9  prefer, I'll make a blanket objection based on
10 common interest privilege as well, and we will see
11 if and when we need to get into the facts that may
12 bear on its application, but for the moment, these
13 questions are just irrelevant.
14     MR. BIRCH:  Just so we're clear, when you
15 talk about common interest privilege, what is that
16 based on?
17     MR. LASKIN:  On the law.
18     MR. BIRCH:  Yes.  But whose common
19 interest?
20     MR. LASKIN:  The common interests between
21 the parties to the communication.  There may be a
22 common interest between Fairfax and TIG in these
23 circumstances.
24     MR. BIRCH:  Okay.  What are all of the
25 facts that you rely upon for your assertion that

Page 18

1  there's a common interest privilege?
2      MR. LASKIN: That's not a proper question.
3      MR. BIRCH: Well, I want to understand the
4  basis of the objection, because if we have a
5  refusals motion, this transcript is going to be
6  before the court, and the court will have to assess
7  whether these privileges were properly claimed. So
8  I would like to know what the factual basis for the
9  privileges claimed are.
10     MR. LASKIN: The common interest between
11 Fairfax and TIG.
12     MR. BIRCH: Okay. And what common
13 interest?
14     MR. LASKIN: I'll elaborate. If you bring
15 a motion, I'll elaborate on that with evidence at
16 the appropriate time. I'm not here to give
17 evidence.
18     MR. BIRCH: Well, you're claiming a
19 privilege. I'd like to know what it's based on.
20 BY MR. BIRCH:
21 31  Q.  To your knowledge, Mr. O'Sullivan, did
22 Fairfax actually take any steps to preserve
23 documents relating to the U.S. action prior to
24 February 14, 2003?
25     MR. LASKIN: Objection, not relevant.

Page 19

1  BY MR. BIRCH:
2  32  Q.  Mr. O'Sullivan, do you agree with me that
3  TIG sent an objection to Exhibit 1, the documentary
4  request?
5      A.  We served a document responding to these.
6  I don't believe it was titled objection. I think it
7  was titled -- I'm sure it's going to be Exhibit 2,
8  so I'll wait until I see it.
9  33  Q.  There was a document though?
10     A.  There was a document, yes. We served the
11 document probably 30 days after that, but I
12 shouldn't speculate.
13 34  Q.  Was Fairfax consulted with respect to the
14 response that was sent back in that 30-day period?
15     MR. LASKIN: Objection, relevance,
16 litigation privilege, probably common interest
17 privilege depending what circumstances relate to any
18 communication.
19 BY MR. BIRCH:
20 35  Q.  Now, with respect to -- just so I
21 understand the relationship between the parties, are
22 TIG and Fairfax affiliates?
23     MR. LASKIN: What do you mean by
24 affiliate, Mr. Birch? That term has a technical
25 meaning, for example under the Canada Business

Page 20

1  Corporations Act it means something, under the
2  Ontario Business Corporations Act it means
3  something.
4      MR. BIRCH: Under the U.S. Federal Rules
5  of Civil Procedure.
6      MR. LASKIN: Is there a definition of
7  affiliates in the Federal Rules?
8      THE WITNESS: There may well be. I'm not
9  aware of it.
10 BY MR. BIRCH:
11 36  Q.  So you don't know whether TIG and Fairfax
12 are affiliates under the rules?
13     A.  Assuming there's a definition of
14 affiliates in the Federal Rules, I don't know if
15 they would fall within that.
16 37  Q.  Would you look at Exhibit 1, Paragraph 7,
17 please.
18     A.  I'm sorry, Request Number 7?
19 38  Q.  Yes, the numbered Paragraph 7.
20     A.  Under Definitions and Instructions?
21 39  Q.  Correct.
22     A.  Okay.
23 40  Q.  There in Paragraph 7, it states TIG means
24 TIG Insurance Company, its employees, attorneys,
25 agents and affiliates.

