UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------x
SECURITY INSURANCE COMPANY OF :
HARTFORD, :
: CIVIL NO. 301CV2198(PCD)
Plaintiff, :
:
v. :
: October 25, 2004
TRUSTMARK INSURANCE COMPANY, :
:
Defendant. :
:
------------------------------------x
TRUSTMARK INSURANCE COMPANY, :
:
Third Party Plaintiff, :
:
v. :
:
TIG INSURANCE COMPANY, :
:
Third Party Defendant. :
:
------------------------------------x

**THE PARTIES' JOINT REPORT CONCERNING THE STATUS OF DISCOVERY AND DISPOSITIVE MOTIONS AND SEPARATE STATEMENTS CONCERNING SCHEDULING**

Plaintiff Security Insurance Company of Hartford ("Security"), Defendant and Third Party Plaintiff Trustmark Insurance Company ("Trustmark") and Third Party Defendant TIG Insurance Company ("TIG") respectfully submit: (1) a joint report concerning the status of discovery and dispositive motions; and (ii) separate statements concerning scheduling.

A. **THE PARTIES' JOINT REPORT CONCERNING THE STATUS OF DISCOVERY AND DISPOSITIVE MOTIONS**

1. Since July 2004, the parties have been attempting to schedule the completion of the deposition of Mr. Richard Jessel, one of Trustmark's experts. Mr. Jessel's deposition began on July 2, 2003, but was terminated before completion when Mr. Jessel became ill. The

NYLIB2 241160.2

resumption of the deposition was thereafter delayed, first by Mr. Jessel's illness, and then by the stay that the Second Circuit entered on August 8, 2003.

2. The completion of Mr. Jessel's deposition is essential to the completion of the remaining expert discovery. The parties have agreed that the deposition will be completed on November 5, 2004. In addition, limited additional fact discovery remains to be conducted.

3. The Court has determined all dispositive motions other than TIG's motion for summary judgment seeking dismissal of Trustmark's claims. The original moving and opposing papers have been served, and the parties have agreed that TIG will serve its reply papers, and submit the motion to the Court for decision, on November 12, 2004.

**B.    SECURITY'S STATEMENT ON SCHEDULING**

4. Security's primary goal is to ensure that this matter proceeds to trial as soon as reasonably possible, sometime in the Spring 2005. Security therefore respectfully proposes the following schedule for the completion of all pretrial tasks:

   a. **Service of Security's and TIG's expert reports by November 23, 2004;**

   b. **Completion of all fact and expert discovery by January 7, 2004;**

   c. **Completion of Part A of the Trial Preparation Order by January 28, 2005;**

   d. **Completion of Part B of the Trial Preparation Order by February 11, 2005;**

   e. **Completion of Part C of the Trial Preparation Order and case ready for trial by February 18, 2005.**[1]

5. Security respectfully submits that this proposed schedule is reasonable. The Second Circuit lifted its stay on May 20, 2004, five months ago. The parties have had ample

---

[1] Contrary to Trustmark's accusation, Security's proposed schedule does not make any "presumptuous" assumptions about this Court's Summer schedule. Security simply believes that this case can and should be tried in the Spring. In addition, Trustmark is wrong about the lack of prejudice to Security from a more extended trial schedule. The longer that Trustmark is not made to honor its obligations to Security, the more likely that Trustmark will never acquit those obligations, regardless of the outcome of this case.

time to complete any remaining discovery, and Security's proposed schedule affords them an additional two and a half months.

6.  That virtually no new discovery[2] has been taken since the stay was lifted is no fault of Security's. The piece of discovery critical to further progress in the case is Mr. Jessel's deposition, as that deposition must be completed before discovery of Security's and TIG's experts may be conducted because one or more of those experts expects to comment on Mr. Jessel's opinions and testimony. Security initiated efforts in July to schedule Mr. Jessel's deposition. During a July 14, 2004 conference call, counsel for Trustmark agreed to obtain available dates from Mr. Jessel. Yet, by almost five weeks later, and despite several follow-up requests from TIG and Security, Trustmark had provided no dates. By letter dated August 17, counsel for Security advised that TIG and Security would notice Mr. Jessel's deposition for a date of their choosing if counsel for Trustmark did not respond by August 20. Counsel for Trustmark finally did respond, and it was agreed that Mr. Jessel's deposition would be completed on September 21.

7.  Unfortunately, the deposition had to be postponed because a consultant of TIG's, who had been present for the initial day of Mr. Jessel's deposition, had an unexpected personal emergency. Security and TIG immediately asked that Trustmark provide new dates when Mr. Jessel was available in early October. In response, Trustmark proposed October 25 or 26. TIG and Security agreed to October 25, but Trustmark subsequently withdrew that date, purportedly because Raymond Lester, an in-house attorney at Trustmark (who had not been present during the initial day of Mr. Jessel's deposition) was not available.

