UNITED STATES DISTRICT COURT
THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>                                              Plaintiff,<br>v.<br><br>TRUSTMARK INSURANCE COMPANY,<br>                                                Defendant. | CIVIL ACTION NO.<br><br>3:01 CV 2198 (PCD) |
| TRUSTMARK INSURANCE COMPANY,<br><br>                                Third-Party Plaintiff,<br>v.<br><br>TIG INSURANCE COMPANY,<br>                                Third-Party Defendant. | SEPTEMBER 24, 2004 |

**THIRD-PARTY DEFENDANT TIG INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL
TRUSTMARK AND WEB TO PRODUCE DOCUMENTS AND
OTHER DATA FROM THE WEB LOCAL ACCESS NETWORK SERVER**

Third Party Defendant TIG Insurance Company ("TIG"), through its counsel, submits this memorandum of law in support of its motion to compel Trustmark Insurance Company ("Trustmark") and WEB Management LLC ("WEB") to produce documents and other data located on WEB's local access network server.

NYLIB2 237901.1

## BACKGROUND

**A.    The Relationship Between Trustmark and WEB**

WEB Management LLC ("WEB") was a managing general underwriter (or "MGU") that wrote reinsurance business during the late 1990s on behalf of both Trustmark and United States Life Insurance Company ("US Life"). Pursuant to an unwritten "partnership" agreement, US Life and Trustmark shared on a 50/50 basis the net results, after retrocession protections, of all business written by WEB during 1997 and 1998, irrespective of whether the risk was written on US Life or Trustmark paper.[1]

In April 2000, Trustmark and US Life, on the one hand, and WEB, on the other hand, entered into a settlement agreement resolving all potential disputes between the parties (the "Settlement Agreement"). Pursuant to the Settlement Agreement "ownership of [WEB's] original files, records, documents, software, and data belongs to United States Life Group and Trustmark." O'Sullivan Decl., Ex. A at 2 ¶ 2(b)(i).

**B.    TIG's Document Requests**

On September 30, 2002, TIG served a request for the production of documents on Trustmark, which called for the production of, among other things, all documents relating to the 1998 and 1999 Treaties. (A copy of TIG's initial request for the production of documents is attached as Exhibit B to the O'Sullivan Declaration.) On October 7, 2002, TIG served a document subpoena on WEB, which also called for the production of, among other things, all documents relating to the 1998 and 1999 Treaties. (A copy of TIG's document subpoena to WEB is attached as Exhibit C to the O'Sullivan Declaration.)

---

[1]    Effective December 31, 1998, US Life terminated its MGU agreement with WEB and did not participate in any business WEB wrote after that date.

On October 30, 2002, WEB submitted its response to the subpoena and, on November 4, 2002, Trustmark submitted its response to TIG's document request. (Copies of WEB's response to the subpoena and Trustmark's response to TIG's document request are attached as, respectively, Exhibits D and E to the O'Sullivan Declaration.) WEB was represented in connection with the subpoena by Schiff Hardin, counsel for Trustmark in this litigation.

On December 4, 2002, TIG moved to compel the production of various categories of documents from both Trustmark and WEB. On February 5, 2003, the Court issued a ruling granting in part TIG's motion to compel.

On June 18, 2003, TIG moved to compel Trustmark to produce the hard drive for the WEB computer. On August 4, 2003, the Court issued a ruling granting in part TIG's motion to compel the production of the WEB hard drive. Specifically, the Court stated that:

> This Court is not unsympathetic to TIG's argument that the file properties of files contained on the hard drive may contain useful information. As such, all relevant files, whether deleted files still stored on the hard drive or active files, shall be placed in a single directory. The properties of the files in this directory shall be displayed in detail, and the printed form of such delay shall be produced.

August 4, 2004 Rulings on Prior Discovery Motions at 6.

C.    **The US Life Arbitration**

During 2003 and 2004, TIG engaged in an arbitration with US Life – Trustmark's "partner" in the WEB Facility – concerning issues relating to the 1998 Treaty (the "Arbitration").[2] On the eve of the Arbitration hearing, US Life produced for the first time

---

[2] As the Court may recall, WEB entered into the 1998 Treaty, which was the predecessor contract to the reinsurance contract at issue in this litigation, on US Life paper (meaning that US Life was TIG's reinsurer on that business). However, it is undisputed that the 1998 Treaty was subject to the unwritten "partnership" agreement between US Life and Trustmark, meaning that Trustmark has a 50% share of that business (after all retrocessional protections).

NYLIB2 237901.1                          -3-

numerous electronic data files relating to the 1998 and 1999 Treaties. During the Arbitration, David Stone, the individual at US Life with day-to-day responsibility for the WEB business, testified that:

- WEB had maintained the electronic data files on its local access network server (the "LAN server") (O'Sullivan Decl., Ex. F at 1302:16-03:25, 1323:6-24:7);

- in mid-2000, US Life obtained from WEB three CD-ROMs, which WEB represented included all of their electronic data files relating to the business written on behalf of US Life and/or Trustmark (id. at 1323:6-24:11); and

- Mr. Stone provided Trustmark a copy of the CDs containing WEB's electronic data files in mid-2000 (id. at 1193:12-15).

Significantly, neither Trustmark nor WEB produced any of these electronic files in this litigation (or in Security Insurance Company of Hartford v. Trustmark Insurance Company, Civ. No. 3:00CV1247 (PCD)), despite the fact that they were responsive to numerous document requests and subpoenas served on Trustmark and WEB by both TIG and Security.

