**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SECURITY INSURANCE COMPANY OF ]
HARTFORD, ]
       ]
            Plaintiff, ]
       ]
       ]
       ]
TRUSTMARK INSURANCE COMPANY, ]
       ]          Civil No. 301CV2198(PCD)
            Defendant; ]
       ]
       ]
       ]
           v. ]
       ]
TIG INSURANCE COMPANY, ]
       ]
           Third Party Defendant. ]
       ]

**TRUSTMARK INSURANCE COMPANY'S MEMORANDUM**
**IN OPPOSITION TO TIG'S MOTION FOR SUMMARY JUDGMENT**

David M. Spector CT 21679
Everett J. Cygal CT 22765
William E. Meyer, Jr.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, Illinois 60606-6473

Jeffrey Hellman
Zeisler & Zeisler
558 Clinton Avenue
P.O. Box 3186Bridgeport, CT 06605

Counsel for Respondent
TRUSTMARK INSRUANCE COMPANY

**Table of Contents**

COUNTERSTATEMENT OF FACTS ................................................................2

ARGUMENT.................................................................................................2

THE COURT SHOULD DENY TIG'S MOTION FOR SUMMARY JUDGMENT................2

I.    TRUSTMARK'S CLAIMS AGAINST TIG ARE GOVERNED BY
      CONNECTICUT LAW.........................................................................4

      Trustmark Acted In Reliance Upon TIG's Representations In
      Connecticut.................................................................................6

      Trustmark Received The Representations In Connecticut............6

      Connecticut Is The State Of Performance ...................................6

II.   THE "ECONOMIC LOSS RULE" DOES NOT BAR TRUSTMARK'S
      NEGLIGENT MISREPRESENTATION CLAIM ..........................................7

III.  TIG CANNOT EVADE LIABILITY FOR ITS FRAUDULENT
      OMISSIONS BY CLAIMING THAT IT OWED NO DUTY TO
      TRUSTMARK. ....................................................................................9

      A.    TIG/AON Knew or Should Have Known  Its Conduct
            Would Victimize Trustmark................................................9

      B.    TIG Ignores Its Duty To Act in Utmost Good Faith...........10

IV.   TRUSTMARK HAS PRESENTED SUBSTANTIAL EVIDENCE IN
      SUPPORT OF ITS CLAIMS OF FRAUDULENT
      MISREPRESENTATIONS AND OMISSIONS ...........................................13

      A.    TIG And Its Agent AON Are Guilty Of   Numerous
            Fraudulent Misrepresentations And Omissions................14

            1.    Prelude to the Fraud – TIG Determines To
                  Lower Its Retention Dramatically, to Pass a
                  Known Loss Problem to its Reinsurers.................15

            2.    TIG/AON Misrepresents The Reason For
                  Purchasing Low Layer Reinsurance .....................15

            3.    Material Information was Withheld From or
                  Misrepresented by AON and TIG ..........................17

            4.    The Materials Withheld Were Factual In
                  Nature ................................................................22

            5.    Other Written Misrepresentations in the 1999
                  Placement Materials.............................................23

                  a.    Geographic Expansion................................23

                  b.    Muirfield Audit Coverup ............................25

                  c.    Misrepresenting The VSC Block As
                        Desirable And Profitable .............................28

d.      Misrepresenting TIG's Ability To Report
Losses .......................................................... 28

B.      Robin Ekwall Reasonably Relied On TIG/AON's
Misrepresentations............................................ 30

C.      TIG/AON's Misrepresentaions And Omissions Were
Material ...................................................... 32

