UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Nov 22  4 54 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, <br><br> Plaintiff, <br><br> v. <br><br> TRUSTMARK INSURANCE COMPANY, <br><br> Defendant. <br><br><br> TRUSTMARK INSURANCE COMPANY, <br><br> Third Party Plaintiff, <br><br> v. <br><br> TIG INSURANCE COMPANY, <br><br> Third Party Defendant. | Civil No. 301CV2198(PCD) <br><br><br><br><br> NOVEMBER 22, 2004 |

**TRUSTMARK'S MEMORANDUM OF LAW IN RESPONSE TO
TIG'S MOTIONS TO COMPEL DISCOVERY AND
FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES**

On November 1, 2004, TIG Insurance Company ("TIG") filed a surprise "Motion to Compel" from Trustmark information that pertains to business relationships and books of business that are not at issue in this case. TIG completely failed to comply with the requirements Local Rule 37(a)2 by filing its motion without first conferring with Trustmark, and without the affidavit required by the rule.[1]

---

[1] TIG filed together its "Motion to Compel Discovery from Trustmark" and its "Motion for Leave to Serve Additional Interrogatories and to Require Trustmark to Respond to the Interrogatories on an Expedited Basis." TIG noted that its bases for its Motion for Leave to Serve Additional Interrogatories were the same as those set forth in its Motion to Compel

914976

Although TIG's motion could be denied on that basis alone, it also should be denied on the merits. First, the discovery that TIG seeks bears no permissible relationship to the issues before the Court. TIG fails to mention the Court's earlier rulings on similar issues, which confirm that this case is not the appropriate forum for mini-trials over Trustmark's actions in other contractual relationships or its motives in bringing the third party complaint against TIG. Second, the evidence TIG seeks would be inadmissible under Rules 406, 404(b) and 403 of the Federal Rules of Evidence.

TIG's burdensome discovery requests far exceed the permissible scope of the Federal Rules of Civil Procedure, promulgating numerous contention interrogatories, documents, and depositions about events that have no bearing on the issues presented by this litigation. They would impose a substantial burden upon Trustmark, as it works to review the newly-received expert reports, complete expert discovery, and prepare the Trial Preparation Order in this matter. Trustmark respectfully prays that the TIG motions be denied.

## RELEVANT FACTUAL BACKGROUND

Trustmark's claims against TIG in this action arise from misrepresentations and continuing fraud, committed by TIG and its agent, AON, in connection with the 1999 renewal contract for reinsurance of TIG's workers' compensation book of business ("TIG 99"). Notably, an arbitration panel has now finally determined that TIG's agent, AON, committed such misrepresentations in connection with the placement of the predecessor contract, for the reinsurance of the TIG 98 book of business (the "Arbitration Ruling"). TIG has now sued its agent for the consequences of those misrepresentations, in TIG Insurance Company v. AON Re, Inc., No. 3:04-cv-01307 (N.D. Tex.). In order to divert attention from its established

---

Discovery from Trustmark. (TIG Motion for Leave, at 1.)   As such, Trustmark files this brief in opposition to both Motions.

misrepresentations (and those Trustmark will prove at trial), TIG apparently intends an improper attack on Trustmark's motives both for entering into the TIG 99 contract and for bringing this lawsuit against TIG.

To that end, TIG seeks extensive discovery regarding Trustmark's recent and unrelated litigation with its partner United States Life Insurance Company ("US Life"), as well as discovery into whether and why Trustmark may have rescinded other reinsurance contracts. All of this additional discovery relates to insurance treaties which do not concern (or even mention) TIG or the contract at issue in this case. Nonetheless, TIG argues that it should be allowed discovery into Trustmark's other business dealings in pursuit of arguments that Trustmark (i) has a habit or custom of breaching agreements, and/or (ii) was motivated to bring this suit against TIG when it began to appear that there might be disputes over the scope and validity of Trustmark's retrocessional cover.

## LEGAL DISCUSSION

TIG's requested discovery is neither within the permissible scope of the Federal Rules of Civil Procedure, nor admissible under the Federal Rules of Evidence. Pursuant to Federal Rule of Civil Procedure 26(b), a party may obtain discovery of matter that is "relevant to any claim or defense of any party" or if the discovery appears "reasonably likely to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Because TIG's discovery requests fail both tests, Trustmark respectfully submits that TIG's motions should be denied.

