**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>Plaintiff,<br><br>-against-<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 3:01CV2198 (PCD) |
| TRUSTMARK INSURANCE COMPANY,<br><br>Third Party Plaintiff,<br><br>-against-<br><br>TIG INSURANCE COMPANY,<br><br>Third Party Defendant. | **October 29, 2004** |

**MEMORANDUM OF LAW IN SUPPORT OF TIG**
**INSURANCE COMPANY'S MOTION TO COMPEL**
**<u>DISCOVERY FROM TRUSTMARK INSURANCE COMPANY</u>**

Third Party Defendant TIG Insurance Company ("TIG"), through its counsel, respectfully submits this memorandum of law in support of its motion to compel discovery from Trustmark Insurance Company.

## PRELIMINARY STATEMENT

Trustmark has alleged that TIG defrauded WEB into entering into the reinsurance agreements at issue here. TIG intends to defend against these claims, *inter alia*, by demonstrating at trial that:

> (a)    WEB was a "net line underwriter" that wrote business it expected would be profitable only on a *net* basis, *i.e.*, profitable only after taking into account the economic impact of retrocessional contracts;[1]
>
> (b)    several of the significant retrocession contracts placed by WEB are no longer recoverable (in part, because the retrocessionaires have rescinded the contracts), leaving Trustmark with significant unreinsured liabilities on the WEB business, thereby effectively eliminating the net profit Trustmark expected to receive on that business;
>
> (c)    rather than accept the consequences of its failed business strategy, Trustmark and WEB have instead chosen to follow a practice of trying to shift responsibility to its cedents (like TIG) by wrongfully accusing them of fraud. Stated another way, Trustmark is seeking to avoid its assumed liabilities so that the gaps in its book and retrocession protections are no longer a problem.[2]

TIG now seeks very specific and narrowly tailored discovery that is directly relevant to this specific defense.

---

[1]    Stated simply, WEB would receive $100 of premium for a piece of business it expected would generate $120 of losses (thus generating a gross loss of $20). WEB would place a retrocession contract under which it would pay $40 of premium and cede $80 of expected losses to its retrocessionaires. WEB's net position ($60 of net premium but only $40 of net losses) would be profitable. This profit was generated solely as a result of the favorable retrocession contract.

[2]    For example, it is undisputed that, on October 18, 2001, Trustmark was advised that one of its retrocessionaires had rescinded its 50% participation in the so-called 10/1/98 International Facility, a retrocession facility which covered the 1999 Treaty. It is also undisputed that only 15 days later Trustmark asserted for the first time that WEB had been defrauded into the 1999 Treaty.

## STATEMENT OF FACTS

**A.     The Agreements at Issue**

This litigation arises out of two reinsurance contracts, each of which was effective January 1, 1999: (i) the Workers Compensation Underlying First, Second and Third Excess of Loss Reinsurance Agreement (the "1999 Treaty"), pursuant to which Security Insurance Company of Hartford ("Security") reinsured TIG for certain workers' compensation risks; and (ii) a retrocession contract, pursuant to which Trustmark agreed to reinsure 100% of the risk assumed by Security (subject to certain immaterial exceptions) under the 1999 Treaty (the "Retrocession Agreement").  Both Security and Trustmark were represented in these transactions by WEB Management LLC ("WEB").

**B.     TIG's Document Requests and the Court's Prior Discovery Rulings**

In September 2002, TIG served on Trustmark its first request for the production of documents, which called for the production of, *inter alia*, "[a]ll documents relating to WEB's underwriting" (the "Underwriting Documents") and "[a]ll documents relating to reinsurance or retrocessional protections . . . with respect to business written by WEB" (the "Retrocessional Documents").  Trustmark objected to these requests on the grounds that they were overly broad, unduly burdensome and called for the production of irrelevant information (*i.e.*, information not directly related to the 1999 Treaty).

On February 5, 2003, the Court granted in part TIG's motion to compel the production of the Underwriting and Retrocessional Documents, stating that:

> There can be no dispute that evidence of a practice or custom can be used to [provide] conduct on a particular occasion.  Evidence of WEB's conduct as agent in other transactions in which it represented . . . [Trustmark] may be relevant to define its object in entering into the specific transaction.  As the relevant claims involve fraud and negligent misrepresentation, such practice or custom evidence may be relevant to a determination of whether a

> misrepresentation was material in the particular instance. As such, some discovery into these other transactions is appropriate.

