UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>Plaintiff,<br><br>-against-<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO. 3:01-CV-02198 (PCD) |
| TRUSTMARK INSURANCE COMPANY,<br><br>Third Party Plaintiff,<br><br>-against-<br><br>TIG INSURANCE COMPANY,<br><br>Third Party Defendant. | December 7, 2004 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF TIG
INSURANCE COMPANY'S MOTION TO COMPEL
<u>DISCOVERY FROM TRUSTMARK INSURANCE COMPANY</u>**

Third Party Defendant TIG Insurance Company ("TIG"), through its counsel, respectfully submits this reply memorandum of law in further support of its motion to compel discovery from Trustmark Insurance Company ("Trustmark").[1]

<u>**PRELIMINARY STATEMENT**</u>

As TIG demonstrated in its Initial Memorandum, TIG is entitled to conduct discovery of the facts underlying Trustmark's allegations against US Life (its former "partner" in the WEB Facility) because they are potentially relevant to Trustmark's allegation that WEB was defrauded into entering into the reinsurance agreements at issue here. In its opposition brief (the

---

[1] TIG adopts herein the same conventions and abbreviations it used in its Initial Memorandum of Law (the "TIG Mem.").

NYLIB2 244449.3

"Trustmark Mem."), Trustmark argues that the Court should deny TIG's motion to compel because the discovery TIG is seeking is irrelevant to the issue of whether "TIG and its agent made misrepresentations and omissions in connection with the placement of the [1999 Treaty]." Trustmark Mem. at 4. However, TIG has not suggested that the discovery at issue on this motion is relevant to the issue of whether any of the alleged misrepresentations underlying Trustmark's third party claims were, in fact, made (although we believe that such evidence would undoubtedly undermine the credibility of Trustmark's key witness, Robin Ekwall, on this point). Rather, TIG is seeking discovery of the facts underlying Trustmark's allegations against US Life because they are relevant to the issues of whether the alleged misrepresentations (assuming that they were made) were material to and relied on by WEB, and/or whether they proximately caused any damages to Trustmark. The Court should therefore grant TIG's motion to compel since the discovery at issue is relevant to three necessary elements of Trustmark's third party claims (*i.e.*, materiality, reliance, and proximate cause).[2]

## ARGUMENT

A.  **The Discovery TIG Is Seeking Is Relevant To Whether The Alleged Misrepresentations Were Material To Or Relied On By WEB In <u>Underwriting and Pricing the 1999 Treaty</u>**

In this litigation, Trustmark is seeking tens of millions of dollars in relief based upon its claim that its agent, WEB, was defrauded into entering into the reinsurance contracts at issue. Trustmark's claims are premised almost entirely on the testimony of Mr. Ekwall, the WEB underwriter who entered into the 1999 Treaty on behalf of Security and the Retrocession Contract

---

[2] Trustmark seeks to divert attention from the fact that it does not dispute that the discovery TIG is seeking is relevant to the materiality, reliance and proximate cause elements of its third party claims by harping on the decision of the panel in the TIG/US Life arbitration, which found that TIG's agent, AON, made a misrepresentation in connection with the 1998 Treaty. Obviously, the outcome of the TIG/US Life arbitration is completely irrelevant to the issue of whether TIG is entitled to the discovery at issue on this motion. Accordingly, TIG will not respond substantively to Trustmark's assertions concerning this issue (other than to state that, at the appropriate time, TIG will demonstrate why the "Arbitration Ruling" undermines, not supports, Trustmark's third party claims).

on behalf of Security and Trustmark. Indeed, Trustmark has not produced any contemporaneous documents to support its claim that the alleged misrepresentations were material to or relied upon by Mr. Ekwall, or that Mr. Ekwall would not have written the 1999 Treaty/Retrocession Contract on the terms that he did but for the alleged fraud.

For Trustmark to be entitled to any relief on its claims, it must prove, *inter alia*, that the alleged misrepresentations were material to and relied on by Mr. Ekwall, and that Trustmark suffered damages that were proximately caused by the alleged misrepresentations. Stated differently, Trustmark will be entitled to no relief in this litigation if the jury concludes that: (a) the alleged misrepresentations were not material to or relied on by WEB, and/or (b) Trustmark suffered no damages as a result of the alleged misrepresentations because, irrespective of the alleged misrepresentations, Mr. Ekwall would have written the 1999 Treaty/Retrocession Contract on the same terms that he did because he believed Trustmark would earn a significant *net* profit based upon its favorable retrocessional protections (thus resulting in a significant profit commission to WEB).

