UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, : <br>        Plaintiff, : <br> : <br> -vs- : <br> : <br> TRUSTMARK INSURANCE COMPANY, : <br>        Defendant. : <br> ------------------------------------------------------ <br> TRUSTMARK INSURANCE COMPANY : <br>        Third-Party Plaintiff, : <br> : <br> -vs- : <br> : <br> TIG INSURANCE COMPANY : <br>        Third-Party Defendant. : | Case. No. 3:01cv2198 (PCD) |

**RULING ON MOTIONS FOR CLARIFICATION AND RECONSIDERATION**

     Third Party Defendant TIG Insurance Company ("TIG") moves for partial reconsideration [Doc. No. 359] of this Court's August 4, 2004 Ruling on Prior Pending Discovery Motions [Doc. No. 347]. Defendant Trustmark Insurance Company ("Trustmark") moves for clarification [Doc. No. 354] of the same Order. For the reasons stated below, TIG's Motion is **denied** and Trustmark's Motion is **granted** in part.

**I.     STANDARD OF REVIEW:**

     The standard for granting a motion for reconsideration is strict. Reconsideration will generally only be granted when a party can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

Reconsideration should therefore be granted when a "party can point to controlling decisions or data that the court overlooked -matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995), see also United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994) (Granting reconsideration appropriate when a "need is shown to correct a clear error of law or to prevent manifest injustice."). A "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257.

### III. DISCUSSION:[1]

    A.    Trustmark's Motion:

Trustmark seeks clarification of the August 4th Ruling as to its effect on the obligation of TIG's parent company, Fairfax Financial Holdings ("Fairfax"), to produce all documents regarding its due diligence and eventual purchase of TIG that relate to TIG's workers' compensation business and all documents that bear upon the overall value of TIG, with and without the workers' compensation business. Trustmark Mot. at 5.[2]

The basis for Trustmark's Motion is that in the August 4th Ruling this Court wrote that Trustmark's discovery of documents pertaining to Fairfax's due diligence should be limited to "due diligence material that reflects TIG's ability to report losses in a timely manner or in the alternative any failures to provide loss reporting in a timely manner." August 4th Ruling at 7-8. Trustmark argues that its Third Party Complaint puts at issue and alleges claims broader than

---

[1] Familiarity with the background of this litigation is assumed.

[2] Trustmark initially sought clarification that TIG was required to produce "all documents regarding TIG's inability or ability to report losses in a timely manner." Trustmark Mot. at 5. There is, however, no disagreement between the parties on this point and the issue is moot. Trustmark Reply at 2 n. 1.

simply loss reporting. Trustmark Mot. at 3. Rather, the claims make discovery necessary on "TIG's misrepresentations and failure to disclose key information regarding TIG's worker's compensation portfolio ... and the effect those misrepresentations and nondisclosures had on TIG's overall value, as well as the reporting issues." Id. at 4. Trustmark maintains that this discovery is necessary as it bears on "Trustmark's contention that TIG had a motive to misrepresent its workers compensation business in obtaining extremely favorable reinsurance." Trustmark Reply at 3. Trustmark therefore interprets the August 4th Ruling not "to excuse Fairfax from production of the documents that reveal overall values of the business and its divisions, which would need to be assessed both with and without the worker's compensation business." Trustmark Mot. at 4. Trustmark is concerned that the Ruling may be inadvertantly "read to excuse Fairfax from production" of such documents. Trustmark Mot. at 4.

TIG responds that Trustmark is attempting to use its Motion to expand the scope of discovery already permitted. TIG Opp. Mem. at 3. With respect to the proposed clarification, requiring production of all documents relating to TIG's worker's compensation business, TIG states that "there has never been any dispute about Fairfax's obligation (or willingness) to produce due diligence documents relating to TIG's workers' compensation business." Id. TIG, however, maintains that the requested clarification regarding TIG's overall value with and without the workers' compensation business "would only confuse matters, since the phrase "is so overly broad and amorphous that it would potentially include all of the documents that the Court previously ruled were irrelevant to this litigation." Id. at 4. Furthermore, TIG adds that the Third Party Complaint lacks any allegations concerning the overall value of TIG with and without the workers' compensation business and that TIG has not sought discovery on that issue. Id. at 4-5.

3

As to the obligation to produce documents pertaining to the workers' compensation business, there is no dispute over TIG's obligations. While Trustmark maintains that TIG has not been fully compliant and that a contempt proceeding is pending in Canada over TIG's compliance, there is clearly nothing to be gained here from any clarification regarding the actual obligations.

Trustmark's Motion for Clarification is likely more properly cast as a motion for reconsideration as its primary purpose is to effect reconsideration of the Court's finding that "a review of the third-party complaint reveals that timely and accurate reporting is the only apparently relevant basis for the discovery, [and therefore] Defendant shall limit its requests to due diligence material that reflects TIG's ability to report losses in a timely manner or in the alternative any failures to provide loss reporting in a timely manner." August 4th Ruling at 7-8. There is no ambiguity in that statement and therefore nothing to clarify. Rather, Trustmark takes issue with the conclusion reached regarding the Third Party Complaint.

