**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTMARK INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | Civil No. 301CV2198(PCD) |
| | ) | |
| TRUSTMARK INSURANCE COMPANY, | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIG INSURANCE COMPANY, | ) | |
| | ) | |
| Third Party Defendant. | ) | JANUARY 7, 2005 |

**TRUSTMARK INSURANCE COMPANY'S MOTION TO COMPEL DOCUMENTS
AND TESTIMONY FROM MESSRS. TOOTHMAN, LO, AND THIRKILL**

Defendant and Third Party Plaintiff, Trustmark Insurance Company hereby moves for an order: (i) compelling TIG Insurance Company to produce ***all*** documents that were considered by its expert, Mr. Michael Toothman; (ii) compelling additional deposition time with Mr. Toothman; (iii) compelling documents and deposition testimony from Mr. Richard Lo; (iv) compelling documents and deposition testimony from Mr. David Thirkill; and (iv) granting such relief as this Court may deem just and proper.   In support of its motion, Trustmark submits an accompanying memorandum of law and states as follows:

1.       As set forth in the memorandum, Trustmark seeks additional discovery with respect to TIG's testifying expert Michael L. Toothman.  TIG has failed to produce relevant

documents that were critical to Trustmark's ability to adequately probe and challenge Mr. Toothman's opinions in this matter.

2.    Further, it has become apparent that Mr. Toothman did not do his own work and his opinions are not his own.  In addition to Mr. Toothman, two other persons collaborated and contributed to the formation of his opinions and his report.  The first collaborator, Mr. Richard Lo, was apparently hired by Mr. Toothman to do all of the actuarial analyses and to frame, organize and draft the expert report.  The second collaborator, Mr. David Thirkill, apparently contributed heavily to the formation and expression of the opinions in Mr. Toothman's report and, in fact, appears to have actively managed the entire Toothman project.

3.    Trustmark is entitled to discover who did what, which conclusions were generated by whom, and which opinions were simply adopted wholesale by TIG's testifying expert.

4.    Further, after receiving this documentation, Trustmark needs to take the depositions of Lo and Thirkill, and to continue the deposition of Toothman, in order to probe, examine and test Mr. Toothman's opinions.  Such discovery is clearly permitted by principles of fairness and the federal rules.

5.    Counsel for Trustmark has conferred in good faith to resolve by agreement the issues raised by this motion without the intervention of the Court, but has been unable to reach such an agreement.  A Certificate to this effect is attached to this Motion as required by Local Rule 37(a)(2).  The grounds for this Motion are set forth in the accompanying memorandum of law, to which this Court is respectfully referred.

**WHEREFORE**, Defendant and Third Party Plaintiff, Trustmark Insurance Company respectfully requests the Court grant its motion and enter an order:

(i)     compelling TIG Insurance Company to produce *all* documents that were considered by its expert, Mr. Michael Toothman or Mr. Toothman's collaborators, Messrs. Lo and Thirkill, including:[1]

o     All of Mr. Toothman's final work product and the source information made available to him in native file format in connection with his final report, including but not limited to, any database that Mr. Toothman (or Messrs. Lo or Thirkill) had access to, or performed data queries.

o     All of Mr. Toothman's draft work and the source information available to him in connection with his draft work in native file format, including but not limited to, work that was performed but was not ultimately included in the final report.

o     All of Mr. Lo's documents and files relating to the work performed in connection with the Toothman report.

o     All of Mr. Thirkill's documents and files relating to the work performed in connection with the Toothman report.

o     All of Messrs. Lo's and Thirkill's work and source information in native file format in connection with the Toothman report.

o     Updated premium, claims, triangulations, loss and reserve information relating to each segment of the TIG book of business, including but not limited to updated loss triangles for the TIG primary segment for the 900 x 100, 50 x 50, and 400 x 100 layers.

o     All loss reporting and bordereaux provided by TIG or its agent to Security for the entire book of TIG business.

o     All e-mail communications from TIG's counsel to Messrs. Toothman and Lo, and all e-mail communications to Mr. Thirkill in connection with the Toothman project.

o     A copy of the expert report Mr. Toothman prepared (in connection with a Unicover arbitration) regarding Centaur's underwriting of certain Unicover risks upon which Mr. Toothman apparently based his opinions in this matter.

