

**SCHIFF**HARDIN LLP
A Limited Liability Partnership Including Professional Corporations

6600 SEARS TOWER
CHICAGO, ILLINOIS  60606
t 312.258.5500
f 312.258.5600
www.schiffhardin.com

EVERETT J. CYGAL
(312) 258-5783
ecygal@schiffhardin.com

December 6, 2004

VIA TELECOPIER

Harry P. Cohen, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

    Re:   *Security Insurance Company of Hartford v. Trustmark Insurance Company*, Civil No. 301CV2198 (PCD)

Dear Harry:

    We write in response to your two e-mails of today's date, one responding to my letters of December 2nd and 3rd regarding Mr. Toothman's expert report and the other relating to my letter of December 3rd to you and Mr. Holton regarding certain loss information.

### INFORMATION PROVIDED TO TOOTHMAN

    In my December 2nd letter, Trustmark requested, among other things, the source information for all of Mr. Toothman's expert work as well as all loss reporting for the various TIG workers' compensation segments for underwriting years 1994 through 2000.

    As to the source data, you responded by stating that TIG 158838-41 "are summaries of data queries as of a particular date on which Mr. Toothman relied, in part, to base his opinions." As to TIG 158839, you again stated the reports are "data queries." Based upon this disclosure, it appears that Mr. Toothman (or someone acting on his behalf) decided to cull out certain data from a larger database through these so-called "data queries." TIG is required to produce all the underlying data in the database, not just the information that Mr. Toothman gleaned from these selective "queries." The production of the slivers of information to the exclusion of information that Mr. Toothman chose to ignore is simply unacceptable. Trustmark will not be able to test Mr. Toothman's opinions, conclusions and assumptions without access to all the data.

    Trustmark also requested "all loss reporting in Excel, either on a monthly or quarterly basis, for the 1994-2000 underwriting years for the entire book of



Harry P. Cohen, Esq.
December 6, 2004
Page 2

business at issue in this case." You claim that request is "objectionable for a variety of reasons" but your only objection is that the request is "unintelligible." We will attempt to correct your confusion.

In his report, Mr. Toothman opines in Opinion IV that "Virginia Surety's loss and allocated loss adjustment expense ("ALAE") reserves for accident years 1994-1997 . . . were sufficient to cover the ultimate loss exposure from those years." In support of this opinion, Mr. Toothman references Exhibits IV, Sheets 1 to 11. Those sheets contain, among other things, triangulations, premium information and claims information for the Virginia Surety segment for the period of 1994 through 1997. That source information, however, has not been produced. In order to effectively depose Mr. Toothman and test his opinions regarding reserve adequacy, Trustmark requires access to all of that information. We note that Mr. Toothman conducted his evaluation as of December 31, 2002. While we request the information that he relied upon, in order to test these opinions, we request that TIG produce loss information for those years (1994-1997) with a valuation date of December 31, 2003 and the most recent quarter ending in 2004. Of course, Mr. Toothman chose to limit his analysis to the period 1994 through 1997. We request the production of the same type of information for the period 1998 through 2000 as well.

Mr. Toothman chose to evaluate Virginia Surety to the exclusion of other segments. In order to test this decision, we have requested the production of the same type of information for the other segments for the same years (1994 through 2000). We trust that this explanation has clarified our request.

Finally, you have apparently decided to withhold the production of responsive information until you receive "confirmation that Trustmark has produced to [you] electronically all files and documents created, utilized or considered by Mr. Jessell (sic)." This position is both inappropriate and factually incorrect. First, as noted in my letter to you, the parties agreed to use the subpoena directed to Mr. Jessel, which was drafted by Mr. O'Sullivan, as if it was served by Trustmark. The two productions are not connected or contingent upon each other. Mr. Toothman's deposition is scheduled for December 15th. Each day that responsive information is withheld increases the likelihood that Mr. Toothman will have to return for additional days.

Second, as to the claim that there has been no confirmation of the completeness of Mr. Jessel's production, we direct you to Paula Morency's letter of October 29, 2004. In that letter, she stated *inter alia*: "As we discussed, while Trustmark did not accept service of the subpoena, we agreed to treat Brian's descriptions as a document request, *and hereby comply in full*." (emphasis added)

We hope that TIG's foot-dragging is not simply a tactic designed to thwart Trustmark's ability to adequately prepare for this deposition. Because all this material



Harry P. Cohen, Esq.
December 6, 2004
Page 2

should have been produced on November 29th as previously agreed, we stand by our request that it be produced today.

### THE PRODUCTION OF LOSS INFORMATION

In my December 3rd letter, I requested that TIG and Security supplement their productions by forwarding to me via e-mail "the original e-mails sent by TIG to Security along with all attachments" of the loss information reported from time-to-time by TIG to Security. You responded today as follows: "As you may recall, TIG did not report losses directly to Security, and, accordingly, TIG has no documents responsive to your request." While as a technical matter AON forwarded loss information to Security, AON did so as TIG's agent. Indeed, TIG has unequivocally alleged in federal court filings that AON "acted as TIG's agent . . . in connection with the solicitations, placement, negotiation and administration of reinsurance covering TIG's workers' compensation business." See *TIG Insurance Company, v. AON Re, Inc.*, 04-CV-1307, paragraph 7.

Therefore, we renew our request for the electronic production of any and all loss reports forwarded by TIG or its agents to Security. Because TIG appears to be intent upon drawing artificially fine lines with respect to Trustmark's document requests, TIG should understand that Trustmark's requests also seek the electronic production of any and all loss information supplied by TIG to AON so that Trustmark can confirm that AON forwarded this data to Security in a timely fashion without manipulation. Because this data can be sent via e-mail with little burden on TIG, we will stand by our request that this material be supplied by December 8th.

Sincerely,

Everett J. Cygal

cc: Mark Holton, Esq.
EJC:nt

CH2\ 1168312.1