

SCHIFF HARDIN LLP
A Limited Liability Partnership Including Professional Corporations

6600 SEARS TOWER
CHICAGO, ILLINOIS 60606
t 312.258.5500
f 312.258.5600
www.schiffhardin.com

EVERETT J. CYGAL
(312) 258-5783
ecygal@schiffhardin.com

December 8, 2004

VIA TELECOPIER

Harry P. Cohen, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

Re: *Security Insurance Company of Hartford v. Trustmark Insurance Company,* Civil No. 301CV2198 (PCD)

Dear Harry:

We write in response to your e-mail of December 7, 2004.

There has been no posturing by us. We seek the production of documents required by the Federal Rules of Civil Procedure and the agreement of the parties. We intended to convey a sense of urgency because this an urgent matter. Mr. Toothman's deposition is scheduled for December 15th, and by your own admission, TIG has not made a complete production. It appears that Mr. Toothman, with the assistance of outside actuarial consultants and Fairfax business people, has been working on his report for over a year. It also appears that he has had access to a significant body of information that has yet to be produced in this case. Because of the schedule that the parties are operating under, any deviation from the agreed production date of November 29th is both significant and prejudicial. In our view, the only posturing so far has been TIG's obstruction of the production of Mr. Toothman's material.

As a matter of convenience, we will reproduce TIG's position as expressed in your e-mail of December 7th with Trustmark's response.

### INFORMATION PROVIDED TO TOOTHMAN

On December 2nd Trustmark requested, among other things, the production in *native file format* the source information for all of Mr. Toothman's expert work. You responded as follows:

> 1. As we previously advised you, TIG has already produced all of the information that Mr. Toothman considered in formulating his



Harry P. Cohen, Esq.
December 8, 2004
Page 2

>opinions (and, more specifically, Opinion IV in his report). Accordingly, TIG has complied fully with both its obligations under the Federal Rules of Civil Procedure, as well as Trustmark's document requests. Be that as it may, however, we will send you by overnight courier a CD which contains documents TIG158838-41 in electronic form as well as the source data for TIG158840-41. The data contained in TIG158839 is merely a summary of the quarterly Virginia Surety earned premium entries in TIG's general ledger. We have thus far been unable to locate source data for TIG158838, but will provide it to you if and when we identify it.

In the same paragraph you assert that "TIG has already produced all of the information that Mr. Toothman considered," you admit that TIG has not produced the source material for documents TIG158838-41. You then state that TIG has been "unable to locate source data for TIG158838." Your own words confirm that TIG has not already produced all of the information that Mr. Toothman considered.

Trustmark requested "triangulations, premium information and claims information for the Virginia Surety segment for the period of 1994 through 1997" in connection with Mr. Toothman's opinions regarding reserving. Trustmark also requested "all loss reporting in Excel, either on a monthly or quarterly basis, for the 1994-2000 underwriting years for the entire book of business at issue in this case." You respond as follows:

>2. Opinion IV in Mr. Toothman's report is intended to rebut Trustmark's allegation that, at the time of the placement of the 1999 Treaty, the Virginia Surety business was under-reserved. As a result, Mr. Toothman was asked to test the adequacy of TIG's reserves for the 1994-97 Virginia Surety accident years as of 6/30/98, which, as you know, was the same loss information provided to WEB in connection with the placement of the 1999 Treaty (see Ex. 79 at WEB000217-35). Accordingly, loss information relating to the 1998-2000 Virginia Surety accident years, as well as for the non-Virginia Surety business segments, is irrelevant to Opinion IV in Mr. Toothman's report. Similarly, Mr. Toothman utilized loss information as of 12/31/02 because the bulk of his work on this issue was done in mid-2003, prior to the stay. Accordingly, the updated information requested by Trustmark is not relevant to understanding or rebutting Mr. Toothman's opinion.



Harry P. Cohen, Esq.
December 8, 2004
Page 3

      The fact that Mr. Toothman's opinion bears an "as of" date of 12/31/02 cannot limit Trustmark's right to updated loss information on the segments that he chose to analyze to test the validity of his opinion. Moreover, Trustmark has raised claims with respect to *all* the workers' compensation business ceded by TIG to Security. In other words, Trustmark has never limited its allegations relating to TIG's alleged reserving deficiencies to just a single segment of business. Even if this were true, however, Trustmark would still be entitled to this information to test Mr. Toothman's "reserving" opinion as it relates to the other segments of business reinsured by Security.

      We take your response as a refusal to produce any of this information, including the limited subset of material that Mr. Toothman actually utilized to reach Opinion IV. Accordingly, we shall commence Mr. Toothman's deposition as scheduled recognizing that it will be completed at a later date when this issue is resolved.

      On December 3rd, Trustmark asked for the production of "all Excel or other program files that Mr. Toothman created/utilized in connection with his report." You initially responded by linking this production to other unrelated issues. In your e-mail of December 7th, you state:

> 3. We asked for confirmation concerning the completeness of Trustmark's production of "Jessel documents" because Mr. Jessel testified again at his November 5, 2004 deposition that he is unable to explain much of his analysis, and because, in August 2003, Trustmark produced a considerable amount of information that should have produced much earlier in response to our initial document request. Under these circumstances, we thought it was prudent to ask you to re-confirm that Trustmark's production of Jessel documents was complete. In any event, we thank you for that confirmation and will be sending you by overnight courier a CD containing electronic copies of the materials that we have already produced in hard copy.

      While we are pleased that you have now abandoned your original position, we do not accept the consequences of the delay that it caused. This material should have been produced as agreed on November 29th without any qualifications or demands for concessions. This delay will also impede our ability to make progress in Mr. Toothman's deposition on the 15th.



Harry P. Cohen, Esq.
December 8, 2004
Page 4

## THE PRODUCTION OF LOSS INFORMATION

In my December 3rd letter, I requested that TIG and Security supplement their productions by forwarding to me via e-mail "the original e-mails sent by TIG to Security along with all attachments" of the loss information reported from time-to-time by TIG to Security. You responded today as follows:

> 4. Thank you for correcting the confusion in your request for "the [loss reporting] emails sent by TIG to Security along with all attachments." TIG does not have such documents in its possession, custody and control (which Trustmark effectively conceded by serving Aon with a subpoena long ago). However, on the assumption that you are looking for the information in native file format, we will send you shortly copies of the emails and attachments that TIG sent to AON in connection with the reporting of losses under the 1999 Treaty. We trust this satisfies your request. In that regard, we understand that the same data was routinely provided to Trustmark electronically by Security. Please produce to us immediately all such electronic documents.

We appreciate the production of this material and will make a similar production of material forwarded by Security to Trustmark. You should know that since the date that Trustmark filed the its action against TIG, Trustmark has only received three loss reports from Security: December, 2002; December 2003; and August 2004. Indeed, it was this lack of reporting by Security in the first instance that required Trustmark to seek this production from both you and Security.

Sincerely,

Everett J. Cygal

cc: Mark Holton, Esq.
EJC:nt

CH2\ 1168960.2