*blue = Thickell opinion*       *Source: Thickell*

## Background

On November 11, 1998, Ms. Behuslav of Aon, wrote to Mr. Robin Ekwall of WEB Management Inc., (AON11099) and presented him with a package entitled "Renewal Submission". This submission contained written material and data in hard copy form. The data included a listing (showing the value of paid and case reserves at 9/30/98) per accident year for those claims that exceeded $25,000 for all areas of business to be covered, including Virginia Surety. Also in the submission were projections of ultimate values and loss ratios for all areas of business to be covered, including Virginia Surety and triangles.

*Blue*  My observation is that the data supplied to Mr. Ekwall was comprehensive and as complete a presentation as I have seen. It contained all the information as would be required by a reinsurer to price the reinsurance covers envisaged.

Although this data provided enough information as would have allowed reinsurer to construct historical burn costs into any selected layer of reinsurance, to do so manually would have been quite laborious. Consequently, and as a courtesy, Aon advised Mr. Ekwall that it was "working on getting claims on diskette" (AON11101) which would be forwarded "shortly". Aon had received a diskette from TIG containing data from three business segments (TIG, VSI and MCI). Ms. Behuslav had forwarded this to an Aon support unit requesting that that support unit translate the information on the TIG diskette into various forms (AON09309). Apparently this was done and sent to Ms. Behuslav by a Steve McGuire. Ms. Behuslav had trouble opening the file and asked Mr. McGuire, on November 12, 1998 (AON08086) "is it in EXCEL". Apparently she must have subsequently forwarded the diskette to Mr. Ekwall because he testified that he attempted to utilize the electronic data on a diskette.

However, he also testified that the CD diskette provided to him was "blank" (Ekwall Deposition P. 329 8) and that he it was "useless" (Ekwall Deposition P. 329 9). As a matter of fact, the data on the diskette was supposedly in the form of an "Access Data Base". My experience has been that if you attempt to open a diskette containing an Access Data Base while in a Microsoft Excel program, the diskette would indeed appear to be "blank", as per Ms. Behuslav's note to Steve McGuire, even though it is not. In

TIG 159007

order to access the data, you have to change a prompt headed "files of type" – to "All". [It is possible, therefore, that the diskette was empty, as Mr. Ekwall states but equally possible that all the data was, in fact, on the diskette and that – at the time – Mr. Ekwall was simply unaware of how to access it. We will, of course, never know because Mr. Ekwall says he threw the diskette away.] *Blue*

When Mr. Ekwall spoke to Ms. Behuslav about the supposed empty diskette, she attempted to send him the data again. On the 24th of November, 1998, she sent him an e-mail (AON07973). This email contained three files entitled Eval96XS25K, Eval97XS25K and Eval98XS25K (the "Eval Files"). Each of the Eval Files contains data for each of four of TIG's "divisions" (i.e. books of business) at each of 9/30/96, 97 and 98. The data contained in this email did not include either Virginia Surety or Managed Comp Inc. data. [Mr. Ekwall could easily have discovered this. He apparently made no attempt to reconcile the data with that data he had already received in hard copy form. Had he done so, he would and could have immediately noticed that the data in respect of paid and incurred losses from ground up on EVAL98XS25K, as it pertains to Virginia Surety, bore no resemblance to the hard copy data presented in the Renewal Submission (TRE026458). For example, a simple comparison of data would have indicated to him that none of the data on EVAL98XS25K could possibly be related to Virginia Surety[1]. He had been advised, on November 17, 1998, the meaning of the Divisional Codes that would be found on a diskette (AON06169) and could and should have compared the electronic data with hard copy data. *Blue*

|  |  | 1990 | | 1991 | |
|---|---|---|---|---|---|
|  |  | Incurred | Paid | Incurred | Paid |
| From EVAL98XS25K | | | | | |
| Division 1 | Managed Comp | $ - | $ - | $ - | $ - |
| Division 2 | Alternative Programs | $ - | $ - | $ 364,068 | $ 489,579 |
| Division 3 | TIG Agency | $ 210,601,513 | $ 133,284,974 | $ 129,758,446 | $ 206,010,960 |
| Division 4 | Commercial Specialty | $ 2,052,643 | $ 1,509,335 | $ 3,208,666 | $ 2,069,854 |
| From TRE026458 | | | | | |
|  | VSI | $ 3,171,491 | $ 3,164,437 | $ 19,753,694 | $ 18,849,057 |

