## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>Plaintiff,<br><br>-against-<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Defendant. | **CIVIL NO. 3:01-CV-2198 (PCD)** |
| TRUSTMARK INSURANCE COMPANY,<br><br>Third Party Plaintiff,<br><br>-against-<br><br>TIG INSURANCE COMPANY,<br><br>Third Party Defendant. | January 28, 2005 |

### TIG INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO TRUSTMARK INSURANCE COMPANY'S MOTION TO COMPEL DOCUMENTS AND TESTIMONY FROM MESSRS. TOOTHMAN, LO AND THIRKILL

Third Party Defendant TIG Insurance Company ("TIG"), through its counsel, respectfully submits this memorandum of law in opposition to Trustmark Insurance Company's ("Trustmark") motion to compel documents and deposition testimony from Michael Toothman, Richard Lo and David Thirkill. For the reasons discussed below, Trustmark's motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Trustmark's motion to compel is little more than a thinly-veiled attempt to obtain discovery to which it clearly is not entitled and/or to disrupt the schedule that the Court imposed over Trustmark's objection and thereby delay the trial in this action. As discussed below, TIG has already fully complied with the requirements of Rule 26 of the Federal Rules of Civil Procedure by producing to Trustmark all "data or other information considered by [Mr. Toothman] in forming the opinions" contained in Mr. Toothman's expert report (the "Toothman Report").[1] Trustmark has offered no legitimate basis for any additional discovery relating to the Toothman Report.

---

[1]    Complete copies of the Toothman Report and the transcript of the December 15, 2004 deposition of Mr. Toothman are attached as Exhibits A and B to the Declaration of Brian J. O'Sullivan, dated January 27, 2005 (the "O'Sullivan Decl.").

NYLIB2 247606.6

## ARGUMENT

### TRUSTMARK IS NOT ENTITLED TO ANY ADDITIONAL DISCOVERY CONCERNING MR. TOOTHMAN'S EXPERT REPORT

**A.      Trustmark Is Not Entitled To Any Further Discovery Of Mr. Toothman**

Under Rule 26(a)(2)(B), TIG is required to disclose "the data or other information considered by the witness in forming the opinions," including all documents "generated or examined in the process of forming the opinions," and "documents considered but rejected by the testifying expert." Trustmark Mem. at 9 (citations and internal quotations omitted). That is exactly what TIG has already produced.

The Toothman Report contains eleven separately numbered opinions supported by nine exhibits and five appendices, all of which are attached to the report. Appendix B to the Toothman Report identifies 47 items – previously produced documents or publicly available data – that Mr. Toothman reviewed or relied on to formulate and/or support his opinions. In addition, as Mr. Toothman confirmed during his deposition, Mr. Toothman provided to counsel a copy of his entire file relating to this engagement, including all data and other information Mr. Toothman considered in formulating his opinions, all information he "considered but rejected," all work or analyses he undertook but did not include in his report, and all other documents provided to Mr. Toothman in connection with his work in this litigation (Toothman Dep. Tr. 27:17-21), which has been produced to Trustmark in both hard copy and electronically. *See* Trustmark Mem., Exs. 5 & 7. In short, there is nothing that Mr. Toothman considered, which has not already been produced.

Not surprisingly, Trustmark provides the Court with little more than rhetoric to support its allegation that TIG's production of documents relating to the Toothman Report is

somehow deficient.   In fact, Trustmark refers to **only** two specific examples of Toothman documents allegedly not produced by TIG.  Trustmark is wrong in both cases.

First, Trustmark purports to rely on an alleged "concession" by TIG that it has not produced "the source materials or data considered by Mr. Toothman, instead opting to produce only the 'summary sheets' that he 'relied' on."  Trustmark Mem. at 3 & 10.  That assertion, however, is belied by the evidentiary record.  During his deposition, Mr. Toothman confirmed that, contrary to Trustmark's assertion, he considered and relied only on the "summary sheets," and he did not receive, and thus could not have considered, the underlying "source" data.

