**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>TRUSTMARK INSURANCE COMPANY,  )<br>)<br>Defendant.  )<br>_____)<br>)<br>TRUSTMARK INSURANCE COMPANY,  )<br>)<br>Third Party Plaintiff,  )<br>)<br>v.  )<br>)<br>TIG INSURANCE COMPANY,  )<br>)<br>Third Party Defendant.  ) | Civil No. 301CV2198(PCD)<br><br><br><br><br><br>February 11, 2005 |

**TRUSTMARK INSURANCE COMPANY'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO COMPEL DOCUMENTS
AND TESTIMONY FROM MESSRS. TOOTHMAN, LO, AND THIRKILL**

Defendant and Third Party Plaintiff, Trustmark Insurance Company ("Trustmark") submits this Reply in support of its Motion to Compel Documents and Testimony from Messrs. Toothman, Lo and Thirkill.

While Mr. Toothman is its designated testifying expert, TIG cannot dispute that much of the work, analysis, formulation of opinions, drafting and editing of his report was done by others. One collaborator, Mr. Lo, spent over four times as many hours on the project as did Mr. Toothman. Another collaborator, Mr. Thirkill, is not an "independent" expert at all, but an employee of an affiliate of TIG. Nevertheless, Mr. Thirkill provided draft opinions, a number of

analyses, worked directly with Mr. Lo, and had a role in determining what went into the report and what did not. Under these circumstances (and applicable precedent), Trustmark is entitled to discovery from these "sub-experts" as well as from Mr. Toothman. TIG, however, has unjustifiably resisted this discovery.

**I.  TIG HAS FAILED TO REFUTE TRUSTMARK'S NEED FOR DISCOVERY FROM TIG'S COLLABORATING EXPERTS MESSRS. LO AND THIRKILL**

TIG does not deny that Messrs. Lo and Thirkill collaborated with its expert, Mr. Toothman, in the development of his expert report and the opinions expressed therein. TIG does not deny (nor could it on the current record) that Mr. Lo:

- o  worked "closely" with Mr. Toothman on the report;

- o  performed many, if not all, of analyses that ended up in the report (and may have performed analyses that did not end up in the report and were not provided to Mr. Toothman);

- o  drafted some, if not all, of the report;

- o  reviewed and made changes to the report;

- o  billed at least 290 hours (over four times as many hours as Mr. Toothman);

- o  attended meetings with Mr. Toothman and counsel for TIG; and

- o  worked directly with Mr. Thirkill on analyses and draft report language (some of which may not have ended up in the report and may not have been given to Mr. Toothman).

(See Trustmark's Mem. In Supp. at 5-7.)

Furthermore, TIG does not deny that Mr. Thirkill (who is employed by an affiliate of TIG, and hardly "independent"):

- o  drafted a document called the "Thirkill Opinion" of which certain portions are virtually <u>identical</u> to portions of Mr. Toothman's final report (Mr. Toothman has conceded that Mr. Lo may have relied upon the "Thirkill Opinion" when he drafted the expert report);

- o        conducted analyses which he worked on with Mr. Lo that were provided to Mr. Toothman and were incorporated into the expert report (and perhaps other analyses that were not incorporated into the report);

- o        was significantly involved in the preparation of the report itself: identifying problems with the analyses, rewording portions, revising numbers contained in the report, and deleting sections of the report.

(See Trustmark's Mem. In Supp. at 6-7.)

The record clearly shows that Messrs. Thirkill and Lo did a substantial portion of the work in analyzing data, formulating conclusions, determining what was included in the report and what was not, and even drafting and revising the report. As TIG points out, Mr. Toothman merely "reviewed those analyses to ensure that he could comfortably rely upon them." (TIG Response at 6.) Messrs. Thirkill and Lo are not mere assistants, but have apparently contributed to the Toothman report as much as did Mr. Toothman. Accordingly, discovery of Messrs. Thirkill and Lo with respect to their work on the Toothman report is proper and, indeed, necessary to adequately explore both (i) the opinions set forth in the report as well as (ii) the independence of Mr. Toothman in subscribing to the report.

Case law is entirely in accord. *Long Term Capital Holdings v. United States of America*, No. 01-CV-1290(JBA), 2003 WL 21269586, *3 (May 6, 2003 D. Conn.); *see also Herman v. Marine Midland Bank*, 207 F.R.D. 26 (W.D.N.Y. 2002); *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999). As set forth in Trustmark's initial brief, in each of these cases, where other persons are shown to have been heavily involved in data analysis and the preparation of the report, courts uniformly permitted document and deposition discovery of the testifying expert's collaborators.

