**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTMARK INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | Civil No. 301CV2198(PCD) |
| | ) | |
| TRUSTMARK INSURANCE COMPANY, | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIG INSURANCE COMPANY, | ) | |
| | ) | |
| Third Party Defendant. | ) | MARCH 2, 2005 |

**TRUSTMARK'S EMERGENCY MOTION TO BAR THE TESTIMONY OF MICHAEL TOOTHMAN, DAVID THIRKILL AND RICHARD LO AND FOR OTHER SANCTIONS**

**INTRODUCTION**

1.     Through this Motion, Trustmark seeks relief from TIG's willful and inappropriate efforts to thwart Trustmark's efforts to complete certain Court Ordered Discovery, prepare for trial, and comply with the Court's Trial Preparation Order.  TIG's most recent inappropriate conduct, a defiance of this Court's order of February 22, 2005 compelling TIG to produce David Thirkill and Richard Lo for depositions *by March 11, 2005*, is part of a larger pattern of abusive and uncivil conduct directed towards Trustmark.  TIG's conduct has gone far beyond the realm of vigorous advocacy.  Rather, TIG and its counsel have violated an order of this Court as well as a discovery

order entered by the District Court for the Northern District of California in this case, and leveled abusive personal attacks at Trustmark's counsel during recent depositions. The actions of TIG and its counsel have crossed the line and this Court should act to preserve the efficacy of its orders and the integrity of the process.

## BACKGROUND

2.     On November 3, 2004, this Court entered a scheduling order requiring, among other things, the close of all discovery by February 11, 2005, service of Part B of the Trial Preparation Order (by Trustmark and TIG) by March 18, 2005 and completion of Part C of the Trial Preparation Order and case ready for trial by April 4, 2005.[1]

3.     On December 15, 2004, Trustmark deposed Michael Toothman, an actuary who was retained by TIG to offer various opinions regarding, among other things, the underwriting of this risk by Trustmark's agent, Robin Ekwall, and the magnitude of certain claims information not disclosed to Mr. Ekwall at the time of underwriting.   In other words, Mr. Toothman's testimony goes to the heart of Trustmark's claims against TIG.   Based upon the written discovery provided by Mr. Toothman and his testimony under oath, it became apparent that two other individuals, namely, David Thirkill, an employee of TIG, and Richard Lo, another actuary, provided substantial assistance to Mr. Toothman.   Trustmark moved to compel, among other things, the depositions of Mr. Thirkill and Mr. Lo.

4.     On February 22, 2005, the Court entered an order granting in part Trustmark's Motion to Compel. **(**Attached hereto as **Exhibit A)**  Specifically, the Court

---

[1]  On February 25, 2005, the Court amended the date for compliance with Part A of the Trial Preparation Order to March 8, 2005 with all other dates remaining the same.

ruled that "Trustmark is permitted the opportunity to depose Lo and Thirkill on the nature of their involvement in the production of the expert report to ensure that they performed their task competently."  The Court also ordered that "[c]ompliance with the provisions of the order *shall* be completed by March 11, 2005."  (emphasis added).

5.    Trustmark learned of the Court's order on February 23, 2005.  Believing the Court's order to be clear and unequivocal, Trustmark advised TIG that same day that it intended to depose Mr. Thirkill on March 4, 2005 and Mr. Lo on March 7, 2005. **(Exhibit B hereto)**  On February 24, 2005, Trustmark served TIG with two Notices of Videotaped Court Ordered Depositions ("Notices") for the same dates requesting the witnesses to appear at the offices of Brenner, Saltzman & Wallman LLP in New Haven Connecticut.  **(Exhibit C hereto)**

6.    TIG stood mute until February 28, 2005.  On that date, TIG by e-mail asserted:  (1) that it had "no obligation to produce its witnesses within the District of Connecticut;" and (2) that "March 4 and 7, 2004 (sic) do not work for us."  TIG provided no explanation why those dates did not "work" for them; whether those dates were bad for the witnesses or counsel; and stated that they would know "shortly dates on which *we* and Messrs. Lo and Thirkill are available for deposition."  **(Exhibit D hereto)** (emphasis added)  As to location, TIG represented in that e-mail that it would produce its witnesses in either New York City, which is where TIG's counsel is located, or where the witnesses resided, either Manchester, New Hampshire in the case of Mr. Thirkill and Boston, Massachusetts in the case of Mr. Lo.

