# EXHIBIT G

Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
 3   DISTRICT OF CONNECTICUT
     -------------------------------x
 4
     SECURITY INSURANCE COMPANY OF
 5   HARTFORD,
 6                  Plaintiff,
 7          against            No. 301CV2198(PCD)
 8   TRUSTMARK INSURANCE COMPANY,
 9                  Defendant.
10   -------------------------------x
11   TRUSTMARK INSURANCE COMPANY,
12                  Third-Party Plaintiff,
13          against
14   TIG INSURANCE COMPANY,
15                  Third-Party Defendant.
16   -------------------------------x
17
                ANTHONY J. GRIPPA
18
                New York, New York
19
             Wednesday, February 2, 2005
20
21
22
23
24   Reported by: Steven Neil Cohen, RPR
25   Job No. 169950
```

1              Grippa

2       A.     I will let Mr. Toothman explain
3   what he is doing.
4       Q.     Mr. Toothman's explanation is in
5   his report. He is not saying anything
6   about how they would develop, is he?
7              MR. CYGAL: Objection; asked and
8       answered.
9              You are harassing the witness.
10             MR. COHEN: Everett, give me a
11      break.
12             THE WITNESS: This paragraph
13      quoted at the top of page 8 of my
14      report I read to be Mr. Toothman being
15      critical of not finding loss
16      development analysis by business
17      segment.
18             If he meant something other than
19      that, boy, I sure didn't understand
20      what he was writing.
21  BY MR. COHEN:
22      Q.     You obviously didn't.
23             What do you mean by not --
24             MR. CYGAL: Objection. Hold on.
25             Mr. Cohen, you don't --

```
                                              Page 126
 1                    Grippa
 2          MR. COHEN:  Everett, stop wasting
 3     my time.
 4          MR. CYGAL:  Stop the gratuitous
 5     comments.  I didn't treat your witness
 6     this way.
 7          MR. COHEN:  Yes, you did, in your
 8     nice, passive aggressive way.
 9          MR. CYGAL:  I would ask you to
10     stop those comments.  If you need some
11     time to compose yourself we will take a
12     break.
13          MR. COHEN:  Give me a break.
14     Stop with the passive aggressive
15     bullshit.  It is not going to work on
16     me.
17          Stop making speeches.  You are
18     wasting my time.
19          MR. CYGAL:  Stop the expletives
20     too or this deposition will end.
21          MR. COHEN:  You can end the
22     deposition at your own risk.
23     BY MR. COHEN:
24          Q.   Mr. Grippa, what do you mean by
25     "critical of not finding loss development
```

# EXHIBIT H

Page 609

COPY

```
 1
 2   UNITED STATES DISTRICT COURT
 3   DISTRICT OF CONNECTICUT
 4   ------------------------------------------X
     SECURITY INSURANCE COMPANY OF HARTFORD,
 5
                         Plaintiff,
 6
           vs.
 7
     TRUSTMARK INSURANCE COMPANY,
 8
                         Defendant.
 9
     Case No. 301 CV 2198 (PCD)
10   ------------------------------------------X
     TRUSTMARK INSURANCE COMPANY,
11
                         Third-Party Plaintiff,
12
           vs.
13
     TIG INSURANCE COMPANY,
14
                         Third-Party Defendant.
15   ------------------------------------------X
16
17           CONTINUED VIDEOTAPED DEPOSITION OF
18               ROBIN EKWALL - Volume III
19                 Stamford, Connecticut
20               Friday, February 11, 2005
21
22
23
     Reported by:
24   JOYCE G. ABELES
     JOB NO. 170145
25
```

Esquire Deposition Services
1-800-944-9454

EXHIBIT H

| | |
|---|---|
| 1 | Ekwall |
| 2 | MR. CYGAL: Mr. Cohen, I don't |
| 3 | think it's appropriate to have this |
| 4 | witness answer any questions unless you |
| 5 | mark that actual CD as an exhibit. |
| 6 | MR. COHEN: Okay. |
| 7 | MR. CYGAL: And if you're not |
| 8 | going to mark it, then he's not going to |
| 9 | answer the questions. |
| 10 | MR. COHEN: You're going to |
| 11 | instruct him not to answer the questions |
| 12 | because I don't mark an exhibit? |
| 13 | MR. CYGAL: Absolutely. This is |
| 14 | an electronic file that we won't see |
| 15 | again after today. It's going to go |
| 16 | with the court reporter, or you can burn |
| 17 | a copy for everyone right now. |
| 18 | MR. COHEN: Okay, fine. |
| 19 | MR. CYGAL: But it's on your time. |
| 20 | MR. COHEN: Can we get a blank CD? |
| 21 | MR. HOLTON: A blank CD? Should |
| 22 | we go off the record? |
| 23 | MR. COHEN: Yes. Can you help me |
| 24 | copy this? Let's go off the record. |
| 25 | MR. CYGAL: No, we're not. This |

