UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------x
SECURITY INSURANCE COMPANY OF
HARTFORD,
:
: CIVIL NO. 301CV2198(PCD)
           Plaintiff,
:
      v.
:
: JANUARY 31, 2005
TRUSTMARK INSURANCE COMPANY,
:
           Defendant.
:
------------------------------------x
TRUSTMARK INSURANCE COMPANY,
:
           Third Party Plaintiff,
:
      v.
:
TIG INSURANCE COMPANY,
:
           Third Party Defendant.
:
------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITY INSURANCE COMPANY OF HARTFORD'S MOTION TO STRIKE PORTIONS OF DEFENDANT TRUSTMARK INSURANCE COMPANY'S AMENDED AND SUPPLEMENTAL RESPONSE TO SECURITY'S SECOND SET OF INTERROGATORIES AND TO COMPEL TRUSTMARK TO VERIFY ITS ORIGINAL RESPONSE TO SECURITY'S SECOND SET OF INTERROGATORIES**

Plaintiff Security Insurance Company of Hartford moves to strike certain portions of Defendant Trustmark Insurance Company's Amended and Supplemental Response to Security's Second Set of Interrogatories (the "Amended Response") on the ground that Security will be unduly prejudiced if Trustmark is allowed to amend belatedly its response to assert additional grounds and theories to support its purported rescission of its retrocession agreement (the "Certificate") with Security. Trustmark's amendment of its interrogatory response is not based

on any newly-discovered evidence; the facts underlying the amendments have been known to Trustmark at least for months, and often for years. Yet Trustmark waited until *after* Security's experts had submitted their reports and given their depositions, and less than a month before the close of discovery, before asserting these materially different theories and additional grounds for its purported rescission.

This maneuver by Trustmark is merely the most recent example of an ongoing pattern of constantly changing theories that it has asserted to justify its purported rescission of the Certificate. Although Security believes, and will demonstrate at trial, that all of Trustmark's purported grounds for rescission are meritless, Security should not be put in the position of having to respond at this late stage to newly-raised contentions that Trustmark could have asserted long ago, and is raising for the first time now in the hope of denying Security a fair opportunity to defend itself.

Courts do not hesitate to strike amended discovery responses served at a late stage of the litigation that, like Trustmark's, assert new contentions or issues. They recognize the substantial prejudice that the opposing party would suffer if it were required, in order to respond to the new contentions, to amend its expert reports, conduct further costly discovery, or accept a delay in the trial. Here, the discovery period ends in less than two weeks. Allowing Trustmark to assert these new grounds at this late stage would result in substantial prejudice to Security, because even if it could take discovery concerning these new issues, it would have to amend its expert reports, the trial likely would be delayed, and it would incur substantial additional costs.

Compounding this injustice, Trustmark has refused to verify its original response to Security's Second Set of Interrogatories (the "Original Response"), in violation of Rule 33(b) of the Federal Rules of Civil Procedure. Security has been requesting the required verification for

2

more than two months, but instead of verifying the Original Response (upon which Security and its experts relied in framing their reports), Trustmark now attempts effectively to disavow that response by refusing to verify it.

Accordingly, the Court should strike the newly-asserted portions of Trustmark's Amended Response. In addition, regardless of the decision on Security's Motion to Strike, the Court should compel Trustmark to verify its Original Response.

## BACKGROUND

Pursuant to the Court's scheduling order, Security's expert reports were due on November 19, 2004. In anticipation of that deadline, on September 14, 2004, Security served its Second Set of Interrogatories on Trustmark, which requested that Trustmark "describe in detail each and every ground that Trustmark believes supports its purported rescission of the Trustmark Certificate." Declaration of Mark B. Holton ("Holton Decl.") Ex. A. Security's intention in serving this interrogatory was to narrow the issues in dispute and discover, before the submission of its expert reports, each and every ground that Trustmark intends to assert at trial in support of its purported rescission of the Certificate.

### A. Trustmark's Unverified Original Response

Trustmark served its Original Response to Security's Second Set of Interrogatories on November 3, 2004. See Holton Decl. Ex. B. The Original Response states that Trustmark asserts two grounds for its purported rescission of the Certificate: (1) Security's alleged interference with Trustmark's administration of the TIG business, which Trustmark claims was a material breach of the parties' supposed agreement as to administration and a violation of the

3

duty of good faith;[1] and (2) TIG's alleged misrepresentations in connection with the placement of the 1999 business. Id.

