UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------x
SECURITY INSURANCE COMPANY OF      :
HARTFORD,                          :
                                   :     CIVIL NO. 301CV2198(PCD)
        Plaintiff,                 :
                                   :
    v.                             :
                                   :     MARCH 11, 2005
TRUSTMARK INSURANCE COMPANY,       :
                                   :
        Defendant.                 :
                                   :
------------------------------------x
TRUSTMARK INSURANCE COMPANY,       :
                                   :
        Third Party Plaintiff,     :
                                   :
    v.                             :
                                   :
TIG INSURANCE COMPANY,             :
                                   :
        Third Party Defendant.     :
                                   :
------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF
SECURITY INSURANCE COMPANY OF HARTFORD'S MOTION TO STRIKE
PORTIONS OF DEFENDANT TRUSTMARK INSURANCE COMPANY'S AMENDED
AND SUPPLEMENTAL RESPONSE TO SECURITY'S SECOND SET OF
INTERROGATORIES AND TO COMPEL TRUSTMARK TO VERIFY ITS ORIGINAL
RESPONSE TO THOSE INTERROGATORIES**

Dewey Ballantine LLP
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

Robinson & Cole LLP
280 Trumbull Street
Hartford, Connecticut 06103
(860) 275-8200

Trustmark's opposition to Security's motion is conspicuously devoid of any sworn declaration explaining the purported "inadvertent errors" and "corrections" that required it to serve an Amended and Supplemental Response to Security's Second Set of Interrogatories (the "Amended Response"), and that allegedly have kept Trustmark from verifying its original response to those interrogatories (the "Original Response"). Instead, Trustmark offers a vague and cryptic account of the reasons for these belated amendments, which it concedes are not based on any newly discovered facts.

Indeed, in its Amended Response, Trustmark has taken facts of which it long has been aware and now asserts that these facts give rise to an entirely new ground for the purported rescission of its retrocessional contract with Security (the "Certificate"). Trustmark never before claimed that these facts had anything to do with its rescission of the Certificate (understandably, since they arose *after* Trustmark sent its notice of rescission), and Security relied on that position in conducting discovery and preparing expert reports.

In addition, Trustmark has fundamentally changed its position regarding Security's alleged misconduct by reinterpreting a letter that Trustmark's own counsel wrote in November 2, 2001. Although Trustmark, and its experts, have contended throughout this litigation that the November 2, 2001 letter requested that Security promptly rescind its agreement with TIG, and that Security breached its obligations to Trustmark by failing to do so, Trustmark now claims that the letter requested only that Security cooperate in Trustmark's investigation of TIG's conduct. Trustmark's argument strains credulity and is belied by the opinions of its own experts. Moreover, because Security and its experts relied on Trustmark's prior position in preparing Security's case, Security would be unduly prejudiced if Trustmark were allowed to make such an about-face at this late date.

1

Under these circumstances, Security's motion should be granted, the newly asserted portions of Trustmark's Amended Response should be stricken,[1] and Trustmark should be ordered to verify its Original Response.

## ARGUMENT

### A. The Court Should Strike The Newly-Asserted Ground For Rescission That Trustmark Raises For The First Time In Its Amended Response.

Security has moved to strike that portion of Trustmark's Amended Response that asserts for the first time that Security breached its obligations to Trustmark by refusing to allow Trustmark to "vouch in" to the arbitration between TIG and Security that was commenced in June 2002.

Trustmark argues that the exclusion of evidence is an "extreme sanction" that should be imposed only in "unusual or exceptional circumstances." Opp. Mem. at 5. However, "Rule 37(c)(1)'s preclusionary sanction is '*automatic*' absent a determination of either 'substantial justification' or 'harmlessness.'" American Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (emphasis added); see also Inamed Corp. v. Kuzmak, 275 F. Supp. 2d 1100, 1118 (C.D. Cal. 2002), aff'd, 2003 WL 21130011 (Fed. Cir. May 15, 2003). Moreover, "[t]he burden to prove substantial justification or harmlessness rests with the dilatory party." American Stock Exch., 215 F.R.D. at 93.

