UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>        Plaintiff,<br><br>        v.<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>        Defendant. | <br><br><br><br><br><br>Civil No. 301CV2198(PCD) |
| TRUSTMARK INSURANCE COMPANY,<br><br>        Third Party Plaintiff,<br><br>        v.<br><br>TIG INSURANCE COMPANY,<br><br>        Third Party Defendant. | <br><br><br><br><br><br>February 22, 2005 |

**TRUSTMARK'S OPPOSITION TO SECURITY'S MOTION TO STRIKE PORTIONS OF TRUSTMARK'S AMENDED SUPPLEMENTAL RESPONSE TO SECURITY'S SECOND SET OF INTERROGATORIES AND TO COMPEL TRUSTMARK TO VERIFY ITS ORIGINAL RESPONSE TO SECURITY'S SECOND SET OF INTERROGATORIES**

Defendant Trustmark Insurance Company respectfully submits its opposition to Security's omnibus motion regarding Trustmark's responses to Security's Second Set of Interrogatories.

## INTRODUCTION

Security's omnibus motion seeks nothing less than to prevent Trustmark from fully exposing Security's extreme bad faith in its dealings with Trustmark. Indeed, Security seeks to have portions of Trustmark's response stricken simply because Trustmark, pursuant to its obligations under the Federal Rules of Civil Procedure: (i) corrected errors in its response; (ii)

conformed its response to the evidentiary record; and (iii) supplemented its factual and legal contentions based upon record facts well-known to Security. Trustmark has introduced no new facts, and has merely supplemented its contentions regarding Security's bad faith actions as it prepares its case for trial.

Trustmark understands this Court's Trial Preparation Order (which is not finally due until April 4, 2005) to be the final exposition of facts, contentions, and legal theories upon which the parties intend to rely. Security impermissibly seeks to have Trustmark's case carved in stone months before this Court expects each party to marshal its evidence, and to decide upon the final form of its case. Security's motion, moreover, is a tactic designed solely to prevent the jury from hearing critical facts regarding Security's bad faith toward its reinsurer, Trustmark.

Security's cries of surprise and prejudice ring hollow. Security can point to no new facts advanced by Trustmark. At best, Security claims reliance on Trustmark's unverified responses to Security's contention interrogatory. Trustmark should not be precluded from forming additional or different contentions as it prepares its case for trial. Any prejudice Security claims from its unreasonable reliance, then, is of its own making.[1]

## BACKGROUND

In September 2004, Security served its Second Set of Interrogatories on Trustmark which contained only one, very broad, contention interrogatory: "Describe in detail each and every ground Trustmark believes supports its purported rescission of the Trustmark Certificate." Even though the time for general discovery had long been closed, Trustmark undertook to respond to

---

[1] It is unclear what Security hopes to gain by striking portions of Trustmark's Amended Response. Trustmark fully intends to include the grounds and contentions set forth in its Amended Response in Part B of this Court's Trial Preparation Order regarding Security's claims against Trustmark. The Amended Response gives Security present notice of those contentions, far in advance of the Trial Preparation Order. Far from being prejudiced, Security has a head start.

the interrogatory. On November 3, 2004, Trustmark served its unverified Response to Security's interrogatory (the "Unverified Response"), which set forth Trustmark's good faith answer to the interrogatory. Unknown to Trustmark at this time, however, the Unverified Response contained some inadvertent errors.

Counsel for Security requested that the Unverified Response be verified.[2] Because the subject interrogatory was a contention interrogatory which asked for Trustmark's legal theories and bases for its rescission claim, Trustmark and Security disagreed over the nature, form, and wording of the verification. Over the next few weeks, Trustmark and Security negotiated various forms of verification, and in late December agreed that the usual verification form would suffice.

Since the Unverified Response was served, Trustmark continued to prepare its case for trial and conduct expert discovery. Consequently, when Trustmark undertook a final review of its Unverified Response, with the intent of providing a verification, it discovered that the Unverified Response contained inaccuracies that required correction before it could be verified as true. During the intervening period of discovery and trial preparation, Trustmark finalized another contention previously not included in its response regarding Security's bad faith. Accordingly, the Unverified Response needed to be corrected and supplemented before it could be properly verified. Federal Rule of Civil Procedure 26(e), moreover, requires supplementation if a party learns that after the answer originally given "is in some material respect incomplete or incorrect." Fed. R. Civ. P. 26(e) (West 2004). Trustmark immediately undertook to incorporate the necessary changes and on January 12, 2005 (the date requested by Security's counsel), Trustmark served its Amended and Supplemental Response (the "Amended Response").

---

[2] At no time did Trustmark seek to avoid compliance with the requirements of Federal Rule of Civil Procedure 33.

