## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD, | **CIVIL NO. 3:01-CV-2198 (PCD)** |
| Plaintiff, | |
| -against- | |
| TRUSTMARK INSURANCE COMPANY, | |
| Defendant. | |
| | |
| TRUSTMARK INSURANCE COMPANY, | |
| Third Party Plaintiff, | |
| -against- | |
| TIG INSURANCE COMPANY, | **February 24, 2005** |
| Third Party Defendant. | |

### TIG INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE REBUTTAL EXPERT REPORT OF STEPHEN HARTIGAN AND/OR TO COMPEL ADDITIONAL DISCOVERY

Third Party Defendant TIG Insurance Company ("TIG"), through its counsel, respectfully submits this memorandum of law in support of its motion to strike the rebuttal expert report that Trustmark Insurance Company ("Trustmark") has submitted from Stephen A. Hartigan and/or permit TIG and Security Insurance Company of Hartford ("Security") to conduct additional discovery concerning Mr. Hartigan's prior dealings with Trustmark and WEB.

## **PRELIMINARY STATEMENT**

On January 14, 2005, Trustmark submitted "rebuttal" expert reports from five experts, including a 45-page report from Stephen A. Hartigan. (A copy of Mr. Hartigan's expert report is attached as Exhibit A to the February 22, 2005 Declaration of Brian J. O'Sullivan (the "O'Sullivan Decl.").) Mr. Hartigan has first-hand knowledge regarding several subjects that are relevant to the issues in this case from personal dealings with WEB, Trustmark's agent that Trustmark alleges in this action was defrauded by TIG. Mr. Hartigan's knowledge of WEB and its conduct and activities stems both from his experience at GAN Insurance Company ("GAN") – where he was personally involved in a dispute where WEB alleged (like here) that they were defrauded into entering into a reinsurance agreement – as well as from three other engagements as an expert on behalf of Trustmark – again, where WEB alleges that it was defrauded into the reinsurance agreement at issue. Nevertheless, during his deposition, counsel for Trustmark instructed Mr. Hartigan – ostensibly on grounds of relevance and confidentiality – not to answer any questions concerning his first-hand knowledge of WEB and its conduct and activities.

As discussed below, Trustmark's refusal to permit Mr. Hartigan to answer any questions concerning his prior dealings with Trustmark and WEB warrants the striking of Mr. Hartigan's expert report in its entirety and/or an order directing Trustmark to permit TIG and Security additional discovery relating to Mr. Hartigan's other dealings with Trustmark and WEB.

## STATEMENT OF FACTS

**A.    The WEB Facility's Dispute With GAN**

Between 1992 and 2002, Mr. Hartigan was a managing director of GAN with responsibility for, among other things, purchasing reinsurance and dispute resolution. O'Sullivan Decl., Ex. A at 47. Among the reinsurance GAN purchased was "a group of sixteen excess of loss treaties" that WEB entered into on behalf of All American, which, pursuant to their unwritten "partnership" agreement, All American shared on a 50/50 basis with Trustmark. O'Sullivan Decl., Ex. B, ¶ 57; *see also id.* ¶ 11. According to documents produced by Trustmark in this litigation, in early 2000, "[t]his treaty [wa]s targeted [by Trustmark] for rescission." O'Sullivan Decl., Ex. C at 1.

Mr. Hartigan testified that All American did, in fact, purport to rescind its reinsurance of GAN based on an "alleged misrepresentation by GAN, both of the business being underwritten by GAN, and to the statistics that were presented at the time that the risk was placed." Hartigan Dep. Tr. 12:9-16. Mr. Hartigan also testified that he investigated All American's fraud allegations, and "concluded that there was certainly some ambiguity in the information that [GAN] had provided as to the nature of the business that was being underwritten by GAN. But it was, in particular in specific areas, and it wasn't widespread throughout the account." *Id.* at 13:1-6. Thereafter, counsel for Trustmark instructed Mr. Hartigan not to answer any further questions concerning his investigation into WEB's fraud allegations, GAN's response to those allegations or how that dispute was ultimately resolved. *Id.* at 13:7-15:22, 16:1-10.

