# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE COMPANY OF HARTFORD,<br><br>          Plaintiff,<br><br>v.<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>          Defendant.<br><br>TRUSTMARK INSURANCE COMPANY,<br><br>          Third Party Plaintiff,<br><br>v.<br><br>TIG INSURANCE COMPANY,<br><br>          Third Party Defendant. | Civil No. 301CV2198(PCD) |

### TRUSTMARK INSURANCE COMPANY'S OPPOSITION TO TIG'S MOTION TO STRIKE THE REBUTTAL EXPERT REPORT OF STEPHEN HARTIGAN AND/OR COMPEL ADDITIONAL DISCOVERY

Third party plaintiff, Trustmark Insurance Company respectfully submits its opposition to TIG's Motion To Strike The Rebuttal Expert Report Of Stephen Hartigan And/Or Compel Additional Discovery.

On February 8 and 9, 2005, TIG and Security spent seven hours over two days taking the deposition of Trustmark's expert, Mr. Stephen Hartigan. During that time, TIG had ample opportunity to question Mr. Hartigan about the opinions he has reached in this matter and the basis for them. Not satisfied with this opportunity, TIG now seeks additional discovery of privileged and confidential information regarding disputes completely separate and unrelated to the issues of this case. Such discovery is not only irrelevant, but, as this Court has previously

recognized, Trustmark is prevented under English law from disclosing confidential information without the consent of the other parties to the disputes. Further, TIG's argument that somehow, by employing Mr. Hartigan as a consulting, then testifying, witness in this matter, Trustmark has waived any privilege it may have over Mr. Hartigan's other work, in other unrelated matters, at other times, and under other circumstances, is baseless. Indeed, TIG seeks additional discovery on areas it never pursued in Mr. Hartigan's deposition—such as the total amount Trustmark has paid Mr. Hartigan in all of his engagements—and should not be permitted a second bite at that particular apple. Accordingly, TIG's motion should be denied in its entirety.

## DISCUSSION

TIG seeks additional discovery in five areas that have only the most remote connection to this case. First, TIG seeks documents relating to Trustmark's dealings with the GAN insurance companies. Second, TIG seeks documents concerning a dispute between All-American and GAN. Third, TIG seeks documents concerning all disputes in which Trustmark has retained Mr. Hartigan as an expert, consulting or otherwise. Fourth, the identity of each of the other parties to those disputes. And fifth, copies of Mr. Hartigan's invoices for work he has done with Trustmark in connection with WEB-related business. Finally, TIG seeks an additional seven hours of deposition testimony to explore these at best marginal issues.

I. **TIG IMPROPERLY SEEKS CONFIDENTIAL INFORMATION PROTECTED BY ENGLISH LAW WITHOUT THE CONSENT OF THE AFFECTED PARTIES**

In connection with Security's CUTPA/CUIPA claim (upon which this Court has granted summary judgment in favor of Trustmark), the issue of the confidentiality of arbitrations under English law has been extensively briefed and discussed. (*See, e.g.*, Ex. B to Trustmark's Opposition to Security's 11/20/02 Motion To Compel, Declaration of David Richard Kendall, dated December 18, 2002, attached hereto as Exhibit 1.) The Court has acknowledged that,

under English law, confidentiality extends to arbitration proceedings. (Rulings of February 5, 2003 at 4, attached as Exhibit 2.) The Court has also noted that "such confidentiality may be waived 'with the consent of the other party, or pursuant to leave of court'" (Id. (quoting *Ali Shipping Corp. v. Shipyard Trogir*, 1 Lloyd's Rep. 643, 647 (Eng. C.A. 1998).) In its February 5, 2003, Rulings, the Court indicated that it would require the consent of the other parties in the arbitration proceedings before Trustmark could produce requested information.

Pursuant to this understanding of English law and the Court's February 5, 2003 ruling, counsel for Trustmark objected to TIG's questioning of Mr. Hartigan about (i) the details of a dispute between his employer at the time, GAN Insurance Company, and All-American and (ii) details of his work for Trustmark as an expert of other matters involving other parties. To Trustmark's knowledge, neither GAN, All American, nor the other parties to the subject arbitrations has consented to Mr. Hartigan's disclosure of any of the work he had done in connection with those disputes. Accordingly, rather than place Mr. Hartigan in violation of English law, when TIG pressed with its questions, Trustmark's counsel instructed Mr. Hartigan not to answer.

