Page 1

1
2           UNITED STATES DISTRICT COURT
3              DISTRICT OF CONNECTICUT
4
5

SECURITY INSURANCE COMPANY OF
6   HARTFORD,
7           Plaintiff,
8       against
9   TRUSTMARK INSURANCE COMPANY,
                                              301CV2198
10          Defendant.
                                            x
11  _____

TRUSTMARK INSURANCE COMPANY,
12
           Third-Party Plaintiff
13
       against
14
TIG INSURANCE COMPANY,
15
           Third-Party Defendant.
16  _____x
17
18      DEPOSITION OF STEPHEN A. HARTIGAN
19             New York, New York
20          Tuesday, February 8, 2005
21
22
23
24  Reported by:
    MERCEDES MARNEY, RPR
25  JOB NO. 170104

Esquire Deposition Services
1-800-944-9454

Page 10

BY MR. O'SULLIVAN:
Q It's a fact that All American rescinded its retrocessional contracts covering GAN Insurance Company, correct?
A What happened is that it was proposed that they wanted to rescind. We had a number of discussions, a number of meetings, and the matter was settled before it went to arbitration.
Q When was it settled?
A Well, the original dispute, there were two years involved, and the company that we were dealing with in the first year, which I think was 1997, was American Reliable. And that was settled, I think, in 2001. The second year involved All American, and that, I understand, was settled at some stage last year between GAN and All American, but I had left GAN before that.
Q What was Trustmark's relationship with All American Reliable concerning the '97 year?
A As far as I understood at the time, I thought that Trustmark were some form of quota share reinsurer of American Reliable, and also

Page 11

All American. I understand, subsequently, that there was no formal reinsurance agreement in place between the two. There was some partnership between them to share business.
Q Is American Reliable a sister company of All American Insurance Company?
A American Reliable, I think, is sister company of American Bankers.
Q Okay. And it's your understanding there was a quota share agreement between Trustmark and American Reliable with respect to WEB business?
A There was a business sharing agreement between American Reliable and Trustmark.
Q And this is with respect to business underwritten by WEB Management?
A Correct.
Q Now, did American Reliable purport to rescind the '97 agreement with GAN Insurance Company?
A I have to be careful about dates, because I really can't remember specifically. There were two years involved. I think it was '97 and '98.

Page 12

Q That's fine. I am distinguishing between American Reliable and All American.
A Yes, the first year of the two years that these protections were in place, it was American Reliable.
Q Okay. And did American Reliable purport to rescind that contract?
A Yes.
Q What were the grounds for the purported recision?
A There were many grounds, as far as I recall. It related to a mis -- it was alleged misrepresentation by GAN, both of the business being underwritten by GAN, and to the statistics that were presented at the time that the risk was placed.
Q We're talking loss statistics?
A Yes.
Q Were there any other grounds?
A Not as far as I can recall now.
Q Now, you stated, alleged misrepresentation by GAN Insurance. Did you do anything to investigate the allegations?
A I certainly did.
Q What did you conclude?

Page 13

A I concluded that there was certainly some ambiguity in the information that we had provided as to the nature of the business that was being underwritten by GAN. But it was, in particular in specific areas, and it wasn't widespread throughout the account.
   MR. BANNON: I'm going to object to this entire line of questioning. It is not related to the subject of his expert report, and it is going beyond the scope of merely trying to ascertain his qualifications as an expert. And if I'm not mistaken, I believe that the Court had ordered that confidential matters would stay confidential unless both parties waived confidentiality. I'm not aware of either Trustmark or GAN waiving confidentiality with respect to this matter.
   MR. O'SULLIVAN: You haven't demonstrated that there is confidentiality, so it's irrelevant. I'm going to continue asking these questions, and if you instruct the witness not to answer, we'll take it to the Court.

4 (Pages 10 to 13)

Esquire Deposition Services
1-800-944-9454

**Page 14**

1  MR. BANNON: No. Let's take a short
2  break then.
3  MR. O'SULLIVAN: Okay.
4  THE VIDEOGRAPHER: The time is
5  9:52 a.m. and we're going off the video
6  record.
7  (Recess taken.)
8  THE VIDEOGRAPHER: The time is
9  9:53 a.m. and we're back on the video
10 record.
11 MR. O'SULLIVAN: Was there a question
12 pending?
13 THE REPORTER: No.
14 BY MR. O'SULLIVAN:
15 Q  You stated that you had concluded
16 that there was some ambiguity relating to the
17 information that was provided. Do you recall
18 whether WEB asked any questions concerning that
19 information?
20 MR. BANNON: Now, my objection is,
21 this is confidential, non-public
22 information. It's beyond the scope of his
23 expert report. It is beyond the scope of
24 merely ascertaining what his requirements
25 are. And my understanding is that the

**Page 15**

1  Court has ordered that discovery into
2  these confidential matters, the British
3  confidential matters, is not permitted
4  unless both parties waive confidentiality.
5  And Trustmark is not going to do it, and
6  GAN is not here. So I'm instructing him
7  not to answer these questions.
8  MR. O'SULLIVAN: You submitted an
9  expert report from somebody with respect
10 to whether or not WEB acted as a
11 reasonably prudent underwriter. This
12 witness has firsthand knowledge concerning
13 WEB's underwriting. I'm entitled to
14 inquire about his knowledge, about the
15 allegations, and whether or not he agreed
16 that the recision was appropriate and, you
17 know, and if you're going to instruct him
18 not to answer, we'll take it to the Court.
19 MR. BANNON: Take it to the Court.
20 And just for the record, I will move to
21 strike all his prior testimony on the same
22 grounds.
23 BY MR. O'SULLIVAN:
24 Q  Did All American also report the
25 rescission the subsequent year?