Page 21

1      A.  Yes, it says that.
2  41  Q.  Right. And for the purposes of responding
3  to this documentary request, was any position taken
4  that Fairfax was not an affiliate?
5      MR. LASKIN: Objection, relevance.
6  BY MR. BIRCH:
7  42  Q.  When did Cadwalader or to your knowledge
8  TIG first make Fairfax aware that Trustmark was
9  seeking production of Fairfax's documents?
10     MR. LASKIN: Objection, not relevant.
11 BY MR. BIRCH:
12 43  Q.  Was that before or after February 14,
13 2003?
14     MR. LASKIN: Same position.
15 BY MR. BIRCH:
16 44  Q.  Could you turn, Mr. O'Sullivan, to
17 Exhibit H to Ms. Rubenstein's original affidavit.
18     A.  I did not bring a copy of Ms. Rubenstein's
19 affidavit.
20     MR. LASKIN: I have it. What exhibit?
21     MR. BIRCH: Exhibit H.
22 BY MR. BIRCH:
23 45  Q.  This is an e-mail message from Everett
24 Cygal.
25     I gather that he's at Schiff Hardin?

Page 22

1  A. He was as of earlier this year.
2  46 Q. He was at Schiff Hardin at the time this
3  message was sent, right?
4  A. He was a partner at Schiff Hardin at the
5  time. Whether he was on site at the offices of
6  Schiff Hardin, I don't know.
7  47 Q. Now, with respect to this e-mail message,
8  did you receive this, Mr. O'Sullivan?
9  A. I mean, it's addressed to me. I don't
10 recall receiving it, and I would not have received
11 it or seen it on February 14th, 2003, because I was
12 at a deposition in Texas.
13 48 Q. Okay. Do you have any evidence to suggest
14 that you never received this?
15 A. No. I just don't recall one way or the
16 other.
17 49 Q. Okay. To your knowledge, did Mr. Cohen
18 receive this message on or around February 14, 2003?
19 A. Mr. Cohen was also in a deposition in
20 Texas on February 14th. I just don't recall one way
21 or the other.
22 50 Q. Okay. What is your best recollection of
23 when you received this e-mail message?
24 A. I don't have any recollection of receiving
25 it.

Page 23

1  51 Q. Well, when you're out of the office, do
2  you have access to your e-mail through a Blackberry?
3  A. Did I have a Blackberry back then? I
4  don't remember if I had a Blackberry at the time. I
5  know I had a laptop.
6     Hey, I'm not trying to be difficult. I
7  just don't remember this e-mail. Assuming, you
8  know, it was directed to me, so it's a safe
9  assumption, although I know I shouldn't assume, that
10 I would have received it and I would have seen it at
11 some point within, you know, the next couple of days
12 or a week or so.
13 52 Q. So within a week of February 14th you
14 would have seen this, is that fair?
15 A. Yeah. I have no reason to doubt that I
16 didn't. I just don't remember it.
17 53 Q. Now, in the second paragraph of the
18 message, Mr. Cygal says, finally, we are preparing a
19 subpoena duces tecum to be served against Fairfax.
20 Will you accept service of process? We would like
21 to avoid involving the court in a motion regarding
22 the Hague Convention.
23    When you read that statement, what steps
24 did you or Mr. Cohen or anyone else at Cadwalader do
25 to respond to it?

Page 24

1     MR. LASKIN: It's not relevant to the
2  issues on the motion, Mr. Birch. I just don't see
3  how it has any relevance given everything that has
4  transpired to date. There's no --
5     MR. BIRCH: Well, the issue, Counsel, is
6  that certainly the discarding of documents around
7  February the 10th, 2003, has been admitted.
8     MR. LASKIN: If you have some allegation
9  that that constitutes contempt, then you should --
10 first of all, we were entitled to notice of it.
11 Your notice of motion does not refer to any of that,
12 and I'm not -- this is consistent with a whole
13 string of other questions that in my view are just
14 not relevant to the motion as it's framed. We're
15 entitled to particularity. Particularly when you
16 make an allegation like an allegation of contempt,
17 we're entitled to specifics of that allegation. We
18 haven't had those specifics. And we're not -- and
19 if you want to make those allegations, it carries
20 some consequences, but at the moment, that's not
21 part of the record, and we're not prepared to deal
22 with it.
23    MR. BIRCH: Well, Ms. Rubenstein's
24 original affidavit indicates that the uncontroverted
25 evidence is that documents were discarded in the