8.  Trustmark proposed to reschedule Mr. Jessel's deposition in November. Security reluctantly agreed to November 5, but made clear that it would accede to no further delays and would move to strike Mr. Jessel as an expert witness if his deposition did not proceed on November 5. Thus, despite Security's diligent efforts, it will have taken nearly four months to resume and complete Mr. Jessel's deposition.

---

[2] Nearly all of the discovery Trustmark mentions as having occurred since the stay was lifted represents the completion of prior discovery, not the initiation of new discovery.

9.  Trustmark complains that Security's proposed schedule for the completion of expert discovery (Security and TIG have two experts each) is unfair because the Thanksgiving and Christmas holidays fall within Security's proposed timetable. This is a situation of Trustmark's own making, however, as it was Trustmark's failure to cooperate reasonably in scheduling Mr. Jessel's deposition that pushed back the entire discovery schedule. Moreover, even with the intervening holidays, Security respectfully submits that seven weeks is sufficient time to conduct all remaining discovery, including the depositions of four experts.

10. Security also disagrees with Trustmark regarding its claimed need for time to submit rebuttal expert reports. Trustmark raised the issue of rebuttal reports for the first time during a telephone conference with counsel for Security on October 15, 2004. Notably, in the parties' last Joint Report concerning the status of expert discovery, dated August 1, 2003, Trustmark made no mention of a need for rebuttal reports. Security believes Trustmark has raised the issue now solely as an instrument of delay. Security respectfully requests that no time be incorporated in the schedule for the submission of rebuttal expert reports or testimony and that, in any event, the overall schedule not be extended for this reason.[3]

11. As for Trustmark's overall scheduling proposal, it merely confirms Security's charge that Trustmark seeks to delay resolution of this litigation for as long as it can. Thus, Trustmark proposes that this case not be trial ready until late May 2005, one year after the Second Circuit lifted its stay. Quite simply, there is no reasonable justification for Trustmark's schedule.

12. In contrast, TIG's proposed schedule, which in many respects tracks Security's proposal, represents a good faith effort to ensure prompt resolution of the litigation. Normally, Security would expect to be able to negotiate a joint schedule with TIG in view of the similarity of their separate proposals. Security understands, however, that to be placed on the trial calendar for March 2005, the case must be trial ready in February. Because Security strongly desires a

---

[3] If the Court is inclined to allow rebuttal reports, Security respectfully requests that the parties be given an opportunity to participate in a short telephonic conference with the Court to be heard on this narrow issue.

4

trial in the Spring, it cannot agree to a schedule that would cost it one month on the Spring trial calendar.

C.    **TRUSTMARK'S STATEMENT ON SCHEDULING**

13.    Trustmark, too, desires to proceed to trial in an expeditious, but reasonable, way. Further, Trustmark agrees with Security that the prompt completion of the deposition of Trustmark's expert, Mr. Jessel, is required for the completion of the remaining expert discovery. Trustmark has worked diligently to coordinate the schedules of three law firms, their client representatives, and the witness, over three time zones, and through multiple trial, discovery and meeting commitments. Due to various scheduling difficulties, on the part of Mr. Jessel, TIG's consultant, Mr. David Thirkill (who could not be present on September 21), TIG's counsel (who could not be present on October 26) and Trustmark's counsel (who could not be present on October 25), the parties have agreed to complete this deposition on November 5. Accordingly, as Security and TIG agree, the pretrial schedule springs from that date.

14.    Trustmark disagrees with Security's contention that "no discovery" has been done since the stay has been lifted. As this Court is aware, parties have been working hard and actively to resolve numerous discovery issues and motions—some of which are still pending before the Court. Trustmark has: (i) compiled and produced the WEB hard drive file properties, in accordance with the Court's August 4, 2004 order, which required substantial work with computer consultants; (ii) received and reviewed 34,551 pages of new material, produced by Security and TIG since May 20, 2004, following the stay; (iii) produced 109,496 pages of documents in response to Security's requests; (iv) as set forth in Trustmark's Motion for Clarification, Trustmark has been actively pursuing discovery of TIG's parent company, Fairfax, including depositions and other proceedings regarding the motion for contempt currently pending in the Ontario Court; and (v) Trustmark prepared a detailed response to Security's motion for reconsideration of the Court's decision denying Security's motion for partial summary judgment, filed before the stay (and after receiving that response, Security withdrew its motion).