### D.  The Parties' Discovery Dispute

On August 20, 2004, counsel for TIG wrote to counsel for Trustmark expressing its concern that "Trustmark and WEB (who Schiff Hardin represented in connection with its production of documents in response to TIG's document subpoena) have not produced all WEB documents responsive to TIG's requests and the Court's prior discovery rulings." O'Sullivan Decl., Ex. G.  Specifically, TIG asked Trustmark to confirm whether they had previously searched the LAN server for relevant materials and, if not, whether they would immediately conduct such a search in order "to ensure that its production of documents responsive to TIG's requests and/or the Court's various discovery rulings [wa]s complete." Id. TIG also asked Trustmark whether it would agree to "produce the same information for the 'relevant files'

contained on the WEB [LAN] server that the Court ordered it to produce as respects the files on the WEB hard drive." Id.

On August 25, 2004, Trustmark rejected TIG's requests that it produce additional information from the LAN server, stating that it "ha[s] no legal or practical duty to undertake to access, copy and search the LAN in the course of discovery." O'Sullivan Decl., Ex. H.

On August 26, 2004, TIG asked Trustmark to reconsider its position on this issue, since "[p]ursuant to the Trustmark/US Life/WEB settlement agreement, documents and other information on WEB's LAN server are clearly within Trustmark's custody and control, and thus should have been produced years ago." O'Sullivan Decl., Ex. I. Trustmark never responded to this email.

## ARGUMENT

### THE COURT SHOULD COMPEL TRUSTMARK AND WEB TO PRODUCE ALL RELEVANT INFORMATION FROM THE WEB LAN SERVER

Under the Federal Rules of Civil Procedure, a party is required to produce all relevant information that is within its "possession, custody or control." Fed. R. Civ. P. 26(b)(1), 34(a). Here, there is no question that Trustmark has custody and control over the information on the LAN server since the Settlement Agreement vests Trustmark with "ownership of [WEB's] original files, records, documents, software, and data." Accordingly, the Court should order Trustmark to produce all information that is located on the LAN server responsive to TIG's requests and/or the Court's prior discovery rulings.

In any event, there is no dispute that WEB continues to have possession of the LAN server and, accordingly, should have produced all documents and other information on it that was responsive to TIG's subpoena. See O'Sullivan Decl., Ex. J, at 606:5-11. Consequently, the Court should also order WEB to produce all information that is located on the LAN server responsive to TIG's subpoena.

Finally, just like with respect to the WEB hard drive, the file properties of the files on the LAN server may contain useful and relevant information. Accordingly, the Court should direct Trustmark and WEB to place all relevant files located on the LAN server, whether active or deleted, into a single directory and to produce a printed out form of the directory, reflecting the file properties for such files.

## CONCLUSION

For the reasons set forth above, TIG respectfully requests that the Court order Trustmark and WEB to: (i) produce all information that is located on the LAN server responsive to TIG's document requests and subpoena and/or the Court's prior discovery rulings; and (ii) to produce a printout of a directory reflecting the file properties of all relevant documents on the LAN server.

THIRD PARTY DEFENDANT
TIG INSURANCE COMPANY

By: /s/ David Slossberg
J. Daniel Sagarin   CT04289
David Slossberg CT 113116
Brian C. Fournier CT16272
HURWITZ, SAGARIN & SLOSSBERG, LLC
147 North Broad Street
Milford, Connecticut 06460-0112
Tel.: (203) 877-8000
Fax: (203) 878-9800

-and-

Larry I. Brandes CT 23789
Harry P. Cohen CT 20446
Brian J. O'Sullivan CT 23790
CADWALADER, WICKERSHAM & TAFT, LLP
100 Maiden Lane
New York, NY 10038
Tel: (212) 504-6000
Fax: (212) 504-6666

Attorneys for Third-Party Defendant
TIG Insurance Company

## CERTIFICATE OF SERVICE

This is to certify that on September 24, 2004, a true and correct copy of the foregoing was sent via facsimile and mailed, postage prepaid, first class mail, to:

| | | |
|---|---|---|
| Frank F. Coulom, Jr., Esq.<br>Marion B. Manzo, Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br><br>Attorneys for Plaintiff | Alia L. Smith<br>Christine Y. Wong, Esq.<br>Mark B. Holton, Esq.<br>James L. Hallowell, Esq.<br>Kathryn E. Nealon, Esq.<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue, 47th Floor<br>New York, NY 10166-0193<br><br>Attorneys for Plaintiff | David J. Grais, Esq.<br>Erick M. Sandler, Esq.<br>Robert J. Morrow, Esq.<br>Kathryn C. Ellsworth, Esq.<br>Dewey Ballantine LLP<br>1301 Ave of the Americas<br>New York, NY 10019-6092<br><br>Attorneys for Plaintiff |
| David R. Schaefer, Esq.<br>Rowena A. Moffett, Esq.<br>Brenner, Saltzman & Wallman<br>271 Whitney Avenue<br>P.O. Box 1746<br>New Haven, CT 06511-1746<br><br>Attorneys for Defendant,<br>Third Party Plaintiff | David M. Spector, Esq.<br>Everett J. Cygal, Esq.<br>Ronald S. Safer, Esq.<br>Amy M. Rubenstein, Esq.<br>Michael Mullins, Esq.<br>Paula J. Morency, Esq.<br>William E. Meyer, Jr., Esq.<br>Dennis G. LaGory, Esq.<br>Sharon A. Doherty, Esq.<br>Schiff Hardin & Waite<br>6600 Sears Tower<br>Chicago, IL 60606-6473<br><br>Attorneys for Defendant,<br>Third Party Plaintiff | |

_____
David A. Slossberg