D.      The Record Is Replete With Evidence That Tig/Aon's
Fraud And Misconduct Damaged Trustmark.................. 33

CONCLUSION.................................................................... 35

**Table of Authorities**

CASES

*Accord, Chen v. Pitney Bowes*
    *Corporation*, 195 F. Supp. 2d 368, 375 (D. Conn. 2002) ................................................................ 9
*Aetna Cas.& Surety Co. v. Home Ins. Co.*, 882 F. Supp. 1328, 1349 (S.D.N.Y. 1995) ........................ 9, 15
*Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965 (1992) ....... 3
*Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 282 (S.D.N.Y. 1998) ................................. 13
*Almonte v. New York Medical College*, 851 F. Supp. 34, 39 (D. Conn. 1994) ........................................... 5
*Anastasia v. Beautiful You Hair Designs, Inc.*, 61 Conn. App. 471, 478, 767 A.2d 118, 123 (2001) ........ 25
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ...................................................................... 14
*Carlington Australia Gen. Ins. Ltd. v. St. Paul Fire & Marine Ins. Co.*,
    722 F. Supp. 48, 53 n.1 (S.D.N.Y. 1989) ........................................................................... 19, 21
*Christiana Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992) ............................... 12
*Connecticut Pipe Trades Health Fund v. Philip Morris, Inc.*,
    153 F. Supp. 2d 101, 106 (D. Conn. 1997) .............................................................................. 5
*Cortland Raquet Club v. Oy Saunatec, Ltd.*, 2003 WL 1108740, at *5 (S.D.N.Y. 2003) .................... 14, 34
*Crowther v. Guidone*, 183 Conn. 464, 468; 441 A.2d 11, 14 (1981) ...................................................... 25
*D'Ulisse-CUPO v. Board of Directors of Notre Dame High School*,
    202 Conn. 206, 217, 520 A.2d 217, 223 (Conn. 1987) .............................................................. 8
*Fax Telecommunicaciones* .................................................................................................................. 23
*Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 167, 679 N.E.2d 1197, 1200 (1997) ........ 7
*First Federal Savings and Loan Assoc. v. Kijanko*,
    1999 WL 73793, at *5 (Conn. Super. Ct. Feb. 4, 1999) ........................................................... 22
*First Nationwide Bank v. Gelt Funding Corp.* 27 F.3d 763, 768 (2d Cir. 1994) ...................................... 37
*Foy v. Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir. 1997) ........................................................... 8
*Gambardella v. Pentec, Inc.*, 218 F. Supp.2d 237, 243 (D. Conn. 2002) ............................................... 16
*Gelinas v. Gelinas*, 10 Conn. App. 167, 173, 522 A.2d 295 (1987) ....................................................... 10
*Giulietti v. Giulietti*, 65 Conn. App. 813, 843, 784 A.2d 905, 930 (2001) ............................................. 11
*J. Frederick Schokes Agency v. Mitchell*, 191 Conn. 353, 359, 464 A.2d 795, 799 (1983) ...................... 17
*Johnson v. Flammia*, 169 Conn. 491, 496, 363 A.2d 1048, 1052 (1975) ............................................... 36
*Macomber v. Travelers Prop. & Cas. Co.*, 261 Conn. 620, 636, 804 A.2d 180, 191 (2002) ..................... 11
*Maharishi School of Vedic Sciences, Inc. v. Connecticut Constitutional Assoc. L.P.*,
    260 Conn. 598, 606, 799 A.2d 1027, 1031-32 (2002) ............................................................. 15
*Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir.1993) ......................................... 15
*Meyers v. Cornwell Quality Tools, Inc.*, 674 A.2d 444 (Conn. App. Ct. 1996) ........................................ 27
*Miller v. Bourgoin*,
    28 Conn. App. 491, 497-98, 613 A.2d 292, 295, *cert. denied*, 223 Conn. 927, 614 A.2d 825 (1992) ..... 4
*Mitchell v. Mitchell*, 625 A.2d 828 (Conn. 1993) ................................................................................. 28
*Moorman Mfg. Co v. Nat'l Tank Co.*, 91 Ill.2d 69, 88-89, 435 N.E.2d 443 (Ill. 1982) ............................. 8
*Mutuelle Generale Francaise Vie v. Life Assur. Co. of Pa.*, 688 F. Supp. 386, 395 (N.D. Ill. 1988) ....... 30
*Nationwide Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999) ..................................... 4
*New Horizon Financial Services, L.L.C. v. First Financial Equities, Inc.*,
    175 F. Supp. 2d 348, 352-53 (D. Conn. 1997) ....................................................................... 28
*O'Connor v. O'Connor*, 201 Conn. 632, 639, 519 A.2d 13, 17 (1986) ...................................................... 5
*Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1097-98 (D. Conn. 1995) ............ 27
*Payne v. Milwaukee County*, 146 F.3d 430, 432 (7th Cir. 1998) ........................................................... 14
*Putnam Resources v. Frenkel & Co.*, 1992 WL 394386, at *2 (Ct. Super. 1992) ..................................... 10
*Quinn v. The McGraw-Hill Co. Inc.*, 168 F.3d 331, 336 ........................................................................ 23
*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) ............................................... 14

*Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, Civ. No. 3:01cv2198 (PCD) (Aug. 27, 2002) .......... 7

*Shaw v. Greenwich Anesthesiology Assoc., P.C.,* 137 F. Supp. 2d 48, 53 (D. Conn. 2001) ........................ 3

*Sullivan v. Mang*, 2002 WL 31000170, *3 (Conn. Super. Ct. 2002)...................................................... 30

*Sun Mutual Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510 (1883).......................................................... 12

*Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 490 (2d Cir. 1998) ................................................. 23

*Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049, 1066 (2d Cir. 1993)...................... 12, 22

*Union Indem. Ins. Co. v. American Centennial Ins. Co.*, 674 N.E.2d 313, 320 (1996)............................ 13

*v. Qwest Communications, Int'l, Inc.*, 147 F.Supp. 2d 116, 125 (D. Conn. 2001).................................... 16

*Wedig v. Brinster*, 469 A.2d 783, 788 (Conn. App. Ct. 1983) ................................................................ 30

*Williams Ford, Inc. v. The Hartford Courant Company*,
    229 Conn. 559, 579, 657 A.2d 212, 222 (1994) ................................................................................ 9

*Williams Ford, Inc.*, 229 Conn. at 576, 657 A.2d at 220-21 (1994)........................................................... 9

*Williams v. State Farm Mutual Automobile Insurance Company*,
    229 Conn. 359, 371-73, 641 A.2d 783, 789-90 (1994)........................................................................ 5

*Woodling v. Garrett Corp.*, 813 F.2d 543, 552 (2d Cir. 1987)................................................................ 27

## STATUTES, RULES & TREATISES

Fed. R. Civ. P. 56(c) .................................................................................................................................. 2

Local Rule 56(a)(2) .................................................................................................................................... 2

Restatement (Second) of Conflict of Laws § 148 cmt. a (1971) ................................................................ 6

Restatement (Second) of Torts § 533 (1977)............................................................................................. 11

Section 552 of the Restatement (Second) of Torts (1977).......................................................................... 8

TIG's memorandum in support of its motion for summary judgment provides ample reason for the Court to deny that motion. In its 40 pages of argument, TIG essentially concedes Trustmark's proof, but takes the position that it does not represent "clear and convincing" evidence of fraud, misrepresentation or omission. TIG's memorandum misapplies the standard for summary judgment, misinforms the Court on the applicable choice of law principles, and fails to address -- at all -- the fundamental principle of reinsurance law that imposed on TIG and its agent, AON, the obligation to make full disclosure of all material facts to WEB, as the underwriter and representative for Security and Trustmark. This "duty of utmost good faith" contrasts sharply with the evidence before the Court regarding false representations and actionable omissions by TIG/AON. Unearthed through hard-fought discovery in the matter, that evidence demonstrates the serious issues of fact whose determination is the province of the jury.

WEB and its clients fell victim to a well-planned and carefully-crafted fraud. TIG and AON withheld material information about this book of business and misrepresented its condition both orally and in writing to WEB – while at the same time telling a far more candid story to TIG's soon-to-be-parent company, Fairfax. In contrast to the statements made to encourage WEB's clients to reinsure this business, in November 1998 TIG confessed to Fairfax:

> "Nobody wants Direct side....potentially bad stuff there ... All Program business. ...there are deviations from the Template MORE often than not....Dress it up and sell it."

(FX 000515-17) (emphasis in original). The evidence at trial, including extensive expert testimony, will demonstrate that TIG/AON violated the duty of utmost good faith, failed to disclose the true condition of this book of business, and thereby induced WEB to bind Security and, then, Trustmark on the reinsurance at issue in

-1-

this action.  The TIG/AON misrepresentations and omissions were material to Mr. Ekwall's underwriting decision and would have been material to any prudent underwriter.  Without the TIG/AON misconduct, WEB never would have bound Security and Trustmark to this risk.

Trustmark respectfully submits that it is fully entitled to a jury's evaluation of the misrepresentations and omissions that would have left Trustmark "holding the bag" for tens of millions of dollars of TIG's losses.  Trustmark seeks damages in the amount of Trustmark's net losses beyond the premiums it received on the TIG workers compensation portfolio, indemnity for any such losses that may arise in the future, and punitive damages, in order to punish and deter the kind of deliberate wrongs inflicted in this case by TIG and its agent.