### I. TIG'S REQUESTED DISCOVERY IS NOT RELEVANT TO ANY CLAIM OR DEFENSE

TIG now seeks broad and expansive discovery of: (i) Trustmark's litigation with US Life regarding their partnership obligations and a claim that US Life breached its duties to Trustmark; (ii) whether Trustmark has sued or rescinded its contracts with cedants other than

-3-

TIG or Security; and (iii) Trustmark's retrocessional protections on a number of reinsurance treaties involving parties other than Security and TIG.

None of this discovery is at all relevant to Trustmark's claims against TIG. Trustmark claims that TIG and its agent made misrepresentations and omissions in connection with the placement of the TIG 99 renewal reinsurance contract. Whether or not TIG committed fraud or negligent misrepresentation turns on the disclosures and omissions TIG and AON made in connection with the placement of this contract and the predecessor TIG 98 contract, not on Trustmark's actions in connection with other contracts, involving other parties and other facts.

TIG asserts, however, that its proposed discovery is relevant to a "defense" that "the failure of [Trustmark's] retrocession contracts is the principal reason that Trustmark is claiming WEB was defrauded into entering into the 1999 Treaty and Retrocession Agreement." (Mem. in Supp. at 8 (emphasis supplied).) As a threshold matter, TIG's "defense" is no defense at all. TIG asserts that discovery of other disputes may show that Trustmark is merely "claiming" fraud in this case. (Mem. in Supp. at 9.) Trustmark's motive (whether as speculated by TIG or not) for bringing its claims to this Court is simply not relevant to the actual merits of whether the TIG/AON actions constituted fraud or misrepresentation. Industrial Bank of Japan Trust Co. v. Haseotes, No. 92 Civ. 6074 (SWK), 1993 WL 322775, *3 (S.D.N.Y Aug. 19, 1993) (plaintiff's motive in bringing a lawsuit is not relevant and is not a valid defense); Southern Music Publishing Co. v. Seeco Records, Inc., 200 F. Supp 704, 705 (S.D.N.Y. 1960) ("if plaintiff has a valid cause of action, what its purpose is in pursuing it is of no moment"); see also Mendell v. Gollust, 909 F.2d 724, 729 (2d Cir. 1990) (plaintiff's motives for bringing suit are not relevant). In fact, TIG's "defense" is nothing more than a highly prejudicial smokescreen, apparently designed to divert attention from its own culpable actions.

4

Indeed, TIG fails to mention that this Court has already addressed this kind of issue with respect to another set of requests, brought two years ago by plaintiff Security. In the Security I case, Security sought the same kind of discovery of Trustmark's other reinsurance contracts, retrocessional agreements and efforts to terminate other reinsurance arrangements. This Court denied that request, finding that its "argument that the discovery sought is relevant to defendant's motive for canceling the agreement is [] unavailing." Order, Security Ins. Co. v. Trustmark Ins. Co., No. 3:00-cv-1247(PCD) (D. Conn. Sept. 19, 2002).

Secondly, TIG concedes that it <u>already</u> has adequate discovery regarding the particular facts and circumstances of the contract actually at issue in this case. (Mem. in Supp. at 8.) TIG has previously sought expansive discovery of Trustmark's other reinsurance contracts and retrocession placements, and this Court found that "*carte blanche* production of materials pertaining to separate agreements managed by WEB" to be unjustified. (Order of February 5, 2003 at 8.) Instead, the Court limited TIG's request based upon the relevant allegations in the complaint. (<u>Id.</u>) Accordingly, TIG has already received all the discovery it is entitled to; its current motion just seeks another bite at that apple.[2]

## II. THE DISCOVERY TIG SEEKS WOULD BE INADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE.

### A. Rule 406

TIG erroneously claims its discovery is relevant because it intends to offer proof that Trustmark "has engaged in a practice of claiming fraud" when faced with an unprofitable contract. In so arguing, TIG fundamentally misinterprets Rule 406 of the Federal Rules of

---

[2] Among other things, TIG's motion appears to seek to revive the CUTPA/CUIPA issues that Security raised and, by the Court's grant of summary judgment to Trustmark, lost. Accordingly, the spectre is raised of embroiling the Court in the specific facts of myriad different situations all unrelated to the issues and parties in this case.