February 5, 2003 Ruling at 7-8 (citations omitted). The Court ordered Trustmark to produce its Underwriting and Retrocessional Documents to the extent that they relate to one of three criteria, namely: "(1) reporting deficiencies of the nature but not necessarily the magnitude alleged in the third party complaint, (2) overall profitability less than or equal to the TIG insurance at issue in this action, and (3) pricing or reserving problems in blocks of insurance reinsured." *Id.* at 8.

## C.     The Trustmark/US Life Litigations

Trustmark and United States Life Insurance Company ("US Life") were "partners" in the WEB Facility. Pursuant to an unwritten agreement, US Life and Trustmark shared on a 50/50 basis the net results, after retrocession protections, of all business written by WEB prior to January 1, 1999,[3] irrespective of whether the risk was written on US Life or Trustmark paper.[4]

Recently, Trustmark and US Life have initiated three separate litigations, concerning their obligations to one another on WEB business. In December 2003, US Life filed suit against Trustmark in the District of Connecticut seeking a declaration and monetary damages concerning a single reinsurance contract WEB had written on US Life paper reinsuring Superior National Insurance Company (the "Superior National Treaty"). *United States Life Insurance Co. of the City of New York v. Trustmark Insurance Co.*, 3:03CV2114(PCD) (*"US Life I"*). On August 27, 2004, US Life filed an amended complaint, which expanded the scope of that litigation beyond the Superior National Treaty to include other WEB business. Among the

---

[3]     US Life terminated its agreement with WEB effective December 31, 1998. As discussed below, US Life and Trustmark are now in litigation regarding whether US Life is liable on business written by WEB after that date.

[4]     WEB wrote business on the paper of both US Life and its affiliate All American Life Insurance Company ("All American"). TIG will refer herein to All American and US Life collectively as "US Life."

relief US Life is now seeking in *US Life I* is: (a) damages in excess of $14.7 million reflecting amounts Trustmark has failed to pay US Life relating to 16 separate reinsurance programs;[5] and (b) a declaration that US Life has no liability on various reinsurance contracts WEB entered into on Trustmark paper after December 31, 1998, including the 1999 Treaty/Retrocession Agreement. O'Sullivan Decl., Ex. A, ¶¶ 30-70 & 75-80.

On September 1, 2004, Trustmark filed suit against US Life (but not All American) in the Northern District of Illinois, alleging a breach of a confidential April 9, 2004 agreement. According to Trustmark, in exchange for Trustmark's payment of a confidential sum relating to another reinsurance contract, US Life agreed to review a number of "disputed" reinsurance contracts (including presumably the 1999 Treaty) and advise Trustmark whether it would accept some or all of those contracts as "partnership" business. Trustmark alleged that US Life breached this agreement and, as a result, "the April 9, 2004 Agreement is null and void." O'Sullivan Decl., Ex. B, ¶¶ 16-22. On September 28, 2004, the District Court of the Northern District of Illinois transferred this action to this Court pursuant to 28 U.S.C. § 1404(a). *Trustmark Insurance Co. v. United States Life Insurance Co. of the City of New York*, 3:04-CV-1659(PCD) (*"US Life II"*).

Also on September 1, 2004, Trustmark commenced a separate action against All American in the Northern District of Illinois. *Trustmark Insurance Co. v. All American Life Insurance Co.*, No. 04C 5760 (*"All American"*). According to Trustmark's complaint in that action:

---

[5]    Then actual amount US Life is seeking to recover from Trustmark is considerably more than $14.7 million since US Life is also seeking to recover Trustmark's share of three confidential settlements and/or commutations, including US Life's commutation of the second largest reinsurance contract WEB wrote (*i.e.*, the "Pac Rim Treaty"). *See* O'Sullivan Decl., Ex. A, ¶¶ 38-52 & 57-66.