The discovery at issue on this motion is directly relevant to the issues of whether the alleged misrepresentations were material to and relied on by WEB and/or whether they affected in any way WEB's pricing of the 1999 Treaty. Indeed, in assessing these issues (and, in particular, Mr. Ekwall's testimony that he would never have written the 1999 Treaty/Retrocession Contract on the terms that he did but for TIG's alleged fraud), the jury is entitled to know that:

- WEB was a "net line underwriter" that wrote business it expected would be profitable only on a *net* basis, *i.e.*, profitable only after taking into account the economic impact of retrocessional contracts;

- for various reasons, Trustmark cannot now collect from its retrocessionaires on much of the business written by WEB, meaning that the significant net profits that Trustmark and WEB anticipated making when WEB wrote the business have turned into significant losses (O'Sullivan Decl. (10/29/04), Ex. D; *see also* O'Sullivan Decl. (12/06/04), Ex. I (February 4, 2000 fax from Hawksworth to Koloms); *see also id.,* Ex. J (Trustmark's August 27, 2004

-3-

answer in *United States Life Insurance Company v. Trustmark Insurance Company*, Civ. No. 3:03CV2114(PCD));

- as a result, Trustmark has embarked on a strategy of claiming that WEB was defrauded into entering into those contracts on which Trustmark is now facing significant unreinsured losses;[3] and

- Trustmark is now suing US Life based upon the failure of their retrocessional protections, as well as US Life's alleged "failure to advise or consult with Trustmark with respect to arbitrations and litigations" and "agree[ing] to settlements that [we]re not in the best interests of the partnership." O'Sullivan Decl. (10/29/04), Ex. C at 7.

Significantly, in opposing TIG's motion, Trustmark does not dispute (and, thus, concedes) that the facts underlying Trustmark's allegations against US Life are relevant to the "materiality," "reliance" and "proximate cause" elements of its third party claims. *See* Trustmark Mem. at 3-5. Accordingly, under Federal Rule of Civil Procedure 26(b), TIG is indisputably entitled to discovery at issue on this motion.

Trustmark nevertheless argues that TIG is not entitled to this discovery because "Trustmark's motive (whether as speculated by TIG or not) for bringing its claims to this Court is simply not relevant to the actual merits of whether the TIG/AON actions constitute[] fraud or misrepresentation." Trustmark Mem. at 4. However, the cases on which Trustmark relies, including this Court's September 27, 2002 ruling in *Security v. Trustmark I*, are irrelevant since they involved claims (such as breach of contract) which did not present disputed issues of materiality, reliance and proximate cause. Thus, while Trustmark's motive for canceling the Retrocession Contract may not have been relevant to whether Trustmark had a contractual or legal right to do so (*i.e.*, the central issue in *Security v. Trustmark I*), Trustmark's motives for claiming fraud are clearly relevant to the issue of whether the alleged misrepresentations were material to or relied on by WEB and/or were the proximate cause of any damages to Trustmark.

---

[3] Indeed, as discussed below, TIG can already demonstrate that Trustmark and/or WEB have claimed that WEB was defrauded into entering into four of the five largest contracts WEB wrote. *See* page 7, *infra*.

-4-

Finally, Trustmark argues that "TIG has already received all [of] the discovery it is entitled to" since, previously, "the Court limited TIG's [document] request based upon the relevant allegations in the complaint." Trustmark Mem. at 5. Obviously, the Court did not have before it at the time of TIG's initial motion Trustmark's allegations against US Life, its former partner in the WEB Facility, or the evidence of WEB's "net line underwriting" that is set forth in TIG's Initial Memorandum. In any event, Trustmark's argument on this point is irrelevant since Trustmark is now asserting alleged misrepresentations that were not set forth in its third party complaint. *See* O'Sullivan Decl., Ex. E (Trustmark's May 27, 2003 Second Supplemental Response to TIG's Interrogatories) & Ex. F (Trustmark's November 3, 2004 Response to Security's Second Set of Interrogatories).[4]