Nowhere in either of its briefs does Trustmark actually cite to the Third Party Complaint or point to specific language that would suggest an error in the Court's prior interpretation, nevertheless a reexamination of the document does lend some support to Trustmark's claims of relevancy. Trustmark contends that TIG falsely stated that it was purchasing low layer reinsurance for its workers' compensation business not because it was performing poorly, but because TIG was for sale at the time and the reinsurance would provide stability to the purchaser when in reality it was passing off the risk because of poor performance. Trustmark's Third Party Complaint ¶¶ 25-6. Indeed, this alleged misrepresentation forms the basis of some of its fraud and negligent misrepresentation claims. Third Party Complaint ¶¶ 38(b), 49(b). Thus,

Trustmark contends that it is seeking what it has always sought "evidence of what TIG was telling its potential purchaser, Fairfax, about its workers compensation business, at the same time as TIG was defrauding and telling a different story to its reinsurers."  Trustmark Reply at 1.  Thus, to the extent that Trustmark is correct in assuming that TIG was telling two different stories, evidence of this would bear out its fraud and misrepresentation claims.  However, it remains unclear how the overall value of TIG both with and without the workers compensation business is necessary to uncovering this misrepresentation.  One has to assume, based on the arguments presented, that if the stories differ, this discrepancy would be exposed simply by examining any documents pertaining to the value of the workers compensation business itself.  Accordingly, to the extent that the Court held otherwise or that it was unclear, Trustmark may seek discovery regarding the due diligence Fairfax conducted as it pertains to the overall value of the workers compensation business, with such inquiries not limited solely to timely reporting of losses.  However, Trustmark has given no reason to expand this inquiry to TIG's overall value either with or without the worker's compensation business.  Thus, Trustmark's Motion is **granted** in part.

    B.    TIG's Motion:

TIG's Motion seeks reconsideration of the Court's Ruling with respect to certain WEB underwriting memoranda and documents requested during Robin Eckwall's February 6th deposition, that because "Defendant is presently under an order to produce these documents, and there is no indication that it is withholding documents in violation of the orders, it would serve little purpose to repeat the prior order based on speculation that there should be a more substantial response than that received.  [And that the Court,] ...will not order Defendant to

produce documents over which it claims no custody or control or require it to obtain the production from WEB, a former agent." August 4th Ruling at 3.  TIG maintains that Trustmark is withholding underwriting memoranda documents in violation of the past Order, that it does have control over the documents requested at the deposition, and that the Court should therefore revise its Ruling.  Mem. Supp. TIG Mot. at 3.

      1.      Underwriting Memoranda:

TIG points to the fact that in this Court's February 5, 2003 Ruling, it was ordered that Trustmark produce all documents "relating to [defendant's] review, monitoring, auditing and/or supervision of WEB and/or its principals..."  February 5th Ruling at 9 (modification in original).  Both parties agree that this language pertains to so-called "agency" documents.  The parties also agree that the Court also placed limitations on discovery of "underwriting memoranda" such that only those documents that met any of the following standards be produced:

> (1) reporting deficiencies of the nature but not necessarily the magnitude alleged in the third-party complaint, (2) overall profitability less than or equal to the TIG insurance at issue in this action, and (3) pricing or reserving problems in blocks of insurance reinsured

February 5th Ruling at 8.  TIG now, however, argues that Trustmark has failed to produce underwriting memoranda that pertain to the review, monitoring, auditing, and/or supervision of WEB and its principals and that such underwriting memoranda should not therefore be subject to the three criteria listed.  TIG Mem. Supp. Mot. at 4.  TIG further argues that the Court already resolved this argument in its February 20, 2003 Ruling on TIG's Motion to Clarify.

TIG exalts form over substance.  Nowhere did the Court explicitly approve of its argument in the February 20th Ruling.  TIG focuses on the fact that the Ruling granted the motion as opposed to granting it "in part" and interprets this to mean that the Court automatically

6

adopted all the arguments made in its Motion. As Trustmark points out, were there not to be a distinction between classes of documents, it would not have made any sense for the Court to set out a different resolution to the question of relevance and therefore different criteria for production of documents. See Trustmark Opp. Mem. at 4. As the Court clearly stated, while "some discovery into these other transactions is appropriate ... [it] does not justify *carte blanche* production of materials pertaining to separate agreements managed by WEB." February 5th Ruling at 8. Accordingly, TIG's Motion is **denied**.

> 2.  United States Life Insurance Company Business:

TIG asserts that Trustmark recently informed it that it had not produced documents regarding WEB business written on the paper of U.S. Life Insurance and asks the Court to compel the production of such documents. TIG Mem. Supp. Mot. at 6-7. Nowhere does TIG establish that it ever actually moved for such production or that the Court ruled on this issue. Accordingly, there is nothing to reconsider and TIG's motion is **denied**.

> 3.  Documents Requested During Eckwall's Deposition:

TIG again argues that Trustmark has failed to produce certain documents requested at the February 6 deposition of Robin Eckwall, asking the Court to reconsider its ruling that it would not require Trustmark to produce documents over which it claims no custody or control. TIG Mem. Supp. Mot. at 7. TIG argues that regardless of whether WEB is Trustmark's agent, Trustmark still has custody and control over WEB's documents pursuant to the April 28, 2000 settlement between Trustmark and U.S. Life Insurance and WEB. Id. Trustmark responds that it simply is not able to produce the documents as they either do not exist or are no longer in WEB's possession. Trustmark Opp. Mem. at 7. Thus, regardless of who has custody in the "legal sense"

there is no way to produce the documents.  Id.  TIG has done nothing to cast any doubt on this assertion or call into question the Court's original resolution of TIG's Motion, thus the Motion to Reconsider is **denied**.

**IV.    CONCLUSION:**

For the reasons stated herein, TIG's Motion for Partial Reconsideration [Doc. No. 359] is **denied** and Trustmark's Motion for Clarification [Doc. No. 354] is **granted** in part.

SO ORDERED.

Dated at New Haven, Connecticut, December  15 , 2004.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court