---

[1]     Just prior to the filing of this motion, on January 6, Trustmark received from TIG several CDs which purport to contain some (but not nearly all) of the information Trustmark is seeking. If, upon review of this information, Trustmark believes that TIG has complied with any of Trustmark's requests, Trustmark will withdraw the request and so inform the Court.

(ii)     compelling additional deposition time with Mr. Toothman;

(iii)    compelling documents and deposition testimony from Mr. Richard Lo;

(iv)    compelling documents and deposition testimony from Mr. David Thirkill; and

(v)     granting such relief as this Court may deem just and proper.

Respectfully submitted,


DEFENDANT/THIRD PARTY PLAINTIFF
TRUSTMARK INSURANCE COMPANY


By: _____/s/ David R. Schaefer_____
David R. Schaefer, Esq. (CT 04334)
Rowena A. Moffett, Esq. (CT 19811)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com
           dschaefer@bswlaw.com


David M. Spector (CT 21679)
Paula J. Morency (CT 24740)
Everett J. Cygal (CT 22765)
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473

*Counsel for Trustmark Insurance Company*

**CERTIFICATE OF SERVICE**

I, David R. Schaefer do certify that a true and correct copy of the foregoing Trustmark Insurance Company's Motion To Compel Documents and Testimony from Messrs. Toothman, Lo and Thirkill was sent by facsimile and United States mail January 7, 2005 addressed to:

Frank F. Coulom, Jr., Esq.
Marion Manzo
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103

Mark B. Holton, Esq.
David J. Grais, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Brian J. O'Sullivan, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

                                              /s/ David R. Schaefer
                                      David R. Schaefer (CT 04334)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TRUSTMARK INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | Civil No. 301CV2198(PCD) |
| TRUSTMARK INSURANCE COMPANY, | ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| TIG INSURANCE COMPANY, | ) ) | |
| Third Party Defendant. | ) | JANUARY 7, 2005 |

**TRUSTMARK INSURANCE COMPANY'S MEMORANDUM**
**OF LAW IN SUPPORT OF MOTION TO COMPEL DOCUMENTS**
**AND TESTIMONY FROM MESSRS. TOOTHMAN, LO, AND THIRKILL**

Defendant and Third Party Plaintiff, Trustmark Insurance Company ("Trustmark") submits this Memorandum of Law in support of its Motion to Compel Documents and Testimony from Messrs. Toothman, Lo and Thirkill.

**INTRODUCTION**

Trustmark seeks additional discovery with respect to TIG's testifying expert Michael L. Toothman. Despite agreement by the parties and the clear mandate of Federal Rule of Civil Procedure 26, TIG failed to produce relevant documents that were critical to Trustmark's ability to adequately probe and challenge Mr. Toothman's opinions in this matter. Indeed, TIG belatedly produced some documents and data only *after* Mr. Toothman's deposition on

December 15, 2004 and, despite continued requests from Trustmark, has flatly refused to produce other critical documents.

To make matters worse, at Mr. Toothman's deposition, it became apparent that Mr. Toothman did not do his own work and that his opinions are not his own. In addition to Mr. Toothman, two other persons collaborated and contributed to the formation of his opinions and his report. The first collaborator, Mr. Richard Lo, was apparently hired by Mr. Toothman to do all of the actuarial analyses and to frame, organize and draft the expert report. The second collaborator, Mr. David Thirkill, apparently contributed heavily to the formation and expression of the opinions in Mr. Toothman's report and, in fact, appears to have actively managed the entire Toothman project. Given the significant involvement of these "subcontractors," Trustmark is entitled to discover who did what, which conclusions were generated by whom, and which opinions were simply adopted wholesale by TIG's testifying expert. Despite Trustmark's requests, TIG has refused to produce data and documents in Mr. Toothman's subcontractors' possession relating to analyses and conclusions expressed in Mr. Toothman's report.