In any event, Mr. Ekwall appears to have assumed that he now had all the data he needed to price the reinsurance covers. Although he made multiple errors (which I will

describe in detail later), mechanically, his approach was not unreasonable. First, he sorted the claims information into various layers per historical accident year and totaled same. He then attempted to forecast what the ultimate values of these claims would be by increasing them with "trend" and "development" factors. After then discounting the forecast ultimate values he applied the discounted total to the historical 100% premium earned for each accident year which produced a "burning cost" rate. For example, the burning cost rate so arrived at for the layer $50,000 excess of $50,000 (TRE026736) was 7.7741952%. Finally, he added "loads" (for brokerage / profit / costs etc.) to arrive at a "loaded rate". Using the same example, and after adding loads totaling 23.5%, he arrived at a loaded rate of 10.1623466%.

Mr. Ekwall says he then determined that the result of more recent years (he does not say which) led him to conclude that he could charge rates less than the loaded rates he had produced for each layer. [I would comment that since there is no indication in the material provided to Mr. Ekwall that more recent years were "improving" and since he must surely have known that the workers compensation market, as a whole, was very soft, it is difficult to understand his rationale.]   *Blue*

After the business had been underwritten, 1999 Mr. Ekwall became concerned that the Eval Files had did not include Virginia Surety data and expressed this concern in an email to Ms. Behuslav dated 20th April, 1999 (AON10109). Ms. Behuslav eventually advised Mr. Ekwall (AON10086) that the Eval Files did contain VSI data and that that data had been coded as Division 2 (Alternate Programs). [Obviously Ms. Behuslav made a mistake. Equally obviously, Mr. Ekwall could again have attempted to reconcile the data with the hard copy data -- as per the chart above.]   *Blue*

On or around the 4th of May, 1999, Ms. Behuslav became concerned that the information she had just given Mr. Ekwall was incorrect (AON10062). Presumably she decided to investigate further because she then advised Mr. Ekwall by letter, on the 9th of June, 1999 (AON06169) that her first advise was incorrect and that, in fact, the Eval Files did not contain VSI data. She states, in that letter, that "on the CD-Rom provided" there was VSI data. [It is not clear quite what "CD-Rom" she referred to, but it is not unreasonable to conclude that this reference was to the diskette Mr. Ekwall claims was "blank".]   *Blue*

---

[1] The hard copy VSI data is at 6/30/98 whereas the electronic data shown here is at 9/30/98

TIG 159009

She apparently then sent further CD diskettes to Mr. Ekwall. These diskettes (AONT002391) contained data for both MCI and Virginia Surety. The MCI data is clearly shown as being as of 9/30/98. The Virginia Surety data does not indicate exactly what date it is at, but a cursory examination of the data shows that the last date of loss shown is in June, 1998.

Mr. Ekwall could easily have compared the data with the hard copy data already in his possession and could have quickly concluded, as would any competent person, that the newly provided Virginia Surety data was, in fact, at 6/30/98. In fact, he obviously did not attempt to reconcile the electronic and hard copy data (which any competent underwriter would have done) and instead assumed the data was at 9/30/98. His own hand writing confirms this – see example TRE026677.   *Blue*

At this point, Mr. Ekwall simply added the Virginia Surety claims to those he had already totaled (again, he made a number of mistakes and completely ignored the MCI data) to produce a new sum of claims for various layers per historical accident years. He then proceeded to repeat his previous procedure (other than he changed the development factor) and produced new burning cost and loaded rates. He states that these were not materially different from the rate he had charged and therefore took no further action.