> Q:     You had the data, though, at least the source data to do that analysis, is that right.
>
> A:     I don't believe so. . . .   I think we specified what we wanted.  This report, [TIG]158841, I believe was provided to us by TIG.  We specifically asked for a breakdown of the claims into these bands and they provided that summary to us by year, so that I didn't get the underlying data.

Toothman Dep. Tr. 335:7-17.  In any event, this issue is moot since TIG has voluntarily provided to Trustmark the underlying data that could be located.  *See* Trustmark Mem., Ex. 5.[2]

Second, Trustmark's contention that TIG failed to produce "loss/reserving information from the entire book of business at issue, not just Virginia Surety" (Trustmark Mem. at 3) is just plain wrong.  In fact, Mr. Toothman testified that, while he could not recall what, if any, analysis he or Mr. Lo did with respect to the non-Virginia Surety business segments, any information he considered and any work he generated relating to that issue would have been included in the materials already produced.  Toothman Dep. Tr. 155:15-156:4; *see id.* at 150:12-

---

[2]    After Mr. Toothman's deposition, TIG voluntarily produced various documents requested by Trustmark in the hope that unnecessary motion practice could be avoided, not because TIG considered the documents relevant, or because it had any obligation to produce them.  TIG also produced after the deposition certain files in their "native file format," *i.e.*, in the program format used by Mr. Toothman, which had previously been produced in hard copy.

-4-

151:15. Indeed, these materials were produced even though Mr. Toothman did not render any opinions concerning "loss/reserving information" for the non-Virginia Surety business segments (specifically, because the only allegation by Trustmark regarding the adequacy of reserves relates to the Virginia Surety book, and not TIG's other business segments).[3]

In sum, Trustmark already has all of the data and other information relating to Mr. Toothman's expert report it is entitled to under Rule 26. And because Trustmark has not justified any further document discovery relating to Mr. Toothman's report, it has also failed to demonstrate why any additional deposition time is "needed for a fair examination of" Mr. Toothman. Fed. R. Civ. P. 30(d)(2).[4]

**B.    Trustmark Is Not Entitled To Any Discovery Of Messrs. Lo Or Thirkill**

Trustmark purports to justify its request for the files of Mr. Lo and Mr. Thirkill by asserting falsely that Messrs. Lo and Thirkill were "collaborators" who "organized" and "framed" and "contributed heavily" to Mr. Toothman's opinions and "actively managed the entire Toothman project." Trustmark Mem. at 2, 11-14. Those assertions are false, and, in any event, do not justify discovery of Messrs. Lo's or Thirkill's documents.

---

[3]    Trustmark's assertion that it is entitled "to ascertain why TIG chose to narrow its analysis to Virginia Surety" is disingenuous. Trustmark Mem. at 11. First, Trustmark had the opportunity to ask Mr. Toothman this question during his deposition, but elected not to do so. More importantly, however, TIG has already advised Trustmark that the analysis was limited to Virginia Surety business because, as discussed above, that was the only business segment that Trustmark has alleged was under-reserved. *See* Trustmark Mem., Ex. 7 ¶ 2 (December 7, 2004 email: "Opinion IV in Mr. Toothman's report is intended to rebut Trustmark's allegation that, at the time of the placement of the 1999 Treaty, the Virginia Surety business was under-reserved").

[4]    As demonstrated by the transcript of Mr. Toothman's deposition, Trustmark had a full and fair opportunity to examine Mr. Toothman concerning the opinions set forth in his report, and indeed squandered a significant portion of Mr. Toothman's deposition by asking numerous questions that were wholly unrelated to the opinions set forth in the Toothman Report. *See, e.g.,* Toothman Dep. Tr. 72:2-24, 74:2-79:8, 228:15-231:8, 286:14-292:23. In any event, Trustmark's request for additional deposition time with Mr. Toothman cannot be reconciled with the fact that Trustmark's counsel concluded Mr. Toothman's deposition prior to the completion of the seven hours to which he was entitled with the witness (under the Federal Rules and by agreement of the parties). *Id.* at 351:16-353:9.