TIG cites no cases to the contrary. Its reliance on *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 765 (4th Cir. 1998), *vacated on other grounds*, 577 U.S. 1031 (1999), is misplaced here for the same reasons set forth by the court in *Long Term Capital Holdings*. In *Long Term*

*Capital Holdings,* the court found that *Lowery* did not apply because, as in this case, the "numerous documents" and the "extensive number of hours invested" by the collaborators placed the independence of the testifying expert at issue. *Long Term Capital Holdings,* 2003 WL 21269586 at *4. Here, Mr. Toothman's independence is even more questionable because of the significant involvement of Mr. Thirkill who works for an affiliate of TIG.

TIG does not even attempt to distinguish *Long Term Capital Holdings* which is directly on point. Instead, TIG asserts that "the extent of Mr. Lo's and Mr. Thirkill's involvement is irrelevant." (TIG Response at 6.) Specifically, TIG claims that as long as everything Mr. Toothman saw and considered was produced, the remainder of Mr. Lo's and Mr. Thirkill's files are off limits because "Rule 26 does not require the production of documents the expert has never seen and, thus, could not have considered." TIG cites no precedent for this proposition and, under these circumstances, is clearly wrong.

Courts routinely allow discovery of co-authors, assistants and collaborators with testifying experts, where (as here) the record shows that there was a "seamless collaboration with the assistant" or "the fruits of the [testifying expert's] labor [were] indivisible" from the work of the associate.[1] Accordingly, Trustmark should not have only discovery of documents generated and considered by TIG's testifying expert, but also those of TIG's "sub-experts," Messrs. Lo and Thirkill—*especially* the documents, analyses and workpapers that were considered by these sub-experts, rejected, and screened from Mr. Toothman.[2] *See United States v. City of Torrance*, 163

---

[1] See *Long Term Capital Holdings,* 2003 WL 21269586 at *3; *Marine Midland Bank*, 207 F.R.D. 26 at 31; *Derrickson v. Circuit City Stores, Inc.*, 1999 WL 1456538 at *18.

[2] In cases like this one, courts have flatly rejected TIG's argument that Mssrs. Lo's and Thirkill's documents that were not provided to Mr. Toothman are non-discoverable work product because Messrs. Lo and Thirkill are "non-testifying" experts. *Derrickson v. Circuit City Stores, Inc.*, 1999 WL 1456538 at 6 ("The court need not waste time analyzing the work of Dr. Medoff's assistant as the work of a so-called 'non-testifying' expert."); *Marine Midland Bank*, 207 F.R.D.

4

F.R.D. 590, 593 (C.D. Cal. 1995) (documents considered, but rejected, by the expert could be even more important for cross-examination than those actually relied upon by him).

Trustmark's requested discovery is justified by the record which demonstrates Mr. Toothman did not do his own work and that his opinions are not entirely his own. Given the significant involvement of Mr. Toothman's collaborators (one of whom is hardly independent), Trustmark is entitled to discover who did what, which conclusions were generated by whom, which opinions were rejected by whom, and which opinions were simply adopted wholesale by TIG's testifying expert.

## II. TIG HAS FAILED TO REFUTE TRUSTMARK'S NEED FOR ADDITIONAL DISCOVERY FROM MR. TOOTHMAN

First, Trustmark should be permitted to have additional time to question Mr. Toothman, if for no other reason, because TIG concedes that many of the documents that Mr. Toothman considered in reaching his opinions were produced to Trustmark only <u>after</u> Mr. Toothman's deposition. Specifically, despite Trustmark's timely request, the following documents were <u>not</u> produced before the deposition:

- o <u>Mr. Toothman's analyses in their native file format</u>. Mr. Toothman's analyses were presented in hard copy charts that were generated from an underlying spreadsheet program. Without the actual files in their electronic spreadsheet form, Trustmark (and its rebuttal experts) are unable to ascertain the underlying formulas and data manipulations that resulted in the summary charts. Without this additional information, it is difficult, if not impossible to reconstruct the analyses in order to verify

---

26 at 31 (rejecting argument that substantial collaboration by non-testifying expert should be protected from discovery); *Long Term Capital Holdings,* 2003 WL 21269586 at *3 (rejecting argument that substantial collaboration between testifying and non-testifying experts should be immune from discovery).

and test the results. Acknowledging the significance of these electronic documents, the parties had previously agreed, moreover, to produce these native files before an expert's deposition.

    o    <u>Mr. Toothman's source information made available to him in native file format in connection with his final report</u>.  TIG acknowledges that Mr. Toothman was able to make data queries to TIG and, in response, TIG provided him (and/or his collaborators) with tables summarizing the requested queries. (TIG Response at 4.)  The ability to query TIG's data, is tantamount to having access to, and "considering," the larger data base or data bases from which the results were supplied. TIG claims to have provided the underlying data "that could be located,"[3] again, only after Mr. Toothman's deposition.

    o    <u>Loss/Reserving Information For Virginia Surety</u>.  TIG purports to have produced loss/reserving information for Virginia Surety in its native file format, but again only after Mr. Toothman's deposition.  Once again, Trustmark required access to the same data base that Mr. Toothman could query in order to test and verify Mr. Toothman's analyses as well as to ascertain why Mr. Toothman's analyses of the Virginia Surety block was arbitrarily limited.