7.    Later that same day, Trustmark, in an effort to complete this discovery, acquiesced in TIG's location demands and agreed to take the depositions in New York

City.   As to the timing, however, Trustmark stood firm on the dates in its Notices. Trustmark also indicated that it believed the burden was on TIG to seek a protective order if it did not intend to produce its witnesses in compliance with the Notices. **(Exhibit E hereto)**

      8.    TIG did neither.  Instead, on March 1, 2005, TIG:

- Stated that it was not required "to give  .  .  .  a reason why certain dates do not work for us;"

- Unilaterally chose March 21st for the deposition of Mr. Lo in New York City and March 22nd for the deposition of Mr. Thirkill in Manchester, New Hampshire; and

- Asserted that it was not under an obligation to seek a protective order despite the clear mandate of this Court's Order of February 22, 2005 requiring the depositions to be completed by March 11.

    **(Exhibit F hereto)**

### TIG'S CONDUCT IS INAPPROPRIATE AND SANCTIONABLE

    9.    TIG's refusal to comply with the Court's direct order requiring "[c]ompliance  .  .  .  by March 11, 2005" is behavior that should be sanctioned.  The Court's order was unequivocal—the depositions had to be completed by March 11, 2005.  Despite this, and without leave of Court, TIG has unilaterally pronounced dates for these depositions of March 21 and 22, 2005.

    10.    TIG's plan is transparent:  TIG seeks to thwart this discovery and to materially hinder Trustmark's ability to comply with the Trial Preparation Order.  It is no coincidence that TIG unilaterally chose dates after March 18, 2005, the date that TIG's Section B of the Trial Preparation Order is due.  Moreover, these dates would prevent

Trustmark from utilizing any of the information gained from these depositions in Part A of the Trial Preparation Order, which is due on March 8.

11.    TIG also reneges on *its proposal* to produce these witnesses in New York City.  Instead, TIG has proposed an onerous schedule of one deposition on March 21st in New York and a second the next day in Manchester, New Hampshire.  Furthermore, in an effort to gain a litigation advantage, TIG would unilaterally reverse the order of these two depositions as chosen by the party taking them.

## TIG's PATTERN OF DISCOVERY ABUSES

12.    TIG's counsel's previous inappropriate and abusive behavior toward opposing counsel has found its way into the record of this case because TIG's counsel wants it to be.  For example, during the deposition of one of Trustmark's experts, Anthony Grippa, TIG's counsel stated:

```
 21  BY MR. COHEN:
  22     Q.   You obviously didn't.
  23          What do you mean by not --
  24          MR. CYGAL:  Objection.  Hold on.
  25          Mr. Cohen, you don't --
00125
   1
   2          MR. COHEN:  Everett, stop wasting
   3     my time.
   4          MR. CYGAL:  Stop the gratuitous
   5     comments.  I didn't treat your witness
   6     this way.
   7          MR. COHEN:  Yes, you did, in your
   8     nice, passive aggressive way.
   9          MR. CYGAL:  I would ask you to
  10     stop those comments.  If you need some
  11     time to compose yourself we will take a
  12     break.
  13           MR. COHEN:  Give me a break.
  14     Stop with the passive aggressive
  15     bullshit.  It is not going to work on
  16     me.
```

```
17        Stop making speeches.  You are
18    wasting my time.
19        MR. CYGAL:  Stop the expletives
20    too or this deposition will end.
21        MR. COHEN:  You can end the
22    deposition at your own risk.
```