```
 1              Ekwall
 2   is your time.
 3          MR. COHEN:  Yes, we are going off
 4   the record.
 5          MR. CYGAL:  This is your time.  If
 6   you're not prepared --
 7          MR. PASCAL:  We don't agree to go
 8   off the record.
 9          MR. COHEN:  We're going off the
10   record.
11          MR. CYGAL:  We're not going -- we
12   don't agree to go off the record.
13          MR. COHEN:  Well, it's not up to
14   you to agree.  We're going off the
15   record.
16          MR. CYGAL:  It's not up to you to
17   go off the record.
18          Madame court reporter, we do not
19   agree to go off.  The time is going to
20   continue to run.
21          MR. COHEN:  Okay.  You're such an
22   asshole, Everett, unbelievable.
23          MR. PASCAL:  I hope you got that.
24          MR. CYGAL:   I hope you got that.
25          MR. COHEN:  You can put that on
```

1     Ekwall
2     the record.  I just said -- I just
3     called Mr. Cygal an asshole, because
4     that's what he is, he's being an
5     asshole.
6              Can I get a blank CD, please?
7              MR. HOLTON:  Well, I'm happy to go
8     try to do that, but I obviously am not
9     going to do that if the examination is
10    going to go on in my absence.
11             MR. COHEN:  But let's not waste
12    more time, okay?  Can you please just
13    get me a blank CD?
14             MR. HOLTON:  Well, I'll see what I
15    can do while I'm here.
16             MR. COHEN:  Okay, thank you.
17             And you're instructing this
18    witness not to answer any questions
19    unless I copy this right now?
20             MR. CYGAL:  Yes.
21             MR. COHEN:  Even though I'm
22    representing to you that this is the CD
23    that was produced by U.S. Life.
24             MR. CYGAL:  If you mark it and put
25    this CD with the transcript, we could

# EXHIBIT I

```
                                          FILED
                                       MAY 2 8 2003
                                      RICHARD W. WIEKING
                                   CLERK, U.S. DISTRICT COURT
                                 NORTHERN DISTRICT OF CALIFORNIA
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, | |
| Plaintiff, | No. C-03-037 MISC CRB (EDL) |
| v. | ORDER GRANTING TRUSTMARK'S MOTION TO COMPEL ADDITIONAL DEPOSITION TIME FOR SHEILVA BOHUSLAV AND REQUEST FOR ADDITIONAL RELIEF |
| TRUSTMARK INSURANCE COMPANY, | |
| Defendant. | |
| TRUSTMARK INSURANCE COMPANY, | |
| Third Party Plaintiff, | |
| v. | |
| TIG INSURANCE COMPANY, | |
| Third Party Defendant | |

## I. BACKGROUND

The underlying dispute concerns a complex reinsurance transaction involving three insurance companies, Security Insurance Company of Hartford, Trustmark Insurance Company, and TIG Insurance Company, currently pending in the District Court of Connecticut. On January 1, 1999, Security Insurance Company of Hartford ("Security") reinsured TIG for certain workers' compensation risks (the "Reinsurance Agreement"). On May 3, 2002, Trustmark filed a third party complaint alleging that TIG,

EXHIBIT I

through Aon, the reinsurance intermediary, made material misrepresentations and nondisclosures in the context of the placement of the Reinsurance Agreement. Sheila Bohuslav is the employee at Aon who communicated with WEB Management LLC, the agent for Security and Trustmark, in connection with the placement of the Reinsurance Agreement.