The Original Response, however, was not verified, despite Rule 33(b)'s requirement that "each interrogatory shall be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(1). Security's counsel immediately and repeatedly requested that Trustmark's counsel arrange for Trustmark to verify its Original Response. See Holton Decl. ¶¶ 4-5. Receiving no response, Security's counsel followed up with letters advising Trustmark's counsel that if Trustmark did not verify its Original Response, as required by Rule 33(b), Security would move to compel and would seek the costs and fees incurred in doing so. See Holton Decl. ¶¶ 6, 8 & Exs. C, E. Initially, Trustmark's counsel took the position, to which Security objected, that for contention interrogatories, counsel's unsworn signature on the Original Response sufficed to satisfy Rule 33. Id. ¶¶ 7, 8 & Exs. D, E. In late December, Trustmark's counsel finally agreed that Trustmark would provide an appropriate verification during the week of January 3, 2005. See Holton Decl. ¶ 9.

In the meantime, Security had served on November 19 the reports of both of its experts: Mary Ellen Burns and Kevin Ryan. Security's experts were deposed on December 14 and 22, respectively. In preparing their reports and offering their testimony, Security's experts relied on

---

[1] This first ground included five alleged breaches by Security of the purported administration agreement: (1) "Failure to cooperate with Trustmark to terminate the TIG contract due to systematic failure to report losses"; (2) "Security's unauthorized novation of the TIG contract"; (3) "Security's interference with Trustmark's administration of the TIG business"; (4) "Security's and FCIC's interference with Trustmark's administration of the Unicare Business to improperly exert leverage over Trustmark in connection with the TIG novation"; and (5) "Security's refusal to rescind the TIG Agreement." See id. In its Amended Response, Trustmark has dropped the third alleged breach. Security does not complain of this amendment by Trustmark, and the former third breach is now out of the case.

4

Trustmark's Original Response as a full and complete statement of Trustmark's purported grounds for rescission.

When the promised verification by Trustmark still was not forthcoming, Security's counsel once again wrote to Trustmark's counsel on January 7, 2005, requesting that Trustmark provide the verification by the close of business on January 12. Holton Decl. ¶ 10 & Ex. F.

**B.    Trustmark's Belated Service of Its Amended and Supplemental Response**

Rather than provide a verification of the Original Response as it had promised, Trustmark instead served the Amended Response on January 14. See Holton Decl. Ex. G. The Amended Response, while verified, materially differs from Trustmark's Original Response in that it asserts new grounds for rescission, materially modifies others, and raises issues that Trustmark had not previously asserted, despite, in each instance, having had knowledge of the underlying facts for at least many months and often for years.

First, Trustmark's Amended Response includes an additional, newly-alleged "breach" by Security, which Trustmark offers as support for its purported rescission of the Certificate. Trustmark now claims that Security acted in bad faith and violated its obligations to Trustmark by refusing to allow Trustmark to "vouch in" to the arbitration between Security and TIG. See Amended Response at 13-14 (Holton Decl. Ex. G). In amending its response to include this new "vouching in" theory, Trustmark relies on events that took place in *mid-2002,* soon after TIG commenced an arbitration against Security. Trustmark clearly had knowledge of these facts – it disputed the issue with Security at the time and even submitted papers to this Court on the issue

in September 2002[2] -- and easily could have asserted this in its Original Response.  By waiting to include it in the Amended Response, *after* Security's experts submitted their reports and gave their depositions, and so close to the end of discovery, Trustmark has deprived Security of a fair opportunity to prepare for trial on this issue.

Second, Trustmark's Amended Response changes its position with regard to the November 2, 2001 letter that its counsel sent to Security's counsel before this litigation began.  In its Original Response, Trustmark set forth five alleged breaches by Security, which it claims are the bases for its allegation that Security failed to perform its obligations under its agreement with Trustmark.  One of the five alleged breaches was Security's "refusal to rescind the TIG Agreement" -- specifically, Security's failure to abide by the November 2 letter from Trustmark's counsel, which, as Trustmark then stated, requested "that Security rescind the TIG/Security Contract based on a number of misrepresentations that had been identified at that time."  Original Response at 13 (Holton Decl. Ex. B).  Relying on Trustmark's Original Response, Security's