Here, Trustmark has not shown, and cannot show, substantial justification for its belated amendment or that the amendment is harmless to Security. To the contrary, it is beyond dispute

---

[1] Trustmark questions the purpose of Security's motion to strike, asserting that even if the motion is granted, Trustmark still will include the struck grounds in the Trial Preparation Order. Of course, the point of Security's motion is that, if it is granted, Trustmark will not be permitted to assert the grounds that have been struck, either in the Trial Preparation Order or at trial.

2

that there is no justification for Trustmark's tardy amendment, which is not based on any newly discovered information, and that Security will suffer substantial prejudice if the amendment is permitted. Discovery is now closed and Security's expert reports have already been submitted, in reliance on Trustmark's prior contentions.[2]

Trustmark also argues that Security's motion should be denied because it can point to "no new facts advanced by Trustmark." See Opp. Mem. at 2, 6 n.4. Trustmark provides no support for its contention that a motion to strike belatedly-amended interrogatory responses should be granted only when "new facts" are asserted. To the contrary, had Trustmark recently discovered new factual evidence, it would be permitted (indeed, required) to amend its discovery responses to disclose that newly discovered evidence. But Trustmark's amendments are not based on any newly-discovered evidence. Rather, Trustmark is taking facts of which it has been aware for years, and asserting them at this late date to advance an entirely new and separate ground for its purported rescission of the Certificate.

This is an attempt to do precisely what the Federal Rules and their interpretive case law prohibit: conducting trial by ambush. The law is clear that preclusion is an appropriate sanction under these circumstances. See, e.g., Inamed, 275 F. Supp. 2d at 1118 (precluding defendants from belatedly asserting new defense based on lack of authority to enter contract, where there was no suggestion that defendants only recently discovered the claimed lack of authority); American Stock Exch., 215 F.R.D. at 89, 94-96 (precluding defendant from belatedly asserting that additional patent claim had been infringed where it failed to include that claim in response to

---

[2] Moreover, even if "exceptional circumstances" or "severe prejudice" were required, they would be present here because of Trustmark's blatant attempt to deny Security a fair opportunity to respond to its contentions by changing them, without excuse, at this late stage of the litigation.

3

interrogatories requesting full and complete basis for infringement claim); Luddington v. Indiana Bell Telephone Co., 796 F. Supp. 1550, 1579 (S.D. Ind. 1991), aff'd, 966 F.2d 225 (7th Cir. 1992), (precluding plaintiff from amending interrogatory responses to include four additional job promotions as grounds for discrimination claim, where plaintiff was aware of but failed to include those jobs in his response to defendant's interrogatories asking for each and every job on which he was basing his claim of discrimination).[3]

Trustmark attempts to rely upon the generalization that "under ordinary circumstances," answers to interrogatories do not limit a party's proof. See Opp. Mem. at 4. Security has no quarrel with that general proposition, *where new facts are discovered*. Indeed, the authority cited by Trustmark is consistent with that limitation. See, e.g., McElroy v. United Air Lines, 21 F.R.D. 100, 102 (W.D. Mo. 1957) ("Answers to interrogatories, as adjuncts to the pleadings, do limit the issues and define the contentions of the parties. . . . However, the parties should not be

---

[3] Trustmark does not address Luddington in its opposition brief. It attempts unsuccessfully to argue that Security cannot rely on American Stock Exchange because that case involved "factual interrogatories." Opp. Mem. at 6. First, that is not accurate. The interrogatory at issue in AMEX sought identification of "which patent claims [defendant] was contending had been infringed." Id., 215 F.R.D. at 89. See also id. at 94 ("It was not until one month after fact discovery had closed that [defendant] *amended its contentions* to include patent claim 34.") (emphasis added). Moreover, Trustmark does not explain why it makes any difference whether an interrogatory is "factual" or not.