## DISCUSSION

As anticipated by this Court's Trial Preparation Order, especially in cases as large and as complex as this one, contentions change as a parties proceed through discovery and begins to collate and marshal facts in order to prepare its case for trial. This is reflected in Federal Rule of Civil Procedure 33, which permits interrogatories that call for a party's application of law to fact, and notes that courts must seek to avoid "undesirable aspects of the prior pleading practice, whereby parties were chained to misconceived contentions or theories, and the ultimate determination was frustrated." Fed. R. Civ. P. 33, Advisory Committee Note to 1970 Amendment (citing James, Fleming, *The Revival of Bills of Particulars under the Federal Rules*, 71 Harv.L.Rev. 1473 (1958)).

To protect a party from irrevocably locking itself into its contentions, "the general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof." Fed. R. Civ. P. 33, Advisory Committee Note to 1970 Amendment; *see also McElroy v. United Air Lines, Inc.*, 21 F.R.D. 100, 102 (W.D. Mo. 1957) ("it is not [the] function [of interrogatory answers] to limit a party's proof"); *Marcoin, Inc. v. Edwin K. Williams & Co., Inc.*, 605 F.2d 1325, 1328 (4th Cir. 1979) ("As a general rule, an answer to an interrogatory does not conclusively bind the answering party in all instances.").

Accordingly, parties are generally allowed to pursue a new legal theory even when that theory was not made explicit in their first answers to contention interrogatories. *Sperling v. Hoffman-La Roche, Inc.*, 924 F.Supp 1396, 1411 (D.N.J. 1996) (plaintiff was is not precluded from pursuing a new theory of discrimination not included in its first response to contention interrogatories); *United States v. Davis*, No. CA90-0484P, 1993 WL 414761, at *3-4 (D.R.I. 1993) (plaintiff was not precluded from setting forth three previously undisclosed theories of liability after the close of discovery). Furthermore, where a party "held documents supporting

[the new] theories and . . . attended depositions where the information forming the basis of these new theories was revealed" it is precluded from legitimately claiming prejudice as a result of the previously "undisclosed" theories. *Id.* at *4.

In fact, the Advisory Committee comments to Rule 33, explicitly sets forth the general rule that "the interrogating party will ordinarily not be entitled to rely on the unchanging character of the answers he receives and cannot base prejudice on that reliance." Fed. R. Civ. P. 33, Advisory Committee Note to 1970 Amendment; *see also Clark v. Everett Associates, Inc.*, No. SA CV 97-351-GLT(Eex), 1998 U.S. Dist. LEXIS 22259, at *5 (C.D. Cal. October 26, 1998) (holding the plaintiff was not limited by his interrogatory answers and defendant failed to show prejudice).

"[D]iscovery rules are not to be employed as a stratagem to maneuver an adverse party into an unfavorable position." C. Wright & A. Miller, *Federal Practice & Procedure*, § 2181 (West 2004). Therefore, parties generally are not prevented from offering new contentions at trial.[3] Courts routinely recognize that the exclusion of evidence or contentions is an "extreme sanction." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977), overruled on other grounds by *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *see also Clark*, 1998 U.S. Dist. LEXIS 22259 at *5 (sanctions are reserved for "unusual" cases). Accordingly, only in unusual or exceptional circumstances will reliance on an answer lead to the degree of prejudice sufficient to warrant binding a party to their original answer. *See Sperling*, 924 F.Supp. at 1412 ("exceptional circumstances"); *Clark*, 1998 U.S. Dist. LEXIS 22259 at *5 ("only in the unusual case where . . . would be *severely* prejudiced") (emphasis added); *see also*

---

[3] Security's own precedent points out that exclusion of evidence is an "extreme sanction." *Baltimore Therapeutic Equip Co. v. Loredan Biomedical*, 1993 WL 129781, at *18 (E.D. Cal. 1993) (court refused to exclude evidence set forth in amended response) (citations omitted).

*Zielinsk v. Philadelphia Piers, Inc.*, 139 F.Supp. 408, 413 (E.D. Pa. 1956) ("Under the circumstances of this case, the principles of equity require that defendant be estopped from denying agency because, otherwise, its [intentionally] inaccurate statements . . . will have deprived plaintiff of his right of action.").

Security's purported "reliance" on Trustmark's Unverified Response, is unjustified and unreasonable and cannot support its cry of prejudice. Indeed, Security presents no exceptional circumstances that would support departure from the general rules regarding use of contention interrogatories.[4]

I.  **TRUSTMARK'S AMENDED RESPONSE TO SECURITY'S CONTENTION INTERROGATORY SHOULD NOT BE STRICKEN**

Security bases its claim of prejudice on only two aspects of the Amended Response. Neither, however, provides a valid basis for striking the respective portion of Trustmark's Amended Response. Indeed, Security is not prejudiced at all, much less with the severity that the federal rule and case law require.