**B.     Mr. Hartigan's Other Engagements by Trustmark**

Mr. Hartigan testified that he has been retained by Trustmark as an expert in three other disputes presumably also involving reinsurance agreements underwritten by WEB which WEB (like here) apparently is now claiming it was defrauded into.  Hartigan Dep. Tr. 16:13-21:15.  In at least one of these matters, Trustmark was (or is) disputing its liability to one of its other cedents.  *Id.* at 16:17-17:2.  Thereafter, counsel for Trustmark instructed Mr. Hartigan not to answer any questions concerning his other engagements by Trustmark on the grounds of both relevance and confidentiality.  *Id.* at 17:5-18:5, 19:2-20:19, 21:2-15.

**C.     Mr. Hartigan's "Rebuttal" Expert Report**

As discussed above, Mr. Hartigan has submitted a 45-page "rebuttal" expert report consisting of 144 separately numbered paragraphs.[1]  In his report, Mr. Hartigan offers numerous opinions concerning, *inter alia*, whether TIG's disclosures comported with industry custom and practice, whether the alleged misrepresentations and non-disclosures underlying Trustmark's fraud claim were material, whether WEB's purported reliance on those alleged representations was reasonable and whether WEB acted as a reasonably prudent underwriter in its underwriting and pricing of the reinsurance contracts at issue in this litigation.

---

[1]    TIG intends at the appropriate time to make a motion *in limine* with respect to much of Mr. Hartigan's report which goes well beyond the bounds of any legitimate rebuttal.

NYLIB2 250230.5

## <u>ARGUMENT</u>

### THE COURT SHOULD GRANT TIG'S MOTION TO STRIKE MR. HARTIGAN'S REPORT AND/OR PERMIT TIG TO CONDUCT DISCOVERY OF TRUSTMARK'S DISPUTE WITH GAN INSURANCE COMPANY AND MR. <u>HARTIGAN'S OTHER EXPERT WITNESS ENGAGEMENTS FOR TRUSTMARK</u>

Under the Federal Rules of Civil Procedure, TIG is entitled to conduct discovery of all matters relevant to Trustmark's claims and TIG's defenses to those claims. Fed. R. Civ. P. 26(b). In addition, because Trustmark has designated Mr. Hartigan as a testifying expert in this proceeding, TIG is also entitled to discovery of all "data or other information" Mr. Hartigan reviewed and considered in forming his opinions, including information that would otherwise be privileged or protected work product. Fed. R. Civ. P. 26(a)(2)(B), (b)(4).

**A.    Trustmark Improperly Instructed Mr. Hartigan Not To Answer Questions About GAN's Dispute With All American/Trustmark And His Other Expert <u>Witness Engagements By Trustmark</u>**

As discussed below, Mr. Hartigan's prior dealings with Trustmark and WEB are relevant to the opinions he has offered in his expert report. TIG is therefore entitled to discovery of Mr. Hartigan's other dealings with Trustmark and WEB so that, at trial, it can contrast the knowledge Mr. Hartigan gained from those dealings with the opinions Mr. Hartigan is offering in this litigation.

**1.    Mr. Hartigan's Prior Dealings With Trustmark And/Or WEB Are Relevant To The Opinions Mr. Hartigan Is Offering In This <u>Litigation</u>**

First, Mr. Hartigan's knowledge of Trustmark and WEB from his employment at GAN is relevant to several of the opinions Mr. Hartigan is offering in this litigation. Indeed, in his report, Mr. Hartigan has opined that WEB acted as a reasonably prudent underwriter in connection with its underwriting and pricing of the TIG reinsurance contracts. O'Sullivan Decl., Ex. A, ¶¶ 70-105. Mr. Hartigan's knowledge of WEB's underwriting of the GAN contracts is

-5-

obviously relevant to the opinions he is offering in this litigation concerning WEB's underwriting. Indeed, a jury may have difficulty accepting Mr. Hartigan's opinions concerning the adequacy of WEB's underwriting of the TIG contracts if Mr. Hartigan took a contrary position regarding WEB's underwriting of the GAN contracts. Similarly, Mr. Hartigan is also opining in this litigation that, by allegedly making various statements that are ambiguous on their face, TIG breached its duty of utmost good faith. *Id.* ¶¶ 45-51, 129-31. Again, a jury may find it highly relevant if, when his company's reinsurance was at stake, Mr. Hartigan took the position that GAN had satisfied its duty of utmost good faith by making various "ambiguous" disclosures to WEB.