At no time, before or since Mr. Hartigan's deposition, has TIG ever requested that Trustmark attempt to obtain the consent of the other parties to the arbitration.[1] Nor, to Trustmark's knowledge has TIG attempted to contact GAN to obtain its consent. That being said, Mr. Hartigan has been engaged by Trustmark in connection with four other matters. (Declaration of David Richard Kendall, dated March 14, 2005, ¶ 6, attached hereto as Exhibit 3.) In all instances, Mr. Hartigan was engaged as Trustmark's consultant/expert <u>after</u> the formal

---

[1] Notwithstanding TIG's apparent lack of interest, Trustmark has undertaken to contact the appropriate parties and see if they will consent to Mr. Hartigan being questioned on the particulars of those disputes.

commencement of arbitration proceedings. (Id.) Therefore, as a matter of English law, all communications between Mr. Hartigan and Trustmark's English counsel, including all preliminary reports prepared by Mr. Hartigan but not served in the proceedings where he was formally appointed as an expert, are privileged. (Id. at ¶ 7.) The principle underlying English confidentiality law is that a party should be free to seek evidence without being obliged to disclose the result of its researches to the other side. (Id.)

Furthermore, under English law confidentiality attaches to all aspects and stages of the arbitration proceedings. (Id. at ¶ 8.) This would include the duty of the parties to keep confidential any documents prepared for and used in the arbitration, or transcripts or notes of evidence or the award. (Id. at ¶ 9.) Under English law such information and/or documentation cannot be disclosed by a party to an arbitration without the consent of all other parties or by order or leave of the English court. (Id.) Therefore, where instructions and correspondence between Trustmark's English counsel and Mr. Hartigan involved documents disclosed by the other side, those underlying documents are confidential (and the instructions/correspondence is privileged). (Id. at ¶ 10.) As Trustmark owes a duty of confidentiality to the other arbitrating party, Trustmark would need the consent of the other arbitrating party before such documents could be disclosed. (Id.)

So for example, in two of the matters, Mr. Hartigan has served formal expert reports. Those reports, while not being privileged are subject the other parties' rights of confidentiality because they refer to documents disclosed by those parties for the purpose of the arbitrations. (Id. at 11.) Those other arbitrating parties' consent would be needed before they could be disclosed in the US action. (Id.)

*v. Slater Elec. Inc.*, 80 F.R.D. 411, 416 (E.D.N.Y. 1978) (distinguishing between information obtained as an "expert" as to some matters and an "actor" as to others).

### III. TIG IMPROPERLY SEEKS DISCOVERY OF COLLATERAL EXPERT INFORMATION

TIG seeks discovery into Mr. Hartigan's work at GAN and his expert engagements for Trustmark for two reasons. First, for possible impeachment purposes. Second, because of the proposition that Mr. Hartigan's other opinions on other assignments may have some bearing on his opinions in this case. While the relevance of this information is questionable and remote, it is certainly collateral to Mr. Hartigan's work and opinions in this case. Indeed, courts routinely reject fishing expeditions into an expert's other work as well beyond the scope of Rule 26 discovery. *Trunk v. Midwest Rubber and Supply Co.*, 175 F.R.D. 664, 665 (D. Colo. 1997) (denying request to discover work from unrelated litigation even though purportedly "necessary for impeachment purposes"); *In re Air Crash Disaster at Stapleton International Airport, Denver, Colorado, on November 15, 1987*, 720 F. Supp. 1442, 1444 (D. Colo. 1988) (expert conclusions and opinions offered in unrelated litigation are not discoverable and would unnecessarily burden litigation with pre-trial inquiries into facts and issues irrelevant to the case at hand); *Surles v. Air France*, No. 00CIV5004RMBFM, 2001 WL 815522, at *6-7 (S.D.N.Y. July 19, 2001) (plaintiff was not entitled to disclosure of export reports in prior unrelated actions "regardless of their subject matter.").

These courts have found that "the conclusions and opinions offered in unrelated litigation do not fall within the scope of Rule 26 discovery and would unnecessarily burden litigation with pre-trial inquiry into facts and issues wholly irrelevant to the case at hand." *Trunk*, 175 F.R.D. at 665 (internal quotations omitted); *see also In re Air Crash Disaster*, 720 F.