**Page 16**

1  MR. BANNON: Same instruction.
2  MR. O'SULLIVAN: So now you are going
3  to instruct him based upon All American's
4  confidentiality concerns when you are in
5  litigation with them?
6  MR. BANNON: My understanding is that
7  the Court ordered that discovery into the
8  confidential British disputes, it was not
9  permitted. Now, if that understanding is
10 wrong, then we'll be back.
11 MR. O'SULLIVAN: We'll be back.
12 BY MR. O'SULLIVAN:
13 Q  You indicated that your first
14 involvement with respect to Trustmark was when
15 you were with GAN. What were your subsequent
16 dealings with Trustmark?
17 A  I was asked to act as an expert
18 witness for Trustmark by a British firm of
19 lawyers in a dispute that they had with the UK
20 cedant.
21 Q  So Trustmark was the
22 retrocessionaire?
23 A  Trustmark was the reinsurer of a UK
24 ceding company.
25 Q  Are we talking direct insurance or

**Page 17**

1  reinsurance?
2  A  It was reinsurance.
3  Q  And was this business underwritten by
4  WEB Management?
5  MR. BANNON: All right. I'm going to
6  object, and I will caution the witness to
7  respect any confidentiality agreements
8  that are in place, and I will, in fact,
9  instruct him not to answer on the same
10 grounds as I did previously.
11 MR. O'SULLIVAN: You are going to
12 instruct him not to answer the question
13 whether this was business underwritten by
14 WEB?
15 MR. BANNON: Yes.
16 MR. O'SULLIVAN: Okay.
17 BY MR. O'SULLIVAN:
18 Q  Who was the cedant?
19 MR. BANNON: Same instruction.
20 BY MR. O'SULLIVAN:
21 Q  What issues were you asked to opine
22 on in that litigation?
23 MR. BANNON: Same instruction.
24 BY MR. O'SULLIVAN:
25 Q  Was it a litigation or an

Page 18

1  arbitration?
2      A   That was an arbitration.
3      Q   Did it go to hearings?
4          MR. BANNON: Object, and instruct him
5      not to answer.
6  BY MR. O'SULLIVAN:
7      Q   Okay. Do you have any other dealings
8  with Trustmark before this one?
9      A   Before that one, no.
10     Q   No, I'm sorry, before this
11 engagement, before, I think you said it was in
12 March of 2004 when you met with Mr. Cygal.
13     A   Yes, and they are subject to
14 confidentiality.
15     Q   I understand. He can instruct you
16 not to answer.
17         MR. BANNON: And I'm going to do it
18     right now.
19         MR. O'SULLIVAN: You are not even
20     going to let me find out whether he was a
21     consultant expert, testifying expert, an
22     arbitrator.
23         MR. BANNON: Only in the most general
24     of terms.
25

Page 19

1  BY MR. O'SULLIVAN:
2      Q   What was the nature of your third set
3  of dealings with Trustmark?
4      A   In the most general terms, since,
5  I've acted as a consultant.
6      Q   Consultant. Was it in connection
7  with a dispute between Trustmark and the
8  cedant?
9          MR. BANNON: I will object and
10     instruct him not to answer.
11         MR. O'SULLIVAN: Your instructions
12     are completely inconsistent, since you
13     allowed him to answer the previous two
14     questions.
15         MR. BANNON: I'm trying to cooperate
16     with you here, Counsel, okay. All right.
17     It would be -- if you'd like, I can just
18     instruct him not to answer any of these
19     questions, okay?
20         MR. O'SULLIVAN: Well --
21         MR. BANNON: I'm not trying to be
22     inconsistent here. I'm trying to be
23     helpful.
24         MR. O'SULLIVAN: Right, but you are
25     being inconsistent. If you're going to

Page 20

1  instruct him not to answer, whether it was
2  a dispute between Trustmark and one of its
3  cedants or its retros or somebody else --
4          MR. BANNON: I'm going to instruct
5      him not to answer any questions about the
6      details of confidential dealings on
7      British matters with respect to Trustmark.
8          MR. O'SULLIVAN: Okay.
9          MR. BANNON: Because it's my
10     understanding that discovery is not
11     permitted into those, those confidential
12     disputes, unless both parties have agreed
13     to waive confidentiality.
14         MR. O'SULLIVAN: It's our position,
15     by proffering Mr. Hartigan as an expert,
16     you've waived that confidentiality.
17         MR. BANNON: Well, then you'll have
18     to brief that, I guess.
19         MR. O'SULLIVAN: We will be doing so.
20 BY MR. O'SULLIVAN:
21     Q   Okay. So we've -- I guess have
22 exhausted everything I'm permitted to ask you
23 about your third set of dealings with
24 Trustmark. Were there any others?
25     A   I am currently acting as a consultant