Page 25

1  same time period that they were being asked for by
2  Trustmark, and that is a factor that the court is
3  going to have to consider on this motion.
4     MR. LASKIN: You have not founded your
5  motion on that in any respect. It's not included in
6  the grounds. And we can debate it back and forth,
7  but you have my position on it. We were entitled to
8  notice if you were going to raise this.
9     MR. BIRCH: Well, we maintain our position
10 that this is relevant because it deals with the
11 circumstances under which the letters rogatory were
12 obtained.
13    MR. LASKIN: Those circumstances are not
14 relevant to this motion in any event.
15 BY MR. BIRCH:
16 54 Q. Were the contents of the e-mail message
17 relayed to Fairfax either directly or indirectly?
18    MR. LASKIN: Objection, relevance,
19 litigation privilege.
20 BY MR. BIRCH:
21 55 Q. Sir --
22    MR. BANNON: Just a second.
23       (Whereupon, an off-the-record
24       discussion was held.)
25    MR. BIRCH: Just to try to simplify

26

1  things, Counsel, are you taking a blanket common
2  interest privilege with respect to the
3  communications between Cadwalader and Fairfax?
4       MR. LASKIN: Yes.
5       MR. BIRCH: So we don't need to cover
6  that, is that fair?
7       MR. LASKIN: Yes.
8       MR. BIRCH: Okay.
9       MR. LASKIN: If you have some specific
10 questions that I think may be relevant, I will
11 consider it, I will certainly consider it question
12 by question, and I may suggest to you means of
13 dealing with that issue, but you can make that
14 assumption.
15      MR. BIRCH: What I'm going to do is I'll
16 assume that any time we deal with dealings between
17 Cadwalader and Fairfax, if you object to the
18 question, it's based on common interest privilege,
19 and you don't need to say that. If your objection
20 is based on some other privilege or ground other
21 than that, you'll obviously let me know.
22      Is that fair?
23      MR. LASKIN: Yes.
24 BY MR. BIRCH:
25 56 Q. When did Torys become involved with the

27

1  U.S. action or the Ontario proceeding? Can you give
2  me a date for that?
3       MR. LASKIN: I don't see how it's
4  relevant.
5       MR. BIRCH: Well, if there's any privilege
6  that's going to be asserted with respect to Torys, I
7  would like to know what the date is.
8       MR. LASKIN: Well, let's deal with it, but
9  at the moment I don't see that that has any
10 relevance.
11      MR. BIRCH: Counsel, are you claiming
12 privilege for communications between Torys and
13 Fairfax?
14      MR. LASKIN: Depending on the nature of
15 the communication, I may well be. You haven't asked
16 a question that engages that concern yet.
17 BY MR. BIRCH:
18 57 Q. First off, is there or has there ever been
19 a solicitor/client relationship between Torys and
20 Fairfax concerning the U.S. litigation?
21      MR. LASKIN: Objection. It's not
22 relevant, and it's privileged to the extent -- I
23 mean, obviously we're acting for Fairfax in relation
24 to this motion, to your application. You know that.
25 So if you're asking about something more broadly,

28

1  then that's the subject of privilege.
2       MR. BIRCH: I'm asking first in terms of
3  the U.S. action.
4       MR. LASKIN: And that's the subject of
5  privilege.
6       MR. BIRCH: If privilege is being claimed,
7  I'm entitled to know when the privilege starts, and
8  that's a factual matter.
9       MR. LASKIN: I haven't had to claim it yet
10 because you haven't asked a question yet that causes
11 me to want to claim it, so if you ask the question,
12 I'll give the grounds for the objection.
13      MR. BIRCH: The question merely is, is
14 there or has there ever been a solicitor/client
15 relationship between Fairfax and Torys in relation
16 to the U.S. action.
17      MR. LASKIN: And at the moment that's an
18 irrelevant question.
19      MR. BIRCH: I presume you'll agree that
20 there is a solicitor/client relationship between
21 Torys and Fairfax in the Ontario proceeding?
22      MR. LASKIN: Yes.
23      MR. BIRCH: When did that relationship
24 begin?
25      MR. LASKIN: I don't know.

29

1       THE WITNESS: I thought I was the witness.
2       MR. BIRCH: Would you undertake to find
3  out and advise me?
4       MR. LASKIN: Do you know, Mr. O'Sullivan?
5       THE WITNESS: I have no idea.
6       MR. LASKIN: Then I won't undertake it. I
7  mean, I can ...
8  BY MR. BIRCH:
9  58 Q. Now, Mr. O'Sullivan, you'll agree with me
10 that ultimately the decision was made by TIG not to
11 accept service of a subpoena on behalf of Fairfax?
12      MR. LASKIN: There's no issue in dispute
13 about this, Mr. Birch. It's not a relevant question
14 at this point on your motion.
15 BY MR. BIRCH:
16 59 Q. Did Torys have any involvement concerning
17 the consideration of the February 14 e-mail message
18 or the response to it?
19      MR. LASKIN: Objection, relevance,
20 privilege.
21      MR. BIRCH: Which privilege?
22      MR. LASKIN: Pardon me?
23      MR. BIRCH: Which privilege?
24      MR. LASKIN: Well, it's both litigation
25 privilege and solicitor/client privilege.