15.    While much has been accomplished, much remains to be done before the case will be ready for trial. TIG and Security have announced that they intend to designate two experts

NYLIB2 241160.2

each, for a total of four previously undisclosed expert witnesses. Security and TIG propose to make their designations and provide reports by November 23 and to provide all drafts, communications, and other documentation by November 29.

16. Trustmark assumes that some of those designations will be responsive to Trustmark's previously disclosed expert testimony, regarding, among other things, the materiality of TIG's fraudulent/negligent misrepresentations and omissions, failure of TIG's placement materials to conform to industry standards, violations of custom and practice by TIG and Security, Security's breach of its duty of good faith, and other grounds for rescission. But, TIG and Security have declined to reveal the subject matter or names of those experts to date, leaving Trustmark with every expectation that it may need to work with and designate rebuttal experts, after receiving the reports and documents that have now been promised for the end of November.

17. To that end, Trustmark proposes the following schedule to prepare this case for trial:

   a) **Service Of TIG and Security Expert Reports by November 19, 2004;**

   b) **Conclude Discovery Of TIG and Security Experts by January 24, 2005;**

   c) **Service of Trustmark's Rebuttal Expert Reports by February 18, 2005;**

   d) **Close of All Discovery (subject to Canadian proceedings) by March 15, 2005;**

   e) **Service of Part A of the Trial Preparation Order (by Security and Trustmark) by March 21, 2005**

   f) **Service of Part B of the Trial Preparation Order (by Trustmark and TIG) by April 20, 2005; and**

   g) **Completion of Part C of the Trial Preparation Order And The Case Ready For Trial by May 20, 2005.**

18. This schedule differs from the schedule offered by Security in three major respects.

19. First, Trustmark's proposed schedule includes three weeks for Trustmark to have expert rebuttal and responsive opinions prepared, as well as three and one-half weeks for TIG

6

NYLIB2 241160.2

and Security to conduct discovery of those rebuttal experts. It is both customary and proper for the party with the burden of proof to offer rebuttal expert testimony, if necessary. Here, Trustmark has the burden of proof with respect to its fraud and negligent misrepresentation claims against TIG, and with respect to the grounds for rescission that Trustmark has raised in defense to Security's claims.

20. Second, Trustmark's proposal allows for thirty days between Parts of the Court's Trial Preparation Order. Given the complexity of this multi-party case, the number of likely witnesses and the quantity of documents produced, this period is reasonable and necessary. In this case, over 410,000 pages of documents have been produced and over 45 witnesses have had their depositions taken. In this respect, both Trustmark and TIG agree that Security has not allowed adequate time in its proposed schedule.

21. Third, Security's counsel has advised counsel for Trustmark and TIG that Security's accelerated schedule is premised upon an assumption that this Court does not and will not try cases during June, July or August. Trustmark regards that assumption as presumptuous, and has so advised Security. It is Trustmark's understanding that the Court keeps an extremely active schedule, and may choose to try cases in the summer months, and if the case is ready for trial by the end of May, a trial in June (or even July) is possible if the Court deems such a schedule to be appropriate. Accordingly, Trustmark's schedule is entirely proper, especially in view of the complexity of this case. (It does include a few days' grace period surrounding Thanksgiving, Christmas and the New Year). Thus, the schedule Trustmark proposes is warranted for the preparation of this very serious and complicated combination of claims.

22. Security is wholly unjustified in accusing Trustmark of attempting to create delay. That attack has no basis in the record whatsoever. In the first place, for the above reasons, the parties' proposed schedules differ by less than three months (Security, trial as early as March; TIG, in April; Trustmark, in June). Indeed, in order to meet its accelerated schedule, Security unilaterally asks the Court to deprive Trustmark of its right to prepare its rebuttal on those issues upon which it has the burden of proof and to impose upon the holidays for all parties, witnesses, experts and counsel. While Trustmark concurs that this case should proceed toward trial with all

reasonable speed, Security offers no reason for its curtailed schedule and no prejudice to itself resulting from Trustmark's proposed schedule.[4]

23.     Trustmark's active but realistic schedule prejudices neither Security nor TIG. Furthermore, the Trustmark proposal minimizes the possibility that the parties would need to return to the Court to ask for additional time as the parties work their way through detailed expert testimony and discovery, and strive to meet the requirements of the pretrial order. Trustmark respectfully prays that the Court adopt its more reasonable schedule, rather than a schedule that would likely need to be changed, for the remaining stages of this extremely complex case.

**D.     TIG'S STATEMENT ON SCHEDULING**

24.     TIG agrees that, with a few minor differences, Security's proposed schedule is generally reasonable and appropriate. TIG does not believe, however, that Security's proposed schedule permits sufficient time to complete the Trial Preparation Order. Stated simply, the number of issues, the multitude of fact intensive allegations, the volume of documents, the number of witnesses who have been deposed, and the number of parties and counsel, will make the completion of the Trial Preparation Order a complex and onerous task.