## COUNTERSTATEMENT OF FACTS

As its Counterstatement of Facts, Trustmark restates and incorporates herein its Local Rule 56(a)(2) Statement (hereinafter "Trustmark Resp."), as well as the Exhibits attached to that Statement.

## ARGUMENT

### THE COURT SHOULD DENY TIG'S MOTION FOR SUMMARY JUDGMENT

TIG is not entitled to summary judgment unless it demonstrates that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter," but rather determines "whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In making this determination, "the court must view the facts in the

light most favorable to the adverse party and draw inferences in its favor." *Shaw v. Greenwich Anesthesiology Assoc., P.C.*, 137 F. Supp. 2d 48, 53 (D. Conn. 2001); *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965 (1992) (all ambiguities must be resolved and all reasonable inferences be drawn against the moving party).

TIG's motion must be denied because Trustmark has gone beyond the pleadings and presented evidence, cognizable under Rule 56(c), setting forth the following specific facts demonstrating that a reasonable jury could find in its favor:

- TIG through its agent, AON, made knowingly false statements of fact to WEB Underwriting Ltd. respecting the profitability of the TIG workers' compensation portfolio, as well as TIG's ability to report claims'information in a timely and adequate fashion (*see infra* at 15-30).

- TIG/AON knowingly failed to provide WEB with reports containing adverse data relating to the TIG workers' compensation portfolio (*see infra* at 23-24).

- The information misrepresented and omitted by TIG/AON was material to the underwriting decisions WEB made with respect to the TIG workers' compensation portfolio (*see infra* at 33-34).

- TIG/AON was aware at all relevant times that WEB was using the information provided by TIG/AON in order to underwrite a reinsurance program in which Trustmark was the ultimate risk bearer (*see infra* at 10-11).

TIG does not deny that Trustmark has unearthed and presented the foregoing evidence of fraud, misrepresentation and omission. Instead, TIG makes the curious argument that each individual piece of that evidence, on its own, is insufficient to meet the "clear and convincing" standard of proof (TIG Brf. at 22-40). TIG, however, fails to realize that each of the elements for a fraud claim involves a question of fact for the jury to decide and it is the totality of the misrepresentations, not each individual misrepresentation, that provides the basis for the Trustmark's claim. *See Miller v. Bourgoin*, 28 Conn. App. 491, 497-98, 613 A.2d 292, 295, *cert. denied*, 223 Conn. 927,

614 A.2d 825 (1992) (allegations such as misrepresentation and fraud present issues of fact; summary judgment is particularly inappropriate where motive, intent and subjective feelings are at issue). TIG has thus utterly failed to carry the "heavy burden" it must bear to succeed in denying Trustmark its day in court. *See Nationwide Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999) (the moving party bears a heavy burden because "summary judgment is a 'drastic device, since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.'" ) (citations omitted).

## I.    TRUSTMARK'S CLAIMS AGAINST TIG ARE GOVERNED BY CONNECTICUT LAW.

Each argument TIG makes in support of the current motion rests on the premise that "Illinois law governs the resolution of Trustmark's third-party claims against TIG" (TIG Brf. at 18 n. 8). According to TIG, "Connecticut follows the *lex loci delicti*" or "vested rights" approach to choice of law problems, which mandates that "the law of the place of injury governs substantive issues" in tort actions (*id.*). In its eagerness to apply Illinois law to this dispute, TIG simply ignores over sixteen years of Connecticut jurisprudence.   Application of Connecticut's current approach to choice of law issues leads to the conclusion that the law of Connecticut, not Illinois, controls the outcome of this case.   Under that controlling authority, TIG is not entitled to summary judgment.

TIG fails to mention that the Connecticut Supreme Court abandoned categorical allegiance to the *lex loci delicti* test many years ago, dismissing "the vested rights theory of choice of law" as "an anachronism of modern jurisprudence." *O'Connor v. O'Connor*, 201 Conn. 632, 639, 519 A.2d 13, 17 (1986).  Instead, Connecticut courts routinely employ the "most significant relationship analysis" as articulated in the Restatement (Second) of Conflict of Laws. *See, e.g., Williams v. State Farm Mutual*

*Automobile Insurance Company*, 229 Conn. 359, 371-73, 641 A.2d 783, 789-90 (1994) (applying the Restatement analysis in uninsured motorist dispute); *Connecticut Pipe Trades Health Fund v. Philip Morris, Inc.*, 153 F. Supp. 2d 101, 106 (D. Conn. 1997) ("Connecticut has adopted the choice of law rules set forth in the Restatement (Second) of conflict of laws"); *Almonte v. New York Medical College*, 851 F. Supp. 34, 39 (D. Conn. 1994) ("Under Connecticut choice of law principals, the governing law is that of the 'state which. . . has the most significant relationship to the occurrence and the parties").