-5-

Evidence. Whether Trustmark has ever rescinded a contract based upon fraud or whether Trustmark has ever had trouble collecting on its retrocessional protections simply cannot establish a "practice" from which Rule 406 would permit a jury to draw inferences.

Rule 406 provides that evidence of the "routine practice of an organization" is relevant to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice. Fed. R. Evid. 406. Examples of facts allowed by the rule include "reasonably regular and uniform" procedures such as mailing practices, filing habits, and other routine daily steps. See, e.g., McCormick On Evidence § 195 (5th ed. 2003) (evidence that routine mailing practices were followed will usually be admitted to prove that a letter was mailed). A primary factor in considering if an activity is a "routine practice" is the relative invariability or involuntariness of the action. Indeed, the advisory committee refers to the relevant conduct as being "semi-automatic." Fed. R. Evid. 406, Advisory Committee Notes (1972 Proposed Rules.)

Where the activity is not "semi-automatic," it is not deemed to be a routine practice, and thus is inadmissible under Rule 406. As the Seventh Circuit has explained, "[b]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic'." Thompson v. Boggs, 33 F.3d 847, 854 (7th Cir. 1994); see also G.M. Brod & Co. v. United States Home Corp., 759 F.2d 1526, 1532-33 (11th Cir. 1985) (evidence disallowed to show company's habitual breaching of contracts since company dealt with many different companies under different circumstances); Becker v. ARCO Chemical Co., 207 F.3d 176, 204 (3d Cir. 2000) (evidence that business had tendency to use pretenses when firing employees was not admissible under Rule 406 because the

nature of the alleged conduct was not the sort of semi-automatic, situation specific evidence that the rule admits). Conduct involving circumstances that are individual and dynamic are "not the sort of repeated conduct covered by Rule 406." McCarrick v. New York City Off-Track Betting Corp., No. 91 Civ. 5626 (SWK), 1995 WL 261516 (S.D.N.Y. May 3, 1995) (rejecting evidence of employer's alleged policy of discrimination where employer's actions involved conduct against several individuals under varying circumstances).

Contrary to TIG's assertion, Trustmark's decisionmaking process in evaluating potential problems with individual reinsurance or retrocessional contracts, and in determining whether or not it was defrauded and must bring suit, is highly fact-specific and involves different facts and different circumstances on each occasion. Trustmark's legal decisions, made on a case-by-case basis, are not the kinds of "routine practices" or "semi-automatic" procedures that can be admitted under Rule 406.

**B.    Rule 411**

TIG also attempts to argue that evidence of the scope, status and validity of Trustmark's retrocessional protections is relevant in weighing the materiality of the information it fraudulently concealed from Trustmark's underwriter. In essence, TIG admits that it plans to argue that Trustmark has now wrongfully asserted fraud by TIG because it may have lost some of its retrocessional protection, or that Trustmark's underwriter negligently ignored the missing information, because there was enough reinsurance in place to protect Trustmark.

TIG's argument flatly ignores the basic principles of Rule 411 of the Federal Rules of Evidence. Evidence regarding Trustmark's own retrocessional protections (for the TIG 99 contract or any other contract) is not admissible under Rule 411, which provides: "Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411; see Curtis Manufacturing

Co., Inc. v. Plasti-Clip Corp., 933 F. Supp. 94, 100 (D.N.H. 1995) (applying Rule 411 to an indemnity agreement; court held that "evidence or reference to [the defendant's indemnity] agreement is inadmissible to prove that [defendant] acted negligently or otherwise wrongfully"). Furthermore, Rule 411 is meant to protect parties from having evidence introduced which would induce or allow a jury to decide a case on improper grounds, such as a party's indemnity or collateral insurance coverage. Fed. R. Evid 411, Advisory Committee Notes (1972 Proposed Rules) ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds."); Braun v. Lorillard, Inc., No. 94 C 976, 1996 WL 14033, *1 (N.D. Ill. Jan. 11, 1996) (barring evidence of indemnity agreement pursuant to Rule 411; "Evidence of insurance coverage is ordinarily inadmissible, since existence of coverage so frequently distracts jury from essential issues which it is to resolve in a detached manner.")