> Between the partners, the responsibility for obtaining retrocessional coverage for the partnership resided with All American, with assistance from WEB . . .
>
> All American had and has a contractual duty and a fiduciary duty to Trustmark to obtain proper retrocessional coverage, to preserve retrocessional coverage, and to collect on retrocessional coverage for the benefit of the partnership . . . ;

O'Sullivan Decl., Ex. C, ¶¶ 20, 27. Trustmark has alleged that All American breached this "partnership duty" by "fail[ing] to obtain reinsurance," "obtaining reinsurance of poor quality that has provided no protection to the partnership," and "fail[ing] to pursue retrocessional recoveries." *Id.* ¶¶ 42(a), (b) & (n). Trustmark has also alleged that All American breached other "partnership duties" it owed Trustmark by, among other things, "fail[ing] to advise or consult with Trustmark with respect to arbitrations and litigations" and "agree[ing] to settlements that [we]re not in the best interests of the partnership." *Id.* ¶¶ 42(d), (e). Among the relief Trustmark is seeking in *All American* is a judgment "reliev[ing] Trustmark of any liability on contracts written [by WEB] on All American paper." *Id.* ¶ 43.[6]

All American has moved pursuant to 28 U.S.C. § 1404(a) to have this case transferred to the District of Connecticut. Trustmark has opposed this motion and it is currently pending before the District Court of the Northern District of Illinois.

---

[6]   In addition, Trustmark is seeking a declaration that US Life is liable on various "Disputed Contracts," including the 1999 Treaty/Retrocession Agreement. Trustmark's claim for declaratory relief on this issue is substantially identical to one of US Life's claims for declaratory relief in *US Life I*.

## ARGUMENT

As discussed in greater detail below, TIG should be permitted to conduct discovery of the facts underlying Trustmark's allegations against US Life since they are potentially relevant to Trustmark's third party claims and TIG's defenses to those claims. In addition, the discovery TIG is seeking is limited in scope and will not impact the schedule that the parties have proposed to the Court in their October 26, 2004 Parties' Joint Report Concerning the Status of Discovery and Dispositive Motions and Separate Statements Concerning Scheduling (the "Joint Report"), which would permit the parties until January 2005 (under Security's and TIG's proposed schedules) or March 2005 (under Trustmark's proposed schedule) to complete discovery.

**A.     TIG Should Be Permitted To Conduct Discovery Of The Facts Underlying Trustmark's Allegations That US Life Breached Its "Partnership Duties" By Failing To Obtain Adequate Retrocessional Protections And Settling Claims Without The Consent Of Trustmark**

**1.      The Information TIG Is Seeking Is Relevant to Trustmark's Third Party Claims and TIG's Defenses to Those Claims**

Trustmark has alleged that TIG defrauded WEB into entering into the 1999 Treaty and the Retrocession Contract. One of TIG's defenses to Trustmark's third party claims is that WEB was a "net line underwriter" that was indifferent to the types of information on which Trustmark's fraud and negligent misrepresentation claims are premised, including whether the business would be profitable on a gross basis. Instead, Trustmark and WEB were focused solely on the net profits Trustmark was expected to earn after ceding a disproportionate share of the losses to Trustmark's "enjoyable" retrocessional covers.

TIG will demonstrate at trial that WEB's underwriting of the 1999 Treaty was completely dependent upon its retrocessional protections, since, based on WEB's own pricing spreadsheets, WEB expected that:

a.      The losses under the 1999 Treaty would exceed the premium by **$34 million** ($77 million in projected losses versus $43 million in projected premium);

b.      WEB would cede to one of its retrocession contracts (the International Treaty) $65.8 million in losses, but only $13.7 million in premium, meaning that the International Treaty retrocessionaires would lose **$52 million** under that contract; and

c.      As a result, Trustmark would make a net profit of **$18 million** under the 1999 Treaty/Retrocession Agreement.

In other words, Trustmark/WEB expected to make an $18 million profit on a contract that would lose more than $34 million – but only if it could collect from its retrocessionaires.

TIG also intends to demonstrate at trial that Trustmark in fact cannot collect from its retrocessionaires leaving Trustmark with a loss rather than a net profit, and that the failure of its retrocession contracts is the principal reason Trustmark is claiming WEB was defrauded into entering into the 1999 Treaty and the Retrocession Agreement. Indeed, it is undisputed that Trustmark did not even claim that WEB was defrauded into entering into the 1999 Treaty until 2 weeks after one of its most significant retrocessionaires rescinded its 50% participation in the retrocession facility (the International Facility) covering the 1999 Treaty. *See* O'Sullivan Decl., Ex. D.