**B.    The Discovery TIG Seeks Is Likely To Be Admissible At Trial**

Trustmark devotes the bulk of its opposition brief to arguing that the Court should deny TIG's motion to compel because the facts and information TIG seeks to discover would be inadmissible under the Federal Rules of Evidence, specifically Rule 406, Rule 411, Rule 404(b) and Rule 403. As a threshold matter, Trustmark's arguments fail because the Federal Rules of Civil Procedure permit discovery even where the evidence would ultimately prove inadmissible at trial. *See* Fed. R. Civ. P. 26(b)(1). In any event, as discussed below: (a) TIG must be permitted an opportunity to conduct this discovery so that, at a minimum, it can develop evidence demonstrating that Trustmark and WEB have engaged in a pattern of misconduct that would be admissible under Rule 406; and (b) Rules 411, 404(b) and 403 are irrelevant to the admissibility of the evidence on which TIG is seeking discovery.

---

[4]   TIG will address the propriety of Trustmark's efforts to go beyond the allegations of fraud and negligent misrepresentation set forth in its third party complaint in an *in limine* motion.

-5-

1.  **TIG Must Be Permitted an Opportunity To Develop Evidence That Trustmark and WEB Have Engaged in a "Pattern" Which Would Be Admissible Under Rule 406 of the Federal Rules of Evidence**

Trustmark does not dispute (because it cannot) that "evidence of a practice or custom can be used to prove conduct on a particular occasion." February 5, 2003 Ruling at 7 (citations omitted). Nevertheless, Trustmark argues that TIG should not be permitted an opportunity to conduct the discovery necessary to demonstrate that Trustmark has engaged in a pattern of claiming fraud whenever it is faced with substantial unreinsured liabilities on an unprofitable contract, because, according to Trustmark, "[its] decisionmaking process in evaluating potential problems with individual reinsurance or retrocessional contracts, and in determining whether or not it was defrauded and must bring suit, is highly fact-specific" and, thus, is not the kind of "routine practice[] . . . that can be admitted under Rule 406." Trustmark Mem. at 7. This type of conclusory assertion is obviously inappropriate on a discovery motion where the issue before the Court is whether TIG will be permitted an opportunity to conduct the discovery necessary to demonstrate that Trustmark and/or WEB have engaged in a pattern or practice that would be admissible under Rule 406.

That said, based upon the evidentiary record that exists today, TIG can demonstrate that:

> a.  Trustmark and/or WEB have claimed that WEB was defrauded into entering into four of the five largest workers compensation reinsurance contracts WEB wrote (*see, e.g.*, O'Sullivan Decl.(10/29/04), Ex. A, ¶ 17; *see also* O'Sullivan Decl. (12/06/04) Ex. H(November 2, 2001 letter from Spector to Grais);[5] and

---

[5] The Pac Rim Treaty is the only one of the five largest workers compensation reinsurance contracts that WEB wrote that we presently cannot demonstrate that Trustmark and/or WEB have claimed that WEB was defrauded into writing. TIG can demonstrate at this time that: (a) Trustmark has refused to reimburse US Life for its share of the commutation of the Pac Rim Treaty (*see* O'Sullivan Decl., Ex. A, ¶¶ 38-52), and (b) US Life and Trustmark had problems collecting from its retrocessionaire on that contract. TIG is confident that, if it is permitted discovery, it will be able to demonstrate that Trustmark and/or WEB have claimed that WEB was defrauded into entering into the Pac Rim Treaty (which is presumably why Trustmark is refusing to reimburse US Life on the commutation of that contract) (*see id.*, Ex. I, at TM/R006837).

-6-

> b.  Trustmark has had problems collecting from its retrocessionaires on each of those contracts (*see, e.g.,* O'Sullivan Decl. (10/29/04) Ex. D; *see also* O'Sullivan Decl. (12/06/04) Ex. I, at TM/R006837-40 & Ex. J ¶¶ 15, 71-81.

Under these circumstances, there is every reason to believe that if TIG is permitted the discovery it seeks, it will be able to demonstrate at trial that Trustmark and WEB have engaged in a pattern of, among other things, claiming fraud whenever Trustmark is faced with substantial unreinsured liabilities on an unprofitable contract.