In order to get to the bottom of the opinion testimony of Mr. Toothman, Trustmark needs the documents and data generated in connection with Mr. Toothman's report whether authored by, or in the possession of, Messrs. Toothman, Lo or Thirkill. Further, after receiving this documentation, Trustmark needs to take the depositions of Messrs. Lo and Thirkill, and to continue the deposition of Mr. Toothman, in order to probe, examine and test Mr. Toothman's opinions. Such discovery is clearly permitted by principles of fairness and the federal rules.

**BACKGROUND**

**TIG's Failure To Produce Relevant Documents In Connection**

**With Mr. Toothman's Expert Report**

In connection with the parties agreement on expert discovery in this matter, on November 29, 2004, TIG was required to produce all documents responsive to a subpoena used for all experts in this matter. *See* **Exhibit 1**, e-mail correspondence dated November 16, 2004 from Paula Morency to Harry Cohen. Consistent with the mandate of Federal Rule of Civil Procedure 26, the subpoena called for all documents (in paper and electronic form) produced by or made available to the expert reaching his or her conclusions. Nevertheless, TIG failed to produce these materials.

On December 2 and 3, Trustmark requested certain documents conspicuously absent from TIG's production, such as source material considered and/or used for various portions of Mr. Toothman's report and loss/reserving information from the entire book of business at issue, not just Virginia Surety. *See* **Exhibits 2, 3** and **4**, letters dated December 2 and 3, 2004 from Everett Cygal to Harry Cohen.

On December 6, TIG conceded that it had not produced the source materials or data considered by Mr. Toothman, instead opting to produce only the "summary sheets" that he "relied" on. *See* **Exhibit 5**, e-mail correspondence dated December 6, 2004 from Harry Cohen to Everett Cygal.

Trustmark renewed its request that TIG produce the underlying source materials and the missing loss/reserving information regarding business segments other than Virginia Surety prior to Mr. Toothman's deposition, noting that Mr. Toothman's deposition could not be completed without this responsive information. *See* **Exhibit 6**, letter dated December 6, 2004 from Everett Cygal to Harry Cohen.

3

TIG responded by once again admitting that it did not produce all of the source information Mr. Toothman considered. TIG, however, claimed that the loss/reserving information Trustmark was seeking (regarding TIG's insurance segments in addition to Virginia Surety) was "irrelevant" to Mr. Toothman's Report.[2] *See* **Exhibit 7**, e-mail correspondence dated December 7, 2004 from Harry Cohen to Everett Cygal.

Concerned with the mounting prejudice resulting from TIG's failure to produce all of Mr. Toothman's documents, Trustmark renewed its request for compliance on December 8, to no avail. *See* **Exhibit 8**, letter dated December 8, 2004 from Everett Cygal to Harry Cohen. When TIG presented Mr. Toothman for deposition on December 15, Trustmark had not been provided with all of the relevant documentation and data to properly examine Mr. Toothman. Accordingly, Trustmark left Mr. Toothman's deposition open.

Only after the deposition (and an additional request from Trustmark), did TIG concede that it would produce certain native files used for portions of Mr. Toothman's report.[3] *See* **Exhibit 9**, letter dated December 17, 2004 from Everett Cygal to Harry Cohen; and **Exhibit 11**, e-mail correspondence dated December 31, 2004 from Harry Cohen to Everett Cygal.

As of the date of this motion, TIG has refused to produce any additional documentation and will not produce Mr. Toothman for completion of his deposition. Once TIG meets its Rule 26 obligations, Trustmark requests an additional seven hours to depose Mr. Toothman on the

---

[2]   As it turns out, the information TIG claimed to be "irrelevant" on December 7, 2004 was in fact used by Mr. Toothman (and his collaborative partner, Mr. Lo) to conduct a loss/reserving analysis for the entire book of business at issue, not just Virginia Surety. TIG, however, instructed them to stop, and the work and conclusions were stricken from the draft expert report. *See* **Exhibit 10**, Deposition of Mr. Toothman, 152-56. Work performed and conclusions reached that were subsequently withheld are hardly irrelevant.