First, the suggestion that Mr. Toothman "adopted wholesale" (*id.* at 2) someone else's opinions is not only insulting, but is completely inconsistent with the evidentiary record. Indeed, Mr. Toothman categorically refuted the notion suggested by Trustmark, testifying unequivocally during his deposition that **all** of the opinions expressed in his report were his own, and that, while Mr. Lo performed certain analyses under Mr. Toothman's direction, Mr. Toothman reviewed those analyses to ensure that he could comfortably rely upon them. *See* Toothman Dep. Tr. 26:5-27:16, 95:7-97:2, 267:11-268:2.

> What I have said all along today when you have tried to indicate that . . . I have used other people's opinions rather than my own, is that that's not the case. In every case I have – whatever is in my report is what I have arrived at as my own opinion after reviewing . . . documents and doing the analysis.

*Id.* at 267:11-17.[5]

In any event, the extent of Mr. Lo's and Mr. Thirkill's involvement is irrelevant. Indeed, even if that involvement was as extensive as Trustmark suggests (and it was not), all that matters under Rule 26 is whether the documents in Mr. Lo's and Mr. Thirkill's files were seen and considered by Mr. Toothman. Fed. R. Civ. P. 26(a)(2)(B). As explained above, *everything* Mr. Toothman saw and considered has been produced, including all work performed by Messrs. Lo and Thirkill, all data and other information provided to Mr. Toothman by Messrs. Lo and Thirkill, and all written communications including all e-mails, between Mr. Toothman and Mr.

---

[5]    We note that several of Trustmark's experts included in their reports phrases and allegations that came directly and verbatim from Trustmark's pleadings and interrogatory answers. *Compare, e.g.,* Thomson's Rebuttal Report at 18-19 (O'Sullivan Decl., Ex. C) *with* Trustmark's Third Party Complaint ¶ 21.    Similarly, one of Trustmark's experts confirmed that the nine-page single-spaced errata sheet (O'Sullivan Decl., Ex. D) – in which he clarified, modified and expanded 85 different aspects of his July 2, 2003 deposition testimony – was prepared during a two day meeting with Trustmark's counsel and a Trustmark vice president. *See* Jessel Dep. (11/05/04) Tr. 236:15-238:4 (O'Sullivan Decl., Ex. E). Is Trustmark now suggesting that TIG is entitled to depose these individuals and to receive copies of their files?

Lo or Mr. Thirkill. As a matter of simple logic, documents residing in the files of Messrs. Lo and Thirkill that were not shared with Mr. Toothman could not possibly have been considered by Mr. Toothman. *See B.C.F. Oil Ref'g, Inc. v. Consolidated Edison Co. of N.Y., Inc.*, 171 F.R.D. 57, 67 (S.D.N.Y. 1997). Stated simply, Rule 26 does not require production of documents the expert has never seen and, thus, could not have considered.

Finally, the documents in Mr. Lo's and Mr. Thirkill's files that were not provided to Mr. Toothman were prepared as a result of this litigation and, thus, constitute non-discoverable work product. *See* Fed. R. Civ. P. 26(b)(3); *see United States v. Adlman*, 134 F.3d 1194, 1196-97 (2d Cir. 1998) (the work product doctrine is intended to provide the parties "a zone of privacy in which to prepare its case "free from unnecessary intrusion by [its] adversaries"); *see also Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862, 870 (1st Cir. 1982) (work product doctrine applies to materials prepared by non-attorney); *ECDC Envtl. L.C. v. New York Marine & Gen. Ins. Co*, No. 96CIV.6033, 1998 WL 614478, at **11-12 (S.D.N.Y. June 4, 1998) (same).[6] Trustmark is not entitled to discovery of any of Mr. Lo's or Mr. Thirkill's work product that was not reviewed or considered by Mr. Toothman. *See B.C.F. Oil Ref'g*, 171 F.R.D. at 67 (work product not shown to testifying expert

---

[6] TIG does not dispute that Mr. Lo assisted Mr. Toothman in the preparation of the Toothman Report. TIG respectfully refers the Court to pages 26 and 27 of Mr. Toothman's deposition for a description of Mr. Lo's role in the process.