Second, despite Trustmark's requests, TIG has continued to refuse to produce relevant data and information.  Accordingly, Trustmark needs the following documents in order to resume questioning Mr. Toothman:

---

[3] It is curious that the underlying data "could be located" upon Mr. Toothman's request, but not upon request by Trustmark.  Accordingly, TIG's "voluntary production" appears suspect and disingenuous.

o    <u>Loss/Reserving Information For All Of TIG's Blocks Of Business (Not Just Virginia Surety)</u>.  TIG does not dispute that Mr. Toothman (and his collaborative partner, Mr. Lo) conducted a loss/reserving analysis for the <u>entire</u> book of business at issue, not just Virginia Surety.  Nor does TIG dispute that it instructed them to stop, and the work and conclusions were stricken from the draft expert report.  (*See* **Exhibit 10** (attached to Trustmark's Mem. In Supp.), Deposition of Mr. Toothman, 152-56.)  Yet TIG refuses to provide the relevant loss/reserve information.[4]  Trustmark is entitled to find out what work was done, what data was examined, what conclusions were reached, and why these conclusions were withheld and stricken from the report.  *See, e.g.*, *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) (documents considered, but rejected, by the expert could be even more important for cross-examination than those actually relied upon by him).

o    <u>Mr. Toothman's Unicover Expert Report</u>.  TIG concedes that Mr. Toothman consulted and referred to his Unicover report in connection with the work he did in this case.  (TIG Response at 10.)  While Mr. Toothman may have asserted that he only used the format of the Unicover report, there are references in his draft reports that refer to Centaur's underwriting, not that of WEB.  (*See* **Exhibit 20**, attached hereto, Deposition Exhibit 1161, ¶ 2-4, 25-27.)  Trustmark is entitled to ascertain the degree of reliance Mr. Toothman (and/or his collaborators) placed on this early report.[5]

---

[4]  Including, updated premium, claims, triangulations, loss and reserve information relating to each segment of the TIG book of business, including but not limited to updated loss triangles for the TIG primary segment for the 900 x 100, 50 x 50, and 400 x 100 layers.

[5]  TIG's assertion that this request "cannot be reconciled" with Trustmark's expert's non-disclosure of information regarding their involvement in other confidential proceedings is simply wrong.  Mr. Toothman himself placed his involvement in the Unicover arbitration at issue by referring to it in his draft report.

Third and finally, before Trustmark can adequately complete the deposition of Mr. Toothman, it requires access to the whole story, including the details of the extensive involvement of Mr. Toothman's "sub-experts," Messrs. Lo and Thirkill.

## **CONCLUSION**

For all the foregoing reasons, Trustmark respectfully requests that its Motion To Compel Documents and Testimony from Messrs. Toothman, Lo and Thirkill be granted.

Respectfully submitted,

DEFENDANT/THIRD PARTY PLAINTIFF
TRUSTMARK INSURANCE COMPANY

By:  /s/ David R. Schaefer
David R. Schaefer, Esq. (CT 04334)
Rowena A. Moffett, Esq. (CT 19811)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com
         dschaefer@bswlaw.com

David M. Spector (CT 21679)
Paula J. Morency (CT 24740)
Everett J. Cygal (CT 22765)
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473

*Counsel for Trustmark Insurance Company*

**CERTIFICATE OF SERVICE**

I, David R. Schaefer, Esq., Do Certify That A True And Correct Copy Of The Foregoing Trustmark Insurance Company's Reply Memorandum In Support Of Motion to Compel Documents and Testimony from Messrs. Toothman, Lo, And Thirkill   and was sent by facsimile and United States mail February 11, 2005 addressed to:

Frank F. Coulom, Jr., Esq.
Marion Manzo
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103

David J. Grais, Esq.
Kathryn C. Ellsworth, Esq.
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY  10019

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Brian J. O'Sullivan, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

　　　　　　　　　　　　　　　　　　　　　　　　　  /s/ David R. Schaefer
　　　　　　　　　　　　　　　　　　　　　　　　David R. Schaefer, Esq., (CT 04334)