**(Exhibit G hereto)**

13.    Nine days later, during Mr. Ekwall's continued deposition, the attacks became even more personal.  When Trustmark's counsel objected to the questioning of Mr. Ekwall with an electronic file on TIG's counsel's laptop without providing copies and without marking it as an exhibit, TIG's counsel flew into a rage:

```
2         MR. CYGAL:  Mr. Cohen, I don't
3     think it's appropriate to have this
4     witness answer any questions unless you
5     mark that actual CD as an exhibit.
6         MR. COHEN:  Okay.
7         MR. CYGAL:  And if you're not
8     going to mark it, then he's not going to
9     answer the questions.
10        MR. COHEN:  You're going to
11    instruct him not to answer the questions
12    because I don't mark an exhibit?
13        MR. CYGAL:  Absolutely.  This is
14    an electronic file that we won't see
15    again after today.  It's going to go
16    with the court reporter or you can burn
17    a copy for everyone right now.
18        MR. COHEN:  Okay, fine.
19        MR. CYGAL:  But it's on your time.
20        MR. COHEN:  Can we get a blank CD?
21        MR. HOLTON:  A blank CD?  Should
22    we go off the record?
23        MR. COHEN:  Yes.  Can you help me
24    copy this?  Let's go off the record.
25        MR. CYGAL:  No, we're not.  This
```

680

```
2     is your time.
3         MR. COHEN:  Yes, we are going off
```

```
4        the record.
5            MR. CYGAL:  This is your time . If
6        you're not prepared --
7            MR. PASCAL:  We don't agree to go
8         off the record.
9            MR. COHEN:  We're going off the
10        record.
11           MR. CYGAL:  We're not going -- we
12        don't agree to go off the record.
13           MR. COHEN:  Well, it's not up to
14        you to agree.  We're going off the
15        record.
16           MR. CYGAL:  It's not up to you to
17        go off the record.
18           Madame court reporter, we do not
19        agree to go off.  The time is going to
20        continue to run.
21           MR. COHEN:  Okay.  You're such an
22        asshole, Everett, unbelievable.
23           MR. PASCAL:  I hope you got that.
24           MR. CYGAL:  I hope you got that.
25           MR. COHEN:  You can put that on
```

681

```
2        the record. I just said – I just
3        called  Mr. Cygal an asshole, because
4        that's  what he is, he's being an
5        asshole.
```

**(Exhibit H hereto)**

14.    These are not the only examples of TIG's counsel's crossing the line.  On March 3 and 4, 2003, Trustmark attempted to depose Shelia Bohuslav, the reinsurance broker at AON, acting for TIG, responsible for dealing with Mr. Ekwall in connection with the reinsurance treaty at issue in this case.  Ms. Bohuslav's deposition was taken in San Francisco, California pursuant to a subpoena issued in this case from the Northern District of California.  Again, TIG's counsel attempted to thwart Trustmark's ability to conduct discovery.

15.    Magistrate Judge Elizabeth D. LaPorte of the United States District Court for the Northern District of California sanctioned TIG's counsel for conduct during that deposition.  Judge LaPorte found, *inter alia:*

> Mr. Hudson and Mr. Cohen repeatedly obstructed the deposition, imposing meritless, improper objections and completely illegitimate instructions not to answer, in direct contravention of the Federal Rules of Civil Procedure governing depositions.

**(Exhibit I hereto)**

16.    As a sanction, Judge LaPorte granted Trustmark an additional seven hours of deposition time on the record with Ms. Bohuslav.  That deposition was completed on February 17, 2005.  Despite the clear mandate of Judge LaPorte's order granting only Trustmark additional time, TIG's counsel, with the assistance of counsel for the witness, proceeded to question the witness despite Trustmark's attempts to suspend the deposition to seek a ruling pursuant to Rule 30(d)(4).  Trustmark has filed a Motion to Strike and For Other Sanctions before Judge LaPorte in connection with this violation of Judge LaPorte's May 27, 2003 order.