On March 3 and 4, 2003, Ms. Bohulsav was deposed over the course of 11 hours and 2 minutes after subtracting lunches and other breaks. Trustmark's counsel, Mr. Cygal, deposed Ms. Bohuslav first. Then Security's counsel, Ms. Wong, deposed the witness. And, finally, TIG's counsel, Mr. Cohen, deposed the witness. Ms. Bohuslav's counsel, Mr. Hudson, was also present at the depositions.

On April 15, 2003, Trustmark filed a motion to compel seven hours of additional deposition of Ms. Bohuslav and a request for a protective order to prevent counsel from Aon and TIG from further interfering with the progress of the deposition ("Motion"). On May 13, 2003, Aon and TIG filed oppositions ("Aon Opp." and "TIG Opp."). On May 20, 2003, Trustmark filed a reply ("Reply"). Having reviewed the parties' papers, the Court finds that a hearing is unnecessary.

## II. DISCUSSION

### A. Three Hours of Deposition Time Remains

Trustmark's counsel agreed to forego the deposition of other Aon witnesses with knowledge of the transactions at issue in exchange for Aon agreeing to produce Ms. Bohuslav for two full days of deposition. During Trustmark's counsel's portion of the deposition, however, Mr. Cohen informed him, for the first time, that Ms. Bohuslav would only be available for seven hours on the clock, rather than seven hours on the record. A day of deposition consists of seven hours of testimony, excluding breaks. Fed. Rule Civ. Pro. 30(d)(2). As Ms. Bohuslav was only deposed for eleven hours, three hours of deposition time remain, even without taking into account the fact that opposing counsel frustrated the use of the time that was available.

### B. Opposing Counsel Repeatedly Made Improper Objections

Mr. Hudson and Mr. Cohen repeatedly obstructed the deposition, imposing meritless, improper objections and completely illegitimate instructions not to answer, in direct contravention of the Federal Rules of Civil Procedure governing depositions.

Counsels' objections were not limited to the form of questions, as they should have been.

Rather, they frequently made improper objections such as asked and answered (which is not a valid objection at all), lacks foundation (not an objection to form), incomplete hypothetical (same), not appropriate for a fact witness (same), and inconsistent with another deponent's testimony (no such objection exists – pure coaching). For example:

> MR. COHEN: Objection; that was asked and answered.
> MR. HUDSON: Join. And as well as the other objections that were made to the prior question, lacks foundation, as a hypothetical its incomplete, calls for opinion, conclusion, speculation, its vague and ambiguous, and its not appropriate for this witness as a fact witness. And, counsel, if you keep doing it, I am going to instruct her not to answer, because you are harassing her, asking her about something that's not her job and she doesn't even have any training in. . . . She's here as a fact witness; lets treat her like one.

Dep. at 95:14-20.

> MR. HUDSON: Objection; it calls for a legal conclusion, opinion, [as] a hypothetical, lacks foundation. This – also calls for conclusion, it's vague and ambiguous. As I say, [as] a hypothetical, it's incomplete, and it's inconsistent with this witness being a percipient witness.

Dep. at 41:24-42:7.

> MR. HUDSON: Objection; lacks foundation, calls for opinion, conclusion, speculation, assumes facts as to which there is no testimony by this witness, and is argumentative.
> MR. COHEN: And asked and answered and completely distorts the answer she just gave.

Dep. at 177:25-178:3.

> MR. HUDSON: Objection; the question's argumentative as phrased. Why don't you just ask if without the "so how do you know" part?

Dep. at 122:15-19.

> MR. COHEN: Objection; it's totally - it's a totally improper question, given Mr. Bima's explanation of what he did to compare rates and the ultimate expected losses. It's just not fair to this witness. You can answer if you can.
> MR. HUDSON: I'm going to object that the question assumes facts to which this witness has not testified, it lacks foundation – and calls for opinion, conclusion, and speculation.

Dep. at 176:19-177:5.

> MR. COHEN: It's also inconsistent with Mr. Bima's testimony.

Dep. at 33:6-7.

> MR. COHEN: Also assumes facts not in evidence and is inconsistent with evidence already elicited in this action.

Dep. at 34:11-13.

> MR. COHEN: Objection, to the extent you are asking about Aon, you asked Mr. Bima about this at length and you have his testimony. You can ask whether she used it for a particular purpose. But in fairness to her, you ought to explain to her what Mr. Bima, who wrote this analysis, testified as to what he was doing.