---

[2] After TIG filed its arbitration against Security on June 27, 2002, Security tendered the defense of the arbitration to Trustmark.  See Holton Decl. Ex. H (July 1, 2002 letter from M. Holton to D. Spector).  Trustmark stated that it was willing to accept the tender, but subject to various conditions and exceptions, which Security did not accept.  See id. Ex. I (July 15, 2002 letter from R. Lester to P. Lovell).  Counsel for Trustmark nevertheless purported to designate Security's party-appointed arbitrator.  See id. Ex. J (July 15, 2002 letter from R. Lester to L. Brandes).  After Security and Trustmark tried unsuccessfully to negotiate an agreement under which Security would tender to Trustmark, and Trustmark would accept, the defense of Security, Security designated its own party-appointed arbitrator and informed Trustmark that its prior designation was of no force and effect.  Holton Decl. Ex. K (July 25, 2002 letter from D. Grais to H. Cohen).  Ultimately, Security was forced to file a complaint in this Court seeking a declaration that its party-appointed arbitrator was the duly appointed arbitrator for the arbitration with TIG.  Before ultimately capitulating, in September 2002, Trustmark filed an Answer and Counterclaim in response to Security's complaint, raising the same "vouching in" argument that it now belatedly asserts as a ground for its purported rescission of the Certificate.  See id. Ex. L.  Accordingly, there is no justification for Trustmark's having waited more than two years – until after Security produced its experts' reports – before including this purported ground for rescission in its Amended Response.

6

experts addressed this allegation and provided their opinion as to whether Security was obligated to rescind its agreement with TIG after receiving Trustmark's November 2 letter requesting Security to rescind.

In its Amended Response, however, Trustmark inexplicably has changed its position. It now asserts that the November 2 letter requested only that Security "unconditionally cooperate" with Trustmark's investigation of TIG's conduct, not that Security rescind its agreement with TIG. Amended Response at 11 (Holton Decl. Ex. G). Again, by changing its position after Security's experts have submitted their reports and given their depositions, and so near the completion of discovery, Trustmark has deprived Security of a fair opportunity to respond to this contention. Moreover, as the basis for the amendment is a statement in Trustmark's own letter sent over three years ago, there is no justification for Trustmark's change in position at this late date.

### C.  Trustmark's Continued Refusal To Verify Its Original Response

After receiving Trustmark's verified Amended Response, Security's counsel immediately advised Trustmark's counsel that Security expected Trustmark to verify the Original Response as well. In a follow-up telephone conversation, Trustmark's counsel stated that Trustmark would not verify the Original Response. See Holton Decl. ¶ 12. Security's counsel informed Trustmark's counsel that Security would file a motion to compel. Id.

Discovery in this case closes on February 11. Security must submit Part A of the trial preparation order by February 28, and the case is to be trial ready by April 4.

**ARGUMENT**

I.  **THE COURT SHOULD STRIKE FROM TRUSTMARK'S AMENDED RESPONSE ANY NEWLY-ASSERTED GROUNDS THAT COULD HAVE BEEN INCLUDED IN ITS ORIGINAL RESPONSE.**

When a party fails seasonably to amend a prior response to interrogatories, striking the untimely response is an appropriate sanction under Rule 37(c)(1). See, e.g., American Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 93-96 (S.D.N.Y. 2002); Robbins v. Ryan's Family Steak House East, Inc., 223 F.R.D. 448, 454 (S.D. Miss. 2004).

"The purpose of contention interrogatories is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." Baltimore Therapeutic Equip. Co. v. Loredan Biomedical, Inc., 1993 WL 129781, *16 (E.D.Cal. Feb. 19, 1993), aff'd, 26 F.3d 138 (Fed. Cir. 1994). A party is justified in relying on responses to contention interrogatories in conducting discovery, planning its defense, and preparing its expert testimony. Where, as here, a party belatedly supplements its interrogatory responses, it frustrates the very purpose of such interrogatories and denies its adversary the opportunity "to make full use of the discovery process in preparing its case." Id. at *16. Such changes in position constitute unfair surprise and undermine the purpose of the discovery rules.