Trustmark's attempt to distinguish Security's other authority is similarly unavailing. In Baltimore Therapeutic Equip. Co. v. Loredan Biomedical, 1993 WL 129781, at *n.18 (E.D. Cal. Feb. 19, 1993), the court struck the plaintiff's supplemental interrogatory responses, for much the same reasons that Security urges here. Furthermore, Robbins v. Ryan Family Steak Houses East, 223 F.R.D. 448, 454 (S.D. Miss. 2004), Royalty Petroleum Co. v. Arkla, Inc., 129 F.R.D. 674, 679, 681 (W.D. Okl. 1990), and Lynchval Sys., Inc. v. Chicago Consulting Actuaries, 1996 WL 735586, *9 (N.D. Ill. Dec. 19, 1996), all stand for the proposition that supplemental interrogatory responses appropriately may be stricken where, as here, a party unjustifiably delays in disclosing information until a late stage of the litigation, to the prejudice of its adversary. All of these cases support Security's motion, and Trustmark has not shown otherwise.

4

bound by these answers *if, in the interim between the time of the answers and the trial, they obtain by subsequent investigation new or additional facts*. The parties will not be prevented from offering this further information at trial.") (emphasis added).[4] Similarly, the 1970 Advisory Committee Note that Trustmark cites discusses the concern that interrogatory responses will cause parties to be "chained to misconceived contentions or theories," which is a circumstance likely to arise only when interrogatories are served early, before the adversary has had the chance to fully develop its case and take discovery.

That is not the situation here. Discovery is closed and, as previously explained, Trustmark has not discovered any new facts. Rather, it is taking events that took place in July 2002, of which it has been aware all along, and asserting them for the first time, on the eve of trial, as an additional ground for rescission. The cases Trustmark cites do not address those circumstances, and thus have no bearing here.

Trustmark makes the related argument that a party cannot rely on the "unchanging character" of his adversary's interrogatory responses. See Opp. Mem. at 5. However, courts have frequently found that a party has been prejudiced by belated amendment or supplementation of discovery responses where the party relied on its adversary's contentions in framing its case and conducting discovery. See, e.g., Luddington, 796 F. Supp. at 1579 (noting that defendant was "correct in assuming," based on plaintiff's interrogatory responses, that the plaintiff had chosen not to pursue claim based on four additional job promotions); American

---

[4] In addition, although the court in Marcoin, Inc. v. Edwin Williams & Co., Inc., 605 F.2d 1325 (4th Cir. 1979), recited the uncontroversial proposition that "as a general rule, an answer to an interrogatory does not conclusively bind the answering party in all instances," the case had nothing to do with the belated amendment of prior interrogatory responses at a time and in a manner that caused prejudice to the opposing party. Thus, Marcoin does not advance Trustmark's argument.

5

Stock Exch., 215 F.R.D. at 95 (finding prejudice to plaintiff which, in reliance on defendant's interrogatory responses, "believed that [defendant] was not planning to assert patent claim 34 and therefore limited its discovery efforts to the identified claims . . . ."); Thermos Co. v. Starbucks Corp., 1999 WL 203822, *5 (N.D. Ill. Apr. 6, 1999) (granting motion to preclude defendant from asserting new basis for claim of non-infringement of patent after close of fact discovery where plaintiff was prejudiced by having relied on defendant's discovery concessions).[5]

Trustmark's next argument, that parties are generally allowed to pursue new legal theories, is beside the point. See Opp. Mem. at 4. Security is not objecting to the assertion of a new legal theory.[6] Rather, it objects to Trustmark's eleventh hour assertion of facts to support its rescission of the Certificate, where the facts put forward have been known to Trustmark for years.

---

[5] The case Trustmark cites on this point is distinguishable. See Clark v. Everett Assocs., Inc., 1998 U.S. Dist. LEXIS 22259, *4-*5 (C.D. Cal. Oct. 26, 1998). In Clark, no prejudice resulted from permitting plaintiff to offer evidence at trial to support a theory that was not included in its interrogatory responses, because defendants acknowledged that they had been aware of plaintiff's new evidence for months and "well in advance of trial." Id.