---

[4] Security's reliance on *American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) is misplaced. In the *Mopex* case, which centered on *factual* interrogatories, *id.* at 93-94, the plaintiff was precluded from adding an additional patent infringement count based upon a newly asserted aspect of the underlying patent. *Id.* at 96. Here, no new facts are being asserted by Trustmark, only an additional ground for rescission based upon facts that are well-known to Security and Security's counsel.

Security also mistakenly relies on case law that is easily distinguishable from this case. *See Baltimore Therapeutic Equip Co.*, 1993 WL 129781 at *18 (court refused to exclude evidence set forth in amended response); *Robbins v. Ryan Family Steak Houses East*, 223 F.R.D. 448, 451 (S.D. Miss. 2004) (expert designations turned over six months after the expert designation deadline); *Royalty Petroleum Co. v. Arkla, Inc.*, 129 F.R.D. 674, 678-80 (W.D. Okl. 1990) (striking supplemental interrogatory that asserted only new evidence, not legal theories); *Lynchval Sys. Inc. v. Chicago Consulting Actuaries, Inc.*, 1996 WL 735586, at *9 (N.D. Ill. Dec. 19, 1996) (striking part of supplemented answers that asserted new trade secrets in a misappropriated trade secret action).

### A.  SECURITY CANNOT CLAIM SURPRISE AS TO THE UNDERLYING FACTS OF TRUSTMARK'S "VOUCHING-IN" CONTENTION

Security first complains of Trustmark's Fifth Ground for rescission: that Security acted in bad faith and violated its obligations to Trustmark by refusing to allow the dispute between Trustmark, TIG, and Security to be resolved in arbitration by a panel of industry experts. As an initial matter, Security does not and cannot claim to be surprised or prejudiced by the facts of Trustmark's contention since, as Security points out, this is not newly-discovered evidence. Security has been familiar with the facts surrounding Trustmark's "vouching in" argument since 2002. (Security Mem. at 1-2, 6.)  All Trustmark has done, is take these existing facts—which it is entitled to adduce at trial—and apply them to its claim of bad faith by Security.

Security next attempts to claim prejudice, allegedly because "Security's experts did not address this point in their reports and Security has taken no discovery on this issue." (Security Mem. at 10.) Neither of these assertions of prejudice withstands scrutiny. First, Security offers no basis as to why Trustmark's contention would have been the proper subject of expert testimony. In fact, it is hard to see how expert testimony would be needed. The facts are known and the ultimate conclusion is one for a properly charged jury—not an expert witness—to decide.

Second, with respect to discovery, Security also fails to provide any basis for supposing any additional discovery would be necessary beyond what has already been conducted in this case and the matter known as "Security III." To the contrary, in its brief, Security is capable of discussing in detail its version of the facts of Trustmark's contention. (Security Mem. At 6.) Furthermore, the time for general fact discovery has long been closed—well before Security even served its interrogatory. Accordingly, Security has suffered no prejudice on this basis

whether the contention was disclosed in Trustmark's Unverified Response or later in its Amended Response.

With no real prejudice to speak of, other than its purported unjustified reliance, Security seeks only to hide its own misconduct from the jury. Therefore, its motion to strike this part of Trustmark's Amended Response should be denied.

**B. TRUSTMARK'S AMENDED RESPONSE REGARDING THE NOVEMBER 2, 2001, LETTER APPROPRIATELY CONFORMS WITH THE RECORD IN THIS CASE**

Security objects that in its Amended Response, Trustmark has changed its position regarding Trustmark's November 2, 2001 letter to Security addressing the possible rescission of the reinsurance agreement with TIG. (Security Mem. at pp. 6-7.) Once again, Security's claim of prejudice lacks any foundation in the record. Trustmark's Amended Response does not assert any different facts (as admitted by Security), it only corrects the initial characterization that the November 2, 2001 letter demanded that Security immediately rescind the TIG contract. By its own terms, the November 2, 2001 letter speaks for itself and makes no such demand. (See **Exhibit A**, attached hereto.)

The November 2, 2001 letter does state Trustmark's belief that rescission of the TIG contract is warranted and sets forth the facts it believes supports rescission. The letter cautions that "Security should refrain from paying any losses or taking any other actions that could be construed as an affirmation of the Reinsurance Agreement." (Id.) Finally, the letter ends "We trust that Security will evaluate the information contained in this letter and discuss same before Security takes any actions in connection with its October 26, 2001 demand letter. I look forward to discussing these issues with you in the immediate future." (Id.)