Mr. Hartigan's other engagements by Trustmark are also relevant to the opinions he is offering in this case. As a preliminary matter, since Mr. Hartigan has offered several opinions in this litigation concerning the adequacy of WEB's underwriting, TIG and Security are entitled to discovery of **all** of the information Mr. Hartigan reviewed concerning WEB's underwriting, including any information he reviewed during the course of his other engagements for Trustmark. Indeed, in the analogous situation where a party designates as a testifying expert an individual who had previously acted as a consultant, courts have ordered the production of **all** of the information the consultant/expert reviewed or generated that was in any way related to the subjects on which he is opining, even when there is "ambiguity as to the role played by the expert when reviewing or generating documents." *B.C.F. Oil Ref'g, Inc. v. Consolidated Edison Co. of N.Y.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997). "In most instances, if the subject matter directly relates to the opinion[s] in the expert report, there will be at least an ambiguity as to whether the materials informed the expert's opinion." *Monsanto Co. v. Aventis Cropsci., N.V.*, 214 F.R.D. 545, 547 (E.D. Mo. 2002; *see B.C.F. Oil Ref'g*, 171 F.R.D. at 62 ("any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the

-6-

party seeking discovery"); *In re Air Crash at Dubrovnik, Croat., on Apr. 3, 1996*, No. MDL

1180, CIV 398CV2464AVC, 2001 WL 777433, at **3-4 (D. Conn. June 4, 2001) (same).

      Finally, TIG should be permitted to conduct discovery regarding the full extent of

Mr. Hartigan's relationship with Trustmark, including how much Trustmark has paid Mr.

Hartigan in total over the past several years. In weighing the credibility of the various experts in

this case, the jury may find it highly relevant the extent of Trustmark's dealings with Mr.

Hartigan and the extent to which he has received significant amounts of money to testify in

various proceedings wherein WEB was allegedly defrauded into entering into contracts that

turned out to be unprofitable.

      In sum, the discovery TIG is seeking relating to Mr. Hartigan's prior dealings

with Trustmark and WEB is clearly relevant to the opinions Mr. Hartigan is offering in this

litigation.

### 2.    Trustmark Is Not Permitted To Withhold The Information At Issue On Confidentiality Grounds

      Trustmark's alternative ground for not permitting Mr. Hartigan to testify

concerning his prior dealings with Trustmark and WEB was confidentiality. However, by

designating Mr. Hartigan as a testifying expert in this proceeding, Trustmark has put at issue all

of Mr. Hartigan's prior dealings with Trustmark and WEB since those subjects are relevant to the

credibility of the opinions Mr. Hartigan is offering in this litigation.

      As a preliminary matter, counsel for Trustmark failed to articulate any basis to

support its assertion that the facts underlying All American/Trustmark's dispute with GAN, or

Mr. Hartigan's investigation of the allegations made by WEB relating to the placement of the

GAN contracts, were confidential. Hartigan Dep. Tr. 13:7-15:22, 16:1-10. Indeed, Mr. Hartigan

testified that GAN and All American/Trustmark settled their dispute *before* it went to arbitration,

-7-

and, thus the confidentiality of United Kingdom arbitration proceedings (which Trustmark has attempted to rely on in the past to limit discovery) is inapplicable to the GAN dispute. *Id.* at 10:2-19.

Trustmark's instruction that Mr. Hartigan not answer any questions about his other engagements by Trustmark on the ground that those engagements relate to confidential arbitrations and/or litigations pending in the United Kingdom is completely indefensible. First, as this Court noted in its February 5, 2003 Discovery Rulings, "concerns as to the confidentiality of arbitration proceedings in the United Kingdom . . . do not apply to the actual business transaction that serves as the substance of the arbitration dispute." Court's February 5, 2003 Discovery Rulings at 4. Nor would the confidentiality of United Kingdom arbitration proceedings preclude discovery of any pre-arbitration communications, including "correspondence generated prior to a demand for arbitration[.]" *Id.* Accordingly, TIG was entitled to question Mr. Hartigan about the business transactions underlying the disputes in which he was engaged by Trustmark, as well as any conclusions he reached based upon his review of non-confidential materials relating to those business transactions.

Second, by designating Mr. Hartigan as a testifying expert in this litigation, Trustmark waived its right to withhold any information considered by Mr. Hartigan concerning the subject matters on which he is offering an opinion. *See, e.g., In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001) (affirming the district court's holding that "the attorney-client privilege and any work product protection had been waived by disclosure of confidential communications to expert witnesses"); *In re Air Crash at Dubrovnik*, 2001 WL

NYLIB2 250230.5

777433, at *11 ("[e]ven if these documents do represent [work] product, the defendants cannot shield them from discovery after they have been passed on to the testifying expert").[2]

**B.    The Court Should Strike The Hartigan Report And/Or Order Trustmark To Produce Documents Relating To The Dispute With GAN Insurance Company And Mr. Hartigan's Other Expert Engagements**

As discussed above, Trustmark's refusal to permit Mr. Hartigan to testify about matters that are directly relevant to the opinions he is offering in this litigation was improper. In light of the extremely tight time frames the parties are currently operating under, the only appropriate remedy is for the Court to strike Mr. Hartigan's expert report in its entirety. Otherwise, TIG and Security will be prejudiced because they will be required to conduct additional discovery while preparing Parts B and C of the Trial Preparation Order.