Supp. at 1444. Accordingly, TIG's discovery of Mr. Hartigan is appropriately limited to the work he did in this case:

> The focus of information to be gathered under the Rule, either for general understanding of the expert's position or for impeachment is on events giving rise to the litigation at hand and the opinions to be received in evidence during that litigation.

*In re Air Crash Disaster*, 720 F. Supp. at 1444.

## IV. TIG IMPROPERLY SEEKS INFORMATION IT NEVER PURSUED IN MR. HARTIGAN'S DEPOSITION

The overreaching of TIG's motion is no more apparent than with respect to its request that it be granted discovery into: (i) "all invoices and other statements reflecting the amounts Mr. Hartigan (or any of the companies for which he has worked) has billed Trustmark in connection with WEB related business" or "the full extent of Mr. Hartigan's relationship with Trustmark." (TIG's Mem. in Supp. at 7, 10.) Even if this discovery was in fact relevant, which Trustmark does not concede, TIG and Security have interrogated Mr. Hartigan for seven hours and not once asked him what the total amount he has been paid by Trustmark. Indeed, other than the objectionable questions seeking confidential and privileged details of English arbitrations, TIG and Security never asked Mr. Hartigan any questions about his "relationship with Trustmark." The nature of TIG's motion is exposed: all TIG apparently wants is another shot at questioning Mr. Hartigan.

## V. TIG'S MOTION TO STRIKE MR. HARTIGAN'S REBUTTAL REPORT SHOULD BE DENIED

In the alternative, TIG seeks to have Mr. Hartigan's expert report stricken in its entirety "in light of the extremely tight time frames the parties are currently operating under." (TIG's Mem. in Supp. at 9.) Such a harsh and drastic sanction is clearly not warranted under the circumstances. In the first place, as set forth above, Trustmark's counsel acted in good faith and

-7-

not for purposes of obstruction. The circumstances presented genuine issues which, as Trustmark asserts, should be resolved in Trustmark's favor. Secondly, as the Court may recall, TIG and Security were the parties who requested the abbreviated expert discovery period the parties are currently operating under. Indeed, TIG created its own "tight time frames" by waiting over two weeks after Mr. Hartigan's deposition to file its motion, and making no attempt whatsoever to confer with Trustmark on an "expedited" briefing schedule.

## CONCLUSION

For all the foregoing reasons, third party plaintiff Trustmark Insurance Company respectfully requests TIG's Motion To Strike The Rebuttal Expert Report Of Stephen Hartigan And/Or Compel Additional Discovery be denied in its entirety.

Date: March 14, 2005

TRUSTMARK INSURANCE COMPANY

*/s/ John A. Bannon*

One of the attorneys for
Trustmark Insurance Company

Roger Pascal CT 26488
David M. Spector CT 21679
John A. Bannon CT 26489
Everett J. Cygal CT 22765
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606-6473

David R. Schaefer CT 04334
Rowena A. Moffett CT 19811
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, Connecticut 06511

CH2\1212144.2

## CERTIFICATE OF SERVICE

I, John A. Bannon, an attorney, certify that on March 15, 2005, I caused a true and correct copy of TRUSTMARK INSURANCE COMPANY'S OPPOSITION TO TIG's MOTION TO STRIKE THE REBUTTAL EXPERT REPORT OF STEPHEN HARTIGAN AND/OR COMPEL ADDITIONAL DISCOVERY to be served by facsimile and by overnight delivery, to:

Mark B. Holton, Esq.
Kate Nealon, Esq.
Gibson Dunn & Crutcher
200 Park Avenue, Floor 48
New York, New York 10166

David Grais, Esq.
Kay Ellsworth, Esq.
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY 10019-6092

Frank F. Coulom, Jr., Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

David A. Slossberg, Esq.
Hurwitz & Sagarin
147 North Broad Street
Milford, CT 06460-0112

**Original Executed Copy sent to:**

Harry P. Cohen, Esq.
Brian O'Sullivan, Esq.
Cadwalader, Wickersham & Taft
One World Financial Center
New York, NY 10281

/s/ John A. Bannon
John A. Bannon

CH2\ 1212670.1