Page 21

1  for Trustmark on another matter.
2      Q   Is the other matter relating to a
3  dispute between Trustmark and its cedant?
4      A   It is confidential, I'm afraid.
5      Q   Are all these other matters pending
6  in the UK? I'm sorry. Pending is probably a
7  bad word.
8          All of your other engagements with
9  Trustmark, do they relate to UK arbitrations
10 and/or litigations?
11     A   Yes.
12     Q   Did the other engagements all involve
13 disputes relating to WEB business?
14         MR. BANNON: Objection, and instruct
15     him not to answer that question.
16 BY MR. O'SULLIVAN:
17     Q   Have you ever had any prior dealings
18 with the United States Life Insurance Company
19 or All American Insurance Company -- I'm sorry,
20 it's All American Life Insurance Company?
21     A   Yes.
22     Q   I know you talked about your
23 involvement or your dealings with All American
24 concerning GAN business.
25     A   Yes.

Page 22

1  Q  Did you have any other dealings with
2  United States Life Insurance Company or All
3  American Life Insurance Company?
4  A  No.
5  Q  I'm sorry?
6  A  No.
7  Q  Have you had any prior dealings with
8  TIG Insurance Company?
9  A  Dealings as such, no. They may, in
10 the ten years that I was with GAN Insurance
11 Company, they may have featured as one of our
12 many, many reinsurers, but I don't recall
13 having any particular dealings.
14 Q  I'm only asking about your
15 recollection. You don't recall having any
16 prior dealings with TIG?
17 A  No.
18 Q  What about the Security Insurance
19 Company of Hartford?
20 A  No.
21     MR. O'SULLIVAN: Let me mark, as the
22 next exhibit, 1176, a copy of the expert
23 report that Trustmark has submitted in
24 this proceeding.
25     (Exhibit Number 1176 marked for

Page 23

1  identification, as of this date.)
2  BY MR. O'SULLIVAN:
3  Q  Do you recognize this document?
4  A  I do.
5  Q  Is that your signature on -- there's
6  no page number, but it should be page 46.
7  A  Yes, it is.
8  Q  When did counsel for Trustmark first
9  discuss with you the possibility of submitting
10 an expert report in this litigation?
11 A  It would have been towards the end of
12 last year, October, November time, I believe.
13 Q  When did you begin drafting the
14 report?
15 A  Well, not until quite recently.
16 Probably January.
17 Q  Okay. Did counsel for Trustmark
18 provide you any guidance as to what should be
19 included in this report?
20 A  No.
21 Q  Did counsel for Trustmark ever tell
22 you that the purpose of this was that you were
23 preparing a rebuttal report, which was to rebut
24 opinions offered by TIG and securities experts?
25 A  That's exactly what I was told.

Page 24

1  Q  Did you try to limit the discussion
2  in your report to a rebuttal of opinions
3  offered by TIG and Securities experts?
4  A  Yes, I did.
5     MR. BANNON: Objection.
6  BY MR. O'SULLIVAN:
7  Q  Who have you discussed this
8  litigation with?
9  A  I discussed it with Everett Cygal.
10 Q  Okay.
11 A  Mr. Bannon. And nobody else.
12 Q  Nobody else at Schiff Hardin?
13 A  Nobody else in Schiff Hardin.
14 Q  Anyone at Trustmark?
15 A  No, I haven't discussed this with
16 anyone at Trustmark.
17 Q  Okay. Have you ever discussed this
18 litigation or any of the opinions you are
19 offering in your report with any of Trustmark's
20 other experts?
21 A  No.
22    MR. O'SULLIVAN: Let me mark, as
23 1177, a document Bates numbered SHartigan
24 000179 to 181, which is the series of
25 e-mails between you and Mr. Cygal.

Page 25

1  (Exhibit Number 1177 marked for
2  identification, as of this date.)
3  BY MR. O'SULLIVAN:
4  Q  Mr. Hartigan, have you had a chance
5  to review this document?
6  A  Yes.
7  Q  Do you recognize it?
8  A  Yes.
9  Q  Does this refresh your recollection
10 that the first communication you had with
11 Schiff Hardin concerning this litigation was by
12 e-mail?
13    MR. BANNON: Objection.
14    THE WITNESS: Yes.
15 BY MR. O'SULLIVAN:
16 Q  And were you initially retained as a
17 consulting underwriting expert?
18 A  I don't believe so, no.
19 Q  What is your understanding as
20 respects your initial engagement by Trustmark
21 in this matter?
22 A  The same as happens in a lot of cases
23 where I'm approached to assist in disputes.
24 It's initially to have a look at the
25 information, and see if I can be of assistance

7 (Pages 22 to 25)

Esquire Deposition Services
1-800-944-9454