30

1  MR. BIRCH: Okay. So there was a
2  solicitor/client relationship between Torys and
3  Fairfax?
4  MR. LASKIN: By solicitor/client, I'm
5  including common interest, so a party is not obliged
6  to disclose -- anyway, I'll just -- I'm not going to
7  engage in a longer colloquy.
8  BY MR. BIRCH:
9  60  Q.  Who made the decision not to accept
10 service of the subpoena on behalf of Fairfax?
11    MR. LASKIN: Not relevant.
12 BY MR. BIRCH:
13 61  Q.  Now, Mr. O'Sullivan, I gather you'll agree
14 with me that a protective order was sought with
15 respect to the letters rogatory? In other words,
16 the letters rogatory were challenged?
17    A.  The letters rogatory were challenged, and
18 I believe the motion was labeled a motion for a
19 protective order.
20 62  Q.  Okay. Did Fairfax have any role in the
21 decision to challenge the letters rogatory or move
22 for the protective order?
23    MR. LASKIN: Object to the question, not
24 relevant, and it would be -- it's a hypothetical, of
25 course, but it would be protected by litigation

31

1  privilege and by -- well, I'll leave it at that.
2  BY MR. BIRCH:
3  63  Q.  Mr. O'Sullivan, who at Fairfax was
4  responsible for collecting the documents to respond
5  to the letters rogatory in the Ontario order?
6     A.  I don't know.
7  64  Q.  When did Fairfax begin the process of
8  collecting or preserving documents for the purposes
9  of responding to the Ontario order?
10    MR. LASKIN: I don't see how that's
11 relevant, Mr. Birch.
12    MR. BIRCH: Well, it's the issue of
13 contempt, Counsel.
14    MR. LASKIN: Well, we have gone back and
15 forth on that, Mr. Birch, and if your contempt
16 motion -- you have my position on that. It's not a
17 ground of your motion.
18    MR. BIRCH: Let's just anchor this in
19 concrete detail.
20    The Ontario order, for example, requires
21 the delivery of documents on or before May 30, 2003.
22 Obviously, for example, if Fairfax started to look
23 for the documents on the morning of May the 30th,
24 that would be certainly very relevant.
25    MR. LASKIN: To what?

32

1  MR. BIRCH: To the issue of contempt.
2  MR. LASKIN: The issue of contempt comes
3  on the grounds that you've cited in your motion.
4  You haven't said anything about this, so you have my
5  position on this. If you want to bring some other
6  motion, bring some other motion, but don't try to
7  bootstrap yourself into relevance on things that are
8  not relevant on the motion as you've framed it.
9     MR. BIRCH: So you're telling me, Counsel,
10 that if I want to ask these questions I've got to
11 amend my motion?
12    MR. LASKIN: You have to give us proper
13 notice so that we can deal with it. You haven't
14 given us proper notice. Who knows what the
15 evidentiary record will be if you give us proper
16 notice that raises these issues that you're dealing
17 with now. It's just not the fair way to conduct a
18 motion.
19    MR. BIRCH: So your position, Counsel, is
20 that if issues are raised, for example, in
21 Ms. Rubenstein's affidavit that are not explicitly
22 set out in the notice of motion, I'm still not
23 entitled to ask questions about that? Is that fair?
24    MR. LASKIN: Ms. Rubenstein can't expand
25 the grounds for the motion by whatever she chooses

33

1  to say. We're entitled to proper notice,
2  particularly when it comes in a reply affidavit. I
3  mean, that doubles the unfairness. It comes in the
4  reply affidavit, and we have no chance to deal with
5  it. That's not the way in which the schedule works
6  here, and it's not the way in which a motion is
7  fairly conducted.
8     So you have my position on that.
9     MR. BIRCH: Do we agree, Counsel, that
10 there was no complaint about the content of the
11 reply affidavit before today?
12    MR. LASKIN: I'm not giving evidence here,
13 Mr. Birch.
14 BY MR. BIRCH:
15 65  Q.  What searches were done by Fairfax to
16 comply with the letters rogatory in the Ontario
17 order?
18    MR. LASKIN: Not relevant.
19 BY MR. BIRCH:
20 66  Q.  Were members of the due diligence team
21 contacted to obtain -- sorry, to see whether they
22 were aware of any documents?
23    MR. LASKIN: Not relevant.
24 BY MR. BIRCH:
25 67  Q.  Prior to the deposition of Mr. Chan, were