25.     Accordingly, TIG respectfully proposes the following schedule for the completion of all pretrial tasks:

        a.     **Service of Security's and TIG's expert reports by November 23, 2004;**

        b.     **Completion of all fact and expert discovery by January 14, 2004;**

        c.     **Completion of Part A of the Trial Preparation Order by January 28, 2005;**

        d.     **Completion of Part B of the Trial Preparation Order by February 25, 2005;**

---

[4] Indeed, now that the Second Circuit has affirmed this Court's order staying the arbitration between TIG and Security (and the Supreme Court has denied review) there is no danger of an unseemly "race to judgment." Security is not prejudiced in any way through a less accelerated pretrial schedule.

       **e.**      **Completion of Part C of the Trial Preparation Order and case ready for trial by March 18, 2005.**

26.    The primary difference between TIG's proposed schedule and Security's proposed schedule is only two additional weeks for Parts B and C of the Trial Preparation Order. TIG's proposed schedule would have the case trial ready on March 18, 2005, only one month later than Security's proposed schedule which would have the case trial ready on February 18, 2005. While TIG shares Security's desire for an early trial date, given the complexity of the issues involved in this case, TIG believes it would be imprudent to unnecessarily shorten the time period necessary to complete the Trial Preparation Order. In that regard, TIG suggests that one additional month will not be prejudicial to any party.

27.    TIG also agrees with Security's comments concerning Trustmark's proposed schedule.

Dated: October 25, 2004

TRUSTMARK INSURANCE COMPANY

By: _____
    David R. Schaefer (ct 04334)
    Rowena A. Moffett (ct 19811)

BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT 06511

SCHIFF HARDIN LLP
David M. Spector (ct 21679)
Paula J. Morency (ct 24740)
John A. Bannon
6600 Sears Tower
Chicago, IL 60606-6473

THIRD PARTY DEFENDANT
TIG INSURANCE COMPANY

By: _____
    J. Daniel Sagarin (ct 04289)
    David Slossberg (ct 113116)
    Brian C. Fournier (ct 16272)

HURWITZ, SAGARIN & SLOSSBERG, LLC
147 North Broad Street
Milford, CT 06460-0112
Tel:   (203) 877-8000
Fax:  (203) 878-9800

CADWALADER, WICKERSHAM & TAFT, LLP
Larry I Brandes (ct 23789)
Harry P. Cohen (ct 20446)
Brian J. O'Sullivan (ct 23790)
100 Maiden Lane
New York, NY 10038
Tel:   (212) 504-6000
Fax:  (212) 504-6666

NYLIB2 241160.2

SECURITY INSURANCE COMPANY
OF HARTFORD

By: _____
Frank F. Coulom, Jr. (ct 05230)
Marion B. Manzo (ct 22068)

ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103
Tel:   (860) 275-8200
Fax:  (860) 275-8299
Email: fcoulom@rc.com
           mmanzo@rc.com

DEWEY BALLANTINE LLP
David J. Grais (ct 23352)
Kathryn C. Ellsworth (ct 25029)
Erick M. Sandler (ct 25029)
1301 Avenue of the Americas
New York, New York 10019
Tel:   (212) 259-8000
Fax:  (212) 259-6333

GIBSON DUNN & CRUTCHER LLP
Mark B. Holton (ct 21727)
Kathryn E. Nealon (ct 22754)
200 Park Avenue
New York, New York 10166
Tel:   (212) 351-4000
Fax:  (212) 351-4035

12

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was sent via facsimile and first class mail, postage prepaid, on this 26th day of October, 2004 to the following:

J. Daniel Sagarin, Esq.  
David A. Slossberg, Esq.  
Brian C. Fournier, Esq.  
Hurwitz, Sagarin & Slossberg, LLC  
147 North Broad Street  
Milford, CT 06460-0112  

David J. Grais, Esq.  
Kathryn C. Ellsworth, Esq.  
Erick M. Sandler, Esq.  
Dewey Ballantine LLP  
1301 Avenue of the Americas  
New York, NY 10019  

Lawrence I. Brandes, Esq.  
Harry P. Cohen, Esq.  
Brian J. O'Sullivan, Esq.  
Cadwalader, Wickersham & Taft LLP  
100 Maiden Lane  
New York, NY 10038  

Mark B. Holton, Esq.  
Kathryn E. Nealon, Esq.  
Gibson, Dunn & Crutcher LLP  
200 Park Avenue  
New York, NY 10166  

_____  
Marion B. Manzo