Application of the Restatement analysis identifies Connecticut as the state with the most significant relationship law to Trustmark's fraud and negligent misrepresentation claims. Section 148 of the Restatement "applies to actions brought to recover pecuniary damages suffered on account of false representations, whether fraudulent, negligent or innocent." Restatement (Second) of Conflict of Laws § 148 cmt. a (1971). Choice of law analysis under Section 148 takes account of six relevant contacts: "(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." *Id.* at § 148(2). Generally, "[i]f any two of the above-mentioned, apart from the defendant's domicile, state of incorporation or state of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." *Id.* at cmt. j. An analysis of the facts of

-5-

this case confirms that Connecticut has the most significant relationship to the events in this case.

**Trustmark Acted In Reliance Upon TIG's Representations In Connecticut.** It was in Connecticut that Robin Ekwall, acting as Trustmark's agent, performed his underwriting analysis, and executed the reinsurance agreements at issue in this litigation (Trustmark Resp. at Ex. 1120, Ekwall Supp. Decl. ¶¶ 1, 3-10, 12, 15, 17).

**Trustmark Received The Representations In Connecticut.** Connecticut was the location of WEB and Security, and was the state into which TIG's San Francisco agent sent data, e-mail, letters and telephone communications that form the basis for the fraud and negligent misrepresentation claims (Trustmark Resp. at Ex. 1120, Ekwall Supp. Decl. ¼¶ 1, 3-10, 12, 15, 17).

**Connecticut Is The State Of Performance.** Under the agreement as written, Trustmark would have to make payment to Security in Connecticut (Trustmark Resp. at Ex. 1121, Ekwall Decl. ¶ 14, Ex. 5 attached thereto).

The other contacts are inconclusive. There is no tangible thing that was the subject matter of the transactions at issue here. TIG and its agents misrepresented and omitted material facts in California. Indeed, the only apparent relationship between Illinois and the underlying fraud is that Illinois is the principal place of business for one of TIG's reinsurer victims, Trustmark. Illinois simply has no relationship to this dispute significant enough to justify the application of its laws.[1]

---

[1] Indeed, this Court has already applied the law of Connecticut in this lawsuit and related actions. *See Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, Civ. No. 3:01cv2198 (PCD) (Aug. 27, 2002) (Ruling on Motion to Dismiss (Doc. 78) at 2 n. 1).

## II. THE "ECONOMIC LOSS RULE" DOES NOT BAR TRUSTMARK'S NEGLIGENT MISREPRESENTATION CLAIM.

TIG asks the Court to dismiss Trustmark's negligent misrepresentation claim because: (i) TIG's misrepresentations and omissions have caused "purely economic losses" to Trustmark, and (ii) TIG is not "in the business of supplying information for the guidance of others" (TIG Brf. at 18). These contentions rest on the misguided assumption that Illinois law governs Trustmark's claim.[2] As demonstrated above, however, it is Connecticut law that applies to Trustmark's claim. Therefore, TIG's motion for summary judgment on Trustmark's negligent misrepresentation claim must fail.

Connecticut "has long recognized liability for negligent misrepresentation." *D'Ulisse-CUPO v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 217, 520 A.2d 217, 223 (1987). The elements of a negligent misrepresentation claim under Connecticut law follow those set forth in Section 552 of the Restatement (Second) of Torts (1977):

> One who, in the course of his business, profession or employment . . .
> supplies false information for the guidance of others in their business

---

[2] Nor does it appear that Illinois law would require dismissal of Trustmark's negligent misrepresentation claims if it did apply. First, "[t]he evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry **only** where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.'" *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 167, 679 N.E.2d 1197, 1200 (1997) (emphasis). TIG, however, has taken great pains to remind the Court that it is not in a contractual relationship with Trustmark. Therefore, the economic loss doctrine is inapplicable to Trustmark's tort claims. Second, even assuming the doctrine applied, TIG's agent AON is a reinsurance broker that routinely provides underwriting information to prospective reinsurers. Because AON, whose acts are attributable to TIG, is "in the business of supplying information for the guidance of others" the economic loss doctrine does not apply. Third, the economic loss doctrine would not any event bar Trustmark's claims for fraud. *See Moorman Mfg. Co v. Nat'l Tank Co.*, 91 Ill.2d 69, 88-89, 435 N.E.2d 443 (Ill. 1982).