TIG's discovery request thus seeks proof that will necessarily be barred by Rule 411. As set forth in its Motion, TIG intends to present evidence that Trustmark negligently entered into the TIG 99 contract (and other contracts too), or that Trustmark wrongfully claimed fraud against TIG, precisely because of its retrocessional insurance protection. That is the exact use of evidence that Rule 411 explicitly precludes. See Fidelity Nat'l Title Ins. v. Intercounty Nat'l Title Ins. Co., No. 00 C 5658, 2003 WL 2005233, *2 (N.D. Ill. Apr. 30, 2003) (evidence of reinsurance to show wrongfulness or negligent behavior was barred pursuant to Rule 411).

C. **Rule 404(b)**

Similarly, evidence of Trustmark's dispute with US Life or its rescission of other contracts is precluded by Rule 404(b). That rule states in part that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show actions in conformity therewith." Fed. R. Evid. 404(b). Again, TIG intends to present mini-trials of

Trustmark's conduct in connection with other transactions with other parties, under different contracts and circumstances. None of that conduct has been the subject of an arbitral decision or a court order or ruling. Yet TIG intends to use evidence of those dealings as "proof" that Trustmark acted wrongfully in those transactions, and then acted in the same allegedly wrongful way with respect to TIG – a classic "prior bad acts" approach, basically to paint a picture of Trustmark's character for a jury. This, too, is the precise situation that is the Federal Rules of Evidence are designed to prevent. The only permissible ways in which such proof could be admissible are simply inapplicable here, and not the reasons for which TIG would offer such "evidence."[3]

### D. Rule 403

Finally, the evidence of Trustmark's other reinsurance contracts and retrocessionaires should be excluded under Federal Rule of Evidence 403. Rule 403 provides that evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. As set forth above, the evidence TIG seeks is not probative in determining whether TIG made fraudulent misrepresentations to WEB in connection with the TIG 99 or TIG 98 contracts. Moreover, any minimal probative value is substantially outweighed by the dangers anticipated by Rule 403.

Like Security's now-dismissed CUPTA/CUIPA claims, TIG's purported "defense" that Trustmark wrongfully rescinded other reinsurance contracts, allegedly motivated by the scope of Trustmark's retrocessional protection, would be both misleading and prejudicial.

---

[3] Rule 404 provides that a trial court may admit evidence of crimes, wrongs or acts for certain specified purposes, such as proof of motive or opportunity, provided that the court has not otherwise decided to exclude such evidence under Rule 403 for prejudice, confusion or waste of time. See Rule 404, Advisory Committee Notes (1974).

A series of mini-trials on Trustmark's good faith, compliance, and application of business judgment on <u>other</u> matters would need to be conducted in order to address TIG's accusations. In addition to the prejudice to Trustmark, there is the real danger of a jury being distracted by these ancillary issues, which have no bearing whatsoever on the issues actually being tried. Accordingly, evidence of Trustmark's retrocessionaires and Trustmark's other contracts should also be barred by Rule 403.

## **CONCLUSION**

For all the foregoing reasons, Trustmark respectfully requests that TIG's Motion To Compel Discovery From Trustmark be denied in its entirety.

TRUSTMARK INSURANCE COMPANY

_/s/_
Counsel for
Trustmark Insurance Company

David M. Spector CT 21679
Paula J. Morency CT 24740
Everett J. Cygal CT 22765
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473

David R. Schaefer CT 04334
Rowena A. Moffett CT19811
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, Connecticut 06511

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served by United States first-class mail, postage prepaid, this 22nd day of October, 2004 upon:

Frank F. Coulom, Jr., Esq.
Marion B. Manzo, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Mark B. Holton, Esq.
Kathryn E. Nealon, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

David J. Grais, Esq.
Kathryn C. Ellsworth, Esq.
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, NY 10019-6092

**Counsel for Plaintiff Security Insurance Company of Hartford**

David A. Slossberg. Esq.
HURWITZ & SAGARIN, LLC
147 N. Broad Street
Milford, CT 06560

Harry P. Cohen. Esq.
Brian J. O'Sullivan, Esq.
CADWALADER, WICKERSHAM & TAFT
100 Maiden Lane
New York, NY 10038

**Counsel for Third-Party Defendant TIG Insurance Company**

Rowena A. Moffett, Esq. (ct19811)

H