TIG, however, should not have to rely exclusively upon Trustmark's and WEB's conduct as respects the 1999 Treaty in order to demonstrate Trustmark's practice and course of conduct. As the Court noted in its February 5, 2003 discovery ruling, "evidence of a practice or custom can be used to prove conduct on a particular occasion." February 5, 2003 Ruling, at 7 (*citing* Fed. R. Evid. 406; 1 John W. Strong, McCormick on Evidence § 198 (5th ed. 1999)). Accordingly, TIG should be permitted some discovery of each instance where Trustmark: (a) claimed that WEB was defrauded into entering into a reinsurance contract; and (b) after it experienced issues or problems regarding its ability to recover as expected under the

corresponding retrocessional protections (whether the retrocessionaires have rescinded the contract or simply stopped paying under them). Evidence of such practice would obviously be relevant to refute the allegation that WEB was defrauded into entering into the 1999 Treaty (or, conversely, to demonstrate that Trustmark is claiming fraud because its retrocessional protections on that contract have failed). In this respect, TIG submits that this case is similar to a "slip and fall" case where the plaintiff has a history of slipping and falling every time he needs money. Just like a pattern of "slip and fall" claims would be relevant to the issue of whether the "slip and fall" claim then before the jury was, in fact, legitimate (or, conversely, whether it was another instance where plaintiff was trying to defraud an insurance company), so too would a pattern of claims by Trustmark and/or WEB that they had been defrauded into entering into other unprofitable contracts be relevant to Trustmark's claims in this action.

The facts underlying Trustmark's allegations against US Life are relevant to the issue of whether Trustmark has engaged in a practice of claiming fraud each time Trustmark is faced with substantial unreinsured liabilities on an unprofitable contract. In *All American,* Trustmark has alleged that US Life breached its "partnership duty" by failing to obtain retrocessional protections on WEB business, by obtaining retrocessional protections of such poor quality that has provided no protection to the partnership, and by causing the loss of retrocessional protections "due to the misconduct of All American and its agents." O'Sullivan Decl., Ex. C, ¶¶ 42(c). TIG should be permitted to take some discovery of these allegations to determine just how often Trustmark and/or WEB have cried fraud after they were unable to collect on their retrocessional contracts.

Similarly, Trustmark has also alleged that US Life breached its "partnership duties" to Trustmark by "fail[ing] to advise or consult with Trustmark with respect to arbitrations and litigations" and "agree[ing] to settlements that [we]re not in the best interests of the

partnership." *Id.* ¶¶ 42(d) & (e). TIG believes that these allegations refer to the fact that US Life

has paid or settled claims on which Trustmark and/or WEB were claiming fraud. Again, we

believe that a jury will find very relevant the number of times and circumstances under which

Trustmark and WEB have claimed that WEB was defrauded into entering into a reinsurance

contract.

## 2.     <u>TIG Is Seeking Only a Limited Amount of Discovery on this Issue</u>

The discovery that TIG seeks on this motion is limited in scope and will not cause

any delay in getting this case ready for trial.

First, TIG asks the Court to compel Trustmark to produce by November 26, 2004

documents relating to the allegations in *All American* that All American breached its

"partnership duties" by "fail[ing] to obtain reinsurance," "obtaining reinsurance of poor quality

that has provided no protection to the partnership," "the loss or reinsurance due to the

misconduct of All American and its agents," "fail[ing] to advise or consult with Trustmark with

respect to arbitrations and litigations," "agree[ing] to settlements that [we]re not in the best

interests of the partnership" and "fail[ing] to pursue retrocessional recoveries." O'Sullivan

Decl., Ex. C, ¶¶ 42(a), (b), (c) (d), (e) & (n). This discovery is neither overly broad nor unduly

burdensome, particularly since Trustmark presumably has already produced (or identified and

described) these same categories of documents to All American in order to substantiate its

allegations. *See* Fed. R. Civ. P. 26(a)(1)(B).

Second, the Court should direct Trustmark to respond by November 26, 2004 to

TIG's interrogatories seeking to discover the facts underlying its allegations against US Life. In

connection with this motion, TIG has filed a Motion for Leave to Serve Additional

Interrogatories and to Require Trustmark to Respond to TIG's Interrogatories on An Expedited

Basis, and has attached its proposed second set of interrogatories to that motion. Again, TIG's

interrogatories on the issue are neither overly broad nor unduly burdensome, particularly where, as here, Trustmark will have to produce comparable information in order to support its claims in the *All American* litigation.

Finally, TIG may seek a limited number of depositions on this subject matter after it has had an opportunity to review Trustmark's document production and interrogatory responses.