2.  **Rule 411 Is Irrelevant To the Discovery TIG Is Seeking**

Trustmark also argues that Rule 411 would preclude TIG from relying on any evidence concerning the role that its retrocessional protections played in WEB's underwriting of the 1999 Treaty (as well as other reinsurance contracts), or the role that the failure of those protections played in its decision to claim fraud. However, Rule 411 provides merely that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411. This rule has no relevance where, as here, TIG is seeking discovery in order to demonstrate that the alleged misrepresentations were not material to or relied upon by WEB, and that they did not influence WEB's pricing of the 1999 Treaty. This is clearly not prohibited by Rule 411, which expressly permits the use of evidence of insurance for all purposes other than to show that a party was acting negligently or otherwise wrongfully.

3.  **Rule 404(b) Is Irrelevant to the Discovery TIG Is Seeking**

Trustmark also argues that the evidence TIG is seeking would be inadmissible under Rule 404(b), which precludes "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). However, Rule 404(b) is inapplicable here for two reasons. First, Rule 404(b) provides that evidence of other bad acts is admissible to show, for example, that a party was engaged in a plan or scheme. As discussed above, TIG is seeking discovery because it believes that it will be able to demonstrate at trial that:

-7-

NYLIB2 244449.3

(a) Trustmark has engaged in a scheme or plan of claiming that WEB was defrauded into entering into contracts on which Trustmark is now facing significant unreinsured losses; and (b) Trustmark's claims against US Life are the latest manifestation of this scheme or plan. Second, TIG intends to demonstrate that Trustmark and WEB have engaged in a pattern of misconduct, the admissibility of which will be governed by Rule 406, not Rule 404(b). *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.12[3] at 404-34.3 (Joseph M. McLaughlin, ed., 2d ed. 2004) ("Rule 404(b) does not prevent admission of other acts under Rule 406, if the other acts establish that the person made a habit of such conduct").

    4.    **Rule 403 Is Irrelevant To Discovery TIG Is Seeking**

Trustmark also argues that the discovery that TIG is seeking would be inadmissible under Rule 403 because such evidence would only have "minimal" probative value "in determining whether TIG made fraudulent misrepresentations to WEB." Trustmark Mem. at 9. However, TIG is not seeking the discovery at issue because it is potentially relevant to the issue of "whether TIG made fraudulent misrepresentations to WEB," but because it is directly relevant to the issues of whether the alleged misrepresentations were material to and relied on by WEB and/or whether Trustmark suffered any damages proximately caused by the alleged misrepresentations. Under these circumstances, Trustmark cannot possibly demonstrate that the "probative value" of the discovery at issue on this motion will be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *see also Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2001) (noting that "the balancing process contemplated by [Rule 403] is best undertaken at the trial itself" and not on any pretrial motion).

Finally, Trustmark incorrectly suggests that the issues presented by TIG's motion are somehow related to "Security's now-dismissed CUTPA/CUIPA claims." Trustmark Mem. at 9. Indeed, the Court granted summary judgment on Security's CUTPA/CUIPA claims only after permitting Security a full opportunity to conduct discovery of the facts underlying those claims (*see*



February 5, 2003 Ruling at 3). Here, TIG should be permitted the same opportunity to conduct discovery into whether Trustmark and/or WEB have engaged in a pattern of misconduct that Security had vis-à-vis its CUTPA/CUIPA claims.[6]

C.  **Trustmark Does Not Dispute That TIG Is Entitled to Discovery Of Trustmark's And US Life's Dispute Concerning US Life's Liability On The 1999 Treaty/Retrocession Contract**

Trustmark does not dispute that documents relating to its assertion that US Life is responsible for 50% of the net results under the 1999 Treaty/Retrocession Agreement is relevant to its third party claims. Nor does Trustmark dispute that it should have already produced these documents in response to TIG's document request. Accordingly, the Court should order Trustmark to produce all documents relating to its assertion that US Life is responsible for 50% of the net results under the 1999 Treaty/Retrocession Agreement.