[3]   TIG finally provided this information on January 6, 2005.

matters it was prevented from addressing with Mr. Toothman as a result of TIG's discovery violations.

### TIG's Refusal To Allow Discovery From Mr. Toothman's Collaborators

As developed so far, the record shows that two other persons collaborated extensively with Mr. Toothman in the preparation of his report. The first collaborator, Mr. Richard Lo, was apparently hired by Mr. Toothman to do all of the actuarial analyses and to frame, organize and draft the expert report. The second collaborator, one of TIG's actuaries, Mr. David Thirkill, apparently contributed heavily to the formation and expression of the opinions in Mr. Toothman's report and, in fact, appears to have actively managed the entire Toothman project.

As Mr. Toothman has testified, Mr. Lo worked for him as a "subcontractor" on this assignment, and worked with Mr. Toothman "pretty closely on the report." *See* **Exhibit 10**, Deposition of Mr. Toothman, 26-27. In fact, Mr. Lo performed certain analyses "many of which later became part of the report," and even created the first draft of a couple sections of Mr. Toothman's report.[4] *Id.* at 27, 98-99. Mr. Lo's significant involvement is further demonstrated by a draft of Mr. Toothman's report, with a handwritten note designated it as the "Lo Version." *See* **Exhibit 13**, TIG 159126-131. Mr. Lo also peer reviewed and commented on drafts of the report. *See* **Exhibit 10**, Deposition of Mr. Toothman, 116.

Despite Mr. Lo's heavy involvement in the project, Mr. Toothman never asked Mr. Lo for his files from this engagement, and they were not produced. *Id.* at 27. Most significantly, according to records produced by TIG, Mr. Lo billed 290.5 hours to this matter, roughly *four times* the 74.67 hours indicated as having been logged by Mr. Toothman on the invoices provided by TIG. *See* **Group Exhibit 14**, TIG 160782-84; 160474-76; 159693-95; 159426.

---

[4] Mr. Lo also attended meetings with Mr. Toothman and counsel for TIG. *See* **Group Exhibit 12**, TIG 159202-03; 160426-27.

5

Based on Mr. Lo's extensive involvement, Trustmark requested that TIG produce Mr. Lo's files related to Mr. Toothman's report, followed by a deposition of Mr. Lo. *See* **Exhibit 9**, letter dated December 17, 2004 from Everett Cygal to Harry Cohen. In spite of this clear collaborative effort, TIG claims that it has "no obligation" to produce Mr. Lo's files and that Mr. Lo will not appear for a deposition. *See* **Exhibit 11**, e-mail correspondence dated December 31, 2004 from Harry Cohen to Everett Cygal.

The record also establishes that Mr. Thirkill also collaborated with Mr. Toothman and Mr. Lo on the production of the expert report. TIG produced a document which contains, according to Mr. Toothman's note on it, the "Thirkill Opinion." *See* **Exhibit 15**, TIG 159007-10. Certain portions of the "Thirkill Opinion" are virtually identical to certain portions of Mr. Toothman's expert report.[5] *See* **Exhibit 16**, Expert Report of Mr. Toothman, ¶¶ 15 and 34. In addition, Mr. Thirkill noted a "significant problem" in paragraph 15 of Mr. Toothman's report and suggested some "rewording" that may have ended up in the final report. *See* **Exhibit 10**, Deposition of Mr. Toothman, 263-68. Moreover, items were deleted from Mr. Toothman's report at Mr. Thirkill's suggestion. *Id.* at 270-72.