Trustmark, however, completely mischaracterizes Mr. Thirkill's role in the process. While Mr. Thirkill certainly communicated with Mr. Toothman concerning the opinions Mr. Toothman expressed in his report, it is completely inaccurate for Trustmark to state that Mr. Thirkill "contributed heavily to the formation and expression of the opinions in Mr. Toothman's report[.]" Trustmark Mem. at 2. In fact, it appears that Mr. Thirkill's involvement in the preparation of the Toothman Report was no greater than the involvement of Trustmark and its counsel in the preparation of their expert reports. Indeed, in his "rebuttal" expert report, Mr. Jessel points to a document ("TMrjMHNew Calc.xls") prepared by Michael Hawksworth, an actuary at Trustmark, as "[t]he clearest explanation of the effect of [allegedly] 'missing data'" on WEB's pricing. *See* Jessel Rebuttal Report at 3 ¶ 15 (O'Sullivan Decl., Ex. F). Trustmark has not produced the files of Mr. Hawksworth, thus effectively conceding that such files (like Mr. Thirkill's) are not discoverable.

NYLIB2 247606.6

is not discoverable; "[i]t is only when [counsel] shows such a document to a testifying expert that the protections afforded under Rule 26(b)(3) give way to the disclosure requirements of Rule 26(b)(4) and the document becomes discoverable").

Nor has Trustmark satisfied its burden of demonstrating the necessity of deposing Mr. Lo or Mr. Thirkill.[7]  As discussed above, Mr. Toothman did not simply adopt the opinions of Mr. Lo and Mr. Thirkill, but rather formulated his own independent opinions based on his own review and analysis of the underlying documents.  *See* Toothman Dep. Tr. 95:7-97:2, 267:11-28:2.  To the extent Mr. Toothman consulted with Mr. Lo and Mr. Thirkill, and to the extent Mr. Lo or Mr. Thirkill were involved in the preparation of drafting of the report, Trustmark has already extensively examined Mr. Toothman about those topics. Trustmark has likewise received all of Mr. Toothman's email communications with Mr. Lo or Mr. Thirkill, as well as all of Mr. Lo's or Mr. Thirkill's documents that were provided to, and considered by, Mr. Toothman. Under the circumstances, any deposition of Mr. Lo or Mr. Thirkill would, by definition, be cumulative of discovery Trustmark has already had.  *See* Fed. R. Civ. P. 26(b)(2) (under which the Court can, and should, limit discovery where "the discovery sought is unreasonably cumulative or duplicative" or where the party has already had "ample opportunity" to obtain the

---

[7]    The Federal Rule of Civil Procedure presumptively limit the number of depositions that a party may reasonably take in a civil matter to ten.  Fed. R. Civ. P. 30(a)(2)(A); *see also Sigala v. Spikouris*, No. 00 CV 0983, 2002 WL 721078, at *3 (S.D.N.Y. Mar. 7, 2002); *Bituminous Fire & Marine Ins. Corp. v. Dawson Land Dev. Co.*, No. 3:02-CV-793-J-21TEM, 2003 WL 22012201, at *1 (M.D. Fla. Feb. 13, 2003); *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 482 (N.D. Tex. 2001).  Although the Court has discretion to permit a party to take more than ten depositions "consistent with the principles stated in Rule 26(b)(2)," Fed. R. Civ. P 30(a)(2)(A), Trustmark must demonstrate why additional depositions are necessary.  *See Bituminous Fire*, 2003 WL 22012201, at *1 ("a party seeking to exceed the number of depositions must make a 'particularized showing of why the discovery is necessary'") (*quoting Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 586 (D. Minn. 1999)); *see also Barrow*, 202 F.R.D. at 482 ("a party who, without court permission, has already taken the maximum number of depositions permitted by Rule 30(a)(2)(A), and who seeks to establish that the decision not to allow additional ones is an abuse of discretion, must demonstrate the necessity for each deposition she took without leave of court pursuant to the presumptive limit of Rule 30(b)(2)(A)").  To date, Trustmark has taken more than 25 fact depositions in this litigation.