17.    Now that TIG's counsel has resorted to direct violations of the clear orders of this Court and of the District Court for the Northern District of California, Trustmark requests that the Court put a stop to this conduct at once and sanction TIG.

18.    Rule 37 vests in the Court broad discretion to deal with such conduct.  Pursuant to Rule 37(b)(2), the Court may enter a number of sanctions "[i]f a party or officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35."  Namely, the Court, among other things, may:  accept facts to be taken as true (Rule

37(b)(2)(A)); refuse to allow the disobedient party to support or oppose designated claims or defenses or prohibit that party from introducing designated matter in evidence (Rule 37(b)(2)(B)); or strike out pleadings or parts thereof . . . or render a judgment by default against the disobedient party." (Rule 37(b)(2)(C))[2]

19.    Here, Trustmark requests that the Court prohibit TIG from offering at trial any testimony by Toothman, Lo, and Thirkill and prohibiting TIG from offering any evidence that would have otherwise been testified to by those witnesses. While the relief sought is significant, such measures are appropriate given TIG's direct violation of this Court's order. Moreover, such relief is also appropriate because of TIG's deliberate abuse of the discovery process in order to prevent Trustmark from taking discovery and completing the Trial Preparation Order free of tactical harassment by TIG's counsel.

WHEREFORE, Trustmark requests that this Court enter an order:

(1)    Prohibiting TIG from offering at trial any testimony by Toothman, Lo, and Thirkill and prohibiting TIG from offering any evidence that would have otherwise been testified to by those witnesses;

(2)    Alternatively, ordering the production of Messrs. Thirkill and Lo in the District of Connecticut on the dates and times of Trustmark's choosing;

(3)    Barring Mr. Cohen from attending any future depositions in this action;

(4)    Assessing against TIG all costs associated with its refusal to obey  the deposition notices for March 4 and 7 and the preparation of this Motion; and

(5)    Awarding such other relief that the Court deems just and equitable.

---

[2]  Pursuant to D. Conn. Loc. R. 37 (a)2, attached as **Exhibit J hereto i**s the Affidavit of Roger Pascal documenting his good faith efforts to resolve by agreement the issues raised by this motion without the intervention of the Court.

Respectfully submitted,


DEFENDANT/THIRD PARTY PLAINTIFF
TRUSTMARK INSURANCE COMPANY


By: _____ /s/ David R. Schaefer _____
     David R. Schaefer, Esq. (CT 04334)
     Rowena A. Moffett, Esq. (CT 19811)
     BRENNER, SALTZMAN & WALLMAN LLP
     271 Whitney Avenue
     New Haven, CT  06511
     Tel.: (203) 772-2600
     Fax: (203) 562-2098
     Email: rmoffett@bswlaw.com
           dschaefer@bswlaw.com


     Roger Pascal (CT 26488)
     David M. Spector (CT 21679)
     John Bannon (CT 26489)
     Everett J. Cygal (CT 22765)
     SCHIFF HARDIN LLP
     6600 Sears Tower
     Chicago, Illinois 60606-6473

     *Counsel for Trustmark Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I, David R. Schaefer, Esq., Do Certify That A True And Correct Copy Of The

Foregoing Trustmark's Emergency Motion to Bar the Testimony of Michael Toothman,

David Thirkill and Richard Lo and for Other Sanctions and was sent by facsimile and

United States mail on March 2, 2005 addressed to:

Frank F. Coulom, Jr., Esq.
Marion Manzo
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103

Mark H. Holton, Esq.
Kate Nealon, Esq.
Gibson Dunn & Crutcher
200 Park Avenue, Floor 48
New York, NY  10166

David J. Grais, Esq.
Kathryn C. Ellsworth, Esq.
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY  10019

Daniel J. Sagarin, Esq.
David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Brian J. O'Sullivan, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

      /s/ David R. Schaefer      
David R. Schaefer, Esq., (CT 04334)