3

Dep. at 174:19-24.

Moreover, as illustrated above, contrary to the explicit command of Federal Rule of Civil Procedure 30(d)(1), counsels' objections were not stated succinctly whether to form or otherwise, and were often improperly argumentative and suggestive. Counsel made improper speaking objections, the evident purpose and effect of which were to obstruct a fair examination and coach the witness. Fed. Rule of Civ. Pro. 30(d)(1)("Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner").

As the following dialogue demonstrates, Mr. Cohen used an uncivil, argumentative, obstructionist tone throughout Ms. Bohuslav's deposition. In fact, during Ms. Wong's portion of the deposition, Mr. Cygal pointed out on the record that Mr. Cohen had thrown the microphone and been rude to the court reporter. (Dep. at 261:6-8.) While at times Mr. Cygal got caught up in the colloquy, he did so in response to Mr. Hudson's and Mr. Cohen's invalid, obstructionist objections. Thus, the Court finds that Mr. Hudson's and Mr. Cohen's conduct and waste of deposition time were far more egregious than any colloquy by Mr. Cygal, who correctly pointed out that the lengthy objections were improper.

> MR. COHEN: Object to form; calls for speculation, assumes facts not in evidence. You are asking her opinion about what every underwriter in the market at this time would have done in the A&H reinsurance carve-out markets, which is an unfair question not only with respect to its breadth, but with respect to calling for speculation about what hundreds, if not thousands, of underwriters might have done at the time. And you are also – and excuse me. I'm not done. I'm not done. I'm not done.
> MR. CYGAL: It's a very long objection.
> MR. COHEN: I am not done, Everett. I am not done. I am not done, Everett. I am not done.
> MR. CYGAL: You are wasting my time with these narrative objections.
> MR. COHEN: I am not done. And I would appreciate it if you would not interrupt me until I am done.
> MR. CYGAL: I would appreciate short objections.
> MR. COHEN: Please don't interrupt me in the middle of my objection.
> MR. CYGAL: Please finish and let's move on.
> MR. COHEN: Please don't interrupt me in the middle of my objection. Can we have that agreement?
> MR. CYGAL: Are you done with this objection?
> MR. COHEN: Obviously not. Can we have an agreement that you will not interrupt me in the middle of an objection?
> MR CYGAL: Would you finish your objection?
> MR. COHEN: Do we have that agreement or not?
> MR. CYGAL: Would you finish your objection. I'm not going to agree to that. Finish your objection.

4

1  MR. COHEN: You are asking her for an expert opinion regarding what underwriters in the market would have done at this time, and that's a totally unfair and inappropriate question.
2  
3  MR. CYGAL: And your objection was totally inappropriate and improper under the rules. And if you have a basis for the objection, state it. Don't state he answer for the witness. Don't coach the witness in your objection. I asked her a question that was based off of her testimony, what she expected other underwriters reviewing this business to do. It was not a question about the entire A&H market, but her understanding of what the market was doing with respect to her placement. So I think, Mr. Cohen, you should tone down these objections.
4  
5  
6  MR. COHEN: And your prior question was equally objectionable. And if it was my witness, I would have instructed her not to answer the first one. So that doesn't – excuse me, I'm not done. So that doesn't make your follow-up question proper just because this counsel allowed his witness to answer a question that was equally improper for all of the reasons I've just explained.
7  
8  

9  Dep. at 90:12-92:16.

10  The transcript further reflects that Mr. Hudson instructed the witness not to answer based on
11  alleged harassment and argumentative questions, neither of which are valid bases to instruct a witness
12  not to answer. Fed. Rule of Civ. Pro. 30(d)(1)( "A person may instruct a deponent not to answer only
13  when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a
14  motion under Rule 30(d)(4)").

15  MR. HUDSON: I'm going to instruct her not to answer that question; it's argumentative and harassing. Let's try another one.
16  

17  Dep. at 96:19-25.

18  MR. HUDSON: Objection. Counsel, I'm going to instruct her not to answer that. That is so argumentative. You are piling your own speculation on top of speculation, and I'm instructing her not to answer.
19  
20  

21  Dep. at 178:9-16.

22  If counsel had genuinely believed that Mr. Cygal was harassing the witness or asking improper
23  questions, the appropriate remedy was to take a recess from the deposition and immediately move for
24  a protective order. See Fed. Rule Civ. Pro. 30(d)(4). Counsel did not do so, probably recognizing that
25  such a motion would have been unjustified.