Courts recognize that substantial prejudice may result when a party asserts new theories or contentions in supplemental discovery responses served at a late stage of the litigation, whether it be after discovery has closed, after a party has submitted its expert reports, or after it has moved for summary judgment. In those circumstances, courts often will strike the supplemental response or preclude the party from offering evidence at trial in support of that new theory. See, e.g., American Stock Exch., 215 F.R.D. at 94-96 (precluding party from asserting at trial that patent claim had been infringed, where claim was disclosed for first time in amended

8

interrogatory responses served one month after conclusion of fact discovery and shortly before scheduled exchange of expert reports; court finds that belated assertion of claim unfairly prejudiced plaintiff's trial preparation); Robbins, 223 F.R.D. at 454 (granting motion to strike belated supplemental discovery responses propounding new evidence after close of discovery); Baltimore Therapeutic, 1993 WL 129781, at *16 & n. 18 (striking amended and supplemental interrogatory responses served after close of discovery); Luddington v. Indiana Bell Telephone Co., 796 F. Supp. 1550, 1579 (S.D. Ind. 1991), aff'd, 966 F.2d 225 (7th Cir. 1992) (precluding assertion of additional grounds for discrimination claim, which were raised for first time in supplemental response to interrogatory that was served weeks after defendant's summary judgment motion was filed and discovery closed); Royalty Petroleum Co. v. Arkla, Inc., 129 F.R.D. 674, 678-80 (W.D. Okl. 1990) (striking supplemental interrogatory response filed on eve of trial which asserted new evidence).

Belated amendment is particularly inexcusable where, as here, it is not based on newly-discovered evidence but, rather, on information that was previously available to the party making the amendment. See, e.g., Havenfield Corp. v. H&R Block, Inc., 509 F.2d 1263, 1271-72 (8th Cir.), cert. denied, 421 U.S. 999 (1975) (affirming district court's refusal to allow defendant to amend interrogatory responses to raise new issues, where new information was available to defendant before discovery closed, but it waited until after close of discovery before seeking to amend response); American Stock Exch., 215 F.R.D. at 96 (precluding assertion of new claim where amending party provided no explanation for delay of five weeks between when it obtained information from deposition transcript and when it served its amended responses); Royalty Petroleum, 129 F.R.D. at 679-80 (noting lack of credible explanation why documents giving rise to supplemental response could not have been discovered earlier, as they were the party's own

documents); Luddington, 796 F. Supp. at 1579 (precluding party from raising additional job promotions as basis for discrimination claim, where the jobs were applied for and denied well before discovery closed yet plaintiff waited to include them in supplemental interrogatory responses served after close of discovery).

  Here, Security will suffer substantial prejudice if Trustmark is permitted to amend belatedly its interrogatory response to assert new grounds in support of its purported rescission of the Certificate. Trustmark had never before claimed that Security's alleged failure to allow it to "vouch in" to the TIG arbitration (which occurred *after* Trustmark purported to rescind the Certificate) was a ground for rescission. Accordingly, Security's experts did not address this point in their reports and Security has taken no discovery on the issue. Trustmark clearly could have included this in its Original Response, as it has been fully aware of the issue since 2002. Nor has Trustmark previously taken the position (which is contrary to the terms of the letter itself) that the November 2 letter simply asked Security to "unconditionally cooperate" in Trustmark's investigation of TIG's conduct, rather than to rescind the TIG contract altogether. Security's experts addressed the latter point, in reliance on the November 2 letter itself, Trustmark's prior contentions, and the Original Response. To allow Trustmark to change its position now would cause substantial prejudice to Security, by giving it an insufficient opportunity to challenge this fundamentally different contention. There is no justification for Trustmark's belated change in position, as this amendment involves no new facts; rather, it is a different interpretation of Trustmark's own document.

  That Trustmark may not have analyzed existing information until recently, or comprehended its purported significance to Trustmark's case, is no excuse for its delay. See, e.g., Havenfield, 509 F.2d at 1272 (rejecting defendant's argument that belated amendment

10

should be excused because counsel had not fully appreciated the significance of new facts until final preparations for trial; noting that "for purposes of determining timeliness in procedural matters of this sort, the beginning time is the date when the facts are discovered, not some nebulous date when counsel first realized that there was some significance to them"). By waiting until after Security's expert reports were submitted and its experts deposed, Trustmark has effectively deprived Security of a fair opportunity to address these additional issues at trial, to Security's substantial prejudice.