[6] The cases Trustmark cites on this point are distinguishable and irrelevant. For example, in Sperling v. Hoffmann-LaRoche, Inc., 924 F. Supp. 1396 (D.N.J. 1996), the defendant argued that plaintiffs' discrimination claims should be dismissed because they relied upon factors that the United States Supreme Court had since found, during the pendency of the litigation, did not support an age discrimination claim. Plaintiffs argued that they should not be precluded by their answers to defendant's contention interrogatories from raising an additional theory of discrimination that was not inconsistent with the Supreme Court's decision. The court agreed based on the fact that defendant would suffer no prejudice, as it was early in the case and defendant could still, following discovery on plaintiffs' claims, move for summary judgment. Id. at 1412. United States v. Davis, 1993 WL 414761 (D.R.I. April 14, 1993), unlike this case, also involved the assertion of new legal theories, and also was premised on the court's conclusion that no prejudice would be caused by the late disclosure of those theories. Id. at *4.

6

Finally, Trustmark's argument that its belated amendment has not caused prejudice to Security because Security "is capable of discussing in detail its version of the facts" wholly misses the mark. Opp. Mem. at 7. Of course Security can discuss *its* version of the facts; that is not the point. The purpose of discovery is to allow a party to learn its adversary's version of the facts and the support, if any, that the adversary has for that version. See, e.g., American Stock Exch., 215 F.R.D. at 95 ("Clearly, a party has a right to conduct discovery on the claims brought against it, even if it already has some information on such claims.").

Although Security obviously is aware that the parties could not agree to the terms under which Trustmark would "vouch in" to the arbitration between TIG and Security in July 2002, Security was led to believe that Trustmark was not asserting those "vouching in" facts as a ground to rescind the Certificate. Accordingly, Security took no discovery of Trustmark on that issue and did not ask its experts to address the issue in their reports. Had Security known that Trustmark would raise this as an additional ground for rescission, it would have taken discovery and offered expert testimony on the issue.[7]

Accordingly, the Court should strike all portions of the Amended Response that articulate or relate to the "vouching in" issue as a basis to rescind the Certificate.

### B.  The Court Should Preclude Trustmark From Modifying Another Ground to Rescind.

Trustmark also should be precluded from taking the modified position that its November 2, 2001 letter to Security did not request that Security rescind its agreement with TIG but, rather,

---

[7] Trustmark argues that the vouching in issue is not an appropriate subject of expert testimony. See Opp. Mem. at 7. Trustmark's argument is curious, considering that Trustmark consistently has taken the position that custom and practice evidence, as provided through expert testimony, is relevant to virtually all of the issues concerning its purported rescission of the Certificate.

7

merely requested that Security cooperate in Trustmark's investigation of TIG's conduct. This assertion directly conflicts with the position that Trustmark has taken throughout this litigation and on which Security's experts offered their opinions.

Trustmark argues that its amendment does not assert "any different facts," but simply "corrects the initial characterization that the November 2, 2001 letter demanded that Security immediately rescind the contract." Id. Trustmark claims that the November 2 letter speaks for itself and makes no such demand, yet it is Trustmark (and its experts) who consistently have taken the position that Security was obligated to rescind its agreement with TIG when it received Trustmark's letter notifying it of alleged misrepresentations by TIG.

In arguing that this modified position is "not new," Trustmark cites selectively to an excerpt from the report of its own expert, Paul Thomson. See Opp. Mem. at 9 (citing Thomson Report dated June 10, 2003, Exhibit B to Trustmark's Opposition). Trustmark's position defies credulity, as one of the topic headings in Mr. Thomson's report states: "Pursuant to the obligations imposed by the custom and practice of the insurance and reinsurance industry, *Security had a duty to act promptly to rescind its reinsurance agreement with TIG, upon receiving information from its retrocessionaire, Trustmark, identifying grounds for doing so.*" Thomson Report at 12 (emphasis added).

Another of Trustmark's experts, George Gottheimer, was also asked to opine on the issue and likewise offered his opinion that "Pursuant to the obligations imposed by the customs and practices of the insurance and reinsurance industry, *Security had a duty to act promptly to rescind its reinsurance agreement with TIG*, upon receiving information from its retrocessionaire, Trustmark, identifying grounds for doing so." Nealon Decl. Ex. A (Expert Report of G. Gottheimer dated June 10, 2003, at 4, 15) (emphasis added).