While the letter unambiguously states that Trustmark believes the TIG contract should be rescinded, by its own terms, it does not make an immediate demand of Security. Trustmark's

Amended Response merely conforms its contention to the evidence in the case—the November 2, 2001 letter. Beyond this necessary change, the Amended Response does not significantly alter Trustmark's contentions with respect to (i) Security's duty to cooperate with Trustmark; (ii) it's agreement to allow Trustmark to administer the TIG book of business; or (iii) the merits of Trustmark's case for the rescission of the TIG/Security contract. Nor does the Amended Response rebut or affect any of Security's expert's testimony.[5]

Finally, the position expressed in Trustmark's Amended Response is not new. Not only does the Amended Response conform with the November 2, 2001 letter itself, it also is aligned with positions previously expressed by Trustmark's expert, Paul C. Thomson III, in his June 10, 2003 expert report. (Report of Paul Thomson, June 10, 2003, attached hereto as **Exhibit B**.) Page 12 of Mr. Thomson's report, which discusses the November 2, 2001 letter, expressly states that Security should have acted promptly on the information provided by Trustmark, and that Security "failed to take [reasoned] steps to address the concerns raised in the letter."

Security was hardly deprived of an opportunity to address this contention. Mr. Thomson's report was reviewed and considered by both of Security's two expert witnesses, Mary Ellen Burns and Kevin M. Ryan. (*See* Lists of "Documents Reviewed" by these experts, attached hereto as group **Exhibit C**.) As such, Security has known for almost two years that Trustmark's November 2, 2001 letter sought unconditional cooperation (such as acting promptly and taking reasonable steps to address Trustmark's concerns), which could include rescission, if warranted.

Security requests the Court to force Trustmark to subscribe to a position it simply does not hold. Security is free to put its own spin on the facts leading up to and away from the

---

[5] Beyond vague assertions that additional expert testimony might be required, Security offers no specific instance of how its experts may have opined differently.

November 2, 2001 letter and present its contentions to the jury, but it should not be permitted to shackle Trustmark in the presentation of its case.

## II. TRUSTMARK SHOULD NOT BE COMPELLED TO VERIFY INTERROGATORY RESPONSES THAT ARE INCORRECT AND INCOMPLETE

Citing no authority whatsoever, Security asks that Trustmark be now compelled to verify its previous Unverified Response. Security's request borders on frivolous. It is undisputed that Trustmark's Unverified Response contained errors and, as of now, is incomplete. Accordingly, Trustmark's Unverified Response is currently not true and correct as to Trustmark's contentions regarding its rescission claims against Security. Accordingly, it cannot be verified; <u>no one</u> can state that "to the best of my knowledge and belief, the answers set forth herein are true and correct." For Security to ask this Court to demand Trustmark force an individual to verify a facially untrue document is patently absurd. Security's request should be summarily denied.[6]

---

[6] Security also seeks its costs and fees in bringing this demand. Trustmark respectfully requests the Court award Trustmark its fees and costs in responding to Security's improvident motion.

## **CONCLUSION**

For all the foregoing reasons, Trustmark respectfully requests that Security's motion be denied in its entirety. Further, Trustmark respectfully requests the Court award Trustmark it costs and fees incurred in responding to Security's motion.

Date:   February 22, 2005                    TRUSTMARK INSURANCE COMPANY


                                             _____
                                             One of the attorneys for
                                             Trustmark Insurance Company

                                             Roger Pascal CT 26488
                                             David M. Spector CT 21679
                                             John A. Bannon CT 26489
                                             Everett J. Cygal CT 22765
                                             SCHIFF HARDIN LLP
                                             6600 Sears Tower
                                             Chicago, Illinois 60606-6473

                                             David R. Schaefer CT 04334
                                             Rowena A. Moffett  CT 19811
                                             Brenner, Saltzman & Wallman LLP
                                             271 Whitney Avenue
                                             New Haven, Connecticut 06511

CH2\ 1201644.5

## CERTIFICATE OF SERVICE

I, John A. Bannon, an attorney, certify that on February 22, 2005, I caused a true and correct copy of **Trustmark's Opposition to Security's Motion to Strike Portions of Trustmark's Amended Supplemental Response to Security's Second Set of Interrogatories and to Compel Trustmark to Verify its Original Response to Security's Second Set of Interrogatories** to be served by electronic mail and overnight delivery upon:

Harry P. Cohen, Esq.
Brian O'Sullivan, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

Mark B. Holton, Esq.
Kate Nealon, Esq.
Gibson Dunn & Crutcher
200 Park Avenue, Floor 48
New York, New York 10166

David Grais, Esq.
Kay Ellsworth, Esq.
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY 10019-6092

Frank F. Coulom, Jr., Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

/s/ John A. Bannon

John A. Bannon