Alternatively, the Court should permit TIG and Security to conduct additional discovery regarding Mr. Hartigan's other dealings with Trustmark and/or WEB. Specifically, the Court should order Trustmark to produce immediately:

> 1.    Trustmark's underwriting, correspondence and other files relating to any retrocessional contract WEB entered into reinsuring GAN Insurance Company Limited (or any other GAN company);

> 2.    Trustmark's correspondence and other documents relating to the dispute between GAN, on the one hand, and All American and/or Trustmark, on the other hand;

> 3.    Trustmark's underwriting, correspondence and other files relating to the reinsurance contracts underlying any disputes in which Trustmark has retained Mr. Hartigan as an expert, consultant or in any other capacity;

---

[2]    Finally, "confidentiality is not at issue when there is mutual consent to disclosure by the parties to arbitration." Court's February 5, 2003 Ruling at 4. Accordingly, at a minimum, Trustmark should be required to disclose the identity of the other parties to the disputes in which Mr. Hartigan has been engaged so that TIG can ask them if they would consent to Trustmark's production of materials from those arbitrations.

NYLIB2 250230.5

4.    The identity of each of the other parties to the disputes in which Trustmark has retained Mr. Hartigan as an expert, consultant or in any other capacity;

5.    Copies of all invoices and other statements reflecting amounts Mr. Hartigan (or any of the companies for which he has worked) has billed Trustmark in connection with WEB-related business; and

6.    Mr. Hartigan for an additional 7 hours of deposition within this district or in New York.

## CONCLUSION

For the reasons set forth above, TIG respectfully requests that this Court grant its motion to strike Mr. Hartigan's rebuttal expert report and/or to permit TIG to conduct additional discovery concerning Mr. Hartigan's involvement with Trustmark and/or WEB.

THIRD PARTY DEFENDANT
TIG INSURANCE COMPANY

By:_____
        J. Daniel Sagarin    CT04289
        David Slossberg CT 13116
        Brian C. Fournier CT16272
        HURWITZ, SAGARIN & SLOSSBERG, LLC
        147 North Broad Street
        Milford, Connecticut 06460-0112
        Tel.: (203) 877-8000
        Fax: (203) 878-9800

                -and-

        Larry I. Brandes CT 23789
        Harry P. Cohen CT 20446
        Brian J. O'Sullivan CT 23790
        CADWALADER, WICKERSHAM & TAFT, LLP
        One World Financial Center
        New York, NY 10281
        Tel: (212) 504-6000
        Fax: (212) 504-6666

NYLIB2 250230.5

## CERTIFICATE OF SERVICE

This is to certify that on February 24, 2005, a true and correct copy of the foregoing was sent via facsimile and mailed, postage prepaid, first class mail, to:

Frank F. Coulom, Jr., Esq.
Marion B. Manzo, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Attorneys for Plaintiff

Mark B. Holton, Esq.
Kathryn E. Nealon, Esq.
Ayn B. Ducao, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193

Attorneys for Plaintiff

David J. Grais, Esq.
Kathryn C. Ellsworth, Esq.
Anne E. Hutchinson, Esq.
Lee D. Vartan, Esq.
Dewey Ballantine LLP
1301 Ave of the Americas
New York, NY 10019-6092

Attorneys for Plaintiff

David R. Schaefer, Esq.
Rowena A. Moffett, Esq.
Brenner, Saltzman & Wallman
271 Whitney Avenue
P.O. Box 1746
New Haven, CT 06511-1746

Attorneys for Defendant,
Third Party Plaintiff

David M. Spector, Esq.
Everett J. Cygal, Esq.
Amy M. Rubenstein, Esq.
Dennis G. LaGory, Esq.
Sharon A. Doherty, Esq.
John A. Bannon, Esq.
Roger Pascal, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, IL 60606-6473

Attorneys for Defendant,
Third Party Plaintiff

Brian C. Fournier