9 (Pages 30 to 33)

34

1  any searches for electronic documents conducted,
2  including hard drives?
3        MR. LASKIN: Not relevant.
4        MR. BIRCH: Let's go off the record for a
5  second.
6              (Whereupon, an off-the-record
7              discussion was held.)
8        MR. BIRCH: We're back on.
9  BY MR. BIRCH:
10 68  Q.  Mr. O'Sullivan, I'd like you to turn to
11 the Ontario order, which is at Tab O.
12     A.  Of?
13 69  Q.  Of Ms. Rubenstein's original affidavit.
14     A.  Is it Rubenstein on Rubenstein?
15       MR. BANNON: Rubenstein.
16 BY MR. BIRCH:
17 70  Q.  I'd like you to turn now to Page 126 of
18 the record. This is Paragraph 10 of the letters
19 rogatory.
20       In Paragraph 10, it says, if any document
21 requested herein has been destroyed or discarded,
22 state as to each such document the nature of the
23 document, the identity of the person or persons who
24 destroyed or discarded it, the full circumstances of
25 its destruction or discarding, and the reason or

35

1  reasons why the document was destroyed or discarded.
2  Produce all documents that concern the destruction
3  of such document.
4        What I'm trying to understand, Counsel, is
5  I'm entitled to know whether the letters rogatory
6  were complied with, and there are specific
7  provisions here dealing with destruction or
8  discarding of documents.
9        So I would like the full particulars of
10 what searches were done, what documents were
11 identified as having been discarded, everything
12 listed in Paragraph 10.
13       MR. LASKIN: You're entitled to explore
14 what's relevant to the motion, Mr. Birch. Those
15 questions might or might not have been asked on
16 Mr. Chan's deposition, but that is not a ground that
17 has been specified in your notice of motion as a
18 basis on which you're seeking relief here, and
19 you've chosen to frame the motion in a particular
20 way, and in my view your questions need to relate to
21 the motion as you framed it.
22       MR. BIRCH: Well, the motion has been
23 framed as a motion for contempt, in other words for
24 failure to comply with the Ontario order.
25       MR. LASKIN: And you have set out the

36

1  grounds of noncompliance that you allege, and that
2  is nowhere among those grounds.
3        MR. BIRCH: Well, Rule 60.11 of the Rules
4  of Civil Procedure specifically deals with
5  noncompliance.
6        MR. LASKIN: But that's not good enough,
7  Mr. Birch. If that were all that were there, it
8  would be patently deficient. You've flushed out the
9  grounds, and you haven't given us any detail --
10 well, you've given us the details, you've told us
11 what the grounds are. You've said that Chan lacked
12 knowledge on material issues you said in respect of
13 documents, it's Matter 8, Point 8 in your grounds,
14 and that has nothing whatsoever to do with alleged
15 destruction of documents or alleged noncompliance
16 with the provision of the letters to which you just
17 referred Mr. O'Sullivan.
18       If you want to get into that, we were
19 entitled to notice of it so we could address it.
20 You haven't given us notice of it, and we're not
21 going to address it in cross-examination as the last
22 piece of this exercise.
23       MR. BIRCH: So just so I understand your
24 position, Counsel, if we deliver an amended notice
25 of motion that describes all of the things that

37

1  you're complaining are not in the present notice of
2  motion, you'll agree to answer questions about that;
3  is that right?
4        MR. LASKIN: Well, I'll look at the notice
5  of motion. It's not enough just to -- and will
6  consider whether in light of that we need to adduce
7  further evidence. We will consider whether in light
8  of that we need to cross-examine further.
9        You can't bootstrap, at the end of a
10 process, you can't go beyond the grounds that you've
11 set out.
12       So if you deliver an amended notice of
13 motion, we will consider it and we will deal with it
14 appropriately. It may include further affidavits,
15 it may include further cross-examinations. We will
16 just have to see.
17       MR. BIRCH: So you're not committing
18 yourself to answer the questions even if we amend
19 the notice of motion, is that fair?
20       MR. LASKIN: No, I'm saying -- stop
21 smirking, Mr. Birch, at me. I'm saying that if you
22 deliver a proper amended notice of motion, we will
23 assess what has to be done in light of it, including
24 the proper scope of relevance. We may well deliver
25 further material. And if your questions are