> transactions, is subject to liability for **pecuniary loss** caused to them by
> their justifiable reliance upon the information, if he fails to exercise
> reasonable care or competence in obtaining or communicating the
> information.

*Foy v. Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir. 1997) (emphasis added).

*Accord, Chen v. Pitney Bowes Corporation*, 195 F. Supp. 2d 368, 375 (D. Conn. 2002).

Connecticut, therefore, does not recognize the economic loss doctrine in the context of

a negligent or fraudulent misrepresentation claim.   *See Williams Ford, Inc. v. The*

*Hartford Courant Company*, 229 Conn. 559, 579, 657 A.2d 212, 222 (1994).

Moreover, the Connecticut Supreme Court has expressly rejected the

contention, made by TIG here, that the defendant must be in the business of

supplying information for the guidance of others in order for a negligent

misrepresentation case to succeed:

> To limit the tort of negligent misrepresentation to those in the business
> of selling information, however, is contrary to our precedent. We have
> already decided that the tort of negligent misrepresentation is not limited
> to those in the business of selling information. . . . The language of § 552
> of the Restatement (Second) of Torts, which we adopted in *D'Ulisse-*
> *CUPO*, plainly does not limit the tort of negligent misrepresentation to
> those in the 'business of selling information.'   To the contrary, § 552
> applies to anyone who supplies information in the course of his business,
> profession or employment or in any other transaction in which he has a
> pecuniary interest.  Providing information in the course of one's business
> is plainly more expansive than selling information as the purpose of one's
> business.

*Williams Ford, Inc.*, 229 Conn. at 576, 657 A.2d at 220-21 (1994).

As demonstrated herein, TIG's numerous false statements to Trustmark

constitute fraud (*see infra* at 15-31).  Aside from relying on the economic loss doctrine,

TIG has not even attempted to argue that the same misrepresentations do not also

constitute negligent misrepresentation.  Trustmark will argue to the jury that the

same misconduct constitutes, *at a minimum*, a negligent misrepresentation.  Since the

economic loss doctrine does not bar Trustmark's recovery, TIG is not entitled to summary judgment on Trustmark's claim of negligent misrepresentation.

## III.   TIG CANNOT EVADE LIABILITY FOR ITS FRAUDULENT OMISSIONS BY CLAIMING THAT IT OWED NO DUTY TO TRUSTMARK.

TIG contends that Trustmark's claims for fraudulent omissions must fail because it was under no duty to disclose information respecting the poor performance of its block of business, absent privity or some "fiduciary or confidential relationship" (TIG Brf. at 20-22). Because both the law and the facts are to the contrary, there is ample basis for a jury to conclude that TIG/AON's omissions, as well as their affirmative representations, were fraudulent.

### A.   TIG/AON Knew or Should Have Known Its Conduct Would Victimize Trustmark.

TIG's invocation of the concept of contractual "privity" is irrelevant here. The issue is whether the TIG has failed to make "a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak." *Putnam Resources v. Frenkel & Co.*, 1992 WL 394386, at *2 (Ct. Super. 1992), *quoting*, *Gelinas v. Gelinas*, 10 Conn. App. 167, 173, 522 A.2d 295 (1987). Connecticut law is clear that the requisite duty arises when a party voluntarily speaks to a matter. Once he has done so, he "must make a ***full and fair disclosure*** as to the matters about which he assumes to speak." *Macomber v. Travelers Prop. & Cas. Co.*, 261 Conn. 620, 636, 804 A.2d 180, 191 (2002) (emphasis added).