In short, the discovery TIG is seeking on this motion is not overly broad or unduly burdensome, particularly in comparison to the substantial relief Trustmark is seeking in this litigation. TIG believes that this discovery it is seeking can be completed in relatively short order and, thus, will not impact the various deadlines that the parties have proposed in the Joint Report.

**B.      TIG Should Be Permitted To Conduct Discovery On Trustmark's And US Life's Dispute Concerning US Life's Liability On The Retrocession Contract**

As discussed above, US Life and Trustmark are in litigation concerning whether US Life is liable on the 1999 Treaty/Retrocession Agreement. The Court should direct Trustmark to produce documents relating to its assertion that US Life is responsible for 50% of the net results under the 1999 Treaty/Retrocession Agreement. Indeed, Trustmark should have already produced these documents since Trustmark previously agreed to produce all documents relating to the 1999 Treaty and the Retrocession Agreement, which would obviously include all of its documents relating to its retrocessional protections on those contracts.

## CONCLUSION

For the reasons set forth above, TIG respectfully requests that this Court grant

TIG's motion to compel discovery of Trustmark, including directing Trustmark to:

(a)     produce by no later than November 26, 2004 documents relating to:  (i) its allegations in *All American* that All American breached its "partnership duties" by "fail[ing] to obtain reinsurance," "obtaining reinsurance of poor quality that has provided no protection to the partnership," "the loss of reinsurance due to the misconduct of All American and its agents," "fail[ing] to advise or consult with Trustmark with respect to arbitrations and litigations," "agree[ing] to settlements that [we]re not in the best interests of the partnership" and "fail[ing] to pursue retrocessional recoveries;" and (ii) its dispute with US Life concerning whether US Life has any liability on the 1999 Treaty and/or the Retrocession Agreement; and

(b)     to respond by no later than November 26, 2004 to TIG's Second Set of Interrogatories.

THIRD PARTY DEFENDANT


By:_____

J. Daniel Sagarin CT 04289
David Slossberg CT 13116
Brian C. Fournier  CT 16272
Hurwitz, Sagarin & Slossberg, LLC
147 North Broad Street
Milford, Connecticut 06460-0112
Tel.: (203) 877-8000
Fax: (203) 878-9800

-and-

Lawrence I. Brandes, CT 23789
Harry P. Cohen, CT 20446
Brian J. O'Sullivan CT 23790
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY  10038
Telephone:  212-504-6000
Facsimile:  212-504-6666


Attorneys for Third-Party Defendant
TIG Insurance Company

## CERTIFICATE OF SERVICE

This is to certify that on October 29, 2004, a true and correct copy of the foregoing was sent via facsimile and mailed, postage prepaid, first class mail, to:

| | | |
|---|---|---|
| Frank F. Coulom, Jr., Esq.<br>Marion B. Manzo, Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br><br>Attorneys for Plaintiff | Alia L. Smith<br>Christine Y. Wong, Esq.<br>Mark B. Holton, Esq.<br>James L. Hallowell, Esq.<br>Kathryn E. Nealon, Esq.<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue, 47th Floor<br>New York, NY 10166-0193<br><br>Attorneys for Plaintiff | David J. Grais, Esq.<br>Erick M. Sandler, Esq.<br>Robert J. Morrow, Esq.<br>Kathryn C. Ellsworth, Esq.<br>Dewey Ballantine LLP<br>1301 Ave of the Americas<br>New York, NY 10019-6092<br><br>Attorneys for Plaintiff |
| David R. Schaefer, Esq.<br>Rowena A. Moffett, Esq.<br>Brenner, Saltzman & Wallman<br>271 Whitney Avenue<br>P.O. Box 1746<br>New Haven, CT 06511-1746<br><br>Attorneys for Defendant,<br>Third Party Plaintiff | David M. Spector, Esq.<br>Everett J. Cygal, Esq.<br>Ronald S. Safer, Esq.<br>Amy M. Rubenstein, Esq.<br>Michael Mullins, Esq.<br>Paula J. Morency, Esq.<br>William E. Meyer, Jr., Esq.<br>Dennis G. LaGory, Esq.<br>Sharon A. Doherty, Esq.<br>Schiff Hardin & Waite<br>6600 Sears Tower<br>Chicago, IL 60606-6473<br><br>Attorneys for Defendant,<br>Third Party Plaintiff | |

_____
Brian C. Fournier