D.  **Trustmark's Reliance on Local Rule 37(a)(2) Is Misplaced**

Trustmark is correct that TIG did not confer with Trustmark prior to serving and filing its motion on October 29, 2004 (not November 1, 2004, as Trustmark states in its opposition memorandum).[7] However, Trustmark neglects to mention that on Monday, November 1, 2004, counsel for TIG called counsel for Trustmark and advised her that (i) we had inadvertently failed to confer with counsel for Trustmark prior to serving and filing our motion and (ii) TIG would be

---

[6]  The Court granted summary judgment on these claims only after the Court found that: (a) "Security cannot attempt to prove the substance of its CUIPA claim by reexamining the merits of prior settled suits regarding allegedly improperly rescinded reinsurance or retrocession agreements," and (b) Security's two remaining examples "[we]re insufficient to establish that Trustmark has engaged in a general practice of refusing to settle claims in violation of CUIPA and CUTPA." *See* September 1, 2004 Ruling on Trustmark's Motion for Summary Judgment at 6-7 & 9-10. This ruling is irrelevant to the instant discovery motion for two reasons. First, Security was not permitted to rely on instances where Trustmark and/or WEB have claimed that WEB was defrauded into entering into reinsurance contracts written on US Life paper, since the Court previously ruled those instances were irrelevant to a CUIPA claim against Trustmark (*see* June 10, 2003 Discovery Rulings, at 10-11), and (b) in any event, the Court did not have before it at the time it issued its ruling any of the facts underlying the dispute between Trustmark and US Life, which appears to involve Trustmark's refusal to pay US Life outstanding amounts on 16 separate reinsurance programs (*see* O'Sullivan Decl. (10/29/04), Ex. A, ¶¶ 30-70 & 75-80).

[7]  Trustmark's opposition to TIG's motion is untimely since it did not serve its opposition brief until November 22, 2004, three weeks and three days after TIG served and filed its motion.

NYLIB2 244449.3

willing to withdraw its motion (in whole or in part) if Trustmark would agree to voluntarily produce the discovery subject to TIG's motion. *See* O'Sullivan Decl. (12/06/04), ¶ 8. Counsel for Trustmark advised us that they would discuss the issues raised by TIG's motion with their client and get back to us. Over a month later, counsel for Trustmark has yet to get back to us on this issue. *See id.* Under these circumstances, it would be extremely unfair if TIG were penalized for not conferring with counsel for Trustmark prior to filing the motion to compel.

## CONCLUSION

For the reasons set forth above as well as in TIG's initial memorandum of law in support of its motion, TIG respectfully requests that this Court grant TIG's motion to compel discovery of Trustmark in its entirety.

THIRD PARTY DEFENDANT
TIG INSURANCE COMPANY

By: _____
J. Daniel Sagarin   CT04289
David Slossberg CT 13116
Brian C. Fournier CT16272
HURWITZ, SAGARIN & SLOSSBERG, LLC
147 North Broad Street
Milford, Connecticut 06460-0112
Tel.: (203) 877-8000
Fax: (203) 878-9800

-and-

Larry I. Brandes CT 23789
Harry P. Cohen CT 20446
Brian J. O'Sullivan CT 23790
CADWALADER, WICKERSHAM & TAFT, LLP
100 Maiden Lane
New York, NY 10038
Tel: (212) 504-6000
Fax: (212) 504-6666

NYLIB2 244449.3

## CERTIFICATE OF SERVICE

      This is to certify that on December 7, 2004, a true and correct copy of the foregoing was sent via facsimile and mailed, postage prepaid, first class mail, to:

Frank F. Coulom, Jr., Esq.
Marion B. Manzo, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Attorneys for Plaintiff

Mark B. Holton, Esq.
Kathryn E. Nealon, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

Attorneys for Plaintiff

David J. Grais, Esq.
Kathryn C. Ellsworth, Esq.
Dewey Ballantine LLP
1301 Ave of the Americas
New York, NY 10019-6092

Attorneys for Plaintiff

David R. Schaefer, Esq.
Rowena A. Moffett, Esq.
Brenner, Saltzman & Wallman
271 Whitney Avenue
P.O. Box 1746
New Haven, CT 06511-1746

Attorneys for Defendant,
Third Party Plaintiff

David M. Spector, Esq.
Everett J. Cygal, Esq.
Ronald S. Safer, Esq.
Amy M. Rubenstein, Esq.
Michael Mullins, Esq.
Paula J. Morency, Esq.
William E. Meyer, Jr., Esq.
Dennis G. LaGory, Esq.
Sharon A. Doherty, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, IL 60606-6473

Attorneys for Defendant,
Third Party Plaintiff

_____
David A. Slossberg

NYLIB2 244449.3