Indeed, Mr. Thirkill apparently had a significant role in the development of the opinions expressed in Mr. Toothman's report. So far, the record shows that Mr. Lo also sent to Mr. Toothman several files designated "David Thirkill Files," "Thirkill 2," "Thirkill 3," and "Thirkill 4," which Mr. Lo revealed he "received from [Mr. Thirkill]" and has "been working on them with him." *See* **Group Exhibit 17**, TIG 162262; 162248-61; 162245-47; 162229-31. These

---

[5]   Mr. Toothman first explained that the similarity was merely a coincidence, but then conceded that it was possible that Mr. Lo may have relied on the "Thirkill Opinion" for some of the sections of which he did the first draft. *See* **Exhibit 10**, Deposition of Mr. Toothman, 96-99.

files contain exhibits remarkably similar to those attached to Mr. Toothman's expert report[6] –

indeed, in a draft of the report, it is noted in a parenthetical "see new exhibit 'TIG Buy Down-

Plan to Actual: from Thirkill." *See* **Exhibit 13**, TIG 159126-131 at 159127, ¶ 6.  Furthermore,

Mr. Thirkill actively participated in the preparation of Mr. Toothman's expert report, helping to

"revise [the] numbers" and "alter" the wording.  *See* **Exhibit 19**, TIG 160450-51.

Despite Mr. Thirkill's heavy and detailed involvement in the development of the opinions

expressed in the report, TIG has taken the same position here as it did with Mr. Lo – TIG

maintains it has "no obligation" to produce Mr. Thirkill's files and that Mr. Thirkill will not

appear for a deposition.  *See* **Exhibit 11**, e-mail correspondence dated December 31, 2004 from

Harry Cohen to Everett Cygal.

### Documents And Data That TIG Has Failed And/Or Refused To Produce In Connection With The Toothman Report

In sum, based upon the record in this matter, TIG has improperly withheld critical data

and documents that were provided to and used by Mr. Toothman and his collaborators, Messrs.

Lo and Thirkill.   Without this information, Trustmark is unable to effectively test Mr.

Toothman's opinions and conclusions.   Specifically, Trustmark has requested and TIG has

refused to provide the following documents and data:[7]

> o All of Mr. Toothman's final work product and the source information made available to him in native file format in connection with his final report, including but not limited to, any database that Mr.

_____

[6] There is additional e-mail correspondence from Mr. Thirkill containing files with analyses similar to those attached to Mr. Toothman's report. *See, e.g.,* **Group Exhibit 18**, TIG 159015-029; 159033-34; 159035-60; 159092-96; 159182-87;159241-42; 161767-68; 162039-41; 162217-25; 161348-49; 161350-51; 161387-91; 161699-700.

[7] Just prior to the filing of this motion, on January 6, Trustmark received from TIG several CDs which purport to contain some (but not nearly all) of the information Trustmark is seeking.  If, upon review of this information, Trustmark believes that TIG has complied with any of Trustmark's requests, Trustmark will withdraw the request and so inform the Court.

Toothman (or Messrs. Lo or Thirkill) had access to, or performed data queries.

o All of Mr. Toothman's draft work and the source information available to him in connection with his draft work in native file format, including but not limited to, work that was performed but was not ultimately included in the final report.

o All of Mr. Lo's documents and files relating to the work performed in connection with the Toothman report.

o All of Mr. Thirkill's documents and files relating to the work performed in connection with the Toothman report.

o All of Messrs. Lo's and Thirkill's work and source information in native file format in connection with the Toothman report.

o Updated premium, claims, triangulations, loss and reserve information relating to each segment of the TIG book of business, including but not limited to updated loss triangles for the TIG primary segment for the 900 x 100, 50 x 50, and 400 x 100 layers.

o All loss reporting and bordereaux provided by TIG or its agent to Security for the entire book of TIG business.

o All e-mail communications from TIG's counsel to Messrs. Toothman and Lo, and all e-mail communications to Mr. Thirkill in connection with the Toothman project.

o A copy of the expert report Mr. Toothman prepared (in connection with a Unicover arbitration) regarding Centaur's underwriting of certain Unicover risks upon which Mr. Toothman apparently based his opinions in this matter.