information from other sources); *see also Long Term Capital Holdings v. United States*, No. 01-CV-1290, 2003 WL 21269586, at *4 (D. Conn. May 6, 2003) (noting limited scope of any deposition of those who assisted testifying expert in preparation of report).[8]

In this respect, this situation is similar to the one addressed by the Fourth Circuit Court of Appeals in *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 765 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999). There, the Fourth Circuit upheld the district court's refusal to allow defendant discovery of certain information on which plaintiff's testifying expert relied to perform a statistical analysis on the ground that any such discovery would have been cumulative of discovery defendant already had.

> [T]he record demonstrates that Circuit City was able to obtain sufficient information by other means. Harless [plaintiff's testifying expert] submitted a detailed expert report as required by the rules, setting forth each of his opinions and providing supporting reasons and exhibits. Circuit City was able to thoroughly examine Harless during his deposition about the bases of, and the methods used for, his analysis. In addition, Circuit City's statistical experts . . . examined and refuted Dr. Harless's analysis.

*Id.* Here, just like in *Circuit City*, Mr. Toothman submitted a detailed expert report setting forth each of his opinions and providing supporting reasons and exhibits; Trustmark was able to thoroughly examine Mr. Toothman about the bases of, and the methods used for, his analysis;

---

[8]  For this reason, Trustmark's reliance on *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999), and *Herman v. Marine Midland Bank*, 207 F.R.D. 26 (W.D.N.Y. 2002), is misplaced because in those cases there was certain information "exclusively within the assistant's cognizance." Here, of course, Trustmark has made no such showing. Nor could it, since all of Mr. Lo's work product that Mr. Toothman considered or relied on has already been produced and thus Trustmark already knows full well precisely what role Mr. Lo played in the preparation of the Toothman Report.

Moreover, Mr. Toothman's testimony concerning the bases for each of his opinions was significantly more extensive than any of Trustmark's experts, each of whom repeatedly testified that he could not recall the basis for the opinions set forth in his report. *See, e.g.*, Gottheimer Dep. Tr. 35:13-25, 38:4-39:7 (O'Sullivan Decl., Ex. G); Thomson Dep. Tr. 56:21-57:7, 68:17-69:5 (O'Sullivan Decl., Ex. H).

and Trustmark was able to submit the reports of three rebuttal experts who purport to examine and rebut the opinions and analysis set forth in the Toothman Report.  Accordingly, just like the district court did in *Circuit City*, the Court should deny Trustmark's request for additional discovery relating to the Toothman Report.

In sum, Trustmark has not demonstrated any legitimate reason why it needs the deposition of either Mr. Lo or Mr. Thirkill.

## C.    Trustmark Is Not Entitled To The Expert Report Mr. Toothman Submitted In An Unrelated Confidential Arbitration

Trustmark's request that the Court compel TIG to produce a copy of an expert report submitted by Mr. Toothman in an unrelated confidential arbitration is based on the (knowingly) false promise that "Mr. Toothman apparently based his opinions in this matter" on that unrelated report.  Trustmark Mem. at 8.  To the contrary, Mr. Toothman confirmed at his deposition that he did not base any of his opinions in this litigation on the unrelated report, but used only the format of the report as a model for the report that he prepared in this litigation.  *See* Toothman Dep. Tr. 152:25-153:15, 172:16-173:6.  Trustmark's request should be denied for this reason alone.