     **C.    Trustmark's Motion Is Not Untimely**

26  Civil Local Rule 26-2 provides that "[n]o motions to compel discovery may be filed more than
27  10 days after the discovery cut-off." Here, Trustmark filed its motion to compel twenty-five days after
28  

5

1  the discovery cut-off date of March 21, 2003. However, the parties agreed to seek an extension of the
2  discovery deadline, to April 25, 2003, for purposes of completing certain "clean-up" discovery. While
3  the parties' intent may have been to limit the extension to certain depositions, nothing in the parties'
4  correspondence regarding the stipulation suggests that the extension would not affect the cutoff for
5  bringing motions. Cohen Dec. Exs. F, G, and H. More importantly, the Court order extending fact
6  discovery to April 25, 2003, as requested by the parties, contains no such limitation. Cohen Dec. Ex.
7  I. Therefore, as Trustmark's motion was filed on April 15, 2003, the motion was timely.

8  Alternatively, where the fact discovery cutoff precedes the expert discovery cutoff, while the
9  better practice is to bring fact discovery motions within ten days of the fact discovery cutoff, the Local
10 Rules arguably allow a party to bring a fact discovery motion within ten days of the expert discovery
11 cutoff. Civil Local Rule 26-2 ("discovery cut-off" defined as "the date by which all responses to written
12 discovery are due and by which all depositions must be concluded; this includes all discovery from
13 expert witnesses").

### D. Trustmark's Request for a Special Master

Trustmark further requests that a Special Master be appointed to immediately address any issues raised at the deposition, with costs to be assessed against Aon and TIG. A reference to a Special Master requires exceptional circumstances. Fed. Rule Civ. Pro. 53(b). While the egregious behavior at the original deposition could constitute such circumstances, the Court will give the opposing parties one more chance. Therefore, the Court DENIES Trustmark's request for a Special Master without prejudice, and orders instead that opposing counsel shall refrain from making speaking or other improper objections, shall limit their objections to one or two word objections to form, and shall only instruct not answer based on genuine issues of privilege. Moreover, in the case of an emergency, the Court is available pursuant to Civil L.R. 37-1(b). This order is made without prejudice to Trustmark filing a motion for reasonable costs and fees for the time that opposing counsel wasted during the first deposition and entailed on this motion. See Fed. Rule Civ. Pro. 30(d)(3).

### III. CONCLUSION

For the above reasons, Trustmark's motion to compel seven hours of additional deposition time

//

for Sheila Bohuslav is hereby GRANTED. Trustmark's request for a Special Master is DENIED, without prejudice.

IT IS SO ORDERED.

Dated: May 27, 2003

*(signature)*
ELIZABETH D. LAPORTE
United States Magistrate Judge

copies faxed to
counsel of record

United States District Court
For the Northern District of California

7

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>Plaintiff,<br><br>v.<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Defendant.<br>_____/<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>Third Party Plaintiff,<br><br>v.<br><br>TIG INSURANCE COMPANY,<br><br>Third Party Defendant<br>_____/ | Case Number: C03-037 CRB<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 29, 2003, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

David McDonald, Esq.
AON RE.INC
AON Law Department
199 Fremont Street, 12th Floor
San Francisco, CA 94105

Frank F. Coulom, Jr., Esq.
Marion Manzo, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, Connecticut 06103

David J. Grais, Esq.
Mark B. Holton, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue
New York, NY 10166-0193

Davis A. Slossbert, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CN 06460-0112

Harry P. Cohen, Esq.
Brian J. O. Sullivan, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

Everett J. Cygal, Esq.
William E. Meyer, Jr., Esq.
Paula J. Morency, Esq.
Clay A. Tillack, Esq.
David M. Spector, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, IL 60606-6473

Ann Sparkman, Esq.
Shane & Taitz, LLP
1000 Drakes Landing Road, Suite 200
Greenbrae, CA 94904

Dated: May 29, 2003

Richard W. Wieking, Clerk
By: Dennis King, Deputy Clerk

2