Finally, it is no answer to say that discovery in this case is not yet closed and that Security conceivably could still take discovery concerning these newly-asserted grounds. That a party may have the opportunity to conduct additional discovery does not alleviate the prejudice caused by belatedly amended interrogatory responses, particularly where the amendment will result in a delay of the resolution of the case or require the party's expert to amend his report to address newly-asserted contentions. See, e.g., American Stock Exch., 215 F.R.D. at 94-95 (noting that plaintiff would suffer prejudice, including significant delay in the resolution of its case and the necessity to further amend its expert report, if discovery were reopened to enable it to take discovery directed to claim asserted in belatedly amended response); Lynchval Sys., Inc. v. Chicago Consulting Actuaries, Inc., 1996 WL 735586, *9 (N.D. Ill. Dec. 19, 1996) (noting that defendants faced serious prejudice from belated assertion of new contention; reopening discovery would not cure prejudice and would compound delay until trial, subject defendants to additional costs, and require their experts to amend their reports in light of new information disclosed).

Here, the discovery period ends in less than two weeks. Even if Security could take discovery concerning these new issues before that date, it would have to amend its expert

11

reports, the trial likely would be delayed, and it would incur substantial additional costs. Because there is no justification for Trustmark's belated amendment of its interrogatory response, given that it has long-known of the information underlying the amendments, the Court should grant Security's motion and strike the newly-asserted grounds in Trustmark's Amended Response.

## II.     TRUSTMARK SHOULD BE COMPELLED TO VERIFY ITS ORIGINAL RESPONSE IN ACCORDANCE WITH RULE 33(b).

It is beyond dispute that Rule 33(b) requires interrogatory responses to be answered "under oath" and signed by the party making them. Fed. R. Civ. P. 33(b). Counsel's unsworn signature is not a substitute for the required sworn verification of the party.

Trustmark, however, has for months unjustifiably refused to verify its Original Response to Security's Second Set of Interrogatories. That Trustmark has since served an Amended and Supplemental Response does not relieve it of the obligation to verify its Original Response, upon which Security has relied in preparing its case. To the contrary, the current circumstances make it all the more important that Trustmark verify, and not be permitted to disavow, its prior representations. Security therefore requests that the Court order Trustmark to verify its Original Response.

Finally, should the Court grant Security's motion to compel, Security is entitled to its reasonable costs, including its attorneys' fees, in bringing the motion. See, e.g., MomsWin, LLC v. Lutes, 2003 WL 21077437, *3 (D. Kan. May 9, 2003) (awarding plaintiff costs and fees incurred in bringing motion to compel defendant to verify interrogatory responses); Wilkes v. Federal Express Corp., 2001 WL 1910065, *1 (W.D. Tenn. Nov. 14, 2001) (same).

## CONCLUSION

For all of the foregoing reasons, Security respectfully requests that the Court issue an order (a) striking the newly-asserted grounds in Trustmark's Amended Response to Security's Second Set of Interrogatories, (b) compelling Trustmark to verify its Original Response to Security's Second Set of Interrogatories; and (c) awarding Security the costs and fees incurred in bringing its motion to compel.

Dated: New York, New York
       January 31, 2005

GIBSON, DUNN & CRUTCHER LLP

By: _____

Mark B. Holton (ct 21727)
Kathryn E. Nealon (ct 22754)
200 Park Avenue
New York, New York  10166
Tel. (212) 351-4000
Fax (212) 351-4035

DEWEY BALLANTINE LLP
David J. Grais (ct 23352)
Kathryn C. Ellsworth (ct 24988)
1301 Avenue of the Americas
New York, New York  10019
Tel. (212) 259-8000
Fax (212) 259-6333

ROBINSON & COLE LLP
Frank F. Coulom, Jr. (ct 05230)
Marion B. Manzo (ct 22068)
280 Trumbull Street
Hartford, Connecticut  06103
Tel. (860) 275-8200
Fax (860) 275-8299
email:  fcoulom@rc.com
        mmanzo@rc.com

Counsel for Plaintiff Security Insurance
Company of Hartford

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent this 31st day of January 2005, by facsimile and first class mail, postage prepaid, to the following persons:

Everett Cygal, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, Illinois 60606-6473

David R. Schaefer, Esq.
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT 06511

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Cadwalader, Wickersham & Taft
One World Financial Center
New York, NY 10281

Kathryn E. Nealon

80318179_3.DOC