8

Trustmark is correct that Security's experts "reviewed and considered" Mr. Thomson's expert report, as well as Mr. Gottheimer's. In doing so, Security's experts justifiably relied on the Trustmark experts' characterization that Trustmark's contention is that Security breached its obligations to Trustmark by failing to promptly rescind the 1999 Reinsurance Agreement with TIG once Security received Trustmark's November 2, 2001 letter. Security's experts responded to that contention. See, e.g., Nealon Decl. Ex. B (Expert Report of Mary Ellen Burns, dated Nov. 15, 2004) at 4, 5 (opining that "Mr. Thomson's assertion that Security had a duty to rescind its contract with TIG at Trustmark's behest . . . is quite simply wrong"). Had Security known that Trustmark's real position is not that Security was obligated to rescind, but only to cooperate with Trustmark in its investigation, Security's experts would have addressed that contention instead.

Finally, Security is not, as Trustmark asserts, trying to force Trustmark "to subscribe to a position it simply does not hold." Opp. Mem. at 9. Trustmark is welcome to drop its contention that Security was obligated to rescind its agreement with TIG promptly after receiving Trustmark's November 2 letter, but it cannot *change* that contention into something else at this late stage of the litigation.

Accordingly, the Court should strike Trustmark's new, modified position that, by the November 2, 2001 letter, Trustmark merely sought Security's cooperation with Trustmark's investigation of grounds to rescind against TIG.

**C.    The Court Should Order Trustmark To Verify Its Original Response.**

Trustmark's opposition makes clear that it is doing whatever it can to avoid verifying the Original Response, in the hope of minimizing the damage to its credibility at trial. Trustmark should not be permitted to benefit from its own misconduct. As explained in detail in the

9

Declaration of Mark Holton submitted with Security's opening brief, Trustmark strung Security along for weeks, promising to provide the required verification. It was not until Security threatened to bring the matter to the Court's attention that Trustmark finally took action – not by verifying its Original Response, as it had stated it would, but by serving the Amended Response.

Trustmark claims that its Original (unverified) Response contained some "inadvertent errors" and, "as of now, is incomplete." Opp. Mem. at 10. It makes the hollow argument that the Original Response cannot be verified now because it currently is not true, and thus, "no one can state that 'to the best of my knowledge and belief, the answers set forth herein are true and correct." Id. There is no reason, however, why Trustmark cannot provide a verification attesting that the Original Response was believed to be true and correct at the time it was served. Only by being ordered to provide such a verification can the Court ensure that Trustmark does not benefit from its own obstructionist behavior.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Security's motion and strike the newly-asserted portions of Trustmark's Amended Response, compel Trustmark to verify its Original Response, and award Security the costs, including attorney's fees, incurred in bringing the motion to compel.

SECURITY INSURANCE COMPANY OF HARTFORD

By: _____

DEWEY BALLANTINE LLP
David J. Grais (ct 23352)
Kathryn C. Ellsworth (ct 24988)
1301 Avenue of the Americas
New York, New York 10019
Tel. (212) 259-8000
Fax (212) 259-6333

GIBSON, DUNN & CRUTCHER LLP
Mark B. Holton (ct 21727)
Kathryn E. Nealon (ct 22754)
200 Park Avenue
New York, New York 10166
Tel. (212) 351-4000
Fax (212) 351-4035

ROBINSON & COLE LLP
Frank F. Coulom, Jr. (ct 05230)
Marion B. Manzo (ct 22068)
280 Trumbull Street
Hartford, Connecticut 06103
Tel. (860) 275-8200
Fax (860) 275-8299
email: fcoulom@rc.com
        mmanzo@rc.com

Counsel for Plaintiff Security Insurance
Company of Hartford

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was sent this 11th day of March 2005, by facsimile and first class mail, postage prepaid, to the following persons:

Everett Cygal, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, Illinois 60606-6473

David R. Schaefer, Esq.
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT 06511

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

Harry P. Cohen, Esq.
Cadwalader, Wickersham & Taft
One World Financial Center
New York, NY 10281

_____
Kathryn E. Nealon