Page 66

1  2003. I was just answering I don't know if they
2  currently have them.
3  162 Q. To your knowledge, did anyone -- I guess
4  first off, Mr. O'Sullivan, were you concerned about
5  the fact that there were only roughly a thousand
6  documents in total dealing with due diligence?
7       MR. LASKIN: Don't answer the question.
8  It's not relevant.
9  BY MR. BIRCH:
10 163 Q. Did you take any steps or to your
11 knowledge did anyone else take any steps to follow
12 up concerning the issue about why there were so few
13 documents?
14      MR. LASKIN: Objection, not relevant and
15 argumentative.
16 BY MR. BIRCH:
17 164 Q. Mr. O'Sullivan, are you aware of what
18 searches were performed by Fairfax to locate
19 documents to comply with the Ontario order?
20      MR. LASKIN: Objection, not relevant.
21 BY MR. BIRCH:
22 165 Q. Prior to the time that the documents were
23 produced on or around May 30th, did you or to your
24 knowledge did anyone else disclose to Trustmark the
25 fact that some documents had been discarded earlier

Page 67

1  on in 2003?
2       MR. LASKIN: Objection, irrelevant.
3       MR. BIRCH: Mr. Laskin, obviously there
4  have been a series of refusals today, and I'm
5  becoming more and more concerned about the fact that
6  your client will not allow any questions to be
7  answered dealing with the steps that were taken to
8  comply with the Ontario order, and it seems that a
9  brick wall has been erected on that issue.
10      MR. LASKIN: You constructed the
11 foundation for the motion, Mr. Birch, in framing
12 your notice of motion, and we're dealing with
13 questions that fall within the framework that you
14 erected.
15      So if there's any brick wall -- in fact,
16 there are four of them, and they are the four
17 corners of your motion, and that's the basis on
18 which I've taken the positions I have taken.
19      MR. BIRCH: Well, is it Fairfax's position
20 that it has entirely complied with the Ontario
21 order?
22      MR. LASKIN: I'm not here to give you
23 positions. Essentially the answer is Fairfax has
24 complied with the order.
25      MR. BIRCH: And obviously --

Page 68

1       MR. LASKIN: But I'm not here to give
2  evidence.
3  BY MR. BIRCH:
4  166 Q. Now, do we agree that up to the time that
5  the documents were produced on or around May 30th,
6  no information was provided to Trustmark concerning
7  the fact that documents had been destroyed or
8  discarded or the circumstances under which that took
9  place?
10      MR. LASKIN: Objection, irrelevant.
11 BY MR. BIRCH:
12 167 Q. Mr. O'Sullivan, could you look at
13 Exhibit X to Ms. Rubenstein's original affidavit.
14 This is the letter from Cassels Brock dated June 5,
15 2003.
16      A. Any particular place you want me to look
17 at?
18 168 Q. Did you become aware of this letter on or
19 around June 5, 2003?
20      A. Yes, I was aware of the issues raised by
21 this letter in the early part of June. Whether it
22 was 5, 6, 8, I just don't recall the exact date.
23 169 Q. And I gather that as of that time that you
24 became aware of this letter, you, Mr. O'Sullivan,
25 knew that documents had been discarded by Fairfax?