Given the facts of this case, a jury should be allowed to determine that TIG/AON committed fraud by omission and concealment as well as by affirmative misstatements made to Trustmark's underwriter, regardless of contractual concepts of privity. The evidence discloses that Trustmark and its role as the ultimate risk-bearer

-9-

of the reinsurance of the TIG workers compensation portfolio were fully disclosed to TIG/AON (Trustmark Resp. at ¶ 43).    Because Trustmark was a reasonably foreseeable victim of TIG/AON's fraud and misrepresentation, formal notions of contractual privity pose no impediment to Trustmark's claim. *See Giulietti v. Giulietti*, 65 Conn. App. 813, 843, 784 A.2d 905, 930 (2001) ("The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance will be communicated to the other") (*quoting* Restatement (Second) of Torts § 533 (1977)).

TIG and its agent AON knew that in their dealings with WEB, everything they said, and everything they failed to say, would impact Trustmark.    It strains credulity for TIG now to suggest that it had no idea that their statements and omissions could impact Trustmark.

**B.    TIG Ignores Its Duty To Act in Utmost Good Faith.**

TIG's motion suffers from a recurring elemental flaw, in that it would impose a "caveat emptor" principle and "arm's length dealing" standard upon reinsurance transactions – a result never contemplated by the law or the reinsurance industry.    On the contrary, TIG and its agent had a duty to disclose to WEB, the underwriter and representative of Security and Trustmark, the material facts underlying the TIG workers compensation portfolio.    It is a fundamental precept of reinsurance industry custom and practice that a cedent is obligated to disclose to its reinsurers all material facts relating to the underlying risk.    As explained by Paul Thomson, an expert with twenty-six years of experience in the reinsurance industry:

> It is the established industry custom and practice that a ceding company
> has an ongoing duty to take reasonable steps to assure that the

-10-

> information originally conveyed to all potentially interested reinsurers
> was accurate and reliable. Consistent with that established industry
> custom and practice, TIG and its agents, here AON, had such an
> affirmative and ongoing duty.

(Trustmark Resp. at Ex. 958, Thomson Rpt. at 8). *See also* Trustmark Resp at Ex.

952, Expert Report of Dr. George Gottheimer at 9 ("Basically, utmost good faith

obligates the ceding company to disclose, voluntarily, information which might affect

the scope of the risk(s) covered by the reinsurer").

The relevant case law confirms this custom and practice. *See, e.g., Sun Mutual

Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510 (1883); *Unigard Sec. Ins. Co., Inc. v. North

River Ins. Co.*, 4 F.3d 1049, 1066 (2d Cir. 1993) (discussing duty of good faith);

*Christiana Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992).

Importantly, the duty of utmost good faith "imposes no duty of inquiry upon a

reinsurer; rather, the burden is on the reassured to volunteer all material facts."

*Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 282 (S.D.N.Y. 1998); *Union

Indem. Ins. Co. v. American Centennial Ins. Co.*, 674 N.E.2d 313, 320 (1996).

There is no mention of this duty of utmost good faith on any of the 61 pages of

motion, memorandum and affidavits that TIG chose to submit to this Court in support

of its motion for summary judgment. Despite black letter law and industry custom,

TIG demonstrates a dogged determination to convince this Court that the rule of

"buyer beware" or "caveat emptor" should carry the day. TIG continues to imply that

neither TIG nor its agent owed a duty of utmost good faith, and argues repeatedly that

Mr. Ekwall of WEB acted "unreasonably" in not asking more forcefully for data, or in

not asking more questions to elicit the true history, condition, and plans for this book

of business.

TIG's reluctance to acknowledge its customary duties is understandable, given

its absolute failure to abide by them. This and other evidence will be the subject of

expert testimony by Trustmark's experts Richard Jessel, George Gottheimer and Paul Thomson – each of them offering years of experience and expertise in the reinsurance industry. Mr. Thomson, an experienced reinsurance executive and arbitrator, for example, will opine that TIG and its agent AON were under an affirmative duty pursuant to obligations imposed by the custom and practice of the insurance and reinsurance industry to disclose information (and refrain from misrepresentations) regarding the status, nature, and performance of the TIG Portfolio, and that they breached these duties. (Trustmark Resp. at Ex. 958, Thomson Rpt. at 5-6; *see also* (Trustmark Resp. at Ex. 952, Gottheimer Rpt. at 10-14). Mr. Jessel, an experienced reinsurance underwriter, will testify that TIG's many omissions and misrepresentations were material to WEB's underwriting (Trustmark Resp. at Ex. 950, Jessel Rpt., at 4-6).