## DISCUSSION

Counsel for TIG simply cannot ignore the requirements of Federal Rules of Civil Procedure 26 and 30. At this advanced stage in discovery, Trustmark is entitled to know the facts and documents on which TIG bases its expert report. Discovery is not a shell game and it is only fair that TIG should no longer be permitted to avoid its clear disclosure responsibilities, and should be required to disclose all documents and testimony underlying its expert opinions.

The provisions of Federal Rule of Civil Procedure 26(a)(2)(B) provide:

Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).  TIG has failed to comply with its obligation under Rule 26 by refusing to produce the underlying source materials considered by Mr. Toothman and the missing loss/reserving information regarding business segments other than Virginia Surety, and by refusing to allow discovery from Messrs. Lo and Thirkill, individuals who collaborated with Mr. Toothman in preparing his expert report (and may in fact be the primary authors of Mr. Toothman's "opinions").

## I.   TRUSTMARK IS ENTITLED TO DISCOVERY OF ALL DOCUMENTS CONSIDERED BY MR. TOOTHMAN

"Rule 26(b)(4) has been broadly interpreted to authorize disclosure of both expert opinions and all the documents the expert generated or examined in the process of forming those opinions." *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) (internal citations and quotations omitted).

Numerous courts have held that "the scope of discovery should not be limited to documents relied on by the expert, but should extend to documents considered but rejected by the testifying expert in reaching his opinions."  *Id.* at 594 (internal citations and quotations omitted).  *See also In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001) ("documents and information disclosed to a testifying expert in connection with his testimony

are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report"); *Trigon Ins. Co. v. United States*, 204 F.R.D. 277 (E.D. Va. 2001) ("documents reviewed (not just those upon which the expert relied) by an expert witness are to be disclosed").

In fact, documents considered but rejected by the expert could be even more important for cross-examination than those actually relied upon by him. *United States v. City of Torrance*, 163 F.R.D. at 594.

Trustmark, then, is entitled to all of the documents and data made available to Mr. Toothman, whether used or rejected by him in forming his opinions. [8] TIG has, in violation of Rule 26, failed to produce source material considered and/or used for various portions of Mr. Toothman's report and loss/reserving information from the entire book of business at issue.

TIG is undeniably in violation of Rule 26 by its failure to produce source material considered and/or used for various portions of Mr. Toothman's report. Moreover, TIG cannot avoid its disclosure obligations by producing only the summary sheets "relied" on by Mr. Toothman, or by claiming that loss/reserving information regarding business segments other than Virginia Surety is irrelevant to Mr. Toothman's opinion. The test is whether Mr. Toothman considered such information, not whether such information is relevant or was relied on by Mr. Toothman.

---

[8]    Moreover, discovery is required regardless of whether the material consists of attorney work product – "any disclosure to a testifying expert in connection with his testimony assumes that privileged or protected material will be made public, there is a waiver to the same extent as with any other disclosure." *In re Pioneer*, 238 F.3d  at 1376.  *See also Aniero Concrete Co., Inc. v. New York City School Constr. Auth.*, 2002 WL 257685, *2 (S.D.N.Y. Feb. 22, 2002) ("the Rule 26(a)(2)(B) disclosure requirement trumps the substantial protection otherwise accorded opinion work product under Rule 26(b)(3)").

Trustmark is also entitled to discovery of loss/reserving information from the entire book of business at issue and, further, to ascertain why TIG chose to narrow its analysis to Virginia Surety.  Finally, Trustmark is entitled to an additional opportunity to depose Mr. Toothman regarding these matters.

## II.      TRUSTMARK IS ENTITLED TO DISCOVERY FROM INDIVIDUALS WHO COLLABORATED WITH MR. TOOTHMAN IN PREPARING HIS EXPERT REPORT

Trustmark is entitled to know the tasks Messrs. Lo and Thirkill performed in connection with Mr. Toothman's expert report.  Courts in similar circumstances have ordered such discovery in cases where the expert's opinions are the  result of a "seamless collaboration with his assistant." *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999).