Moreover, the unrelated report was submitted by Mr. Toothman in a confidential arbitration on behalf of other clients.  As we explained to Trustmark's counsel, that arbitration was governed by a confidentiality agreement which precludes Mr. Toothman from disclosing the report or the substance of that report here.  *See* Toothman Dep. Tr. 16:11-17:19.  In that regard, Trustmark's request for Mr. Toothman's confidential report cannot be reconciled with the refusal by Trustmark and its experts to disclose to TIG and Security information regarding Trustmark's experts' involvement in other confidential proceedings.  *See* Gottheimer Dep. Tr. 17:18-22, 19:12-20:8; Thomson Dep. Tr. 264:10-265:11.

Finally, the Court should deny Trustmark's motion since Mr. Toothman's unrelated report is not in the possession, custody or control of TIG, since Mr. Toothman prepared the report in an unrelated confidential arbitration and on behalf of other clients.

In sum, Trustmark has offered no legitimate basis for its request for Mr. Toothman's expert report in an unrelated confidential arbitration.

NYLIB2 247606.6

## CONCLUSION

For the reasons set forth above, TIG respectfully requests that this Court deny Trustmark's motion to compel in its entirety.

THIRD PARTY DEFENDANT
TIG INSURANCE COMPANY


By:_____
    J. Daniel Sagarin   CT04289
    David Slossberg CT 13116
    Brian C. Fournier CT16272
    HURWITZ, SAGARIN & SLOSSBERG, LLC
    147 North Broad Street
    Milford, Connecticut 06460-0112
    Tel.: (203) 877-8000
    Fax: (203) 878-9800

    -and-

    Larry I. Brandes CT 23789
    Harry P. Cohen CT 20446
    Brian J. O'Sullivan CT 23790
    CADWALADER, WICKERSHAM & TAFT, LLP
    One World Financial Center
    New York, NY 10281
    Tel: (212) 504-6000
    Fax: (212) 504-6666

NYLIB2 247606.6

## CERTIFICATE OF SERVICE

This is to certify that on January 28, 2005, a true and correct copy of the foregoing was sent via facsimile and mailed, postage prepaid, first class mail, to:

| | | |
|---|---|---|
| Frank F. Coulom, Jr., Esq. | Mark B. Holton, Esq. | David J. Grais, Esq. |
| Marion B. Manzo, Esq. | Kathryn E. Nealon, Esq. | Kathryn C. Ellsworth, Esq. |
| Robinson & Cole LLP | Ayn B. Ducao, Esq. | Dewey Ballantine LLP |
| 280 Trumbull Street | Gibson, Dunn & Crutcher LLP | 1301 Ave of the Americas |
| Hartford, CT 06103-3597 | 200 Park Avenue, 47th Floor | New York, NY 10019-6092 |
| | New York, NY 10166-0193 | |
| Attorneys for Plaintiff | | Attorneys for Plaintiff |
| | Attorneys for Plaintiff | |

| | |
|---|---|
| David R. Schaefer, Esq. | David M. Spector, Esq. |
| Rowena A. Moffett, Esq. | Everett J. Cygal, Esq. |
| Brenner, Saltzman & Wallman | Amy M. Rubenstein, Esq. |
| 271 Whitney Avenue | Paula J. Morency, Esq. |
| P.O. Box 1746 | Dennis G. LaGory, Esq. |
| New Haven, CT 06511-1746 | Sharon A. Doherty, Esq. |
| | John A. Bannon, Esq. |
| | Roger Pascal, Esq. |
| Attorneys for Defendant, | Schiff Hardin & Waite |
| Third Party Plaintiff | 6600 Sears Tower |
| | Chicago, IL 60606-6473 |
| | |
| | Attorneys for Defendant, |
| | Third Party Plaintiff |

David A. Slossberg

-13-