Page 69

1       MR. LASKIN: Don't answer the question.
2  It's irrelevant.
3  BY MR. BIRCH:
4  170 Q. Would you turn to Tab Y. This is the
5  June 11, 2003 letter from Torys to Cassels Brock.
6       A. Okay.
7  171 Q. Did you have any input into the content of
8  this letter?
9       MR. LASKIN: Don't answer the question.
10      MR. BANNON: On what basis?
11      MR. LASKIN: Privilege, irrelevancy.
12 BY MR. BIRCH:
13 172 Q. Well, as a factual matter, did you review
14 a draft of the letter or did you become aware of the
15 contents of a draft letter before it was sent?
16      MR. LASKIN: Don't answer the question,
17 not relevant, and it would also be privileged. It's
18 part of a compound question and seems to be
19 eliciting privileged conversations.
20 BY MR. BIRCH:
21 173 Q. Mr. O'Sullivan, are you able to provide me
22 with any explanation about why this letter does not
23 reveal the fact that documents had been discarded?
24      MR. LASKIN: Objection, not relevant and
25 argumentative.

```
                                                     70
 1        MR. BIRCH: Well, I don't even know if
 2   Mr. O'Sullivan was involved in the preparation of
 3   this letter.
 4        MR. LASKIN: I don't think that's a
 5   question, Mr. Birch. You can make statements all
 6   you want.
 7        MR. BIRCH: It's a response to your
 8   position.
 9   BY MR. BIRCH:
10   174 Q. Now let's look at Paragraph 14 of your
11   affidavit, Mr. O'Sullivan.
12     A. Okay.
13   175 Q. In that paragraph, you indicate that
14   Mr. Chan gave evidence that the files were discarded
15   in the ordinary course of business after Mr. Chan
16   was transferred to Hong Kong.
17        Do you agree with me that's what it says?
18     A. Yes. Mr. Chan made clear during his
19   deposition, see Pages 24 to 25, these files which
20   were maintained in Mr. Chan's office were discarded
21   in the ordinary course of business after Mr. Chan
22   was transferred to Hong Kong.
23   176 Q. Do you agree with me that Mr. Chan never
24   talked about the ordinary course of business?
25        MR. LASKIN: The transcript speaks for
```

```
                                                     71
 1   itself.
 2   BY MR. BIRCH:
 3   177 Q. When you talked about the ordinary course
 4   of business, were you intending to use your words or
 5   Mr. Chan's words? Are those yours or his?
 6     A. If I was --
 7        MR. LASKIN: They are obviously his words.
 8   They are in his affidavit.
 9        THE WITNESS: If I was intending to quote
10   Mr. Chan, there would have been quotation marks.
11   BY MR. BIRCH:
12   178 Q. So you weren't quoting Mr. Chan?
13     A. I'm sorry, I shouldn't be flippant. I
14   don't believe I was intending to quote Mr. Chan.
15   Otherwise, there would be quotation marks.
16   179 Q. So the statement that the files were
17   discarded in the ordinary course of business, that
18   was your conclusion based on your review of
19   Mr. Chan's transcript?
20     A. Mr. Chan testified that he was transferred
21   to Hong Kong. Immediately thereafter, one of his
22   colleagues took over his office, and in the course
23   of cleaning up they discarded certain files,
24   including apparently the TIG due diligence file.
25   180 Q. Do you have any evidence concerning the
```

```
                                                     72
 1   circumstances under which the documents were
 2   discarded other than what is in Mr. Chan's
 3   deposition?
 4     A. None whatsoever.
 5   181 Q. How long have you been in practice,
 6   Mr. O'Sullivan?
 7        MR. LASKIN: Don't answer the question.
 8        THE WITNESS: Okay.
 9   BY MR. BIRCH:
10   182 Q. In your experience as a practicing lawyer,
11   have you ever come across a situation where a parent
12   company discards documents relating to an ongoing
13   lawsuit involving its subsidiary where there are
14   tens of millions of dollars at stake and where the
15   position is taken that that's in the ordinary course
16   of business?
17        MR. LASKIN: I will restrain myself and
18   just object on grounds of relevance and the
19   argumentative nature of the question.
20   BY MR. BIRCH:
21   183 Q. I'm just asking you, has that ever
22   happened to you?
23        MR. LASKIN: And I'm just objecting on the
24   basis that I told you.
25
```

```
                                                     73
 1   BY MR. BIRCH:
 2   184 Q. Do we agree that the discarding of
 3   documents was disclosed for the first time during
 4   the course of Mr. Chan's deposition?
 5        MR. LASKIN: Well, I don't like the way
 6   you framed the question, Mr. Birch. It's
 7   argumentative.
 8        MR. BIRCH: Let me rephrase it then.
 9   BY MR. BIRCH:
10   185 Q. Was it during Mr. Chan's deposition that
11   Fairfax for the first time indicated to Trustmark
12   that Fairfax's due diligence documents in Mr. Chan's
13   office had been discarded?
14        MR. LASKIN: That certain documents had
15   been discarded.
16        THE WITNESS: I am not aware of any
17   disclosure prior to Mr. Chan's deposition.
18   BY MR. BIRCH:
19   186 Q. And is there any reason why disclosure was
20   not made prior to Mr. Chan's deposition?
21        MR. LASKIN: Don't answer the question.
22   It's not relevant.
23   BY MR. BIRCH:
24   187 Q. Mr. O'Sullivan, can you turn to your
25   affidavit, first to Paragraph 1.
```