Trustmark has not yet received responsive expert reports from TIG, although counsel for TIG has advised that there will be such reports. When they arrive, however, it would be wholly inappropriate on summary judgment to evaluate what presumably will be opposing opinions. The responsibility for resolving the issues of custom and practice, materiality, and other topics of expert opinion, falls to the jury, which can weigh the experience and credibility of each such reinsurance or underwriting expert. *See e.g., Cortland Raquet Club v. Oy Saunatec, Ltd.*, 2003 WL 1108740, at *5 (S.D.N.Y. 2003); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citations omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); *see also Payne v. Milwaukee County*, 146 F.3d 430, 432 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge, whether judge is ruling on a motion for summary judgment or for a directed verdict").

The custom and practice of this industry, like the law itself, required TIG "to disclose, voluntarily, information which might affect the scope of the risk(s) covered by" Security and Trustmark (Trustmark Resp. at Ex. 952 (Gottheimer Rpt.) at 9)  To the extent TIG attempts to rely on *caveat emptor*, issues of industry custom and practice exist for trial in this case as well.  The existence of an industry custom is inherently a question of fact.  *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir.1993); *Aetna Cas.& Surety Co. v. Home Ins. Co.*, 882 F. Supp. 1328, 1349 (S.D.N.Y. 1995).  The grounds TIG urges for summary judgment, then, both legal and factual, are without merit.

## IV.   TRUSTMARK HAS PRESENTED SUBSTANTIAL EVIDENCE IN SUPPORT OF ITS CLAIMS OF FRAUDULENT MISREPRESENTATIONS AND OMISSIONS.

As charged in Count I of the Third Party Complaint, TIG, through its agent AON, lured WEB (and therefore Trustmark) into this reinsurance relationship by means of both fraudulent misrepresentations and omissions.  While TIG may seek now to dismiss AON's statements and conduct, there is no question that AON was acting as its agent, within the scope of its actual and apparent authority and, therefore, bound TIG by its acts and omissions.  It is black letter law that "the principal in an agency relationship is bound by, and liable for, the acts on which his agent engages with authority from the principal, and within the scope of his employment."  *Maharishi School of Vedic Sciences, Inc. v. Connecticut Constitutional Assoc. L.P.*, 260 Conn. 598, 606, 799 A.2d 1027, 1031-32 (2002).

The evidence Trustmark has obtained includes documents and statements from TIG directly, as well as through its agents.  The record reveals that TIG/AON chose to withhold material information about this book from the underwriters who were

-13-

evaluating the risk.    In addition to withholding information, they provided misinformation and, in some cases, information that was outright false.    Far from "mere puffery," the statements and omissions left WEB with an inaccurate depiction of the history, condition, and prognosis of the business to be reinsured – all in violation of the fundamental duty of utmost good faith.    The evidence unquestionably satisfies the prima facie elements required for Trustmark's causes of action:    fraud and negligent misrepresentation.

### A.    TIG And Its Agent AON Are Guilty Of Numerous Fraudulent Misrepresentations And Omissions.

Under Connecticut law, the elements of fraud are: "(1) that false representation was made as statement of fact; (2) that it was untrue and known to be untrue by party making it; (3) that it was made to induce other party to act on it; and (4) that [the] latter did so act on it to his injury." *Gambardella v. Pentec, Inc.*, 218 F. Supp.2d 237, 243 (D. Conn. 2002); *see also Valdes v. Qwest Communications, Int'l, Inc.*, 147 F.Supp. 2d 116, 125 (D. Conn. 2001).    In the present case, there is abundant documentary and testimonial evidence that: (1) TIG/AON made multiple factual misrepresentations (or omissions) to WEB; (2) with knowledge of their falsity or recklessness as to whether they were true or false; (3) with the intent of misleading WEB into entering reinsurance transactions; and (4) to the injury of the companies for whom WEB was acting, including Trustmark.

Trustmark is not required to prove that the TIG and AON misrepresentations were intentional in order to establish a prima facie case of fraud (although there is substantial evidence that they were).    An actionable misrepresentation may be made "knowingly, recklessly, or innocently" so long as it made for the purpose of inducing action upon it.    *J. Frederick Schokes Agency v. Mitchell*, 191 Conn. 353, 359, 464 A.2d 795, 799 (1983).    Here, TIG and its agent AON knowingly made misrepresentations

-14-