In *Derrickson*, the plaintiff's expert testified at his deposition that he told his assistant in general terms what manipulations and analyses he wanted performed on data, and his assistant produced tables on which he relied.  In ordering production of the assistant's underlying analysis, as well as another opportunity to depose the plaintiff's expert, the United States District Court for the District of Maryland noted:

> Dr. Medoff and his assistant worked hand-in-glove, and the fruits of their labor are indivisible.  Defendant cannot properly cross-examine Dr. Medoff without first understanding how his assistant manipulated the data.  This is not a case where the testifying expert relied on a single, discrete written report by a non-testifying expert.  If that were so, Plaintiff would simply need to produce the non-testifying expert's report.  To the contrary, Dr. Medoff's opinions in this matter are the result of a seamless collaboration with his assistant.  Under these circumstances, Defendant is entitled to know what Dr. Medoff did.

*Id.*  The court further noted that, had the issue been presented, it would have been inclined to rule that the assistant could be deposed and cross-examined at trial. *Id.* n.1.

11

Similarly, in *Herman v. Marine Midland Bank*, 207 F.R.D. 26 (W.D.N.Y. 2002), the United States District Court for the Western District of New York held that the defendant was entitled to take the deposition of the plaintiff's expert's associate, who provided substantial assistance to the expert in preparing his report and co-authored the report. *Herman*, 207 F.R.D. at 30-31. In *Herman*, the assistant spent 16.75 more hours on the expert report than the expert did, and the plaintiff spent more for the assistant's services than for the expert's services. *Id.* The court found this evidence persuasive, stating:

> In this case, the evidence clearly demonstrates that the expert report submitted by Mr. Gordon was the result of substantial collaborative work by he and Mr. Sommer. Mr. Sommer performed more than half the total 329.25 hours it took to generate the expert report, and accounted for more than half of the $61,305.00 fee. Under theses circumstances, the fruits of Gordon Associates' labor is indivisible, and defendant is entitled to explore what Mr. Sommer did.

*Id.* at 31.

Mr. Toothman admits that Mr. Lo "worked with [him] pretty closely on the report," performed certain analyses many of which later became part of the report, prepared first drafts of some sections of the report, and peer reviewed and commented on drafts of the expert report. *See* **Exhibit 10**, Deposition of Mr. Toothman, 26-27, 98-99, 116. Significantly, Mr. Lo spent almost four times the amount of time spent by Mr. Toothman in preparing the expert report.

Accordingly, Trustmark's entitlement to discovery from Mr. Lo is even more compelling than in *Herman*, where the expert's assistant spent a little more than half the time it took to generate the report. *Herman*, 207 F.R.D. at 31. As in *Herman* and *Derrickson*, Mr. Lo provided substantial assistance to Mr. Toothman in preparing his expert report and co-authored the report, and because "the fruits of their labor are indivisible," Trustmark is entitled to discovery of Mr. Lo's files as well to take his deposition.

Mr. Thirkill also collaborated with Mr. Toothman and Mr. Lo on the expert report. For example, items were deleted from Mr. Toothman's report at Mr. Thirkill's suggestion. *See* **Exhibit 10**, Deposition of Mr. Toothman, 270-72. Moreover, both Mr. Toothman and his assistant Mr. Lo reviewed and/or relied on the "Thirkill Opinion" in drafting the expert report. *Id.* at 96-99. Furthermore, Mr. Thirkill actively participated in the preparation of Mr. Toothman's expert report, helping him to "revise [the] numbers" and "alter" the wording. *See* **Exhibit 19**, TIG 160450-51. In these circumstances, Trustmark is entitled to discovery of Mr. Thirkill's files and to take his deposition.