Spherion Depositions Services
AURORA (630) 851-8030    CHICAGO (800) 343-0733    O'HARE (847) 635-0828

82

1   A.  I have no knowledge of what Fairfax did or
2   does with respect to information on computers.
3   213 Q.  Now I just want to turn to the issues of
4   the letters rogatory.
5   A.  Okay.
6   214 Q.  And actually, sorry, before we turn to
7   that, I've asked you a series of questions
8   concerning searches that took place after the Chan
9   examination, that is searches for computers.
10      Were there any searches for electronic
11  documents on computers or servers or their hard
12  drives before the Chan examination?
13      MR. LASKIN:  I object to the question.
14  It's not relevant to the motion.
15      MR. BIRCH:  It's relevant to the issue
16  about whether there was compliance with the Ontario
17  order.
18      MR. LASKIN:  That's not a ground for your
19  motion, Mr. Birch.  We have already reviewed the
20  grounds insofar as they relate to document
21  production.
22  BY MR. BIRCH:
23  215 Q.  Now, with respect to the challenge of the
24  letters rogatory, did Fairfax have any input or role
25  in the decision to bring that motion for a

83

1   protective order?
2       MR. LASKIN:  Objection, not relevant, and
3   privileged.
4       MR. BIRCH:  I'm sorry, what kinds of
5   privilege are we talking about?
6       MR. LASKIN:  That would be litigation
7   privilege, solicitor/client privilege, common
8   interest privilege.
9       MR. BIRCH:  When you say solicitor/client
10  privilege, what client are we talking about?
11      MR. LASKIN:  Fairfax.
12      MR. BIRCH:  And who is the law firm that
13  the privilege relates to?
14      MR. LASKIN:  Who is the law firm that the
15  privilege relates to?  I'm not sure that I
16  understand your question.  Communications with -- I
17  suppose I may be merging common interests privilege
18  with solicitor/client privilege, per se, and making
19  some assumptions about what route communications
20  might have followed, but in any event --
21      MR. BIRCH:  What I'm trying to ascertain
22  is we know the client was Fairfax, and for there to
23  be a solicitor/client relationship, the client would
24  have to be dealing with the solicitor, and I'm
25  wondering which firm that solicitor --

84

1       MR. LASKIN:  Well, common interest
2   privilege is a variant of solicitor/client
3   privilege, so I'm talking about Fairfax is the
4   client.  You're asking about communications between
5   Fairfax and counsel, which might or might not have
6   taken place and might or might not have been routed
7   through Fairfax's Canadian counsel.
8       I think the whole context of your question
9   is designed to elicit privileged communications, and
10  I object to the question on the basis that I've
11  indicated.
12      MR. BIRCH:  You're not going to tell me
13  which firm it is, or is it multiple firms and who
14  are they?
15      MR. LASKIN:  I'm not going to answer your
16  question, and it's irrelevant in any event.
17      MR. BIRCH:  Well, it's relevant when we
18  argue this on a motion.  I want to know what
19  solicitor/client relationship is alleged so we can
20  see if it's genuine.
21      MR. LASKIN:  No, your question is
22  irrelevant in any event to the issues on your
23  motion.
24  BY MR. BIRCH:
25  216 Q.  Now, with respect to the position taken by

85

1   Fairfax on this motion, there's an allegation that
2   there was an agreement to narrow the scope of
3   discovery.
4       Is it your evidence, Mr. O'Sullivan, that
5   Fairfax was a party to that agreement?
6   A.  No.  I just refer to Paragraph 6.
7   217 Q.  So if I understand correctly, Fairfax is
8   relying upon an agreement that TIG entered into with
9   Trustmark; is that right?
10      MR. LASKIN:  Well, I'm counsel for
11  Fairfax, and Fairfax is relying on the scope of
12  relevance -- Fairfax's position is that which we
13  will convey in this context.  Fairfax's view is that
14  the scope of relevance in the deposition of Mr. Chan
15  turns on the scope of relevance in the U.S.
16  proceeding, and if the parties to the U.S.
17  proceeding have come to a view as to what the scope
18  of relevance is, that should govern.  It would be
19  bizarre to have the scope of relevance extend beyond
20  what the parties considered relevant.
21  BY MR. BIRCH:
22  218 Q.  Do we agree that TIG is not a party to the
23  Ontario order?
24  A.  Is that directed at me?
25  219 Q.  Whoever wants to answer it.