Although TIG has not disclosed Messrs. Lo and Thirkill as non-testifying experts, even if the Court considered them to be non-testifying experts under Rule 26(b)(4)(B), the result would be the same and Trustmark would be entitled to discovery of their files and to take their depositions. *See, e.g., Long Term Capital Holdings v. United States of America*, No. 01-CV-1290(JBA), 2003 WL 21269586, *3 (May 6, 2003 D. Conn.) ("In this case, Cambridge and Cragg, whether as independent experts or assistants, spent a disproportionate number of hours working on the collection and analysis of the data underlying the Testifying Experts' reports"); *Herman v. Marine Midland Bank*, 207 F.R.D. at 31; *Derrickson v. Circuit City Stores, Inc.*, 1999 WL 1456538 ("Only Dr. Medoff's assistant knows what he did to the data, and because that information is exclusively within the assistant's cognizance, Defendant is entitled to it under Rule 26(b)(4)(B)").

The case of *Long Term Capital Holdings v. United States of America*, No. 01-CV-1290(JBA), 2003 WL 21269586, *3 (May 6, 2003 D. Conn.) is on point. In *Long Term Capital*, the assistants were "heavily involved" in the preparation of the expert reports; specifically, they "prepared all of the qualitative analysis that was included in the expert reports, . . . drafted

portions of the expert reports, and . . . presented substantive analysis and conclusions to the testifying experts." *Long Term Capital*, 2003 WL 21269586 at *1. Additionally, the assistants spent an "overwhelming" number of hours working on the matter, significantly more than the testifying experts. *Id.* In those circumstances, this Court ordered depositions limited in scope to the extent of participation of the assistants "in the preparation, drafting, editing and/or revising the expert reports in this case authored by [the Testifying Experts]; and . . . any meetings, telephone calls or other contacts between [the assistants] and the [Testifying Experts]." *Id.* at *4.

Under this clear precedent, Trustmark is entitled to discovery of Messrs. Lo and Thirkill's files, as well as to take their depositions.

## <u>CONCLUSION</u>

For all the foregoing reasons, Trustmark respectfully requests that its Motion To Compel

Documents and Testimony from Messrs. Toothman, Lo and Thirkill be granted.

Respectfully submitted,

DEFENDANT/THIRD PARTY PLAINTIFF
TRUSTMARK INSURANCE COMPANY


By: _____/s/ David R. Schaefer_____
David R. Schaefer, Esq. (CT 04334)
Rowena A. Moffett, Esq. (CT 19811)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com
            dschaefer@bswlaw.com

David M. Spector (CT 21679)
Paula J. Morency (CT 24740)
Everett J. Cygal (CT 22765)
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473

*Counsel for Trustmark Insurance Company*

15

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Fed. R. Civ. Pro. 37(a)(2)(B) and Connecticut Local Rule 37(a)(2), I Everett J. Cygal, counsel for Trustmark Insurance Company, conferred with Harry P. Cohen, counsel for TIG Insurance Company, via correspondence and email dated December 2, 2004 through December 30, 2004, regarding the outstanding expert discovery issues.  These communications included extensive discussions regarding the outstanding discovery from Mr. Toothman, as well as repeated requests for discovery from and depositions of Messrs. Lo and Thirkill; however, these communications failed to resolve the disagreement.  Despite the best efforts of counsel, no agreement could be reached regarding the relief sought herein.  Accordingly, this matter is presented to the Court for determination.

_____/s/ Everett J. Cygal_____

## CERTIFICATE OF SERVICE

I, David R. Schaefer, Esq., do certify that a true and correct copy of the foregoing Trustmark Insurance Company's Memorandum Of Law In Support Of Motion To Compel Documents and Testimony from Messrs. Toothman, Lo and Thirkill and was sent by facsimile and United States mail January 7, 2005 addressed to:

Frank F. Coulom, Jr., Esq.
Marion Manzo
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103

Mark B. Holton, Esq.
David J. Grais, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Brian J. O'Sullivan, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

                                        /s/ David R. Schaefer
                                 David R. Schaefer, Esq., (CT 04334)